IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA

v.                                         Criminal No. 5:21CR50014-001

JOSHUA JAMES DUGGAR

UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION TO COMPEL

Comes now the United States of America, by and through Dustin Roberts and Carly

Marshall, Assistant United States Attorneys for the Western District of Arkansas, William G.

Clayman, Trial Attorney for the United States Department of Justice, and for its Response to the

Defendant's Motion to Compel Discovery (Doc. 31), states:

I.      SUMMARY OF ARGUMENT

As with many cases based on undercover investigations of individuals sharing child sexual

abuse material ("CSAM") over peer-to-peer networks, this case is straight-forward. In May 2019,

Detective Amber Kalmer in Little Rock, Arkansas, used a law enforcement tool to download files

depicting the sexual abuse of children directly from the user of a single Internet Protocol ("IP")

address over the BitTorrent peer-to-peer network. The detective sent a lead related to her

undercover downloads to Special Agent Gerald Faulkner with Homeland Security Investigations

("HSI"), who determined that the IP address was assigned to the defendant's small used car

dealership in this District at the time of the downloads and applied for a warrant to search the

premises. During the execution of the warrant, law enforcement seized the dealership's computer

and multiple electronic devices belonging to the defendant. Based on forensic artifacts found on

these devices, among other evidence, a federal grand jury returned a two-count indictment

charging the defendant with receipt and possession of child pornography.

Faced with these charges, the defendant has moved to compel the production of non-existent material related to Detective Kalmer's undercover downloads and, separately, material related to other downloads conducted by other law enforcement officers not involved with this case and not in the Government's possession. The problem with the defendant's motion, however, is that it appears to be based on a misapprehension of this investigation and the basis for the charges against him. The United States has already provided him with comprehensive discovery, including all relevant log files associated with Detective Kalmer's undercover downloads, which are described above, in the search warrant affidavit, and in the testimony of Special Agent Faulkner during the detention hearing on May 5, 2021. While it might strain the defendant's credulity, the Government, as it has advised numerous times, has provided all the discovery covering Detective Kalmer's involvement in this case.[1]

The other officers who downloaded CSAM from the user of the defendant's IP address, as the United States has also already advised, played no part in the investigation of this case and did not provide the prosecution team with any materials related to their activity. The officers' downloads therefore in no way informed the magistrate judge's determination that there was probable cause to search his car lot, nor did they provide the basis for any of the charges in this case. In short, the information the defendant now seeks, to the extent it even exists, is immaterial to all aspects of this case. The Government has complied with and will continue to comply with all pertinent discovery obligations. The defendant's conclusory assertions to the contrary fall well

---

[1] Importantly, even if Detective Kalmer did author certain reports, which she did not, the existence of said reports would not automatically trigger a discovery obligation. As argued below, if the detective's activities are documented in the HSI reports that have been provided in discovery, the defendant's motion equates to asking this court for early disclosure of Jencks material.

short of establishing the requested information's materiality under Rule 16, *Brady*, *Giglio*, or any other relevant legal precedent, and his motion represents nothing more than a request to embark on an impermissible fishing expedition for evidence that is either nonexistent, immaterial to his defense, or already produced. Accordingly, the defendant's motion should be denied.

### 1.    The United States' Investigation

As set forth in the extensive materials already provided to the defendant, the present case came to law enforcement's attention in May 2019, when Detective Kalmer of the Little Rock Police Department was conducting an undercover online investigation on the BitTorrent peer-to-peer file-sharing network. (Detention Hearing Transcript "Tr" p. 13). During her investigation, she observed that a user connected to the network from IP address 167.224.196.113 ("the target IP") was sharing CSAM over the network. Using a BitTorrent software designed for law enforcement, Detective Kalmer downloaded CSAM directly from this user. (Tr. pp. 14-15). The downloaded files include:

- A video file downloaded at approximately 5:42 PM on May 14, 2019, depicting two fully nude prepubescent females, one of whom is vaginally penetrated by an adult male; and

- A zip file downloaded at approximately 6:45 PM on May 15, 2019, containing approximately 65 image files of a prepubescent female, many of which are child pornography, including an image depicting the girl lying on her back and using her hands to expose her vagina and anus.

