**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**UNITED STATES OF AMERICA**                                                                 **PLAINTIFF**

**V.**                                  **CASE NO. 5:21-CR-50014**

**JOSHUA JAMES DUGGAR**                                                                   **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Now before the Court are Defendant Joshua James Duggar's Motion to Compel (Doc. 31) and the Government's Response (Doc. 32). On August 13, 2021, the Court held a telephonic hearing on the Motion and took the matter under advisement. Having now considered the parties' briefing and the oral argument of counsel, the Motion is **GRANTED IN PART AND DENIED IN PART** for the reasons explained below.

**I.  BACKGROUND**

Mr. Duggar's Motion to Compel concerns a one-page "screen shot" that the Government produced on June 2, 2021. The screen shot was not provided to the Court, but the Court understands it was downloaded from a national law enforcement database called "ICACCOPS." The Court further understands that "ICAC" is an acronym standing for "Internet Crimes Against Children," a task force program created by the Department of Justice that "help[s] state and local law enforcement agencies develop an effective response to cyber enticement and child sexual abuse material cases." *See HSI Combats Child Exploitation at Home and Abroad*, https://www.ice.gov/features/child-exploitation (last accessed Aug. 15, 2021). The Department of Homeland Security ("HSI") participates on all sixty-one ICAC task forces across the United States. *Id.* "ICACCOPS" is an acronym for ICAC's "Child On-line Protection System," which, according to the

1

Government's attorney, can be accessed by all law enforcement agencies that are ICAC affiliates.

In substance, the screen shot indicates that three law enforcement officers—each one, it seems, employed by a different police department in Arkansas—downloaded child sexual abuse material from the same IP address at around the same time on the same date, May 14, 2019.  The Government produced to Mr. Duggar certain documents and information related to one of the three officers, Detective Amber Kalmer, who is employed by the Little Rock Police Department.  It appears Detective Kalmer "determined that the target IP" who was sharing child sexual abuse material over the BitTorrent peer-to-peer file-sharing network "geolocated to Northwest Arkansas."  (Doc. 32, p. 3).  Detective Kalmer "then contacted HSI Special Agent Faulkner, who investigates federal child pornography offenses in Northwest Arkansas, to inquire if he would further investigate the user of the target IP."  *Id.*  That contact eventually led to Mr. Duggar's arrest and this federal prosecution.

Mr. Duggar now requests that the Government produce the following documents related to the screen shot:

(1)   the information appearing under the "Summary" and "Investigative Activity" tabs that are visible in the screen shot;

(2)   the screen shot in "native format";

(3)   the date the screen shot was captured and the name of the individual who captured the screen shot;

(4)   all law enforcement reports in the possession of Detective Kalmer/the Little Rock Police Department in connection with this investigation; and

(5) all law enforcement reports and logs in the possession of the other two state law enforcement officers who downloaded the same child sexual abuse material as did Detective Kalmer on May 14, 2019.

## II. LEGAL STANDARDS

Federal Rule of Criminal Procedure 16(a)(1)(E) provides:

Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial;

or

(iii) the item was obtained from or belongs to the defendant.

Information is considered "material" if it is "helpful to the defense." *United States v. Vue*, 13 F.3d 1206, 1208 (8th Cir. 1994). In the absence of more detailed guidance from the Eighth Circuit on what the term "material" means, this Court agrees with the reasoning of the District Court of the District of Columbia that "the government cannot take a narrow reading of the term 'material' in making its decisions on what to disclose under Rule 16. Nor may it put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation." *United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005).

The materiality hurdle is not intended to be a high one. In fact, even inculpatory evidence, once disclosed by the government, "is just as likely to assist in 'the preparation of the defendant's defense' as exculpatory evidence." *United States v. Marshall*, 132 F.3d

63, 67 (D.C. Cir. 1998). By the same token, the defendant's burden of proof as to materiality must meet some minimal standard. "A showing of materiality . . . , is not satisfied by a mere conclusory allegation that the requested information is material to the preparation of the defense." *United States v. Krauth*, 769 F.2d 473, 476 (8th Cir. 1985) (internal quotation and citation omitted). Instead, the defendant "must demonstrate that the requested evidence bears some abstract logical relationship to the issues in the case." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotation and citations omitted).

