IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:21-CR-50014-001 |
| | ) | |
| JOSHUA JAMES DUGGAR, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO SUPPRESS STATEMENTS
AND REQUEST FOR AN EVIDENTIARY HEARING**

Defendant Joshua James Duggar ("Duggar"), by and through undersigned counsel, respectfully moves this Court to suppress statements allegedly made by Duggar after he asserted his right to counsel and after federal agents physically stopped him from communicating with his attorney. Specifically, pursuant to Federal Rule of Criminal Procedure 12(b)(3) and the Fifth Amendment to the United States Constitution, Duggar respectfully moves this Court for an Order suppressing all statements allegedly made by him to law enforcement agents as well as any evidence gathered as a result of those statements pursuant to the "fruit of the poisonous tree" doctrine. *See, e.g., Murray v. United States*, 487 U.S. 533, 536-37 (1988) (stating that the fruit of the poisonous tree doctrine "bars evidence which, though not obtained in [an] illegal search, was derived from information or items in the search"). Duggar also respectfully requests an evidentiary hearing.

**I.      Relevant Background**

Duggar is charged in a two-count indictment alleging one count of receipt of child pornography and one count of possession of child pornography. (Doc. 1). Duggar has pleaded not guilty to both counts.

On November 8, 2019, federal agents entered the business premises located at 14969 Wildcat Creek Road in Springdale, Arkansas. Based on discovery disclosed by the Government, DHS HSI agents allegedly approached Duggar, identified themselves as law enforcement officers and stated they were executing a federal search warrant. One HSI report states that Duggar "retrieved an Apple iPhone from his pocket and stated he would like to contact his attorney." The report continues, "[a]t this time, SA Aycock and SA Faulkner seized the Apple iPhone from Duggar and SA Faulkner explained that pursuant to the search warrant, the device was being seized and he would have an opportunity to contact his attorney at a later time." (*Id*.). And DHS HSI Special Agent Gerald Faulkner's under-oath testimony at the detention hearing provides critical context:

> **Q:** When you arrived, you testified that Mr. Duggar took his iPhone out of his pocket and expressly told you and Special Agent Aycock he was calling his lawyer, correct?
>
> **A:** He said he wanted to call his lawyer, correct.
>
> **Q:** And he made very clear to you that his intention of taking out his physical iPhone device was to make contact with his attorney, correct?
>
> **A:** Yes, sir.
>
> **Q:** Okay. At that time, before he could make contact with his attorney, you physically took the phone out of his hand before he could contact his attorney, correct?
>
> **A:** That is correct. Yes, sir.

(Det. Hearing Tr. at 70-71).

After Duggar expressly "said he wanted to call his lawyer," physically took his phone out of his pocket specifically "to make contact with his attorney," and law enforcement "physically took the phone out of his hand before he could contact his attorney," (*see id*.), law enforcement thereafter on the same day "approached Mr. Duggar and asked if he would be willing to discuss

2

the details, the further details, surrounding the issuance of the federal search warrant." (*Id*. at 27). Special Agents then proceeded to question Duggar inside a government vehicle where he and two federal agents were present. (*Id*.).

After asking Duggar certain questions, but before asking him others, the agents allegedly provided Duggar with a "Statement of Rights" form which the agents initially filled out to reflect that Duggar "was taken into custody at 1540 (time) on 11/8/2019 (date)." (*See* Exhibit 1). That statement appears crossed out on the form. (*Id*.).

The agents then conducted a lengthy interrogation of Duggar. No attorney was present at any point during Duggar's questioning when he allegedly made certain statements.

## II.   The Questioning of Duggar Was a Custodial Interrogation

The United States Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Courts have defined interrogation as an "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 US. 291, 300-01 (1980). The "term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id*. at 301. Whether an interrogation was custodial is not analyzed from law enforcement's perspective or even from a suspect's perspective; rather, it "must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances." *Yarborough v. Alvarado*, 541 U.S. 652, 662 (2004); *see also Dickerson v. United States*, 530 U.S. 428, 434 (2000) ("The due process test takes into

3

consideration the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation") (internal quotations omitted).

Here, the interaction involved law enforcement officers swarming the premises and physically taking an iPhone out of Duggar's hand under circumstances that would intimidate any person: Duggar communicated his intent to seek advice from his attorney and federal agents physically stopped him from exercising his constitutional right to do so. Then, after preventing Duggar from seeking legal advice and after physically taking his iPhone from his hand, law enforcement again approached him to interrogate him. According to Faulkner's testimony, agents refused to provide Duggar with a complete copy of the search warrant until *after* the search was completed—further suggesting that he was not free to leave and had to stay. And after agents approached Duggar a second time—completely ignoring his assertion of his right to counsel— agents physically escorted him to a government vehicle and, with the doors closed and two agents present, questioned him. These are circumstances under which a reasonable person would not have felt he was at liberty to leave. After all, Duggar's experience prior to being asked to sign the "Statement of Rights" form was that he expressly asserted a known constitutional right which was ignored by law enforcement who physically prevented him from talking to his attorney by forcefully taking away his phone. This conduct by law enforcement not only increased the level of tension but also the coercive nature of the environment.

While discovery provided to date and Faulkner's under-oath testimony at the detention hearing in this case are illuminating, an evidentiary hearing is needed to further develop the facts which Duggar anticipates may be in dispute and determinative of this motion.

