**EXHIBIT**

**3**

exhibitsticker.com

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTIRCT OF ARKANSAS

FAYETTEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 5:21-CR-50014-001 |
| Plaintiff, | |
| vs. | AFFIDAVIT OF MICHELE BUSH |
| JOSHUA JAMES DUGGAR, | |
| Defendant. | |

I, MICHELE BUSH, hereby declare as follows:

I am a digital forensics expert at Loehrs Forensics, LLC, (formerly Loehrs & Associates, LLC) a firm specializing in digital forensics, located at 1505 North Central Avenue, Suite 111, Phoenix, Arizona 85004.  I am competent to testify and the matters contained herein are based on my own personal knowledge.

I hold a Bachelor of Science in Psychology from the University of Arizona and Associate Degrees in Arts and Science from Pima Community College. I have completed extensive forensics training including courses with Guidance Software, Cellebrite, Access Data, and the Information Assurance Certification Review Board. To qualify for forensic training and certifications I was subjected to numerous background checks, assessments, written tests, and practical exams simulating real investigations. As a result of my collective training and testing, I hold vendor-neutral certifications including Certified Computer Examiner (CCE) and Certified Computer Forensics Examiner (CCFE), as well as vendor-specific certifications including Certified Mobile Forensics Examiner (CMFE), Certified Cellebrite Operator (CCO), Certified Cellebrite Physical Analyst (CCPA), EnCase Certified Examiner (EnCE), and Access Data Certified Examiner (ACE). In addition, I hold a Private Investigator license in the State of Arizona.

I am a member of the International Society of Computer Forensic Examiners (ISCFE), the Scientific Working Group on Digital Evidence (SWGDE), and the Forensic Expert Witness Association (FEWA). ISCFE is an internationally recognized private organization that conducts research and development into emerging technologies and methods in the science of computer forensics. Members are only admitted upon passing the uncompromised Certified Computer Examiner certification process for the competency and ethical standards for forensic computer examiners. SWGDE is a non-profit organization consisting of a maximum of 100 members from law enforcement, academic, and commercial organizations actively engaged in the field of digital forensics to develop cross-

AFFIDAVIT OF MICHELE BUSH - 1

disciplinary guidelines and standards for the recovery, preservation, and examination of digital evidence. Members are only admitted in a majority vote by the committee. Lastly, FEWA is a non-profit professional membership organization that verifies its members have testified as an expert witness in at least three cases.

I have conducted hundreds of forensics exams on thousands of electronic evidence items of varying types and testified 18 times in state and federal court throughout the country. A copy of my Curriculum Vitae is attached as Exhibit A.

I was retained by Justin Gelfand, counsel for Defendant Joshua Duggar, for the purpose of assisting with matters related to the analysis of electronic evidence in this matter. I have specifically been asked to opine on the accuracy of the technical statements included in the affidavits for search warrant, and reliability of the techniques and software used in the investigation. This affidavit is not a representation of my findings or opinions on the electronic evidence seized as a result of the investigation.

The statements contained in this affidavit are based on, in part: information provided by counsel for Defendant; discovery including, but not limited to, Special Agent Howard Aycock's Application and Affidavit in Support for Search Warrant for 14993 Wildcat Creek Road dated October 29, 2019 (1920-1940), Special Agent Gerald Faulkner's Application and Affidavit in Support for Search Warrant for 14969 Wildcat Creek Road dated November 4, 2019 (001-025), Homeland Security Investigations ASAC Fayetteville NWA ICAC Task Force Report (2245-2261), Computer Forensic Reports dated November 30, 2020 prepared by Examiner Bradley Gordon (2241-2244), Computer Forensic Reports dated February 22, 2021 prepared by Examiner Bradley Gordon (2262-2263), Government's Forensics Examination Reports (007-026), Torrential Downpour version 1.44 log files, and the Indictment; and my experience, training and background as a certified forensics examiner.

