IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JOSHUA JAMES DUGGAR, )<br>)<br>Defendant. ) | Case No. 5:21-CR-50014-001 |

**DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR
VIOLATION OF THE APPOINTMENTS CLAUSE**

Defendant Joshua James Duggar ("Duggar"), by and through undersigned counsel, respectfully moves to dismiss this case based on a violation of the Appointments Clause of the United States Constitution. U.S. Const. art. II, § 2.

*Introduction*

This motion arises because this prosecution resulted from a criminal investigation conducted by the United States Department of Homeland Security ("DHS HSI") during which, at all times, the agents investigating Duggar were working under the authority of purported Acting Secretary Kevin McAleenan ("McAleenan") and purported Acting Secretary Chad Wolf ("Wolf"). *See* Det. Hearing Tr. at 80-81 ("**Q**: …this was an HSI case, a Department of Homeland Security case, correct? **A**: That is correct. Yes, sir. **Q**: Okay. And so at all times, you were working under the authority of the Department of Homeland Security and whoever was in charge, correct? **A**: That is correct. Yes, sir").

However, as the United States Government Accountability Office ("GAO")[1] correctly found in August 2020:

> Upon Secretary Kirstjen Nielson's resignation on April 10, 2019, the official who assumed the title of Acting Secretary had not been designated in the order of succession to serve upon the Secretary's resignation. Because the incorrect official assumed the title of Acting Secretary at that time, subsequent amendments to the order of succession made by that official were invalid and officials who assumed their positions under such amendments, including Chad Wolf and Kenneth Cuccinelli, were named by reference to an invalid order of succession.[2]

*See also Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 958 (D. Md. 2020) ("Yet when Nielsen vacated the office, and McAleenan assumed the position of Acting Secretary, he was **not** next in line pursuant to E.O. 13753; Director of the Cybersecurity and Infrastructure Security Agency, Christopher Krebs, was. McAleenan's leapfrogging over Director Krebs therefore violated the agency's own order of succession. From this record, the Court cannot help but conclude that McAleenan assumed the role of Acting Secretary without lawful authority") (bold in original) (internal citations omitted).

Thus, the installations of McAleenan and Wolf were in direct contravention of a constitutional provision—the Appointments Clause—which the Supreme Court has determined "is among the significant structural safeguards of the constitutional scheme." *Edmond v. United States*, 520 U.S. 651, 659 (1997). Violations of the Appointments Clause are "'structural,' because of its purpose to prevent encroachment of one branch on another and to preserve the Constitution's structural integrity." *Landry v. F.D.I.C.*, 204 F.3d 1125, 1130 (D.C. Cir. 2000) (citing *Freytag v.*

---

[1] The GAO is a 100-year old governmental entity that provides Congress, executive agencies, and the public with fact-based, non-partisan information at the request of congressional committees or subcommittees or as statutorily required by public laws or committee reports per Congressional Protocols. The August 14, 2020 Decision referenced herein was signed by GAO General Counsel Thomas H. Armstrong and is available at https://www.gao.gov/assets/b-331650.pdf (last accessed August 19, 2021).

[2] *See* U.S. GAO Decision in the *Matter of: Department of Homeland Security—Legality of Service of Acting Secretary of Homeland Security and Service of Senior Official Performing the Duties of Deputy Secretary of Homeland Security* (Aug. 14, 2020).

*Commissioner*, 501 U.S. 868, 878-79 (1991)). "The term 'structural' [is] for a set of errors for which no direct injury is necessary—such as a criminal defendant's indictment by a grand jury chosen in a racially or sexually discriminatory manner." *Id*. In other words, as the Third Circuit recently explained, "[a]n individual litigant need not show direct harm or prejudice caused by an Appointments Clause violation…But this difficulty to show direct harm does not diminish the important individual liberty safeguarded by the Appointments Clause. *Such harm is presumed*." *Cirko on behalf of Cirko v. Comm'r of Soc. Sec.,* 948 F.3d 148, 154 (3d Cir. 2020) (emphasis added).

