IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                                CASE NO 5:21-CR-50014-001

JOSHUA JAMES DUGGAR

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR VIOLATION OF THE APPOINTMENT'S CLAUSE**

Comes now the United States of America, by and through Dustin Roberts and Carly Marshall, Assistant United States Attorneys for the Western District of Arkansas, and William G. Clayman, Trial Attorney for the United States Department of Justice, and files its Response to the Defendant's Motion to Dismiss Indictment for Violation of the Appointments Clause (Doc. 39), states:

**Summary of the Argument**

At present, Duggar is charged by grand jury indictment with one (1) count of Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1), and one (1) count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). (Doc. 1). The investigation into the defendant's crimes was conducted by Special Agents (SA) Gerald Faulkner and Howard Aycock of Homeland Security Investigations (HSI), which is the principal investigative arm of the U.S. Department of Homeland Security (DHS). At the time of the initial investigation in 2019, DHS was headed by Acting Secretaries—Kevin McAleenan (from April to November 2019) and Chad Wolf (from November 2019 to January 2021).

Currently, the defendant contends that Acting Secretaries McAleenan and Wolf filled the position of Acting Secretary of Homeland Security in violation of the Appointments Clause, U.S.

Const. art. II, § 2; the Federal Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345-3348; and the order of succession established by the Homeland Security Act of 2002, 6 U.S.C. § 113. He further contends that the investigation into his crimes "proceeded without lawful authority" because the HSI agents' actions were "conducted under the authority of individuals who were acting as Officers of the United States in violation of both the Appointments Clause and the applicable federal statutory scheme." (Doc. 39, p.13). And he argues that the indictment must be dismissed. *Id*. However, as set forth below, the defendant's assertion is improper both in analysis and context.

In fact, this Court need not reach the constitutional and statutory questions raised by the defendant's motion, because the grand jury is the ultimate investigating authority that returned the current indictment, and it is the U.S. Attorney's Office who is authorized by statute to prosecute this case. Furthermore, regardless of whether the position of Acting Secretary was properly filled at the time, the HSI agents involved had statutory authority to conduct this investigation and the defendant does not even suggest, nor do the facts support, that Acting Secretaries McAleenan or Wolf took any action that affected the investigation. Finally, if the Court were to reach the issue, Acting Secretaries McAleenan and Wolf assumed the role of Acting Secretary in compliance with the Appointments Clause and the federal statutory scheme.

I.  **The Defendant's Claims Fail to Support Dismissal of the Indictment.**

At present, the defendant asserts that "as a threshold matter, this Court must assess whether the appointments of McAleenan and/or Wolf were unconstitutional under the Appointments Clause or unlawful under statutory framework." (Doc. 39, p. 9). However, the defendant frames the issue incorrectly. The defendant's assumption that any violation of the Appointments Clause in regard to DHS warrants dismissal of this case fails to appreciate the fact that *this* indictment was brought by a grand jury and signed by Assistant United States Attorneys of the United States Attorney's Office for the Western District of Arkansas and a Trial Attorney of the Criminal

Division of the Department of Justice. As a result, a defect as asserted by the defendant in the appointment process for the Acting DHS Secretary, even if found, would not affect the validity of the defendant's indictment.

A valid grand jury indictment, as pending at present, "is a constitutional fixture in its own right." *United States* v. *Williams*, 504 U.S. 36, 47 (1992) (citation omitted). "An indictment returned by a legally constituted and unbiased grand jury . . . is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). It is well-settled that "the validity of an indictment is not affected by the character of the evidence considered." *United States* v. *Calandra*, 414 U.S. 338, 344-345 (1974). And an indictment that is valid on its face "is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *Id.* at 345 (citing *Costello* v. *United States*, 350 U.S. 359 (1956)). The defendant's current claim that the indictment should be dismissed amounts to, at best, a challenge to the competency of the evidence considered by the grand jury, which would not affect the validity of the indictment.

