**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:21-CR-50014-001** |
| | ) | |
| **JOSHUA JAMES DUGGAR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT FOR VIOLATION OF THE APPOINTMENTS CLAUSE

Defendant Joshua James Duggar ("Duggar"), by and through undersigned counsel, respectfully replies in response to the Government's response in opposition to Duggar's motion to dismiss the indictment for violation of the Appointments Clause (Doc. 48) (the "Government's Response").

What stands out about the Government's Response is its deafening silence regarding the legal authority directly on point rejecting the Government's position. Even though Duggar relied extensively on the August 14, 2020 Decision published by the non-partisan United States Government Accountability Office ("GAO") and on the United States District Court for the District of Maryland's decision in *Casa de Maryland, Inc. v. Wolf*, 486 F.Supp.3d 928 (D. Md. 2020)—both of which expressly found that Chad Wolf and Kevin McAleenan held the position of Acting Secretary of Homeland Security without lawful authority—the Government fails to even address, let alone meaningfully engage with, this authority. And for good reason: the GAO Report and the district court's decision in *Casa de Maryland* are correct, and the Government has no meaningful response to offer.

But what is particularly stunning is that the Government relies extensively on two declarations by Juliana Blackwell and Neal Swartz in support of its position in this case. *See* Doc. 48-2 (Blackwell Declaration Dated September 10, 2021) and Doc. 48-3 (Swartz Declaration Dated September 9, 2021). However, in relying on these declarations, the Government surprisingly fails to acknowledge that both affidavits were submitted virtually *verbatim*[1] in *Casa de Maryland* wherein the district court plainly rejected the Government's position. *See Casa de Maryland*, Docs. 41-1 and 41-2 (Aug. 30, 2020). The Government's stubborn reliance on worn declarations and arguments already rejected by a federal district court—cited by Duggar and entirely ignored by the Government in its response—speaks volumes.

Indeed, the Government's response fails to address other important legal authority cited by Duggar in his motion and fails to even acknowledge HSI Special Agent Faulkner's under-oath factual admission that, "at all times" in this case, he was "working under the authority of the Department of Homeland Security and whoever was in charge." *See* Det. Hearing Tr. at 80-81. The Government ignores the Third Circuit's recent decision establishing that "[a]n individual litigant need not show direct harm or prejudice caused by an Appointments Clause violation" because "[s]uch harm is presumed." *Cirko on behalf of Cirko v. Commissioner of Social Security*, 948 F.3d 148, 154 (3d Cir. 2020). And the Government ignores binding U.S. Supreme Court precedent that the Appointments Clause "is among the significant structural safeguards of the constitutional scheme," *Edmond v. United States*, 520 U.S. 651, 659 (1997), and that structural error is "subject to automatic reversal" in the event of a conviction, *Neder v. United States*, 527 U.S. 1, 8 (1999).

---

[1] The Blackwell Declaration is identical but adds a single exhibit. The Swartz Declaration is identical.

I.   **This Court Should Start With the Constitutional Question Resolved by the GAO and the District Court in Maryland: That McAleenan and Wolf Held the Position of Acting Secretary of Homeland Security "Without Lawful Authority"**

No matter how many times the Government attempts to reframe the threshold issue before this Court, the bottom line is that this entire investigation by DHS-HSI lacked legal authority because McAleenan and Wolf both held the position of Acting Secretary of Homeland Security "without lawful authority." *Casa de Maryland, Inc.*, 486 F.Supp.3d at 958; *see also* GAO Report ("Because the incorrect official assumed the title of Acting Secretary [when Nielsen resigned], subsequent amendments to the order of succession made by that official [McAleenan] were invalid and officials who assumed their positions under such amendments, including Chad Wolf and Kenneth Cuccinelli, were named by reference to an invalid order of succession").

