IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:21-CR-50014-001 |
| ) | |
| JOSHUA JAMES DUGGAR, ) | |
| ) | |
| Defendant. ) | |

**<u>DEFENDANT'S REPLY IN SUPPORT OF MOTION TO SUPPRESS STATEMENTS</u>**

Defendant Joshua James Duggar ("Duggar"), by and through undersigned counsel, respectfully replies in support of his motion to suppress statements allegedly made by Duggar after he attempted to contact counsel and after federal agents physically stopped him from communicating with his attorney. (Doc. 36).

The Government's Response (Doc. 44) ultimately boils down to this: *first*, Duggar did not unequivocally invoke his right to counsel by physically taking out his phone and communicating to law enforcement he was attempting to make contact with his attorney before law enforcement physically took his phone out of his hand preventing him from speaking with counsel; *second*, Duggar was not in custody when law enforcement approached him, escorted him to a law enforcement vehicle, and interrogated him without counsel present; and *third*, Duggar consented to the interrogation without any use of strong-arm tactics or deceptive strategies by law enforcement despite having earlier asserted his constitutional right to counsel only to have law enforcement physically stop him from exercising that right.

As will be further set out at the evidentiary hearing, Duggar not only unequivocally invoked his right to counsel but he attempted to speak with counsel and was physically stopped from doing

so by law enforcement; the interrogation was custodial under the objective standard that applies to this Court's analysis; and Duggar's alleged *Miranda* waiver was not voluntary and, in any event, is irrelevant because his counsel was not physically present as binding precedent requires.

### I. Duggar Unequivocally Invoked His Right to Counsel

In its Response, the Government argues Duggar did not unequivocally invoke his right to counsel. *See* Doc. 44 at 12-15.

As a threshold matter, the Government does not address the under-oath testimony already provided by HSI Special Agent Gerald Faulkner readily admitting that Duggar expressly "said he wanted to call his lawyer," took his phone out of his pocket specifically "to make contact with his attorney," and that law enforcement "physically took the phone out of his hand before he could contact his attorney." (Det. Hearing Tr. at 70-71). This is a far cry from the cases on which the Government relies wherein suspects voiced "maybe I should talk to a lawyer" and "I don't have a lawyer. I guess I need to get one, don't I?" *See* Doc. 44 at 13 (citing *Davis v. United States*, 512 U.S. 452, 462 (1992) and *United States v. Havlik*, 710 F.3d 818, 821 (8th Cir. 2013)). Duggar did not say "maybe I should talk to a lawyer" or express that he did not "have a lawyer." *Id*. In stark contrast, Duggar expressly stated he did have a lawyer, expressed that he was attempting to contact him, and actively attempted to contact him. (Det. Hearing Tr. at 70-71).

Furthermore, the Government relies on *McNeil* in support of its broad argument that the invocation of the right to counsel must be for the purpose of "dealing with custodial interrogation by the police." *See* Doc. 44 at 13 (citing *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). But *McNeil* involved a defendant who requested appointment of counsel at a bail hearing in an entirely unrelated matter and the subsequent interrogation on a different day regarding unrelated, uncharged offenses. *McNeil*, 501 U.S. at 174-75. The Supreme Court merely held that

"[r]equesting the assistance of an attorney at a bail hearing" on one charge does not provide an absolute shield to police interrogation "on unrelated, uncharged offenses." *See id*. at 175, 178.

The Government also relies on the Ninth Circuit's opinion in *United States v. Doe*, 170 F.3d 1162 (9th Cir. 1999), asserting it stands for the premise that the invocation of the right to counsel must "reflect that it is for the specific purpose of having counsel present during custodial interrogation." *See* Doc. 44 at 13. But *Doe* stands for no such legal standard. Rather, the suspect in that case merely asked, "What time will I see a lawyer?" and the Ninth Circuit concluded that question merely "addressed when, in the course of the judicial process, Doe would be appointed counsel," thereby causing the appellate panel to conclude "that Doe's question was an inquiry regarding the time at which appointed counsel would be made available." *Doe*, 170 F.3d at 1166. Duggar did not ask when in the judicial process he would be appointed counsel; he attempted to contact his retained counsel.