(Tr. pp. 14-15).

After downloading these files, Detective Kalmer determined that the target IP geolocated to Northwest Arkansas. She then contacted HSI Special Agent Faulkner, who investigates federal child pornography offenses in Northwest Arkansas, to inquire if he would further investigate the user of the target IP. (Tr. p. 16). After Special Agent Faulkner advised that he would, Detective Kalmer notified the Internet Crimes Against Children ("ICAC") administrator with the Arkansas

State Police ("ASP") of the downloads, which were logged in the ICAC Data System ("IDS"), and told the administrator that Special Agent Faulkner had indicated he was willing to investigate her lead further. The ASP administrator then forwarded the lead information to Special Agent Faulkner. (Tr. p. 16).

According to law enforcement databases, two other law enforcement officers in Arkansas appear to have likewise downloaded CSAM from the user of the target IP over the BitTorrent peer-to-peer network on May 14, 2021. These officers did not advise Special Agent Faulkner that they had downloaded CSAM from the user of the target IP, nor did they send him any information related to these downloads.

After receiving the lead from Detective Kalmer, HSI Special Agents Faulkner and Howard Aycock determined that the target IP was issued by an internet service provider known as Ozarks Go and requested subscriber information associated with the user's account. (Tr. p. 16). On or about October 7, 2019, in response to a federal summons, Ozarks Go identified the subscriber associated with the target IP at the time of Detective Kalmer's undercover investigation as the defendant, with an address that ultimately returned to the defendant's used car dealership—Wholesale Motorcars—in the Western District of Arkansas. (Tr. p. 16-17). Relying on Detective Kalmer's undercover downloads, the information provided by Ozarks Go, and additional background information related to the defendant and online child pornography and BitTorrent investigations, among other information, Special Agent Faulkner applied for a federal warrant to search the Wholesale Motorcars lot for child-pornography-related evidence. (See Government's exhibit A). Special Agent Faulkner's affidavit in support of his application for a search warrant only referenced Detective Kalmer's undercover downloads and did not discuss whether any other officers had downloaded CSAM from the target IP in May 2019, as he had not received any

information from any officers or other law enforcement agencies regarding any additional downloads. On November 4, 2019, then-Chief Magistrate Judge Erin L. Wiedemann issued a warrant to search the defendant's car lot based on Special Agent's Faulkner's application. *Id.*

At approximately 3:00 p.m. on November 8, 2019, law enforcement executed the warrant. Agents encountered the defendant and two other men standing outside on the car lot. (Tr. p. 18-20). Inside the small building on the lot, which operated as the business's main office, law enforcement located an HP Desktop Computer with an image of the defendant and his family on its screen. (Tr. 23-24). A subsequent forensic examination of that device and other devices seized from the defendant and the car lot pursuant to the warrant uncovered evidence demonstrating that the defendant used the HP Desktop to download from the internet and, subsequently, possess multiple files depicting minors engaged in sexually explicit conduct. (Tr. 34).

## 2.    Procedural Background and Relevant Case History

A grand jury sitting in the Western District of Arkansas later returned a two-count indictment charging the defendant with receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). (Doc. 1). This case was originally set for trial on July 6, 2021. (Doc. 15). However, on motion of the defendant, the Court continued the trial until November 30, 2021. (Doc. 28).

On June 2, 2021, the United States provided the defendant with a screenshot reflecting that two other law enforcement officers in Arkansas also downloaded CSAM from the target IP over the BitTorrent network on May 14, 2019. (Doc. 31-1). On July 9, 2021, the defense requested all discovery related to the screenshot, all reports from the two other officers, all reports from Detective Kalmer, and all log files related to law enforcement's use of Torrential Downpour to download CSAM from the target IP, among other things. (Doc. 31-3). In response, the United

States provided all the relevant log files related to Detective Kalmer's undercover downloads from the target IP on May 14 and May 15, 2019, and explained that material related to the screenshot and the activity of the two other officers is extraneous to the instant case and therefore not discoverable. (Doc. 31-4). The United States reiterated and expanded on this on July 21, 2021, explaining to the defense that the material they sought was not discoverable because the two other officers played no part in the investigation or the prosecution of the defendant's federal case and that the United States provided the screenshot to simply make the defense aware that other officers not involved with this prosecution had downloaded CSAM from the target IP. (Doc. 31-6).