In addition, the Court encourages the Government's early disclosure of *Brady* and *Giglio* material. *See* Amended Pretrial Scheduling Order, Doc. 29, p. 3. *Brady* material is evidence that might tend to exculpate a defendant, mitigate punishment, or impeach testimony that may be determinative of a defendant's guilt or innocence. *Brady v. Maryland*, 373 U.S. 83 (1963). *Giglio* material is evidence of plea agreements or other promises made by the Government to a witness. *Giglio v. United States*, 405 U.S. 150 (1972).

### III.  DISCUSSION

#### A.  Screen Shot Tabs

Mr. Duggar's first request is for information that appears under the "Summary" and "Investigative Activity" tabs that are visible in the screen shot. During the motion hearing, the Government's attorney explained that the screen shot was simply a download history of ICACCOPS from a particular date. He stated that the "Summary" tab contains "information that tells law enforcement . . . that [ICAC is] open, the network info such as BitTorrent, when it was last observed to be involved in law enforcement activity . . . and if

any law enforcement has flagged files of interest." The "files of interest" in the tab have "a 90- or 120-day lookback period," so the Government's counsel speculated that the content in the tab "is likely zero at this point." With regard to the "Investigative Activity" tab, the Government's counsel stated that it contains "a log of anybody within the ICACCOPS system . . . . [and] . . . will not reference these two other officers [named in the screen shot] . . . unless they went in and did more investigative activity."

At the close of the motion hearing, the Court directed the Government's counsel to personally review all the information in the "Summary" and "Investigative Activity" tabs in the screen shot. On August 16, 2021, counsel sent an email to the Court and opposing counsel verifying that each tab "does not contain discoverable material pursuant to Rule 16, *Brady v Maryland*, nor *Giglio v United States*."

The Court finds that Mr. Duggar has failed to make a *prima facie* showing that he is entitled to the information contained in the two tabs appearing in the screen shot pursuant to Rule 16, *Brady*, or *Giglio*. Moreover, the Government's affirmative representation regarding the content in these tabs has satisfied the Court that the information is not material and not discoverable under Rule 16(a). The request for this information is therefore **DENIED**.

### B. Screen Shot Format and Other Details

Mr. Duggar next requests the production of the screen shot in "native format" and the disclosure of the date and time of capture and the name of the individual who captured it. The Government's response to the Motion does not address any of these requests. However, the Court is uncertain what Mr. Duggar means by the term "native format." He complains that the Government has only produced "a picture of evidence" but not "the

evidence itself," (Doc. 31, p. 2); but he does not disclose the original format in which the screen shot was produced, nor does he suggest the particular format he prefers. Accordingly, the request for production in "native format" is too vague to be understood and is **DENIED WITHOUT PREJUDICE**. The request for the date, time, and name of the person who captured the screen shot is **GRANTED**.

### C. Law Enforcement Reports of Detective Kalmer/Little Rock Police

Next, Mr. Duggar requests all Little Rock Police Department records or reports that relate to the instant investigation and that have not yet been produced to the defense. Mr. Duggar's counsel withdrew this request during the motion hearing, stating: "Based on the government's representation that there are not records, we accept the fact that there's nothing for the Court to compel in that capacity." This request is therefore **MOOT**.