### III. This Court Should Suppress Duggar's Statements

It is black letter law that if an individual "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease" and that if an individual "states that he wants an attorney, *the interrogation must cease until an attorney is present.*" *Miranda*, 384 U.S. at 473-74 (emphasis added). To that end, the Supreme Court has repeatedly "held that *a suspect who has invoked the right to counsel cannot be questioned regarding any offense unless an attorney is actually present.*" *Davis v. United States*, 512 U.S. 452, 458 (1994) (emphasis added).

The test for whether a statement constitutes an assertion of the right to counsel is straightforward: a person "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id*. at 459.

This bright line rule has a profoundly important purpose: it is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights." *Michigan v. Harvey*, 494 U.S. 344, 350 (1990). Thus, no questioning may continue "unless an attorney is actually present." *Davis*, 512 U.S. at 458. And the law is clear: law enforcement "may not initiate questioning of the accused in counsel's absence." *Minnick v. Mississippi*, 498 U.S. 146, 152 (1990). In other words, once a person expresses his desire to speak with counsel, law enforcement may not subsequently approach that person to question him unless legal counsel is physically present. *See id*.

In that vein, it bears emphasis that the issue is *not* whether a person then subsequently allegedly "waived" his rights following a *Miranda* warning—which Duggar did not knowingly, voluntarily, and intentionally do. Rather, the law is more clear-cut: "when counsel is requested,

5

interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." *Id*. at 153. Indeed, in *Minnick*, the Court expressly explained that even a "single consultation with an attorney does not remove the suspect from persistent attempts by officials to persuade him to waive his rights." *Id*.; *see also Edwards v. Arizona,* 451 U.S. 477 (1981). If questioning may not continue in counsel's absence even *after* a suspect has had the opportunity to consult with counsel, surely questioning may not continue in counsel's absence *before* a suspect has consulted with counsel because law enforcement physically prevented him from doing so.

The threshold inquiry for this Court then is whether Duggar asserted his right to counsel. At an evidentiary hearing before this Court, Duggar anticipates that the evidence will unambiguously establish that he did. Indeed, Faulkner has already testified under oath that Duggar "said he wanted to call his lawyer," and that "his intention of taking out his physical iPhone device was to make contact with his attorney." (Detention Hearing Tr. at 70-71). If expressly stating a desire to contact counsel and physically attempting to do so with a phone does not constitute a clear assertion of the right to speak with an attorney, it is difficult to imagine what would.

Thus, because Duggar clearly asserted his right to speak with his lawyer, Duggar never should have been questioned without counsel physically present—regardless of whether he allegedly *subsequently* signed a *Miranda* waiver form. Rather, once Duggar asserted his rights, law enforcement never should have "approached" him to question him in the first place as Faulkner admits they did. (*Id*. at 27). Questioning continued even though "an attorney" was *not* "actually present." *Davis*, 512 U.S. at 458. The Constitution demands that law enforcement "may not initiate questioning of the accused in counsel's absence." *Minnick*, 498 U.S. at 152. But that is precisely what the Government claims happened here.

6

What makes this particularly egregious is that law enforcement not only failed to respect Duggar's Constitutional rights when he expressly expressed his desire to speak with his attorney—they physically stopped him from doing so:

> **Q**: Okay. At that time, before he could make contact with his attorney, you physically took the phone out of his hand before he could contact his attorney, correct?
>
> **A**: That is correct. Yes, sir.

(Det. Hearing Tr. at 71). As such, this was a clear Constitutional violation for which suppression is the remedy.

Furthermore, Duggar never waived his Constitutional rights. "Waivers of constitutional rights not only must be voluntary, but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 US. 742, 748 (1970). Moreover, alleged waivers of fundamental constitutional rights such as the right to counsel and the privilege against self-incrimination will be upheld only after careful inquiry into the factual basis for the alleged waiver. *Miranda* established in no uncertain terms that "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda*, 384 US. at 475.

The question of whether Duggar waived his constitutional right—after asserting it and after being physically prevented by law enforcement from exercising his right—"is not one of form, but rather [the question is] whether [he] in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). The law requires this Court to "indulge in every reasonable presumption *against waiver*." *Brewer v. Williams*, 430 U.S. 387, 404 (1977) (emphasis added). Under the totality of these circumstances, there is simply no

evidence to suggest that Duggar knowingly, intelligently, and voluntarily waived his constitutional rights. In stark contrast, Duggar expressly asserted his constitutional right to consult with his attorney, attempted to exercise that right, and law enforcement stunningly reacted by physically preventing him from exercising that right.

### IV.     Conclusion

The bottom line is that federal law enforcement egregiously and inexcusably violated Duggar's constitutional rights. Based on the record already before this Court, suppression is necessary.

However, to resolve these important issues, Duggar respectfully requests that this Court conduct an evidentiary hearing to assess whether his statements to law enforcement were obtained in violation of his constitutional rights and whether those statements, as well as any evidence collected on the basis of those statements, must be suppressed.

Respectfully submitted,

**Margulis Gelfand, LLC**

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND, MO Bar No. 62265*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*
**Admitted Pro Hac Vice*


**Story Law Firm, PLLC**

*/s/ Travis W. Story*
Travis W. Story, AR Bar No. 2008278
Gregory F. Payne, AR Bar No. 2017008
3608 Steele Blvd., #105
Fayetteville, AR 72703
Telephone: (479) 448-3700
Facsimile: (479) 443-3701
travis@storylawfirm.com
greg@storylawfirm.com

9

**Certificate of Service**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

                                               */s/ Justin K. Gelfand*
JUSTIN K. GELFAND, MO Bar No. 62265*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*
*Admitted Pro Hac Vice*