According to Special Agent Faulkner's Affidavit in Support of Application for Search Warrant, law enforcement first became aware of Defendant in May 2019 during an HSI Internet Crimes Against Children (ICAC) investigation of IP addresses advertising files of suspected child pornography on the BitTorrent file sharing network. To understand the complexities of these undercover investigations and the potential issues involving law enforcement's software that was used to identify Defendant in this matter, it is imperative to understand an "IP address", the "BitTorrent network", a "torrent", an "info hash", a "hash value", and an actual image or video that depicts child pornography.

An Internet Protocol (IP) address is a numerical label that represents an internet access point (e.g. router) and used by computing devices (e.g. computers and cell phones) to connect to the Internet. IP addresses are tantamount

AFFIDAVIT OF MICHELE BUSH - 2

to the address of a physical building in that both represent a location and are used to send and receive correspondence. In the same manner a letter must contain a return address, any information requested by an electronic device from the Internet must report a return IP address so the data can be properly transmitted. An IP address can resolve back to internet access points at a single-family residence, multi-family complexes, commercial office space, government buildings, Virtual Private Networks, proxy servers, and public areas such as airports or coffee shops. These IP addresses are commonly assigned to internet capable devices through WiFi and all devices simultaneously connected to a single WiFi network will report the same IP address to access the Internet. However, devices can simultaneously use additional IP addresses through VPN services and proxy networks. For that reason, an IP address does not identify a specific user or device, and devices can be assigned more than one unique IP address.

The discovery of a suspect's IP address during an investigation simply allows the investigator to identify the Internet Service Provider (ISP). ISPs such as Cox Communications or Century Link own blocks of IP addresses usually consisting of millions of different combinations that are leased to their customers as needed to access the Internet. This is all done automatically by the ISP typically unbeknownst to a user. For example, if a user logs into a WiFi network on their iPhone to access social media, the ISP automatically assigns an IP address to the router to allow that Internet transaction to occur. Through legal process, that ISP can query their records for that IP address and date in attempt to identify the customer that was assigned that IP address on a specific date and time; however, this still only identifies the billing parties and service address of the customer. Therefore, the identification of the IP address subscriber represents some user, on some device, connected to an internet capable network within the vicinity of the service area. For example, an IP address identified in a criminal investigation that resolves back to a business or public area typically reaches an impasse because attributing the illicit activity to a specific person or device is highly unlikely.

The "BitTorrent network" is a protocol, or set of rules, that connects users to each other on the Internet allowing them to download files from computers all over the world. BitTorrent facilitates this peer-to-peer file sharing by transferring files in "pieces" significantly increasing download speeds. This allows, for example, a large high-definition movie to be downloaded in hundreds of small pieces from many different users simultaneously. As soon as a user begins downloading data using the BitTorrent network, that user is automatically added as a candidate to share that file with others. For instance, if User A wants to download the most recent version of the Mozilla Firefox browser but Mozilla's website is down, User A can connect to the BitTorrent network to download the software

AFFIDAVIT OF MICHELE BUSH - 3

installer from User B who already has it. Once User A begins downloading that software installer, User C who is also looking for that file can now obtain it, in whole or in part, from User A and User B. The more users that share data, the more successful the network becomes. For that reason, the BitTorrent protocol follows a "tit for tat" exchange encouraging users to reshare any data that they download and penalizing users that do not by severely limiting their ability to download data.

A "torrent" is a text file proprietary to the BitTorrent network that contains instructions for BitTorrent software, such as uTorrent, on how to locate the requested files from computers connected to the BitTorrent network. Torrent files do not contain the data that the user is requesting to download, such as images or videos, but is simply textual information about the file(s) requested. Torrents can define one file, such as a single movie, or it can define many files, such as an entire music album. For example, if a user wishes to download a music album, they can select a single torrent that defines all 12 songs in the album. The BitTorrent software will then read the instructions to locate all 12 music files from computers connected to the BitTorrent network all over the world and begin autonomously downloading the data from those other users.