### I. Relevant Background

Duggar is charged in a two-count indictment alleging one count of receipt of child pornography and one count of possession of child pornography. (Doc. 1). Duggar has pleaded not guilty to both counts.

In his under-oath testimony, HSI Special Agent Gerald Faulkner ("Faulkner") testified that DHS HSI began this investigation in May 2019. (Det. Hearing. Tr. at 58). Faulkner, who supervised this investigation on behalf of DHS HSI, testified that this was a DHS HSI case and that, at all times, the federal investigators working on this case were working under the authority of the Department of Homeland Security and whomever was in charge at any given time. *See* Det. Hearing Tr. at 80-81 ("**Q**: …this was an HSI case, a Department of Homeland Security case, correct? **A**: That is correct. Yes, sir. **Q**: Okay. And so at all times, you were working under the authority of the Department of Homeland Security and whoever was in charge, correct? **A**: That is correct. Yes, sir"). In October and November 2019, DHS HSI conducted substantial investigative

activities—including, for instance, obtaining and executing federal search warrants, interviewing witnesses, and obtaining documents.[3]

Between December 5, 2017 and April 10, 2019, Secretary Nielsen served as the presidentially-appointed, Senate-confirmed Secretary of DHS. However, when she resigned before this investigation began, the Deputy Secretary position had been vacant since April 14, 2018 and the Under Secretary for Management also resigned on April 10, 2019, leaving that position vacant.

Upon Secretary Nielsen's resignation on April 10, 2019, the Commissioner of Customs and Border Protection—McAleenan—purportedly assumed the title and position of Acting Secretary of DHS. And on November 13, 2019, McAleenan resigned and the Under Secretary for Strategy, Policy, and Plans—Wolf—purportedly assumed the title and position of Acting Secretary of DHS. And Wolf was at the helms of DHS until he resigned on January 11, 2021.

Thus, at all relevant times during this investigation, McAleenan and Wolf were in charge of DHS HSI and, by Faulkner's own admission, at all times the agents who investigated this case were working under their purported authority. *See* Det. Hearing Tr. at 80-81.

**II.     The Appointments Clause**

Article II, Section 2 of the United States Constitution provides:

[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President along, in the Courts of Law, or in the Heads of Departments

U.S. Const. art. II, § 2.

---

[3] At the detention hearing, Faulkner testified that DHS HSI received this case prior to October 2019. The discovery disclosed by the Government states that DHS HSI became involved in October 2019. In any event, for purposes of this motion, DHS HSI's investigation did not begin until *after* HSI Secretary Nielsen—who had been properly appointed—resigned in April 2019.

The appointment of Executive branch officers, therefore, falls into two categories: principal and inferior. Principal officers—such as the Secretary of the Department of Homeland Security—require a nomination by the President and confirmation by the Senate. *See Casa de Maryland, Inc.*, 486 F. Supp. 3d at 950 ("It is undisputed that the office of the DHS Secretary is one subject to Presidential nomination and Senate Confirmation, otherwise known as a 'PAS' position"); *see also* 6 U.S.C. § 112(a)(1) ("There is a Secretary of Homeland Security, appointed by the President, by and with the advice and consent of the Senate").

"The Senate's advice and consent power is a critical structural safeguard of the constitutional scheme." *N.L.R.B. v. SW General, Inc.*, 137 S. Ct. 929, 935 (2017) (internal quotations and citations omitted). The appointment of principal officers "raises grave constitutional concerns because the Appointments Clause forbids the President to appoint principal officers without the advice and consent of the Senate." *Id*. (Thomas, J., concurring). This process is "more than a matter of etiquette or protocol; it is among the significant structural safeguards of the constitutional scheme." *Edmond*, 520 U.S. 651 at 659. "[T]he Clause bespeaks a principle of limitation by dividing the power to appoint the principal federal officers…between the Executive and Legislative Branches." *Freytag*, 501 U.S. at 884. For this reason, the Supreme Court has expressly recognized that the "structural principles embodied in the Appointments Clause do not speak only, or even primarily, of Executive prerogatives." *Id*. at 880. Rather, the Appointments Clause protects the interests "of the entire Republic." *Id*.