Indeed, if anything, the defendant's erroneous claim that the investigating agents acted pursuant to invalid authority would point toward a motion to suppress the evidence their agents collected, not a motion to dismiss the indictment. The defendant, of course, has not sought suppression, nor could he prevail in this context on a motion asking the Court to apply the exclusionary rule to suppress the evidence these agents collected. The exclusionary rule "has always been [a] last resort, not [a] first impulse," *Hudson v. Michigan*, 547 U.S. 586, 591 (2006), and suppressing evidence collected by agents who reasonably- and correctly, as explained in this response- believed they were pursuing a valid investigation would serve no purpose in deterring unlawful searches and seizures. More fundamental, the defendant has not brought forth any action

by the grand jury that would warrant the extreme action of dismissal and fails to cite any authority regarding an Appointment Clause violation forming the grounds warranting dismissal of a criminal case as the appropriate remedy.

Conversely, the United States Supreme Court has stated that any failures by the Executive Branch, including prosecutorial misconduct in front of the grand jury, provide a court "no authority to dismiss the indictment . . . absent a finding that [the defendant] w[as] prejudiced by such misconduct." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988). In the current context, this means the defendant needs to establish "grave doubt that the" alleged Appointments Clause violation did not impact the grand jury's decision to indict[.]'" *United States v. Peters*, 2018 WL 6313534, at *7 (E.D. Ky. Dec. 3, 2018). "To create the requisite doubt, and prove more than a 'harmless error[,]' it [i]s imperative for Defendant to show some consequential, prejudicial link between the disputed placement [of Acting DHS Secretaries] and the grand jury's probable cause determination." *Id.* (quoting *Jefferson v. Morgan*, 962 F.2d 1185, 1191 (6th Cir. 1992).

The defendant has not provided a single concrete example of how the placement of Acting Secretaries McAleenan or Wolf has influenced or affected the grand jury's decision to return an indictment, meaning dismissal of the indictment is completely unwarranted. *See United States v. Smith*, 962 F.3d 755, 766 (4th Cir. 2020); *see also United States v. Smith*, 2018 WL 6834712 at *4 (W.D.N.C. Dec. 28, 2018) (denying motion for dismissal of indictment where defendant "is unable to point to *any* prejudice --- real or imagined --- that is created by Whitaker's designation as Acting Attorney General). Because the defendant can show no influence or role by McAleenan or Wolf, the grand jury stands unimpeachable. (See *United States v. Williams*, 504 U.S. 36, 47 (1992)).

A review of the record reveals that in this case, the indictment is valid in all respects. The charges were brought by the Acting United States Attorney for the Western District of Arkansas,

4

who is empowered by statute to prosecute crimes committed against the United States. The charges all support and cite federal law violations, which this Court has jurisdiction over. And finally, the indictment was brought by a grand jury sitting in the Western District of Arkansas. These are all facts that the defendant does not contest, nor even addresses in his motion to dismiss. Consequently, the defendant's motion fundamentally fails, as dismissal is not a valid remedy, regardless of the defendant's legal claims, given the uncontroverted facts that the federal criminal charges he faces were brought via an unbiased grand jury and presented by the United States Attorney's Office in the Western District of Arkansas.

## II. An Improper Designation of an Acting Secretary of Homeland Security Would Not Deprive HSI Agents of Authority to Investigate Defendant's Crimes.

Even assuming *arguendo*, that the Acting Secretaries lacked the authority to head DHS, such would not invalidate the actions taken by the investigative agents in this case. (*See* Doc. 39 at 12-13). As noted above, the defendant has not asserted that Acting Secretaries McAleenan or Wolf took any official action related to this investigation. Nor is there any basis to presume that they did so. DHS has more than 240,000 employees, *see* https://www.dhs.gov/about-dhs, and HSI has 7,100 special agents, *see* https://www.ice.gov/about-ice/homeland-security-investigations. An Acting Secretary could not personally supervise every investigation conducted by Department employees. Moreover, Acting Secretaries McAleenan and Wolf played no role in delegating to the HSI agents the authority to investigate the federal crimes in this case. The primary agents involved were HSI SAs Faulkner and Aycock. Both individuals were sworn in and had been acting with federal authority long before 2019.[1]

---

[1] SA Faulkner has been a Special Agent with HSI since 2009, and SA Aycock has been a Special Agent with HSI since 2015.