With respect to this legal authority, which is directly on point, the Government is silent in its response as if the GAO Report and *Casa de Maryland* do not exist. *See* Doc. 48. Indeed, other federal courts have reached identical conclusions. *See, e.g., Batalla Vidal v. Wolf*, 501 F.Supp.3d 117, 123 (E.D.N.Y. 2020) ("the court holds that Mr. Wolf was not lawfully serving as Acting Secretary of Homeland Security under the Homeland Security Act[.]"); *Immigrant Legal Res. Ctr. v. Wolf*, 491 F.Supp.3d 520, 535 (N.D. Cal. 2020) ("The Court finds the reasoning set forth in...*Casa de Maryland* on the succession issue highly persuasive, and like the *Casa de Maryland* court concludes that Plaintiffs are likely to show that the appointments were not lawful..."). But instead of acknowledging this legal authority, the Government asks this Court to conclude otherwise based on declarations by DHS official Juliana Blackwell and DHS Associate General Counsel Neal Swartz—ignoring that these very same declarations in support of these very same arguments were not already submitted by DHS in *Casa de Maryland* and rejected outright.

This Court should conclude—like the district courts in *Casa de Maryland*, *Batalla Vidal*, and *Immigrant Legal Res. Ctr.*, and the GAO—that the Government's argument here is without merit and that McAleenan and Wolf held the position of Acting Secretary of Homeland Security without lawful authority. And the Government's failure to even acknowledge this highly persuasive adverse legal authority underscores that the Government has no good response.

Instead, the Government submitted an agency counsel's declaration asserting—with no explanation or legal support—that a largely redacted April 9, 2019 Memorandum signed by Nielsen somehow superseded the Orders of Succession. *See* Swartz Declaration at ¶ 3. But this Court should easily reject this contention.

*First*, "Secretary Nielsen resigned her position, effective April 7, 2019, in a letter to President Trump." *Batalla Vidal*, 501 F.Supp.3d at 124; *see also* Resignation Letter of Secretary of Homeland Security Kirstjen M. Nielsen  ("I hereby resign from the position of Secretary of the U.S. Department of Homeland Security (DHS), effective April 7th 2019").[2] So it is entirely unclear how any action by Secretary Neilsen *after* the date of her resignation would have any legal force and would not be *ultra vires*—and neither the Government's Response nor the Swartz Declaration addresses this problem.

*Second*, the Memorandum does not somehow make McAleenan Nielsen's valid successor. Rather, the Memorandum purports to Amend Annex A of Delegation 00106, but Annex A only applies if the Secretary is unavailable "during a disaster or catastrophic emergency," not when the Secretary resigns. *See Batalla Vidal*, 501 F.Supp.3d at 125 ("Annex A was, at that point, still only applicable in the event of the Secretary's unavailability during a disaster or catastrophic

---

[2]    *See* Resignation Letter on Department of Homeland Security website, available at https://www.dhs.gov/sites/default/files/publications/19_0407_s1_nielsen-resignation-letter.pdf (last accessed September 23, 2021).

emergency"). In his declaration submitted by the Government in this case, agency counsel Swartz states that Annex A then "controlled the succession order for every vacancy in the office of the Secretary, no matter the reason for the vacancy." *See* Doc. 48-3 at ¶ 3. The district court in *Batalla Vidal* addressed this precise contention in an identical declaration by Swartz dated in June 2020: "Therefore, the Government urges the court to ignore official agency policy documents and invalidate the plain text of the April Delegation because it does not comport with her supposed intent, although it comports perfectly with the text of her official order." *Batalla Vidal*, 501 F.Supp.3d at 132. The district court continued:

> The Government's reading of the documents is tortured. On the plain text, Secretary Nielsen amended the order of officials in Annex A but did nothing to change when Annex A applied, which was 'in the event [the Secretary is] unavailable to act during a disaster or catastrophic emergency.' (Revision 08.5 at ECF p. 64.) The court credits the text of the law over *ex post* explanations that the text means something other than what it says.

*Id*. That the Government is continuing to advance the same misguided theory with the same declaration by the same affiant that has been repeatedly rejected by federal courts is remarkable— and that the Government does not even acknowledge the compelling adverse legal authority rejecting its position is difficult to overlook.

*Third*, McAleenan purported to amend Delegation 00106 on November 8, 2019 by removing the text, "[i]n case of the Secretary's death, resignation, or inability to perform the functions of the Office, the orderly succession of officials is governed by Executive Order 13753, amended on December 9, 2016" with substitute text stating, "[i]n case of the Secretary's death, resignation, or inability to perform the functions of the Office, the order of succession is governed by Annex A." *See* Blackwell Decl. Ex. 5. But to be clear, such an amendment would have been entirely unnecessary if Nielsen had already made Annex A the succession list in the case of a Secretary of Homeland Security's resignation as the Government now claims. *See* Doc. 48. Neither

the Government's Response nor the declarations in support address this logical fallacy rebutting its contention.