Similarly, the Government relies on the First Circuit's opinion in *Grant-Chase v. Commissioner*, 145 F.3d 431 (1st Cir. 1998), claiming it stands for the proposition that "it was ambiguous as to whether the defendant merely wanted advice from counsel regarding how to handle imminent questioning by the police, or whether the defendant was in fact invoking her *Miranda* right to have counsel present for interrogation." *See* Doc. 44 at 14. But the fact that the Government would even cite this case is stunning. In *Grant-Chase*, the suspect asked to call her attorney before being interrogated and the officer obtained her purse and provided the suspect with her phone so that she could—and did—contact her attorney. *Grant-Chase*, 145 F.3d at 433. After speaking with her attorney, she consented to an interview. *See id*. In this case, the two federal agents did not provide Duggar with his phone so he could speak with his attorney—they physically took the phone out of his hands when he was attempting to do so.

The bottom line is that there is nothing more unequivocal than calling one's attorney—only to be physically stopped from doing so by law enforcement.

## II.     The Police-Initiated Interrogation Was Custodial

In its Response, the Government correctly acknowledges that, when taking and considering evidence on this issue, the determination of whether an interrogation was custodial is an objective standard. *See* Doc. 44 at 6; *see also Stansbury v. California*, 511 U.S. 318, 323 (1994) ("the determination of custody depends on the objective circumstances…not on the subjective view harbored by either the interrogating officers or the person being questioned").

Yet the Government relies on inapposite legal authority in support of its contention that this interrogation was not custodial. For instance, the Government argues that *Berkemer* defines custody as only when a person's "freedom of action is curtailed to a degree associated with a formal arrest." *See* Doc. 44 at 6 (citing *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). But a closer read of this case reveals it provides no help toward the resolution of the issue now before this Court. *Berkemer* was a case about traffic stops and the Supreme Court struggled with two possible bright line rules: "Either a rule that Miranda applies to all traffic stops or a rule that a suspect need not be advised of his rights until he is formally placed under arrest would provide a clearer, more easily administered line. However, each of these two alternatives has drawbacks that make it unacceptable. The first would substantially impede the enforcement of the Nation's traffic laws—by compelling the police either to take the time to warn all detained motorists of their constitutional rights…The second would enable the police to circumvent the constraints on custodial interrogations established by Miranda." *Berkemer*, 468 U.S. at 441. Duggar was not subjected to a traffic stop and the Government's repeated assertions that law enforcement told him he was not under arrest does not "circumvent the constraints on custodial interrogations." *Id*.

In this case, the Government attempts to downplay what actually transpired—and what this Court should focus on at the evidentiary hearing. For instance, the Government asserts that when Duggar took his phone out to call his attorney, the federal agent "then, using just one hand, took the phone out of Duggar's hand with minimal or no physical contact." *See* Doc. 44 at 3. And the Government actually argues that it was Duggar who "took the initiative to make statements to law enforcement without any questioning, which cuts against a finding that the interview was custodial" (Doc. 44 at 11), even though the Government readily acknowledges—as it must—that "law enforcement approached him and asked if he wanted to discuss the warrant." (*Id*. at 9).

Evidence that the interrogation was custodial is abundant. The very first action law enforcement took upon arriving on scene was to physically stop Duggar from exercising his constitutional right to speak with his attorney. If that would not create an intimidating and coercive environment in which a reasonable person would feel insecure about his ability to assert his rights and to make voluntary choices, it is difficult to imagine what would. Furthermore, the Government's Response is silent as to the fact that law enforcement claim they refused to provide Duggar with a copy of the search warrant—which they had the legal obligation to do—until leaving, thereby creating a circumstance in which Duggar was not free to leave if he was unwilling to surrender the right to review the warrant. On top of all of this, it was law enforcement who approached Duggar "to discuss the warrant" (*Id*. at 9), and the Government asks this Court to read into the fact that law enforcement claims Duggar complied with law enforcement's request—but that act cannot be considered in a vacuum. That act must be considered recognizing that on the very same day at the very same location with the very same agents, Duggar attempted to exercise a constitutional right and law enforcement physically stopped him from doing so. Finally, the Government takes issue with Duggar's characterization that he was escorted to the law

enforcement vehicle—apparently implying that it was Duggar's idea to sit inside a law enforcement vehicle with two armed federal agents. In this regard, the Government asks this Court to conclude that *Hoeffener* stands for the proposition "that a defendant was not in custody for purposes of *Miranda* when interviewed in a law enforcement vehicle." *See* Doc. 44 at 10 (citing *United States v. Hoeffener*, 950 F.3d 1037, 1046 (8th Cir. 2020). But unlike Duggar, Mr. Hoeffener had not attempted to call his attorney only to be physically stopped from doing so by law enforcement. *See id*.