On July 26, 2021, the defendant filed the instant motion pursuant to Federal Rule of Criminal Procedure 16 ("Rule 16") and the Supreme Court's decisions in *Brady v. Maryland*, *Giglio v. United States*, and *Kyles v. Whitley*, requesting that "this Court enter an Order compelling the Government to produce (1) all discovery related to, and underlying, an undated screen shot disclosed by the Government … and (2) all law enforcement reports and related discovery prepared by the Little Rock, Arkansas law enforcement entity and 2 other unidentified law enforcement entities which participated in the investigation of this case." (Doc. 31 at 1–3).

## II.    ARGUMENT

Criminal defendants do not have a constitutional right to discovery absent a specific "statute, rule of criminal procedure, or other entitlement." *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000). The United States has complied with its Rule 16, *Brady*, and other discovery obligations and will continue to comply with both the letter and spirit of those obligations. In his motion, however, the defendant seeks to compel the United States to turn over either nonexistent or immaterial information to which he is not entitled. Specifically, with respect to Detective Kalmer's undercover downloads, the defendant seeks material that does not exist. And with respect

to the screenshot and the other officers' downloads, he incorrectly asserts that the United States has already conceded that the information he now seeks is discoverable based on a strained reading of prior communications while simultaneously asserting that the requested information is material based on his own *ipse dixit* that it is and his mistaken assumption that the other officers are members of the prosecution team. He also asserts with little explanation that the requested information will allow him to impeach Special Agent Faulkner based on a misunderstanding of the evidence and the agent's prior testimony. In short, the defendant fails to demonstrate that the various categories of information he seeks are discoverable under any of the relevant rules, standards, or legal precedent, and his motion should therefore be denied.

1.    **The United States Has Produced All Relevant Discovery Related to Detective Kalmer's Investigation**

In his instant motion, the defendant seeks, among other things, "all law enforcement reports and related discovery prepared by the Little Rock, Arkansas law enforcement entity," presumably referring to Detective Kalmer's undercover investigation in which she downloaded files of CSAM from the defendant's IP address. (Doc. 31 at 1). Without any elaboration or evidence, the defendant asserts that "[i]t strains credulity" to believe the United States has produced all relevant discovery related to Detective Kalmer's investigation because of the few months that passed between her undercover downloads and HSI's investigative activity.[2] (Doc. 31 at 8). The defendant offers no explanation as to why this strains credulity, of course, because his claim is nothing more than

---

[2] As Special Agent Faulkner testified, HSI received Detective Kalmer's lead shortly after her May 2019 undercover downloads and Ozarks Go responded to HSI's federal summons in October 2019. (Tr. at pp. 16, 60). A thorough review of the discovery provided—which includes the federal summons HSI issued to Ozarks Go well before October 2019—confirms the faulty premise of the defendant's argument. More importantly, the defendant has not identified any actual or potential inconsistencies in Special Agent Faulkner's sworn statements, either at the detention hearing or in the affidavit in support of the search warrant, rendering his claim that the information he seeks might provide him with material to use to impeach Special Agent Faulkner meritless.

impermissible, rank speculation. *United States v. Hoeffener*, 950 F.3d 1037, 1043 (8th Cir. 2020) (noting that discovery requests require more than "mere speculation or conjecture").

In any event, the defendant is mistaken. The United States has produced the relevant log files documenting Detective Kalmer's undercover downloads and has confirmed that Detective Kalmer did not produce any reports related to this activity. As the United States has repeatedly made clear, after she downloaded the CSAM from the target IP, Detective Kalmer contacted Special Agent Faulkner to see if he would further investigate the user of that IP address, at which point he took the investigative lead. The information the defendant seeks is nonexistent, and this portion of his motion to compel should therefore be denied.