### D. Law Enforcement Reports of the Other Two Law Enforcement Officers

According to Mr. Duggar, the screen shot the Government produced indicates that Detective Brandon King, who works for the Jonesboro Police Department, and Officer David Warren, who works for the Ozark Police Department, were conducting online investigations into the dissemination of child sexual abuse materials at approximately the same time that Detective Kalmer was performing her own online investigation. During the motion hearing, the Government stated that all three police officers downloaded the same child sexual abuse files from the same IP address within minutes of one another— but in the course of pursuing unrelated investigations—and that only Detective Kalmer, and not the other two officers, made contact with HSI Special Agent Faulkner to pursue a federal investigation of these downloads. The Government's attorney also stated in open Court that he directed HSI to contact the Jonesboro and Ozark Police Departments

to inquire whether there were any written reports concerning these downloads, and the HSI officer confirmed that no reports were generated by either department. Even so, Mr. Duggar requests that the Court compel the Government to obtain specific information from Jonesboro and Ozark regarding these downloads.

The Government admits that the undercover law-enforcement downloads that are associated with this case utilized a software program called Torrential Downpour. This program was configured to search the BitTorrent network for IP addresses sharing child sexual abuse materials. Mr. Duggar believes that Torrential Downpour automatically generates metadata logs, which are then transmitted in some way—via email or otherwise—to the police officer who is downloading the child sexual abuse materials from BitTorrent at the time. In the defense's view, these auto-generated logs are material because they can be used to determine "the type of hardware a file was allegedly downloaded from (i.e., an Apple computer, a PC computer, a smartphone, etc.)." (Doc. 31, p. 6). Detective Kalmer's log was already produced to the defense. During the hearing, defense counsel explained that the logs of the other two officers were also material, since the "metadata may differ based on which version of Torrential Downpour each agency used," and the auto-generated logs could show "whether those downloads were successful, whether there's a pathway that's reflected in there, how long it took, whether there was a disconnect and then a reconnect, and whether [the other two officers] were able to actually download the file in the first place."

The Government maintains that it does not possess the auto-generated logs sent to the officers in Jonesboro and Ozark and is not certain that such logs still exist. Moreover, the Government contends that it should not be required to attempt to obtain

the logs because they were generated in the course of completely unrelated investigations and are not material to the defense. The Court appreciates the fact that the Little Rock, Jonesboro, and Ozark police officers were not conducting a coordinated online investigation and coincidentally downloaded the same files from the same IP address at approximately the same time. Nevertheless, the defense has persuaded the Court that the auto-generated logs emailed to the three officers could disclose information to the defense that may be either be exculpatory or inculpatory.

Rule 16 entitles a defendant to certain records "within the government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E). Additionally, pursuant to the Government's *Brady* obligations as explained in *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." This means that the Government must independently seek out and discover evidence that is in the state's possession when it is "favorable evidence rising to a material level of importance." *See Villasana v. Wilhoit*, 268 F.3d 976, 979 (8th Cir. 2004) (quoting *Kyles*, 514 U.S. at 438). Based on the statements of the Government's counsel at the motion hearing, the Court concludes that the Jonesboro and Ozark Police Departments are more than likely ICAC affiliates, and as such, the HSI agents who work directly with the prosecution team in the case at bar have the ability to obtain the auto-generated logs that Mr. Duggar seeks—if they exist—from these ICAC affiliates. The Court therefore directs the Government to accomplish this task and obtain the logs to produce to the defense. If the logs do not exist, then the Government should inform the Defendant of this fact. The

Motion is **GRANTED** as to this particular request.[1]

## IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion to Compel (Doc. 31) is **GRANTED IN PART AND DENIED IN PART** as stated.

**IT IS SO ORDERED** on this 19th day of August, 2021.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[1] The Government's counsel expressed concern during the hearing that if the Court permitted Mr. Duggar to obtain the auto-generated Torrential Downpour logs from the other law enforcement agencies, the defense's next move might be to file a motion to compel disclosure of the source code, manuals, and software for Torrential Downpour. The Government's concern is premature, as no motion to compel is before the Court. Further, the Court emphasizes that its ruling today is limited to the materiality of the auto-generated Torrential Downpour logs.  Mr. Duggar has met his burden to show that these logs are material beyond "mere speculation or conjecture," *United States v. Hoeffner*, 950 F.3d 1037, 1043 (8th Cir. 2020).

9