An "info hash" is the product of a mathematical algorithm that uniquely identifies the torrent on the BitTorrent network. Because file names can be changed and different torrents can define the same files, the BitTorrent network relies on these info hash values to uniquely identify data available on the BitTorrent network. Likewise, law enforcement relies on info hash values to identify and track which torrents are associated with files of suspected child pornography.

A "hash value" is the product of a mathematical algorithm designed to uniquely identify the files defined by the torrent. Changes in a single bit of data in a file will produce a new hash value. There are different algorithms that produce different levels of unique values including legacy algorithm Secure Hash Algorithm version 1 (SHA-1), which was developed in 1993, and advanced algorithm SHA-2, which was adopted in 2002 as a replacement for SHA-1. In 2012, the National Institute of Standards and Technology (NIST) deprecated use of SHA-1 due to its susceptibility to hash collision. That is, when two different datasets or files produce the same hash. Therefore, relying on SHA-1 hash values to identify a file is no longer reliable because it is computationally possible for two unique files to have the same SHA-1 hash value.

In this case, Special Agent Faulkner reports that on an unknown date in October 2019, they reviewed "two files successfully downloaded by the HSI ICAC affiliate computer from IP address 167.224.196.113". In layman's terms,

AFFIDAVIT OF MICHELE BUSH - 4

this means law enforcement's "affiliate computer" was connected to the BitTorrent network and requested to download torrents which were previously identified as defining suspected child pornography. As a result, the affiliate computer software was automatically directed by the BitTorrent network to download the files, in whole or in part, from a computer at an IP address that was traced back to Defendant. During this investigation, log files detailing the network activity between law enforcement's affiliate computer software and Defendant's IP address were generated. These logs identify the software installed on the affiliate computer and utilized by law enforcement as Torrential Downpour which is part of a law enforcement system known as Internet Crimes Against Children Child Online Protection System ("ICAC COPS"). Throughout my work on these cases, I have learned that ICAC COPS and Torrential Downpour were created by Robert Erdely, a Detective with the Indiana County Pennsylvania Detective Bureau, in conjunction with the University of Massachusetts. The ICAC COPS system maintains a database of info hash values for torrents previously identified by law enforcement as defining "files of interest". This database is used to instruct Torrential Downpour to continuously scan the BitTorrent network for users associated with "files of interest" as an investigative lead.

The Torrential Downpour software is used exclusively by law enforcement and is not available to the public. It is my understanding this software was developed based on the open-source publicly available versions of BitTorrent software to locate and download torrents but has been altered to work differently than publicly available BitTorrent software in at least four ways: 1) it identifies suspects based on a predefined database of torrents previously identified by law enforcement as being of investigative interest, 2) it restricts downloads to a solitary candidate or IP address, known as a "single-source download", 3) it does not share files to prevent further distribution, and 4) it automatically generates detailed logs of network activity between the software and the suspect. I do not have personal knowledge of any other modifications that have been made to the software or how these known modifications may affect the overall functionality of the software.

Based on my experience working on many cases that derived from Torrential Downpour investigations, I also know that there are many different versions from 1.00 in 2012 to version 1.46 in 2019. As such, there are presumably at least 46 different versions of this software; however, no information has been disclosed detailing the modifications made between versions. Software development requires constant updates due to rapid advances in technology including, but not limited to, the introduction of new operating systems, software, hardware, and networks. These updates are commonly documented in what is known as a "changelog" which contain a curated, chronologically

AFFIDAVIT OF MICHELE BUSH - 5

ordered list of notable changes for each version released for a software application. Reviewing these change logs help the end user understand the limitations and vulnerabilities of each software version; however, the information provided is limited. To date, no change logs have been produced by the developers of Torrential Downpour detailing the notable differences between versions.