No one—not the President, Congress, or the judiciary—can discard the constitutional command as "[t]he Appointments Clause prescribes *the exclusive means of appointing 'Officers.'*" *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2051 (2018). It is a bright line that cannot be crossed, and when that line is crossed, harm to a litigant need not be established: "For Appointment Clause violations,

demand for a clear causal link to a party's harm will likely make the Clause no wall at all." *Landry*, 204 F.3d at 1131. As a broad proposition, structural error is so significant that it is "subject to automatic reversal" in the event of a conviction. *Neder v. United States*, 527 U.S. 1, 8 (1999).

**III.     The Federal Vacancies Reform Act and the Homeland Security Act**

The Federal Vacancies Reform Act of 1998 ("FVRA") allows for the temporary filling of vacant executive agency positions that require presidential appointment with Senate confirmation. *See* 5 U.S.C. § 3345. In limited circumstances, the FVRA permits certain individuals to serve as acting officials in vacant Presidentially-appointed, Senate-confirmed positions for limited periods of time. *See* 5 U.S.C. §§ 3345, 3346. Broadly speaking, the FVRA is the exclusive means for filling a vacancy in a PAS position unless another statute provides an exception. *See, e.g.,* 5 U.S.C. § 3345.[4]

For purposes of the DHS, the Homeland Security Act of 2002 ("HSA") comes into play. The HSA created the position of Secretary of Homeland Security who is vested with all the functions of all officers, employees, and organizational units of DHS. HSA, Pub. L. No. 107-296, Title I, § 102. The HSA also created the position of Deputy Secretary and made the Deputy Secretary the first assistant for purposes of the FVRA. Pub. L. No. 107-297, Title I, § 103.

Critically, for purposes of this motion, Congress amended the HSA in December 2016 to establish an order of succession outside the FVRA for the position of DHS Secretary. *See* National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, Div. A, Title XIX, § 1903, 130 Stat. 2000, 2672 (2016). Under the Amendment, the order of succession is straightforward: the Under Secretary for Management is next in line to be Acting Secretary in the case of absence,

---

[4] A statute does not qualify as an exception unless the provision expressly authorizes the President or the head of an executive department to designate an official to perform the functions and duties of a specified office temporarily in an acting capacity or unless it designates an acting official. *See* 5 U.S.C. § 3347(a)(1).

disability, or vacancy in the positions of Secretary and Deputy Secretary. *See* 6 U.S.C. § 113(g)(1). Beyond that designation, "the Secretary may designate such other officers of the Department in further order of succession to serve as Acting Secretary." 6 U.S.C. § 113(g)(2). These succession provisions take effect "[n]otwithstanding" the provisions of the Vacancies Reform Act. *See* 6 U.S.C. § 113(g). HSA does not establish an order of succession outside the FVRA for the position of Deputy Secretary. However, HSA establishes the Under Secretary for Management as the first assistant to the Deputy Secretary for purposes of the Vacancies Reform Act. *See* 6 U.S.C. § 113(a)(1)(F).

        A.      <u>What Should Have Happened When Secretary Nielsen Resigned</u>

When Secretary Nielsen resigned on April 10, 2019—before the investigation of this case began—Director of the Cybersecurity and Infrastructure Security Agency ("CISA") Christopher Krebs should have assumed the position of Acting Secretary of the Department of Homeland Security. *See* Executive Order 13753, amended Dec. 9, 2016; *Casa de Maryland, Inc.*, 486 F. Supp. 3d at 958 ("Yet when Nielsen vacated the office, and McAleenan assumed the position of Acting Secretary, he was **not** next in line pursuant to E.O. 13753; Director of the Cybersecurity and Infrastructure Security Agency, Christopher Krebs, was" (bold in original); GAO Decision at 7 ("Apparently, DHS mistakenly referred to Annex A, rather than E.O. 13753. Mr. McAleenan served as the previously confirmed Commissioner of U.S. Customs and Border Protection at the time. Mr. McAleenan would have been the appropriate official had Secretary Nielsen been unavailable to act during a disaster or catastrophic emergency. That was not the case here. Secretary Nielsen resigned. A Secretary's resignation is addressed in E.O. 13753, not Annex A").