5

SAs Faulkner and Aycock, like all other federal agents under the HSI umbrella, derive their authority from federal law. The Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135, transferred to the Secretary of Homeland Security all the "functions, personnel, assets, and liabilities of the United States Customs Service." 6 U.S.C. § 203(1). Pursuant to statutory authority, *see* 6 U.S.C. § 112(b)(1), then-Secretary Tom Ridge delegated to the Assistant Secretary for Immigration and Customs Enforcement (later renamed the Director of Immigration and Customs Enforcement) "[a]ll authority" to enforce a variety of customs laws and to designate "customs officers" under 19 U.S.C. § 1401(i). *See* Delegation of Authority to the Assistant Secretary for U.S. Immigration and Customs Enforcement, Delegation No. 7030.2, § 2(A) (March 1, 2003)[2], available at https://www.hsdl.org/?view&did=234774. The delegation also authorized the Assistant Secretary to re-delegate this authority "to an appropriate subordinate official of ICE [Immigration and Customs Enforcement]." *Id.* § 4. ICE then internally delegated this authority to the Office of Investigations, now known as HSI. See ICE Delegation Order dated March 26, 2004 (Govt. Ex. A).

In their role as customs officers, HSI special agents have broad authority to "execute and serve any order, warrant, subpoena, summons, or other process issued under the authority of the United States," make arrests "for any offense against the United States," and "perform any other law enforcement duty" that the Secretary of Homeland Security designates. 19 U.S.C. § 1589a(2)-(4); *see* 6 U.S.C. § 203(1). Additionally, Congress has specifically tasked HSI with investigating cyber crimes against children. As part of the Human Exploitation Rescue Operations Act of 2015,

---

[2] The ICE DO 04-006, dated March 26, 2004, delegates 19 U.S.C. § 1401(1) and DHS Delegation 0730 authorizes to the Director, Office of Investigations. DHS Delegation 7030.1, dated November 5, 2003, then superseded delegation 0730. DHS Delegation 0730.2, dated November 13, 2004 supersedes 0730.1.

6

Pub. L. 114-22, 129 Stat. 251, Congress directed the creation within HSI of a Child Exploitation Investigation Unit (CEIU). 6 U.S.C. § 473(a)(1), (b)(1). This Unit is to "coordinate all United States Immigration and Customs Enforcement child exploitation initiatives, including investigations into (i) child exploitation [and] (ii) child pornography." § 473(b)(2)(A). In support of this legislation, Congress found that the "illegal market for the production and distribution of child abuse imagery is a growing threat to children in the United States" and that "[t]he United States Immigration and Customs Enforcement . . . serves a critical national security role in protecting the United States from the growing international threat of child exploitation and human trafficking." Pub. L. 114-2, § 302(a)(1), (3), 129 Stat. 251.

In sum, the HSI SAs at issue were delegated broad authority to enforce federal laws well before the tenures of Acting Secretaries McAleenan and Wolf. And HSI agents' investigative authority is not contingent on the position of Secretary of Homeland Security being properly filled. Thus, regardless of whether Acting Secretaries McAleenan and Wolf properly assumed the role of Acting Secretary, the agents acted with authority in investigating this case.

Again, the defendant does not and cannot point to any authority supporting his sweeping claim that the improper designation of an Acting Secretary of Homeland Security could deprive all 7,100 HSI agents of "lawful authority" to investigate crimes. (Doc. 39, p.13). In fact, the cases that he cites (*Id.* at 11-12) all involved official actions taken by the officials, who are alleged to be improperly designated. *See Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183, 2194, 2208 (2020) (addressing the enforceability of a "civil investigative demand (essentially a subpoena)" issued by the CFPB Director); *N.L.R.B. v. SW Gen'l, Inc.*, 137 S. Ct. 929, 937-38 (2017) (administrative complaint issued by improperly designated NLRB general counsel); *Ryder v. United States*, 515 U.S. 177, 187-88, (1995) (decision by the Coast Guard Court of

Military Review when the judges were invalidly appointed); *Landry v. F.D.I.C.*, 204 F.3d 1125, 1130-32 (D.C. Cir. 2000) (decision by improperly appointed administrative law judge would be structural error). Here, by contrast, Acting Secretaries McAleenan and Wolf took no actions related to defendant. So those cases do not help him.