*Fourth*, the Government seems to rely on the bizarre argument that the April 9, 2019 Memorandum and the corresponding April 10, 2019 amendments to the Orders of Succession are somehow relevant, even though they were clearly *ultra vires* because Nielsen made them after resigning effective April 7, 2019. This Court should reach the same simple factual conclusion the district court in *Batalla Vidal* reached: "Secretary Nielsen resigned her position, effective April 7, 2019, in a letter to President Trump." *Batalla Vidal*, 501 F.Supp.3d at 125.

Against this backdrop, it is no surprise that courts in the District of Maryland, the Eastern District of New York, and the Northern District of California, along with the GAO, each correctly concluded that McAleenan and Wolf had no authority to hold the position of Secretary of Homeland Security—but nevertheless occupied that position from April 10, 2019 through January 11, 2021.

Thus, the question before this Court becomes: what, if any, significance is there to the fact that McAleenan and Wolf were in charge of DHS without lawful authority for purposes of this case?

## II.     Contrary to the Government's Contentions, It Matters Profoundly That This Case Was Investigated Entirely By DHS-HSI During a Time When the PAS Position Was Occupied Unlawfully by McAleenan and Wolf

In its Response, the Government completely ignores a critical factual admission by its lead special agent:

**Q**:     …this was an HSI case, a Department of Homeland Security case, correct?

**A**:     That is correct. Yes, sir.

**Q**:     Okay. And so at all times, you were working under the authority of the Department of Homeland Security and whoever was in charge, correct?

6

**A**:     That is correct. Yes, sir.

*See* Det. Hearing Tr. at 80-81. Indeed, this testimony is entirely consistent with the statutory scheme under which *agents* perform law enforcement duties under the authority of the Secretary of Homeland Security. *See* 10 U.S.C. § 1589(a)(2)-(4) and 6 U.S.C. § 203(1) (the "functions, personnel, assets, and liabilities" of various prior federal departments were "transferred to the Secretary [of Homeland Security]").

In its Response, the Government argues that McAleenan and Wolf were not personally involved in investigating Duggar and that DHS-HSI Special Agents Faulkner and Aycock as "the investigative agents in this case" somehow had legal authority to act because both "had been acting with federal authority long before 2019." *See* Doc. 48 at 5. But this argument misses the mark entirely. Faulkner and Aycock were not principal officers requiring Presidential appointment and Senate confirmation. Thus, their authority to investigate as *agents* is derived entirely from the authority of the principal officer under whom they work: the Secretary of Homeland Security. Otherwise, the Government's analysis would turn every line federal agent into a principal officer. So unless the Government is advancing the theory that Faulkner and Aycock are principal officers—in which case they were never Presidentially-appointed or Senate-confirmed in violation of the Appointments Clause—their authority necessarily derived from the principal officer under whom they worked: the Secretary of Homeland Security. *See Casa de Maryland, Inc*., 486 F.Supp.3d at 950 ("It is undisputed that the office of the DHS Secretary is one subject to Presidential nomination and Senate Confirmation, otherwise known as a 'PAS' position"); *see also* 6 U.S.C. § 112(a)(1) ("There is a Secretary of Homeland Security, appointed by the President, by and with the advice and consent of the Senate"). Thus, the Government's argument is a red herring.

In its Response, the Government also attempts to sidestep the fundamental premise of Duggar's motion: that Appointments Clause violations are structural. *See N.L.R.B. v. SW General, Inc.*, 137 S. Ct. 929, 935 (2017) ("The Senate's advice and consent power is a critical structural safeguard of the constitutional scheme") (internal quotations and citations omitted). *Edmond v. United States*, 520 U.S. 651, 659 (1997) (The Appointments Clause "is among the significant structural safeguards of the constitutional scheme"); *Landry v. F.D.I.C.*, 204 F.3d 1125, 1130 (D.C. Cir. 2000) ("Violations of the Appointments Clause are 'structural,' because of its purpose to prevent encroachment of one branch on another and to preserve the Constitution's structural integrity") (internal citations omitted).