### III. Duggar Did Not Knowingly and Voluntarily Waive His *Miranda* Rights

There is no dispute between the parties that "waivers of constitutional rights not only must be voluntary, but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *See* Doc. 44 at 17; *see also Brady v. United States*, 397 U.S. 742, 748 (1970). The law requires this Court to "indulge in every reasonable presumption against waiver." *Brewer v. Williams*, 430 U.S. 387, 404 (1977) (emphasis added). *See also United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (one line of inquiry into waiver was whether it was "the product of a free and deliberate choice").

To that end, whether Duggar waived his rights under *Miranda* is a red herring because Duggar had already invoked his right to counsel. And when that occurs, the law is clear-cut: "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation *without counsel present*, whether or not the accused has consulted with his attorney." *Minnick v. Mississippi*, 498 U.S. 146, 152-53 (1990) (law enforcement "may not initiate questioning of the accused *in counsel's absence*") (emphasis added).

As such, this Court's analysis on this issue should end because there is no dispute—and the evidence will surely establish—that counsel was not present during this interrogation of Duggar.

But even if this Court turns to the issue of whether there was a knowing and voluntary waiver, there was not—especially when this Court "indulge[s] in every reasonable presumption against waiver." *Brewer*, 430 U.S. at 404.

Remarkably, this analysis would require this Court to look to two separate inquiries: *first*, the question law enforcement claims Duggar asked before the recording equipment was turned on; and *second*, the statements Duggar allegedly made after the recording equipment was turned on. This is because, to the extent the *Miranda* form means anything at all, it was not even allegedly signed until *after* the recording equipment was turned on.

Even based on the Government's recitation of what transpired that day—which Duggar factually disputes—law enforcement claims Duggar asked a question regarding the nature of the search warrant. Thus, even taking the Government's factual contention at face value, which this Court will have to evaluate based on the evidence adduced, Special Agent Howard Aycock purportedly decided not to answer the question and instead handed him the "Statement of Rights" form. *See* Doc. 44 at 3-4. At this time, the Government claims Duggar was inside a police vehicle with two federal agents present and other federal agents searching the business. Thus, Aycock essentially required Duggar to waive his constitutional rights before receiving an answer to a simple question. It is the epitome of intimidation and coercion to require a person to waive constitutional rights before disclosing the nature of the search warrant being executed at the business and before providing proof that there even was a purportedly valid search warrant authorizing the search. The point is, even as the Government sets out its version of events, there is

clearly no basis to conclude that any such waiver was knowing or voluntary when the totality of the circumstances is taken into account.

### IV.     Conclusion

As already set out in the record before this Court and as will be further established at the evidentiary hearing, Duggar unequivocally invoked his right to counsel by taking out his phone and communicating to law enforcement he was attempting to make contact with his attorney before law enforcement physically took his phone out of his hand before he could speak with counsel. Furthermore, when law enforcement approached him, escorted him to a law enforcement vehicle, and interrogated him without counsel present, the circumstances were such where a reasonable person would conclude that his freedom of action had been deprived, especially having already asserted a constitutional right that was entirely ignored by law enforcement. And finally, Duggar did not knowingly and voluntarily waive his rights. As such, Duggar's statements should be suppressed.

Respectfully submitted,

**Margulis Gelfand, LLC**

 /s/ Justin K. Gelfand
JUSTIN K. GELFAND, MO Bar No. 62265*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*
*\*Admitted Pro Hac Vice*

*--- and ---*

**Story Law Firm, PLLC**

*/s/ Travis W. Story*
Travis W. Story, AR Bar No. 2008278
Gregory F. Payne, AR Bar No. 2017008
3608 Steele Blvd., #105
Fayetteville, AR 72703
Telephone: (479) 448-3700
Facsimile: (479) 443-3701
travis@storylawfirm.com
greg@storylawfirm.com

## Certificate of Service

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

       /s/ Justin K. Gelfand
JUSTIN K. GELFAND, MO Bar No. 62265*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*
*Admitted Pro Hac Vice