### 2. The Remaining Information the Defendant Seeks Is Not Material to his Defense under Rule 16

Under Rule 16, a defendant has a right to inspect documents, data, or tangibles objects "if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). Information is material under Rule 16 if it is "helpful to the defense." *United States v. Jean*, 891 F.3d 712, 715 (8th Cir. 2018) (citation omitted). "But a showing of materiality is not satisfied by a mere conclusory allegation that the requested information is material to the preparation of the defense." *Id.* (citation and quotation marks omitted). Nor is it satisfied by "speculation or conjecture." *Hoeffener*, 950 F.3d at 1043. Rather, a defendant must present some evidence to show that the government is in possession of information that would be helpful to the defense. *United States v. Krauth*, 769 F.2d 473, 476 (8th Cir. 1985); *see also United States v. Jean*, Case No. 5:15-CR-50087-001, 2016 WL 6886871, at *4 (W.D. Ark. Nov. 22, 2016) ("[T]he defendant must demonstrate that the requested evidence bears some abstract logical relationship to the issues in

8

the case." (citation and quotation marks omitted)); *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (noting that "[n]either a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense").

Here, the defendant seeks "all discovery related to, and underlying, an undated screen shot" reflecting that two other officers in Arkansas also downloaded CSAM from the user of the defendant's IP address on May 14, 2019, and "all law enforcement reports and related discovery prepared by . . . [the] 2 other unidentified law enforcement entities which participated in the investigation of this case." (Doc. 31 at 1). His primary claims to the materiality of this information are: (1) his counsel's assertion, without any supporting authority, that the two other officers' log files might reveal the type of device from which they downloaded CSAM from the target IP; and (2) his view that the Government has conceded that the material he seeks is discoverable and should therefore be "estopped" from opposing his motion. (Doc. 31 at 6–8). As explained below, neither of these theories has any merit, and his motion to compel pursuant to Rule 16 should be denied.

As an initial matter, the defendant's claim that the two other officers "participated in the investigation of this case" is speculative and, ultimately, incorrect. (Doc. 31 at 1). He concedes as much, noting that he has no information about what "involvement either had in investigating this matter." *Id.* And despite the voluminous discovery produced thus far, he has not pointed to a single document describing or even referencing the other officers' involvement. That is because, as the United States has repeatedly advised him, they had no involvement with the investigation or prosecution of this case. *See (*Doc. 31-4; Doc. 31-6). And importantly, none of their materials is in the possession of the prosecution team.

Indeed, the defendant's motion brushes past its most fundamental defect: the activity of the two other law enforcement officers is immaterial to this entire case. In fact, the defendant appears to misapprehend the charges here, drawing an inapt comparison between this case and a "gun case" in which the government produces "a picture of the gun allegedly at issue" but not the gun itself. (Doc. 31 at 7–8). To frame it in those terms, this is a receipt of child pornography case; the details of a picture documenting his distribution of child pornography to officers not involved with the case is not at issue. The officers' undercover downloads do not serve as the basis for either of the charges against him, nor did they lend any support to the probable cause set out in the search warrant affidavit. The defendant is of course free to challenge the magistrate judge's probable cause determination, but any such challenge is limited to the information contained within the four corners of the affidavit. *See United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999). In that regard, the United States has provided the defendant with all the relevant information regarding Detective Kalmer's undercover downloads, which are detailed in the affidavit. The information he now seeks related to the screenshot and the other officers, however, has no relationship to any of the issues in this case, and his motion should be denied.