In other cases across the county, concerns have been raised regarding the accuracy and reliability of information reported by Torrential Downpour and, as a result, I have had the opportunity to conduct limited testing on two versions of Torrential Downpour, 1.33 and 1.40, under restrictions imposed by the United States District Court in the District of Arizona in *United States v. Anthony Gonzales,* 2:17-cr-01311-DGC, and *United States v. Douglas Jones,* 3:18-CR-08040-SMB. In those cases, the court granted, in part, Defendant's Motions to Compel, allowing Loehrs Forensics to run numerous tests including two of interest in this case.

The first test of interest, referred to as the Deleted Torrent Data test, simulates a scenario in which the Suspect Computer contains only deleted torrent data. Meaning, the user is not possessing or distributing the payload of the torrent and should not be identified as a suspect. The testing of Torrential Downpour version 1.33 revealed the software was still able to successfully connect to the Suspect Computer and identify the suspect as being in possession of a torrent even after it was deleted. However, in testing Torrential Downpour version 1.40, the software was not able to successfully connect to a suspect with deleted torrent data. It is possible this bug was addressed and fixed between Torrential Downpour versions 1.33 and 1.40.

The second test of interest, referred to as the Unshared Torrent Data test, simulates a scenario in which the Suspect Computer contains non-deleted torrents but all of the associated data has been moved to unshared locations. Meaning, the user is not publicly advertising their data and should not be identified as a suspect. The testing of both Torrential Downpour version 1.33 and version 1.40 revealed the software was still able to successfully connect to the Suspect Computer and identify the suspect as being in possession of a torrent even after it was privatized.

According to the logs generated during law enforcement's investigation in this case, Torrential Downpour version 1.44 was used to attempt to download two unique torrents of investigative interest from a device utilizing Windows-based BitTorrent software "uTorrent" while connected to the WiFi at Defendant's work. An analysis of this data revealed the first connection began on May 14, 2019, at 05:41:48PM when Torrential Downpour initiated the download of torrent with info hash 9c373e134d8fb4ef050eeae3d5e7e5e76345e416, hereinafter "Torrent 9c37", which defines one video titled "mov_0216.mp4". Approximately 60 seconds later at 05:42:49PM, Torrential

AFFIDAVIT OF MICHELE BUSH - 6

1  Downpour reported successfully downloading the complete video (i.e. 387 of 387 pieces) defined by Torrent 93c7

2  from Defendant's work IP address.

3      The second connection began on May 15, 2019, at 06:00:44PM when Torrential Downpour initiated the

4  download of torrent with info hash 3255b2a43d7cf672389eedb02630eddc1d99c968, hereinafter "Torrent 3255",

5  which defines one archive file titled "marissa.zip". For approximately 39 minutes between 06:00:44PM and

6  06:39:12PM, Torrential Downpour attempted to connect to Defendant's work IP address eight times but continued

7  to report a failure to establish a connection. Between 06:45:12PM and 06:45:16PM, Torrential Downpour reported

8  the ninth attempted connection was successful, that the "remote client acknowledges it has 13 of 66 pieces", and

9  subsequently downloaded those 13 pieces within four seconds. For another 17 hours between 06:46:59PM and May

10  16, 2019, at 11:35:13AM, Torrential Downpour continued to attempt to connect to Defendant's work IP address 160

11  additional times to download Torrent 3255 but reported "Remote client indicated that it has no complete files" and

12  ceased communication. Based on my testing of previous versions of Torrential Downpour, the message that the

13  remote client had no complete files indicates that Torrential Downpour's inability to successfully download the

14  *marissa.zip* file is because the suspect does not have the file, not due to a network or system failure.

15      Furthermore, to understand the data available to law enforcement at the time of their investigation it is important

16  to identify specifically which of the 13 pieces were downloaded of the 66 total pieces making up the complete file.