By assuming control of DHS—and investigating Duggar through DHS HSI Special Agents acting under his authority as Faulkner enthusiastically acknowledged on the witness stand—

7

"McAleenan assumed the role of Acting Secretary *without lawful authority*." *Casa de Maryland, Inc.*, 486 F. Supp. 3d at 958 (emphasis added). As the GAO determined, "the incorrect individual assumed the position of Acting Secretary." *See* GAO Decision at 8. To be clear, the question before this Court is *not* whether Secretary Nielsen intended for McAleenan to become Acting Secretary upon her resignation. The language of the document she amended the day before her resignation plainly applies only to situations where the DHS Secretary is unavailable "to act during a disaster or catastrophic emergency." *See id*. at 9. Executive Order 13753 unambiguously continued to apply where, as here, the DHS Secretary had resigned.

      B.    <u>McAleenan Resigned, Wolf Unlawfully Assumed Control of DHS, and Wolf Unlawfully Shuffled the Deck to Install Cuccinelli as Second in Charge of DHS</u>

The constitutionally-stunning house of cards at DHS continued to crumble. McAleenan—whom the GAO and a federal court have already determined had no legal authority to assume the helm at DHS—revised the delegation of authority shortly before he resigned. On November 8, 2019, he decided the list of succession should be as follows: (1) Deputy Secretary; (2) Under Secretary for Management; (3) Commissioner of CBP; and (4) Under Secretary for Strategy, Policy, and Plans. *See* DHS, *Orders of Succession and Delegations of Authorities for Named Positions*, Delegation No. 00106, Revision No. 08.6 (Nov. 8, 2019). "As a consequence, the revision removed the FEMA Administrator and CISA Director from the order of succession, replacing them with the CBP Commissioner and the Under Secretary for Strategy, Policy, and Plans respectively." GAO Decision at 10. Then, just five days later, McAleenan resigned as both Acting Secretary and Commissioner of U.S. Customs and Border Protection. And based solely on McAleenan's recently shuffled game of musical chairs, Wolf assumed the title of Acting Secretary.

8

Wolf—who was installed as Acting Secretary based only on the action of McAleenan, who was acting without lawful authority—then amended the order of succession for Deputy Secretary the same day he took office. The CISA Director was removed entirely from the order of succession, Wolf installed the Principal Deputy Director of USCIS next in line, and he shifted TSA and FEMA to third and fourth in line, respectively. *See* GAO Decision at 10. Ken Cuccinelli then assumed the duties of acting Deputy Secretary because he was the Principal Deputy Director of USCIS.

The bottom line is simple and set out clearly in the GAO's correct decision:

> Mr. McAleenan was not the proper Acting Secretary which means he did not have the authority to amend the April Delegation. When Mr. McAleenan issued the November Delegation, he did so without the proper authority… Because Mr. Wolf [drew] his authority to serve as Acting Secretary from the November Delegation, Mr. Wolf, cannot, therefore, rely upon it to serve as the Acting Secretary.

GAO Decision at 10; *see also Utility Air Regulatory Group v. EPA*, 573 U.S. 302 (2014) (agency actions exceeding statutory authority are invalid). By extension, Wolf's action installing Cuccinelli as Deputy Secretary was also invalid. GAO Decision at 11.