In fact, the most analogous authority cuts the other way. Courts have unanimously rejected the view that the allegedly invalid designation of an Acting Attorney General in 2018 invalidated all criminal prosecutions brought by the Department of Justice during his tenure. *See Smith*, 962 F.3d at 766 (observing that the defendant "must show that [the Acting Attorney General's] tenure somehow affected his proceedings and prejudiced him in some way"); *United States v. Castillo*, 772 F. App'x 11, 14 (3d Cir. 2019) (unpublished) (observing that the Acting Attorney General "had no direct involvement in Castillo's case"); *United States v. Valencia*, 2018 WL 6182755, at *7 (W.D. Tex. 2018) (agreeing with the government that the Acting Attorney General's "indirect involvement with this case as the acting head of the Department of Justice does not affect the validity of this proceeding" (quotation omitted)); *United States v. Santos-Caporal*, 2019 WL 468795, at *7 (E.D. Miss. 2019) (finding *Valencia* "persuasive"); *United States v. Peters*, 2018 WL 6313534, at *7 (E.D. K. 2018) (observing that the defendant "offer[ed] nothing to suggest that locally originated prosecutions end if an AG faces qualification challenges"). The same reasoning should apply here. Any violation of the order of succession for the Secretary of Homeland Security would not deprive HSI agents of their pre-existing authority to investigate violations of federal law.

**III.     In any event, Mr. Wolf and Mr. McAleenan both properly served as Acting Secretary.**

Finally, if the Court were to reach the merits of defendant's claims, he fails to show that Acting Secretaries McAleenan and Wolf unlawfully served as Acting Secretary. Both served pursuant to valid order of succession.

The Homeland Security Act ("HSA") provides that when the offices of the Secretary and the Deputy Secretary of Homeland Security are vacant, "the Under Secretary for Management shall serve as the Acting Secretary." 6 U.S.C. § 113(g)(1). The HSA then allows the Secretary to "designate such other officers of the Department in further order of succession as Acting Secretary." *Id.* § 113(g)(2). Orders of succession under § 113(g)(2) apply "[n]otwithstanding" the Federal Vacancies Reform Act, which generally governs vacancies in Senate-confirmed offices.

Kirstjen Nielsen served as Secretary of Homeland Security until April 10, 2019. Swartz Decl. at Ex. 5. Before she vacated her position, then-Secretary Nielsen issued an order on April 9, 2019 under 6 U.S.C. §113(g)(2), which designated the order of succession that governed all vacancies in the office of the Secretary. Blackwell Decl. at Ex. 4. Because the offices of Deputy Secretary and Under Secretary for Management were vacant at the time of Ms. Nielsen's resignation, Mr. McAleenan- the Senate confirmed Commissioner of the U.S. Customs and Border Protection- became the Acting Secretary under Ms. Nielsen's April 9, 2019 order of succession.

The defendant agrees that Ms. Nielsen set an order of succession, but relying on an administrative document, Delegation 00106, he argues that Ms. Nielsen's order of succession only amended Annex A to Delegation 00106, which applied to vacancies in the event of disasters or catastrophic emergencies. Blackwell Decl. at Ex. 3 (hereinafter "Delegation 00106"). Accordingly, the defendant claims that Ms. Nielsen's order of succession did not apply when Ms. Nielsen resigned. That argument is incorrect.

9

In the April 9, 2019 order, then-Secretary Nielsen expressly designated the order of succession for the Department of Homeland Security without qualification or limitation as to the type of vacancy to which it applied. The order and the memorandum which she signed repeatedly states that she designated an "order of succession." *see* Blackwell Decl. at Ex. 3; *cf*. Swartz Decl. ¶ 3, 6 at Ex. 1.

Beyond Ms. Nielsen's unqualified language, she specifically invoked her authority under § 113(g)(2), which empowers the Secretary to designate an "order of succession" for officers to serve as Acting Secretary in the event of a vacancy. Ms. Nielsen's order expressly cites this statutory authority three times. By contrast Annex A of Delegation 00106, on which the defendant relies, sets the order of *delegation* of duties in the event of a disaster or catastrophic emergency. Crucially, an *order of succession* is different from a *delegation of authority*. The HSA reflects this, and a different provision, 6 U.S.C. § 112(b)(1), empowers the Secretary to delegate her authority to other officials in the agency, even when the Secretary continues to occupy her office.