Indeed, the Government completely ignores the Third Circuit's recent 2020 decision establishing that "[a]n individual litigant need not show direct harm or prejudice caused by an Appointments Clause violation" because "[s]uch harm is presumed." *Cirko on behalf of Cirko*, 948 F.3d at 154. And the Government completely ignores binding U.S. Supreme Court precedent that structural error is "subject to automatic reversal" in the event of a conviction. *Neder*, 527 U.S. at 8.

Instead, the Government attempts to circumvent structural error by advancing the theory that submitting an investigation conducted in violation of the Appointments Clause to a grand jury somehow cleanses the structural error. *See* Doc. 48 at 2-5. But when reading the Government's Response, it is easy to lose sight of the fact that no authority supports the premise that a structural Appointments Clause violation can be remedied by *anything*. Certainly, and dispositive here, there is no authority that supports an argument that a structural error somehow evaporates because a grand jury returned an indictment.

In this case, Duggar's constitutional challenge is *not* what the Government characterizes as a "a challenge to the competency of the evidence considered by the grand jury." *See id*. at 3. Rather, Duggar is challenging the authority of the agency that investigated this case—which is a structural challenge that turns on *who* was acting as opposed to what, if any, evidence was obtained.

And tellingly, while relying so heavily on the grand jury's action in returning the indictment, the Government curiously omits that during the investigation of this case, DHS-HSI did *not* use grand jury subpoena power to obtain evidence but, instead, actively circumvented the grand jury process by using Department of Homeland Security Summonses pursuant to 19 U.S.C. § 1509. *See, e.g.,* Exhibit 1 (example of an agency summons utilized in this case). That statute exclusively provides the summons power to "the Secretary." 19 U.S.C. § 1509(a) ("Authority"). There is simply no legal authority supporting the premise that subjecting a structural Appointments Clause violation to a grand jury somehow cleanses the Appointments Clause violation and makes it go away—but that is precisely what the Government is advocating in this case, despite having investigated this case using DHS Summonses.

In its Response, the Government also misses the mark by arguing there is somehow a difference between this case and the abundance of legal authority where courts reject the argument that individuals should remain subject to the actions of those who acted without power—because, as the Government frames it, "Acting Secretaries McAleenan and Wolf took no actions related to the defendant…So those cases do not help him." *See* Doc. 48 at 8. But what turns the Government's position on its head is that the DHS-HSI *agents* whose actions were under the authority of *principal officers* without proper power necessarily means that the actions of the *agents* were just as

9

unconstitutional as if the *principals* had acted themselves. For instance, the law does not give HSI *agents* compulsory summons power; it gives it to "the Secretary."

Finally, the Government relies exclusively on *Eaton* for the premise that maybe McAleenan and Wolf were not principal officers. *See* Doc. 48 at 16-17.  In *United States v. Eaton*, 169 U.S. 331 (1898), the Supreme Court rejected an Appointments Clause challenge to the position of vice-consul. At the time, the Government had a consul-general who performed diplomatic functions in foreign countries—a principal officer confirmed by the Senate. Congress recognized that the consul-general could become ill at a time when sending a replacement was time-consuming and dangerous. Thus, Congress provided for "the designation in advance" of a vice-consul empowered to carry out the consul-general's responsibilities in the event of an exigency. *Id*. at 339. Even when the vice-consul performed the consul-general's duties, he remained the consul-general's "subordinate." *Id*.

In *Eaton*, the consul-general in Siam (now Thailand) became gravely ill and left by boat for the United States. Eaton served as vice-consul during this exigent vacancy, but the Government did not want to pay Eaton for his service in this capacity (the vice-consul was only entitled to payment when he performed the consul-general's duties). In a challenge regarding whether the Government had to pay Eaton, the Supreme Court determined that vice-consuls were inferior officers. *Id*. at 343-44. In doing so, the Court approved the practice at the time that any individual serving the functions of a consul-general temporarily—even a consul's son following the consul's death—was permissible. *Id*. at 344.