Seeking to avoid this result, the defendant speculates that the information he requests might "reveal the type of *hardware* a file was allegedly downloaded from," and that the other officers' log files might differ from Detective Kalmer's log files in this respect. (Doc. 6–7). The defense provides no support for this claim beyond its own conclusory assertion, nor does it attempt to explain if Detective Kalmer's log files contained such information. The United States, on the other hand, reviewed her log files and found no such information, confirming that the defendant's current request is based on nothing more than wishful speculation. And even assuming *arguendo* that such information exists in the other officers' log files—which, to be clear, the United States

doubts based on Detective Kalmer's log files but ultimately does not know, as the other officers played no role in this investigation and did not provide any material to the United States—it would not be helpful to the defense because it would not provide any logical basis for the defendant to challenge the search warrant or the indictment. Put simply, the activity of these other officers is immaterial to his defense.[3]

The defendant also argues that the United States has conceded that the information he seeks is discoverable and that the Court should find that the United States is "estopped" from opposing his motion. (Doc. 31 at 7). The defendant is again mistaken. The United States made clear in its initial communication that it was producing a document that merely reflected the fact that two other officers in Arkansas downloaded CSAM from the defendant's IP address on May 14, 2019. (Doc. 31-1). To the extent any subsequent communication left the defense confused, the United States twice confirmed in writing—and is confirming again now—that the document was produced to make the defense generally aware of the two other officers' downloads, but its production in no way should be construed to suggest that the United States believes the additional information the

---

[3] To the extent the defendant's motion is requesting access to any law enforcement database related to the software used to download CSAM from the user of his IP address or the software itself, the United States notes separately that such information is protected from disclosure by law enforcement privilege. As other courts have explained in similar cases, "the government has a legitimate interest in preserving its ability to investigate and prosecute the distribution of child pornography" and the databases maintained by various law enforcement entities in connection with online peer-to-peer investigations "contain[] highly sensitive information about thousands of ongoing investigations into child pornography worldwide, including hash values for torrents of interest and the IP addresses of both suspects and investigating officers." *United States v. Gonzales*, No. CR-17-01311, 2020 WL 5210821, at *11 (D. Ariz. Sept. 1, 2020); *see also United States v. Chiaradio*, 684 F.3d 265, 278 (1st Cir. 2012) (noting that "the government reasonably fears that traders of child pornography (a notoriously computer-literate group) . . . would be able to use the source code [of law enforcement peer-to-peer software] to develop ways either to evade apprehension or to mislead authorities"). Thus, even if the defendant had articulated some logical and material connection between the information he seeks and this case—which he has not—his broad discovery request should still be denied.

defendant seeks is discoverable. (Doc. 31-4; Doc. 31-6). In this context, the defendant's judicial estoppel argument is entirely misplaced. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (noting that the rule is designed to prevent a party from prevailing in one phase of litigation and then relying on a contradictory argument in another phase).

### 3.    The Defendant Is Not Entitled to the Remaining Information He Seeks Under *Brady* or its Progeny

While the defendant's motion is primarily a discovery request, he also frames as it as a request for *Brady* materials. "*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." *Krauth*, 769 F.2d at 476 (citation and quotation marks omitted). "Under *Brady* and its progeny, prosecutors have a duty to disclose to the defense all material evidence favorable to the accused, including impeachment and exculpatory evidence." *United States v. Robinson*, 809 F.3d 991, 996 (8th Cir. 2016) (citations omitted). The Government has no duty under *Brady*, however, "to disclose evidence that is neutral, speculative, or inculpatory, or evidence that is available to the defense from other sources." *United States v. Pendleton*, 832 F.3d 934, 940 (8th Cir. 2016) (citation omitted). The defendant bears the burden of making a "preliminary showing that the requested information is exculpatory." *United States v. Roach*, 28 F.3d 729 (citing *Krauth*, 769 F.2d at 476).