17  The *marissa.zip* file is divided into 66 equal pieces identified as Piece 0 through 65, each allocating 262 megabytes

18  (i.e. 262144 kilobytes) of data. According to the Torrential Downpour logs for Torrent 3255, Piece 0, which

19  encompasses the first 262 megabytes of the file, was not included in the 13 pieces downloaded from Defendant's

20  work IP address. This is significant because Piece 0 will contain the file header of the *Marissa.zip* file. The file header

21  is encoding in the first several bytes which designates the file type (e.g. JPG, MOV, or ZIP) rendering the data set

22  into a working copy that can be opened and accessed by a user. Without the file header, any system or software will

23  render the file "corrupted" and will be inaccessible to a user. This evidence strongly suggests that the 13 pieces

24  downloaded by Torrential Downpour and allegedly possessed by the remote client were in such an incomplete state

25  that no user, including law enforcement, would have been able to successfully open or view any of the 65 images

26  contained within the archive file.

27      In summary, Torrential Downpour downloaded one innocuously titled video file from Defendant's work IP

28  address on May 15, 2019, within 60 seconds from 05:41PM to 05:42PM. For over 17 hours Torrential Downpour

AFFIDAVIT OF MICHELE BUSH - 7

1   continued to try to communicate with Defendant's work IP address and download an additional archive file titled

2   "Marissa.zip" but was unsuccessful. These logs contradict Special Agent Faulkner's statements that these two files

3   were "successfully obtained from IP address 167.224.196.113" because not only was Torrential Downpour unable

4   to successfully download the *Marissa.zip* file, but Torrential Downpour reported the suspect device did not possess

5   the file.

6       In my experience working on these cases, it is routine for law enforcement to establish multiple connections

7   with the suspect IP address for numerous files of investigative interest. This reduces the possibility that Torrential

8   Downpour erroneously identify the suspect, and it establishes a pattern of illicit activity to support that the suspect

9   routinely uses that Internet account and is likely conducting this activity knowingly. However, Torrential Downpour

10   was only able to successfully connect to Defendant's work IP address to download one innocuously titled video

11   within a 60-second connection. No additional log files detailing any other successful connections have been produced

12   by the Government despite ICAC COPS and Torrential Downpour continuously monitoring users on the BitTorrent

13   network. This strongly suggests the activity of investigative interest occurred one isolated event.

14       To understand how and why offending activity could occur inadvertently on the BitTorrent network, it is

15   imperative to understand how file sharing software operates. For a user to locate files available on the BitTorrent

16   network, they must browse popular torrents or search for keywords describing the material of interest, like a Google

17   search, on torrent database sites. This browse or search will populate a list of responsive files from computers around

18   the world. Because this data is not being maintained on a centralized server but is scattered around the world, the

19   files advertised cannot be regulated or controlled. As such, files populated from a search often contain copyright or

20   illegal material in the United States. For instance, a search for "porn" could result in the commercially produced adult

21   pornography or child pornography. Therefore, it is possible that while in pursuit for adult pornography the user was

22   presented a list of files including an inconspicuous file title "mov_0216.mp4" which contains suspected child

23   pornography, that file was selected, and law enforcement's software immediately identified the activity. This system

24   of identifying suspects on file sharing networks leaves no buffer for users who inadvertently download material and

25   is therefore not always representative of child pornography offenders.

26       For all the reasons stated above, and under general scientific principles, it is my opinion that the evidence

27   generated during law enforcement's investigation is inconsistent with the technical statement included in the

28   affidavits for search warrant that two torrents were successfully downloaded from Defendant's work IP address

AFFIDAVIT OF MICHELE BUSH - 8

1  which allegedly included 65 images and one video. Rather, the probable cause evidence suggests that the Windows-

2  based software application "uTorrent" was used to download one video from the BitTorrent network while connected

3  to the Internet at the business located at 14969 Wildcat Creek Road on May 14, 2019, between 05:41PM to 05:42PM.

4  Furthermore, I know based on my own testing of other versions of Torrential Downpour software that the logs relied

5  upon by the Government can contain superficial information about what a suspect device possesses or is making

6  publicly available and, therefore, a single log file is not necessarily an accurate representation of illicit activity.