**IV. Because McAleenan and Wolf Were Each Installed as Acting DHS Secretary During the Investigation of This Case by DHS HSI In Violation of the Appointments Clause and in Violation of Federal Law, This Indictment Should Be Dismissed**

As a threshold matter, this Court must assess whether the appointments of McAleenan and/or Wolf were unconstitutional under the Appointments Clause or unlawful under the statutory framework for temporary appointments. This Court can take judicial notice—or Duggar can establish at an evidentiary hearing—that neither McAleenan nor Wolf were nominated by the President of the United States to serve as DHS Secretary or confirmed by the Senate for that position. *See* Fed. R. Evid. 201 (these are facts which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and are therefore subject to judicial notice).

In 2017, the Supreme Court considered whether the appointment of the general counsel of the National Labor Relations Board without Senate confirmation was legal. *N.L.R.B.*, 137 S. Ct. at 943-44. The Supreme Court concluded that the appointment was unlawful on statutory grounds— *i.e.*, because it violated the FVRA. *Id*. at 934, 943-44. Justice Thomas, while agreeing with the majority's conclusion, authored a concurring opinion in which he emphasized that even if the appointment had been consistent with the FVRA, the Constitution's Appointments Clause would have nevertheless prohibited the appointment. *Id*. at 948 (Thomas, J., concurring). "The Clause," he explained, "like all of the Constitution's structural provisions, is designed first and foremost not to look after the interests of the respective branches, but to protect individual liberty." *Id*. at 949. As Justice Thomas foreshadowed, federal courts "inevitably will be called upon to determine whether the Constitution permits the appointment of principal officers pursuant to the FVRA without Senate confirmation." *Id*. This motion raises this precise question.

However, this Court need not even reach that issue if this Court correctly concludes—as the GAO did—that the installation of McAleenan and Wolf violated the HSA. To that end, as a general proposition, vacancies laws are "generally strictly and narrowly interpreted." *Olympic Fed. Sav. & Loan Ass'n v. Dir., Office of Thrift Supervision*, 732 F. Supp. 1183, 1198 (D.D.C. 1990). And as the United States District Court for the District of Maryland ultimately explained:

> In sum, the Court concludes that Plaintiffs are likely to demonstrate McAleenan's appointment was invalid under the agency's applicable order of succession, and so he lacked the authority to amend the order of succession to ensure Wolf's installation as Acting Secretary. By extension, because Wolf filled the role of Acting Secretary without authority, he promulgated the challenged rules also "in excess of ... authority," and not "in accordance with the law." 5 U.S.C. § 706(2)(C) and (a)(2). On this ground, therefore, Plaintiffs have established their likely success on the merits of this claim.

*Casa de Maryland, Inc.*, 486 F. Supp. 3d at 960.

This Court should be guided by the legal analysis and conclusions set out in the GAO decision and in *Casa de Maryland* and likewise conclude that McAleenan's appointment was invalid under the agency's applicable order of succession, that McAleenan lacked the authority to amend the order of succession to install Wolf as Acting Secretary of DHS, and that Wolf filled the role of Acting Secretary without legal authority.

V.     **The Proper Remedy is Dismissal**

In the rare but important instances in which the Supreme Court has found a violation of the Appointments Clause, the Court has rejected the notion that individuals should nevertheless remain subject to the actions of those who acted without power. *See, e.g., Ryder v. United States*, 515 U.S. 177, 181-84 (1995) (invalidating actions by individuals given authority in violation of the Appointments Clause). *See also United States v. Providence Journal Co.*, 485 U.S. 693 (1988) (dismissing case for lack of jurisdiction because special prosecutor lacked the statutory authority to represent the United States in a petition for a writ of certiorari); *Landry*, 204 F.3d at 1130-32 (violation of Appointments Clause constitutes structural error); *N.L.R.B.*, 137 S. Ct. at 935 (reaffirming that Appointments Clause is a "structural safeguard") (internal citations omitted). Structural error is "subject to automatic reversal" in the event of a conviction. *Neder*, 527 U.S. at 8. Indeed,

> an array of decisions from the Supreme Court, the D.C. Circuit, and [the D.C. District] Court [have] reach[ed] the merits of challenges to actions "taken by…government official[s] on the ground that the official invalidly [held] office," *Andrade v. Lauer*, 729 F.2d 1475, 1494 (D.C. Cir. 1984) (collecting cases), even when a properly appointed official might have reimposed the challenged action. Notably, the Supreme Court and the D.C. Circuit reached the merits in *SW General, Inc. v. NLRB*, 796 F.3d 67 (D.C. Cir. 2015), *aff'd*, 137 S. Ct. 929, a case—like this one—involving a challenge to an appointment under the FVRA.