### A. Pursuant to HSA, Mr. McAleenan became the Acting Secretary when Ms. Nielsen resigned because her 2019 Order Placed Him Next in Line for the Position

That conclusion is even clearer when the April 2019 order is read in the context of the earlier revisions to DHS Delegation No. 00106. On December 9, 2016, the President issued an executive order under the Federal Vacancies Reform Act that prescribed an order of succession for the office of Secretary of Homeland Security. See Executive Order 13753, 81 Fed. Reg. 90667 (Dec. 9, 2016) (EO 13753). On December 16, 2016, then-Secretary Jeh Johnson signed Revision 7 to DHS Delegation No. 00106. *See generally DHS Orders of Succession and Delegations of Authorities for Named Positions*, DHS Delegation No. 00106, Revision No. 07 (Dec. 15, 2016) (signed at page 3) Blackwell Decl. Ex. 1. This signed revision addressed two different kinds of

orders: (1) an order of succession, meaning a list of officials who could become Acting Secretary in the event of a vacancy, and (2) an order for delegation of authority.

Section II.A of Revision 8 to DHS Delegation No. 0106 explained that, "In case of the Secretary's death, resignation, or inability to perform the functions of the Office," the order of succession would be governed by Executive Order 13753. This was not an order of the Secretary and did not invoke any authority vested in the Secretary, because under the then-existing version of the HSA, the Secretary had no authority to designate an order of succession. At that time, only the President had the authority (under the FVRA) to designate an order of succession. *See* 5 U.S.C. § 3345(a)(2)-(3) (allowing the President to designate an acting official). Section II.A thus expressly tracked the FRVA: it noted that the President's order of succession would apply to a vacancy covered by the FVRA. Section II.A even listed the same triggering events as the FVRA. *Compare* 5 U.S.C. § 3345(a). It was only after Mr. Johnson had signed Revision 8 that Congress gave the Secretary the power to designate an order of succession that would apply "[n]otwithstanding" the FVRA. *See* National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 1903, 130 Stat. 2000 (2016) (codified at 6 U.S.C. § 113(g) (Dec. 23, 2016)).

In contrast, in Section II.B, Mr. Johnson separately exercised his own authority under 6 U.S.C. § 112(b)(1)—authority that the Secretary had long possessed—and delegated the authorities of his office to a list of officials, set out in Annex A, in the event that he was temporarily "unavailable to act during a disaster or catastrophic emergency." This was not an order of succession—the circumstances addressed by Section II.B are not the kind of vacancy that would trigger the FVRA, and the Section II.B delegation would not make someone exercising that

authority an Acting Secretary.[3] *Cf. English v. Trump*, 279 F. Supp. 3d 307, 322 (D.D.C. 2018) ("Defendants argue, with some force, that [unavailability to act is] commonly understood to reflect a temporary condition, such as not being reachable due to illness or travel," rather than a permanent condition such as a vacancy.). And, as explained, the Secretary had no statutory authority to designate an order of succession at this time.

This context, along with the text of Ms. Nielsen's April 2019 order, shows that, when then-Secretary Nielsen changed Annex A's list of officers, she also provided that Annex A would now perform two separate roles. It would both (1) designate the agency's first order of succession under § 113(g)(2) and (2) amend the list of officials in the order for delegation of authority.

Indeed, Ms. Nielsen established the first order of succession under § 113(g)(2); it would apply in the case of a vacancy that would otherwise have been covered by the FVRA. Before Ms. Nielsen's order, there was no order of succession under § 113(g)(2). Rather, as acknowledged by Section II.A, the President's order of succession under Executive Order 13753 governed when the Secretary's office was vacant, because then-Secretary Johnson lacked the authority to create an order of succession. Thus, when Ms. Nielsen invoked § 113(g)(2)—which she did three times—she exercised the Secretary's authority under that statute and designated an order of succession that applied "[n]otwithstanding chapter 33 of title 5," 6 U.S.C. § 113(g)(2). As a matter of law, that order of succession would supersede the order of succession under Executive Order 13753 when an official on the Secretary's list was able to serve as Acting Secretary.