This is a far cry from the Appointments Clause violation in this case. McAleenan and Wolf were no vice-consuls to Siam who took over after Nielsen embarked on the long, arduous journey home from a foreign land, gravely ill, leaving no Senate-confirmed official behind. McAleenan

and Wolf held one of the most important and powerful positions in the world—tasked with protecting the nation from threats. The Government's attempt to endlessly widen *Eaton*'s applicability does not hold water. *Eaton* concerned a subordinate officer charged with the performance of the duty of a superior "for a limited time, *and under special and temporary conditions*[.]" *Eaton*, 169 U.S. at 343 (emphasis added). In this case, the proper successor under the Homeland Security Act had been confirmed by the Senate at the time of the vacancy: Christopher Krebs.

The bottom line is this: the Appointments Clause was violated when McAleenan and Wolf unlawfully held the position of Acting Secretary of Homeland Security without lawful authority. During that time, the Department of Homeland Security exclusively investigated this case—circumventing the grand jury process by utilizing agency summonses empowering McAleenan and Wolf to compel the disclosure of documents in lieu of grand jury subpoenas. The Government argues Duggar is entitled to no relief for this structural Constitutional violation, but compelling legal precedent dictates otherwise.

Moreover, the Federal Vacancies Reform Act ("FVRA") provides that all actions under an invalidly installed agency head "shall have no force or effect…[and] may not be ratified." 5 U.S.C. § 3348(d)(1)-(2). But the Government offers no response.

Additionally, binding Supreme Court precedent dictates that structural error is "subject to automatic reversal" in the event of a conviction. *See Neder v. United States*, 527 U.S. 1, 8 (1999). And the Government's attempt to impose a burden on Duggar to show prejudice has been consistently rejected by federal courts in the context of Appointments Clause violations:

> Our precedents say otherwise. We have held that a litigant challenging governmental action as void on the basis of the separation of powers is not required to prove that the Government's course of conduct would have been different in a

"counterfactual world" in which the Government had acted with constitutional authority.

*Seila Law LLC v. Consumer Fin. Prot. Bureau,* 140 S. Ct. 2183, 2196 (2020) (finding "the CFPB Director is not an inferior officer, a[s] her duties are far from limited[, u]nlike the independent counsel, who lacked policymaking or administrative authority….the CFPB Director has the authority to bring the coercive power of the state to bear on millions of private citizens and businesses"); *see also Noel Canning v. N.L.R.B.*, 705 F.3d 490, 493 (D.C. Cir. 2013), *aff'd* 573 U.S. 513 (2014) (holding an enforcement order "void *ab initio*" due to lack of valid appointment); *Cirko on behalf of Cirko*, 948 F.3d at 154 ("[a]n individual litigant need not show direct harm or prejudice caused by an Appointments Clause violation" because "[s]uch harm is presumed").

Just as the plaintiffs in *Casa de Maryland* and *Batalla Vidal* brought valid Appointments Clause challenges involving unconstitutional agency actions under the purported authority of McAleenan and Wolf, so too has Duggar in this case. That those were civil cases is of no moment—because criminal defendants are entitled even greater protections from unconstitutional governmental action.

## III.    Conclusion

Based on the foregoing and on the arguments set out in Duggar's motion (Doc. 39), this Court should dismiss the indictment and grant other such relief as this Court may deem just and appropriate. Despite any suggestion that such a remedy is drastic, the Constitution commands that principal officers must comply with the Appointments Clause: "[t]he troublesome need to do so is not a bug to be fixed by this Court, but a calculated feature of the constitutional framework." *Noel Canning*, 134 S.Ct. at 2610 (Scalia, J., concurring). To allow the actions that occurred here to stand without consequence would condone a violation of the most core protection of liberty embedded in this nation's constitutional design.

Respectfully submitted,

**Margulis Gelfand, LLC**

  /s/ Justin K. Gelfand
JUSTIN K. GELFAND, MO Bar No. 62265*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*
*Admitted Pro Hac Vice*

--- *and* ---

**Story Law Firm, PLLC**

/s/ Travis W. Story
Travis W. Story, AR Bar No. 2008278
Gregory F. Payne, AR Bar No. 2017008
3608 Steele Blvd., #105
Fayetteville, AR 72703
Telephone: (479) 448-3700
Facsimile: (479) 443-3701
travis@storylawfirm.com
greg@storylawfirm.com

13

**<u>Certificate of Service</u>**

I hereby certify that  the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

 */s/ Justin K. Gelfand*                    
JUSTIN K. GELFAND, MO Bar No. 62265*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*
**Admitted Pro Hac Vice*

14