Evidence is material for purposes of *Brady* "only if there is a reasonable probability that, had it been disclosed to the defense, the result of the proceeding would have been different"—that is, "a probability sufficient to undermine confidence in the outcome." *United States v. Conroy*, 424 F.3d 833, 837 (8th Cir. 2005). And while *Brady* and its progeny place an obligation upon a prosecutor "to disclose evidence known by police officers, even if not known by the prosecutor," *United States v. Tyndall*, 521 F.3d 877, 882 (8th Cir. 2008), that obligation only applies to officers "acting on the government's behalf *in the case*," *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)

(emphasis added); *see also United States v. Merlino*, 349 F.3d 144, 154 (3rd Cir. 2003) ("*Kyles* cannot 'be read as imposing a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue.'" (quoting *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996)); *United States v. Locascio*, 6 F.3d 924, 949–50 (2d Cir. 1993) (same).

Applying these principles here, the defendant's request for "all discovery related to, and underlying, an undated screen shot" reflecting that two other officers in Arkansas downloaded CSAM from the user of the defendant's IP address and "all law enforcement reports and related discovery prepared by" those officers' agencies should be denied. (Doc. 31 at 1). His request for this alleged *Brady* material is premised on a two-pronged argument, both parts of which fail. First, he asserts in conclusory fashion that the information he requests is exculpatory because he will find in it some unspecified material that he can use to impeach Special Agent Faulkner, pointing to Special Agent Faulkner's testimony at the detention hearing regarding the timeline of HSI's investigation and the fact that he did not mention the other officers.[4] (Doc. 31 at 8). As explained above, however, *see supra* p. 7 n.2, Special Agent Faulkner's testimony regarding HSI's initiation of this investigation is entirely consistent with his other sworn statements and the events of this case. Further, Special Agent Faulkner did not "materially omit[]" the activities of the other officers from his testimony, as the defendant unfairly suggests. (Doc. 31 at 5). Indeed, the defendant

---

[4] The defendant also claims that the information must be exculpatory because "there is no good reason" the United States would otherwise not produce it. (Doc. 31 at 8–9). This sort of circular reasoning turns the criminal discovery process on its head and could be used to justify unlimited discovery demands. It also falls well short of satisfying the defendant's requirement under *Brady* to make a preliminary showing, based on some evidence, that the information he seeks is exculpatory and in the Government's possession. And to be clear, as the United States has advised repeatedly, the material is not discoverable because it relates to investigators who are not involved with any part of this federal prosecution and who are not members of the prosecution team.

acknowledges that he does not even know what role these officers played in this investigation, *see Id.* at 1, and that is because they played none. Their activity is, by definition, not material to this case. For this reason alone, the defendant's motion should be denied.

The second part of the defendant's argument in support of his request for this alleged *Brady* material is that the United States must produce the requested information—which he incorrectly labels exculpatory—because the two other officers were acting on the United States' behalf in this case. (Doc. 31 at 9). This too is incorrect. Despite the defendant's repeated incantation, the two officers were not involved with the United States' federal investigation of the defendant and they did not provide the prosecution team with any materials. They certainly were not acting on behalf of the United States with respect to this case, as explained in more detail above, and the defendant's request for this alleged *Brady* material should therefore be denied.

## III.     CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny the defendant's Motion to Compel Discovery (Doc. 31).

<div style="margin-left: 40%;">

Respectfully submitted,

By:     **/s/ Dustin Roberts**
Dustin Roberts
Assistant United States Attorney
Arkansas Bar No. 2005185
414 Parker Avenue
Fort Smith, AR 72901
Office: 479-249-9034

**/s/ Carly Marshall**
Carly Marshall
Assistant United States Attorney
Arkansas Bar No. 2012173
414 Parker Avenue
Fort Smith, AR 72901
Office: 479-249-9034

</div>

AND

**/s/ *William G. Clayman***
William G. Clayman
D.C. Bar No. 1552464
Trial Attorney
Child Exploitation and Obscenity Section
U.S. Department of Justice
1301 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-514-5780
Email: william.clayman@usdoj.gov

## CERTIFICATE OF SERVICE

I, Dustin Roberts, Assistant United States Attorney for the Western District of Arkansas, hereby certify that on August 9, 2021, a true and correct copy of the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

Justin Gelfand, Travis Story, Gregory Payne, Attorneys for the Defendant

*/s/ Dustin Roberts*
Assistant United States Attorney

15