7       I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

8

9       DATED August 12, 2021.

10

11                                              MICHELE BUSH

12

13       SUBSCRIBED AND SWORN to before me this 12 day of August 2021.

14

15

16                                             NOTARY PUBLIC

17

18

19  
MADISON PATRICE THOMAS
Notary Public, State of Arizona
Maricopa County
Commission # 607372
My Commission Expires
April 06, 2025

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF MICHELE BUSH - 9

# EXHIBIT A

5:21-CR-50014-001

AFFIDAVIT OF MICHELE BUSH

*Curriculum Vitae of Michele Bush*

*Curriculum Vitae*

# MICHELE**BUSH**



1505 North Central Avenue, Suite 111 | Phoenix, Arizona 85004
Ofc: 602 313 0976 | Email: MB@LoehrsForensics.com

| | |
|---|---|
| EDUCATION | Pima Community College |
| |     Associates of Arts Liberal Arts |
| |     Associates of Science |
| |     Arizona General Education Curriculum Liberal Arts and Science |
| | |
| | University of Arizona |
| |     Bachelor of Science in Psychology, emphasis on Criminal Justice |

CERTIFICATIONS AND LICENSES

2011 | Licensed Private Investigator, AZ Department of Public Safety, License No. 1616944
2013 | AccessData Certified Examiner (ACE), Access Data (*Lapsed 2019*)
2013 | EnCase Certified Examiner (EnCE), OpenText, formerly known as Guidance Software
2016 | Certified Computer Examiner (CCE), International Society of Forensic Computer Examiners
2018 | Certified Computer Forensics Examiner (CCFE), Information Assurance Certification Review Board
2018 | Certified Mobile Forensics Examiner (CMFE), Information Assurance Certification Review Board
2020 | Certified Cellebrite Operator (CCO), Cellebrite
2020 | Certified Cellebrite Physical Analyst (CCPA), Cellebrite

SPECIALIZED TRAINING

Tips and Tricks from Guidance Technical Support
Forensic Tracking of USB Devices
Custom Analysis with EnCase 7
What's New In Windows Forensics
Preparing for Cyber Battle
Timeline Analysis with EnCase
iOS Forensics – A Comprehensive Approach
Mac OS X Lion Forensics Update
Revealing Windows 7 Artifacts
EnCE Last Minute Review v6
A Forensic Look at Windows 8 Immersive Applications: What's Behind the Tiles
Smart Device App Analysis
Forensic Implication of Windows 8 PC Refresh
Windows 8 File History Artifacts
Ares and LimeWire Pro Peer to Peer File Sharing Software Analysis
Mac OS X Delving a Little Deeper
Vehicle Systems Forensics
How to Catch an Insider Data Thief
Forensic Testimony in Court
Ubiquity Forensics – Your iCloud and You
Searching in EnCase 8 with EQL
Digital Evidence from Social Networking Sites & Smartphone Apps
Digital Forensic Child Exploitation Investigations
Smartphones: The Nexus of Evidentiary Data from Social Media to IoT
How Artificial Intelligence is Becoming a Crucial Tool for Next Generation Law Enforcement
Axcelerate in Action: Email Investigation Methods with Hillary Clinton's FOIA Release
Jurisdiction in Cyberspace: A Question of Conflict of Laws?
Damaged Device Forensics Complimentary
Memory Forensics - Hunting Malware
Autopsy Basics and Hands On

PROFESSIONAL EXPERIENCE

**Digital Forensics Examiner**

Loehrs Forensics, LLC. (Formerly Loehrs & Associates, Inc.)

Computer forensics services, particularly pertaining to legal evidence, including forensic acquisitions of digital artifacts including computers, cell phones, removable storage media, digital cameras, gaming consoles, etc.; data

*Curriculum Vitae*

# MICHELE**BUSH**

1505 North Central Avenue, Suite 111 | Phoenix, Arizona 85004
Ofc: 602 313 0976 | Email: MB@LoehrsForensics.com



collection and recovery from allocated and unallocated space; data analysis and conclusions regarding who, what, when, where and how data came to be on an artifact; and detailed reporting of conclusions and analysis.