*L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 22 (D.D.C. 2020).

Furthermore, the FVRA provides that all actions under an invalidly installed agency head "shall have no force or effect…[and] may not be ratified." 5 U.S.C. § 3348(d)(1)-(2). And as recently pronounced by the Supreme Court in response to the suggestion that a litigant in such circumstances must prove prejudice:

> Our precedents say otherwise. We have held that a litigant challenging governmental action as void on the basis of the separation of powers is not required to prove that the Government's course of conduct would have been different in a "counterfactual world" in which the Government had acted with constitutional authority.

*Seila Law LLC v. Consumer Fin. Prot. Bureau,* 140 S. Ct. 2183, 2196 (2020) (finding "the CFPB Director is not an inferior officer, a[s] her duties are far from limited[, u]nlike the independent counsel, who lacked policymaking or administrative authority….the CFPB Director has the authority to bring the coercive power of the state to bear on millions of private citizens and businesses").

Thus, actions taken after such a violation are subject to blanket reversal. *See e.g., Noel Canning v. N.L.R.B.*, 705 F.3d 490, 493 (D.C. Cir. 2013), *aff'd* 573 U.S. 513 (2014) (holding an enforcement order "void *ab initio*" due to lack of valid appointment).

Moreover, recent Third Circuit precedent confirms, "[a]n individual litigant need not show direct harm or prejudice caused by an Appointments Clause violation." *Cirko on behalf of Cirko,* 948 F.3d at 154 . The extraordinary "difficulty to show direct harm does not diminish the important individual liberty safeguarded by the Appointments Clause. *Such harm is presumed*." *Id.* (emphasis added).

In filing this motion, Duggar readily acknowledges that this is an unusual constitutional challenge in a federal criminal prosecution—but that should not factor into this Court's analysis. Rather, this Court should conclude what the GAO and a district court have already concluded: that

12

the head of DHS at all relevant times during the DHS HSI investigation in this case was occupied by two people "without lawful authority." *Casa de Maryland, Inc.*, 486 F. Supp. 3d at 958. As the actions by DHS HSI in this case were all conducted under the authority of individuals who were acting as Officers of the United States in violation of both the Appointments Clause and the applicable federal statutory scheme for temporary officeholders, the investigation proceeded without lawful authority. Because Appointments Clause violations are structural in nature, Duggar need not show prejudice to obtain relief. This Court should, therefore, dismiss this indictment.

### VI.  Conclusion

Based on the foregoing, this Court should dismiss the indictment.

Respectfully submitted,

**Margulis Gelfand, LLC**

 /s/ Justin K. Gelfand
JUSTIN K. GELFAND, MO Bar No. 62265*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*
**Admitted Pro Hac Vice*

--- and ---

**Story Law Firm, PLLC**

/s/ Travis W. Story
Travis W. Story, AR Bar No. 2008278
Gregory F. Payne, AR Bar No. 2017008
3608 Steele Blvd., #105
Fayetteville, AR 72703
Telephone: (479) 448-3700
Facsimile: (479) 443-3701
travis@storylawfirm.com
greg@storylawfirm.com

## Certificate of Service

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

                                      /s/ Justin K. Gelfand
                                   JUSTIN K. GELFAND, MO Bar No. 62265*
                                   7700 Bonhomme Ave., Ste. 750
                                   St. Louis, MO 63105
                                   Telephone: 314.390.0234
                                   Facsimile: 314.485.2264
                                   justin@margulisgelfand.com
                                   *Counsel for Defendant*
                                   **Admitted Pro Hac Vice*