The text of Ms. Nielsen's order cited § 113(g)(2) and used that authority to "designate the order of succession for the Secretary of Homeland Security as follows." The order that "follows"

---

[3] The FVRA is generally the "exclusive means for temporarily authorizing an acting official," unless another statute provides otherwise. 5 U.S.C. § 3347(a). Until § 113(g)(2), there was no other statute providing for the designation of an Acting Secretary of Homeland Security.

12

was the amended list of officials in Annex A. Annex A was also introduced with another clause and title showing that it would simultaneously continue to serve its original function as an order for delegation of authority. But Annex A's amended list was followed by a new provision that had not appeared in the delegation-only version of Annex A. The new provision noted that "[n]o individual who is serving in an office herein listed in an acting capacity, by virtue of so serving, shall act as Secretary pursuant to this designation." That reference to a "*designation*"—rather than a "delegation"—is yet another textual and structural acknowledgment that Annex A had executed the Secretary's new authority under § 113(g)(2). *See* 6 U.S.C. § 113(g)(2) (authorizing the Secretary to "designate such other officers . . . in further order of succession to serve as Acting Secretary").[4] Accepting Plaintiffs' proposed reading would thus require the Court to read *out* of Ms. Nielsen's order all three references to § 113(g)(2), to disregard its structure (what introduces and concludes its list of officials), and to read Mr. Johnson's document as creating an order of succession that he lacked the power to designate.

At the same time, Ms. Nielsen's order *also* changed the order for delegation of authority in the case of a disaster or catastrophic emergency by issuing a new version of Annex A. To do so, Ms. Nielsen did not need to expressly invoke § 112(b)(1), any more than Mr. Johnson had, because Annex A (through Section II.B) already was, by its terms, a delegation of authority. Thus, by changing the officials listed in Annex A, she changed the delegation order. But, given that she

---

[4] That additional sentence at the conclusion of Annex A is a mainstay in true orders of succession: "[W]hen Presidents issue orders of succession as an advance exercise of their authority to name acting officials under the [FVRA], they often specify that '[n]o individual who is serving in an office . . . in an acting capacity, by virtue of so serving, shall act as [the agency head] pursuant to this order.'" Office of Legal Counsel, *Designating an Acting Director of National Intelligence*, 43 Op. O.L.C. __, *8 (Nov. 15, 2019), https://www.justice.gov/olc/file/1220586/download; *id.* at *8 nn.3-4 (citing illustrative orders of succession).

expressly invoked § 113(g)(2), Annex A's list was to serve two different functions when Ms. Nielsen resigned: it was both the order of succession and the order for delegation of authority.

Moreover, the official actions Ms. Nielsen took after signing her order confirm that she did not merely alter Mr. Johnson's delegation order in Section II.B but also designated a new order of succession for vacancies under § 113(g)(2). For example, on her last day as Secretary, Ms. Nielsen sent a farewell email to the agency and issued a press release announcing that Mr. McAleenan "will now lead DHS as your Acting Secretary."[5] The same day, she personally swore Mr. McAleenan into that role.[6]

Finally, the Court should defer to the DHS's interpretation of Ms. Nielsen's order, which is the agency's own internal document. *Cf. Kisor v. Wilkie*, 139 S. Ct. 2400, 2416 (2019) (explaining that the Court "ha[s] deferred to 'official staff memoranda'" (citation omitted)).

In sum, the defendant's reading of Ms. Nielsen's order is at odds with the order's express language that designated an unqualified order of succession. It ignores the order's structure, the context provided by the intervening grant of statutory authority, and multiple references to an "order of succession" designated under § 113(g)(2). And it is inconsistent with the official acts Ms. Nielsen took on her last day as Secretary and violates basic deference principles.

---

[5] Email from Kirstjen M. Nielsen, Secretary of Homeland Security (Apr. 10, 2019, 04:35 EST) (attached as Nielsen Email); *see also* Press Release, DHS, Kirstjen M. Nielsen, Secretary of Homeland Security, Farewell Message from Secretary Kirstjen M. Nielsen (Apr. 10, 2019), https://www.dhs.gov/news/2019/04/10/farewell-message-secretary-kirstjen-m-nielsen.