PROFESSIONAL MEMBERSHIPS

*International Society of Forensic Computer Examiners (ISFCE)*
The ISFCE is an internationally recognized organization that has certified over 1700 individuals across 28 countries. Accessible to candidates worldwide, the CCE has become widely accepted as a prerequisite certification for forensic examiners, recognized by industry professionals and academic institutions alike. The CCE certification is widely considered to be the most prestigious non-vendor specific forensic certification available.

*National Association of Public Defense (NAPD)*
Organizational Membership
The National Association for Public Defense (NAPD) engages all public defense professionals into a clear and focused voice to address the systemic failure to provide the constitutional right to counsel, and to collaborate with diverse partners for solutions that bring meaningful access to justice for all. NAPD currently unites nearly 7,000 practitioner-members across the country into a cohesive, unwavering, irrepressible community capable of bringing justice to a broken system.

*Scientific Working Group on Digital Evidence*
Forensic Committee Member
Formed in 1998, the Scientific Working Group on Digital Evidence brings together organizations actively engaged in the field of digital and multimedia evidence to foster communication and cooperation as well as ensuring quality and consistency within the forensic community.

*Forensic Expert Witness Association*
Arizona Chapter Professional Member
The Forensic Expert Witness Association (FEWA) is the only non-profit professional membership organization that verifies that each of its professional members has testified at least three times as an expert witness. FEWA is dedicated to the professional development, ethics and promotion of forensic consultants in all fields of discipline. FEWA provides professional education for experts of all levels of experience and also for those aspiring to be experts who have not yet testified, which spans all technical specialties.

TESTIFYING EXPERIENCE

(22) Hearing: USDC, District of Kansas
Criminal
Attorney: Christopher Joseph | Joseph, Hollander & Craft LLC
Case No. 5:20-cr-40068-TC

(21) Hearing: Maricopa County Superior Court, Arizona
Civil
Attorney: James E. Vieh
Case No. CV2019-014651

(20) Hearing: USDC, District of Kansas
Criminal
Attorney: Christopher Joseph | Joseph, Hollander & Craft LLC
Case No. 5:19-cr-40066-HLT

(19) Hearing: USDC, Northern District of Texas
Criminal
Attorney: Scott Palmer | Scott H. Palmer, P.C.
Case No. 3:19-cr-00296-L

(18) Hearing: USDC, Western District of Tennessee
Criminal

*Curriculum Vitae*

# MICHELE**BUSH**

1505 North Central Avenue, Suite 111 | Phoenix, Arizona 85004
Ofc: 602 313 0976 | Email: MB@LoehrsForensics.com

Attorney: Taurus Bailey | The Walter Bailey Law Firm
Case No. 1:19-cr-10018-JDB

(17) Hearing: USDC, District of Arizona
Criminal
Attorney: Susan Anderson | Federal Public Defender
Case No. CR-18-08040

(16) Hearing: USDC, District of Arizona
Criminal
Attorney: Susan Anderson | Federal Public Defender
Case No. CR-18-08040

(15) Hearing: USDC, District of Arizona
Criminal
Attorney: Zach Storrs | Storrs Law Firm, PLLC
Case No. CR17-01311-001 PHX

(14) Hearing: North Central Judicial District Court of Ward County, North Dakota
Criminal
Attorney: Phil Becher
Case No. 51-2017-CR-01195

(13) Hearing: USDC, District of Arizona
Criminal
Attorney: Susan Anderson | Federal Public Defender
Case No. CR-18-08040

(12) Hearing: Lorain County Court of Common Pleas, Ohio
Criminal
Attorney: Brett Murner | Attorney at Law
Case No. 18CR098381

(11) Hearing: 19th Judicial District Court, East Baton Rouge
Criminal
Attorney: Kate Hatheway | East Baton Rouge Office of the Public Defender
Case No. 3:19-mj-04025-FLG

(10) Hearing: Circuit Court of Madison County, Illinois
Criminal
Attorney: Joe Flees | Frank, Juengel & Radefeld, Attorneys at Law P.C.
Case No. 2017-CF-000317