[6] *CBP Commissioner Kevin McAleenan sworn-in as the Acting DHS Secretary; Opens New DHS Headquarters*, Border Observer, https://theborderobserver.wordpress.com/2019/04/11/cbp-commissioner-kevin-mcaleenan-sworn-in-as-theacting-dhs-secretary/ (last visited Aug. 19, 2020).

**B.     Pursuant to the HSA, Chad Wolf became the Acting Secretary when Mr. McAleenan resigned.**

As the lawfully serving Acting Secretary, then-Acting Secretary McAleenan designated a new order of succession on November 8, 2019, pursuant to his authority under 6 U.S.C. § 113(g)(2). Blackwell Decl., at Ex. 5. This placed the Under Secretary for Strategy, Policy, and Plans next in the order of succession for Acting Secretary, after the positions of the Deputy Secretary, Under Secretary for Management, and CBP Commissioner. *Id.*

On November 13, 2019, then-Acting Secretary McAleenan resigned from the Department. Mr. Chad Wolf, the Senate-confirmed Under Secretary for Strategy, Policy, and Plans, became Acting Secretary, because the Deputy Secretary, Under Secretary for Management, and Commissioner of CBP positions were vacant. Blackwell Decl.¶ 8; Swartz Decl. ¶ 5. As such, Acting Secretary Wolf lawfully served in that position until he resigned in January 2021. Various other acting DHS secretaries served until Alejandro Mayorka was confirmed by the Senate and became DHS Secretary on February 2, 2021. *See* PN78-13—Alejandro Mayorka—Department of Homeland Security, https://www.congress.gov/nomination/ 117th-congress/78/13.

Even if the Court were to consider the defendant's Appointments Clause argument, nothing here violated that clause. The Appointments Clause provides, in pertinent part, that the President must appoint principal officers, "by and with the Advice and Consent of the Senate." U.S. Const. art. II, § 2, cl. 2. The Secretary of the Department of Homeland Security ("DHS Secretary") is surely a principal officer, but the Appointments Clause does not require that an individual who merely acts temporarily as DHS Secretary must also be appointed in the manner of a principal officer. To the contrary, "longstanding Supreme Court precedent as well as centuries of unbroken historical practice" confirm that an individual may temporarily perform the functions and duties

of a vacant principal office, including the Head of a Department, without requiring Senate confirmation. *Smith*, 962 F.3d at 763.

In *United States v. Eaton*, the Supreme Court held that a "subordinate officer" (there, a vice-consul) may be "charged with the performance of the duty of" a principal officer "for a limited time, and under special and temporary conditions," without "thereby transform[ing] into" a principal officer. 169 U.S. 331, 343 (1898). The Court therefore rejected an Appointments Clause challenge to a scheme in which the vice-consul, who was not appointed as a principal officer, temporarily functioned as an acting principal officer (consul-general) during a vacancy. *See id.* at 331-332, 339-340, 343-344.

Nor is *Eaton* exceptional. As the Court noted, the "practice of the government" for decades before that case confirmed the shared understanding of both the Legislative and Executive Branches that a non-Senate-confirmed officer may serve temporarily as an acting principal officer without violating the Appointments Clause. *Id.* at 344 (citation omitted); *see* OLC Memorandum at 10-18 (collecting historical evidence dating to 1792 and spanning more than 160 individual instances, including examples of non-Senate-confirmed officers serving as Acting Secretary of State, Acting Secretary of the Treasury, Acting Secretary of War, and Acting Attorney General); *cf. NLRB v. Noel Canning*, 134 S. Ct. 2550, 2559 (2014) (noting that "historical practice" is entitled to "significant weight" in addressing the separation of powers) (emphasis omitted).

Indeed, courts have acknowledged that "The Supreme Court has repeatedly embraced the government's view that it is the temporary nature of acting duties that permits an individual to perform them without becoming a principal officer under the Appointments Clause." *Guedes v. ATF*, 356 F.Supp.3d 109, 146 (D.D.C. 2019); *see also Eaton*, 169 U.S. at 343. ("[T]he Supreme Court has held and subsequently reaffirmed that an official designated to perform the duties of a

principal officer temporarily, on an acting basis, need not undergo Senate confirmation."); *Smith*, 962 F.3d at 764 ("Someone who temporarily performs the duties of a principal officer…may occupy that post without having been confirmed with the advice and consent of the Senate."). Given the "limited" and "temporary" nature of his duties, *Eaton*, 169 U.S. at 343, an Acting DHS Secretary is not a principal officer for purposes of the Appointments Clause.