(9) Hearing: Circuit Court of St. Louis County, Missouri
Criminal
Attorney: Joe Flees | Frank, Juengel & Radefeld, Attorneys at Law P.C.
Case No. 17SL-CR00755

(8) Hearing: USDC, District of Kansas
Criminal
Attorney: Trevor Riddle | Monnat & Spurrier, Chartered
Case No. 6:17-cr-10088-EFM

*Curriculum Vitae*

# MICHELE**BUSH**

1505 North Central Avenue, Suite 111 | Phoenix, Arizona 85004
Ofc: 602 313 0976 | Email: MB@LoehrsForensics.com

**LOEHRS**
**f o r e n s i c s**

(7) Hearing: Los Angeles County Superior Court, California
Criminal
Attorney: David Evans | Attorney at Law
Case No. VA 128849

(6) Hearing:  USDC, Eastern District of Missouri
Criminal
Attorney: Joe Flees | Frank, Juengel & Radefeld, Attorneys at Law P.C.
Case No. 4:16CR374 JAR/PLC

(5) Hearing: USDC, District of Kansas
Criminal
Attorney: Chekasha Ramsey | Federal Public Defender
Case No. 15-20048-01-JAR-TJJ

(4) Trial: 20th Judicial Circuit Court, Florida
Criminal
Attorney: Ryan Downey | Public Defender
Case No. 15-CF-014152

(3) Deposition: 20th Judicial Circuit Court, Florida
Criminal
Attorney: Ryan Downey | Public Defender
Case No. 15-CF-014152

(2) Hearing: Lancaster County Court of Common Pleas, Pennsylvania
Criminal
Attorney: Adam Bompadre | Ciccarelli Law Office
Case No. CR-0000336-2015

(1) Hearing: Maricopa County Superior Court, Arizona
Criminal
Attorney: Scott Ewing | Attorney at Law
Case No. CR-2013003645

PRESENTATIONS

February, 2020: Speaker
DM Cantor
*Digital Forensics*
Phoenix, Arizona

May, 2019: Speaker
Mayes Telles Attorneys
*Digital Forensics*
Phoenix, Arizona

April, 2019: Speaker
Kansas City Federal Public Defender
*Digital Forensics*
Lawrence, Kansas

August, 2018: Speaker
Las Vegas Federal Public Defender
*Digital Forensics*

*Curriculum Vitae*

# MICHELE**BUSH**

1505 North Central Avenue, Suite 111 | Phoenix, Arizona 85004
Ofc: 602 313 0976 | Email: MB@LoehrsForensics.com

# LOEHRS
# f o r e n s i c s

Las Vegas, Nevada

April, 2017: Speaker
Canyon Del Oro High School
*Computer Forensics*
Tucson, Arizona

November, 2016: Speaker
Salpointe Catholic High School
*Digital Citizenship, Safety, Legal Responsibilities and Rights*
Tucson, Arizona

July, 2016: Speaker
National Association for Public Defense
*Are Law Enforcement's Online Investigations Violating the 4th Amendment?*
National Webinar

July, 2016: Speaker
National Association for Public Defense
*How to Know When Digital Evidence has been Manipulated or Fabricated*
National Webinar

May, 2016: Speaker
Association of Certified Fraud Examiners
*Computer Forensics & Fraud*
Albuquerque, New Mexico

March, 2016: Speaker
Salpointe Catholic High School
*Computer Forensics 101*
Tucson, Arizona

September, 2015: Speaker
Arizona Information Defenders
*Computer Forensics*
Tucson, Arizona

September, 2015: Speaker
Association of Certified Fraud Examiners
*Computer Forensics & Fraud*
Tucson, Arizona

May, 2015: Speaker
Amphitheater High School
*Computer Forensics 101*
Tucson, Arizona

March, 2014: Speaker
Office of the Public Defender
*Computer Forensics*
San Francisco, California