Furthermore, *Eaton*'s holding is not limited to periods of exigency. In *Eaton* itself, the Supreme Court stated that Congress's "manifest purpose" in distinguishing between consuls and vice-consuls was to "limit the period of duty to be performed by the vice-consuls, and thereby to deprive them of the character of 'consuls,' in the broader and more permanent sense of that word." 169 U.S. at 343. Thus, the "special and temporary conditions" recognized in *Eaton* were not the particular exigency associated with the facts of that case, but the limits of the then-existent regulatory scheme, which permitted service in any case of "the absence or the temporary inability of the consul," whatever the cause. *Id.* at 342; *see also id.* at 341.

Indeed, the Court has consistently described *Eaton* as turning on the temporary nature of the service, not on any particular exigency. *See United States v. Arthrex.*, 141 S.Ct. 1970, 1985 (2021) (citing *Eaton* for proposition that "an inferior officer can perform functions of principal office on acting basis"); *United States v. Edmond*, 520 U.S. 651, 661 (1997) (describing *Eaton* as finding that "a vice consul charged temporarily with the duties of the consul" is an inferior officer, with no mention of any emergency circumstances); *Morrison v. Olson*, 487 U.S. 654, 672 (1988) (describing *Eaton* as approving of the practice of appointing acting vice-consuls "during the temporary absence of the consul," without reference to any emergency other than the vacancy itself); *see also id.* at 721 (Scalia, J., dissenting) (noting that *Eaton* "held that the appointment . . . of a 'vice-consul,' charged with the duty of temporarily performing the function of the consul, did

not violate the Appointments Clause"); *cf. Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 537 F.3d 667, 708 n.17 (D.C. Cir. 2008) (Kavanaugh, J., dissenting) (citing *Eaton* for the proposition that "[t]he temporary nature of the office is the . . . reason that *acting* heads of departments are permitted to exercise authority without Senate confirmation"), *aff'd in part and rev'd in part*, 561 U.S. 447 (2010).

Finally, even if Senate confirmation were required, Mr. Wolf's prior confirmation as Under Secretary satisfies any confirmation requirement because the duties of the Secretary are germane to his position as Under Secretary. The Supreme Court has held that officers confirmed by the Senate for one office may serve in a second office that requires Senate confirmation --- without a second confirmation --- so long as the role of the second office is "germane" to the first office. *Weiss v. United States*, 510 U.S. 163, 176 (1994). Here, the duties of the Secretary are "germane" to Mr. Wolf's position as Under Secretary.

## Conclusion

This Court should deny Defendant's motion to dismiss the indictment due to an alleged Appointment Clause violation because, the pending charges were properly brought by a Grand Jury and endorsed by the United States Attorney Office in the Western District of Arkansas, the authority of the HSI agents involved in this case do not derive from the Secretary of the Department of Homeland Security, and finally, Acting Secretaries McAleenan and Wolf were properly designated to their respective positions.

Respectfully submitted,

By: */s/ Dustin Roberts*

Dustin Roberts
Assistant United States Attorney
Arkansas Bar No. 2005185
414 Parker Avenue
Fort Smith, AR 72901
Office: 479-249-9034

*/s/ Carly Marshall*

Carly Marshall
Assistant United States Attorney
Arkansas Bar No. 2012173
414 Parker Avenue
Fort Smith, AR 72901
Office: 479-249-9034

AND

*/s/ William G. Clayman*

William G. Clayman
D.C. Bar No. 1552464
Trial Attorney
Child Exploitation and Obscenity Section
U.S. Department of Justice
1301 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-514-5780
Email: william.clayman@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Dustin Roberts, Assistant United States Attorney for the Western District of Arkansas, hereby certify that a true and correct copy of the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

Justin Gelfand, Travis Story, Gregory Payne, Attorneys for the Defendant.

*/s/ Dustin Roberts*

Dustin Roberts
Assistant United States Attorney

19