**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:21-CR-50014-001 |
| | ) | |
| JOSHUA JAMES DUGGAR, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS PHOTOGRAPHS OF DUGGAR'S HANDS AND FEET WHILE IN CUSTODY**

Defendant Joshua James Duggar ("Duggar"), by and through undersigned counsel, respectfully submits this reply in support of his motion to suppress photographs law enforcement took of Duggar's hands and feet while requiring him to pose for the photographs in custody.

What stands out about the Government's response is that the Government does not dispute that federal law enforcement required Duggar to physically pose for the photographs giving rise to this motion or that the photographs depict Duggar's hands and feet from atypical angles. This matters, because as the Eighth Circuit presupposed in the case law most directly on point, photographs of this nature require a warrant: "the photographs were evidence gathered during the execution of a valid search warrant." *United States v. Merrell*, 842 F.3d 577, 582 (8th Cir. 2016).

Indeed, the photographs taken on April 29, 2021 depict a defendant in the custody of the United States Department of Homeland Security ("HSI") after self-surrendering as instructed. The Government does not dispute, and the evidence will establish, that these photographs were taken after Duggar self-surrendered with the assistance of his local attorney in Fayetteville, Arkansas. And there is no dispute the Government did not obtain a warrant authorizing these photographs.

### I. This Court Should Reject the Government's Justification in its Response as a Non-Compelling *Post Hoc* Rationalization

In its Response, the Government attempts to downplay the Constitutional significance of Duggar's motion by asserting that the "photographs document a scar on the defendant's hand." Doc. 46 at 2. But this explanation does not comport with the actual photographs. In stark contrast, the photographs show both hands, not one "hand." *See id*. And the photographs document different angles of both hands, with differing levels of zoom from different vantage points. If the Government really sought to document one scar on one hand, a single photograph of a single hand would have sufficed without requiring Duggar to pose for different hand positions and without requiring his feet to be positioned in a specific matter. But what is more troubling about the Government's after-the-fact rationalization is that the agent taking the photographs presumably had to stand behind Duggar and reach over his shoulder to obtain the angle reflected in the photographs.

It is this combination of the manipulation by federal agents of Duggar's body, the awkward angles, the depiction of Duggar's feet along with his hands, and the photographing of both hands that disprove the Government's assertion that these are innocuous identification photos.

### II. Under the Fourth Amendment, the Government Was Required to Obtain a Warrant

Taking pictures of body parts in plain view, as the Government asserts does not require a warrant, would not require federal law enforcement to manipulate an in-custody defendant's body parts and would not invite photographs from the vantage point with which these photographs were taken. It is no surprise the Government made no mention of its intentions to Duggar in the presence of his attorney during the self-surrender process. Rather, the Government simply produced these photographs in discovery with no explanation or context.

The Government misplaces its reliance on the cases it cites and attempts to move the ball away from the clearly-delineated Eighth Circuit precedent regarding "photography of [] hands" under "a valid search warrant." *Merrell*, 842 F.3d at 581-82. Faced with this legal authority directly on point, the Government instead asks this Court to focus on cases that address photographs of a chest and voice identification. Indeed, the single case cited by the Government which relates to photographing body parts without a warrant or consent, *United States v. Anthony*, 4:18-cr-00012, 2019 WL 471984 (W.D. Va. Feb 5, 2019), is a district court case that can easily be distinguished from the issue now pending before this Court. In *Anthony*, the Government sought to photograph gang tattoos on the defendants' bodies. *Id*. In an entirely different context, the Government moved the district court to permit the photographs it sought and the court made a fact-specific ruling in the context of that particular case. *See id*. But that is a far cry from what the Government did in this case. Instead of seeking a warrant or raising the issue with this Court, the Government waited until Duggar had self-surrendered to law enforcement as instructed, was in custody and separated from his local counsel who accompanied him for the self-surrender, and then required him to pose for the photographs. Furthermore, in this case unlike in *Anthony*, a scar is not a voluntary application or artistic statement, like a tattoo, that Duggar voluntarily made visible to the public. And the only reason for taking these pictures that the Government provided in its Response was to compare them to photographs allegedly located on Duggar's personal cell phone.

Instead of focusing on a factually-distinguishable out-of-circuit outlier, this Court should look to the binding precedent directly on point: "In this case, the warrant specified that law enforcement could search '[t]he person of Roxanne Merrell, specifically body views and photography of her hands.'" *Merrell*, 842 F.3d at 581. Just as in that case, "the photographs were

3

evidence" that should have been "gathered during the execution of a valid search warrant." *Id*. at 582.

Because the Government did not obtain a warrant, the photographs should be suppressed.

### III. Law Enforcement Violated Duggar's Sixth Amendment Rights Because Counsel Was Not Present When the Photographs Were Taken

The Government broadly argues that photographs of physical characteristics for identification purposes are not a critical stage of criminal proceedings. Doc. 46 at 5 (citing *United States v. Nixon*, 15-cr-20020, 2015 WL 4430176, (E.D. Mich. July 20, 2015)).[1] That case can clearly be distinguished from the present case: first and foremost, the Government sought and obtained a warrant for those photographs. *Id.* at 1. Therefore, the analysis of Sixth Amendment claims in *Nixon* presupposes that counsel would have been unable to stop the taking of the pictures under the search warrant. For Duggar, there was no warrant. Thus, the Sixth Amendment implications are necessarily heightened in this case.

Instead, law enforcement took Duggar into custody, separated him from his counsel, never made his counsel aware of the Government's intention to take these photographs which are well beyond normal and expected booking photographs, and prevented Duggar from consulting with his attorney before these photographs were taken. This clearly requires a Sixth Amendment analysis not relevant in *Nixon*.

The Government also cites *Edwards v. Butler*, 882 F.2d 160 (5th Cir. 1989), and asserts in a conclusory manner that it stands for the proposition that all photographs in custody could never run afoul of the Sixth Amendment right to counsel. However, that is not what this Fifth Circuit case stands for. First, Edwards objected to photos of his face, not other body parts that required

---

[1] It should also be noted that the Government is only citing this case in response to the Sixth Amendment argument, because the Government, in *Nixon*, sought and received a search warrant to photograph the defendant.

manipulation. *Id.* at 164. Second, the Government merely states in its Response that *Edwards* "cit[es] cases" in support of its assertion that "the taking of photographs is not a critical stage of the proceedings." *See* Doc. 46 at 5. But the cases *Edwards* cites do not include a single piece of authority regarding photographs of any kind.

The bottom line is this: this Court should suppress these photographs under the Fourth Amendment. However, this Court should also suppress these photographs under the Sixth Amendment because the Government intends to use them for purposes other than identification. This is because if the photographs become more than "identification" evidence, then taking them occurred during a critical phase of the criminal proceedings in the same way a custodial interview would invoke Sixth Amendment protection.

### IV. Conclusion

Based on the foregoing, this Court should suppress photographs law enforcement took of Duggar's hands and feet while requiring him to pose for the photographs in custody.

Respectfully submitted,

**Margulis Gelfand, LLC**

 /s/ Justin K. Gelfand
JUSTIN K. GELFAND, MO Bar No. 62265*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*
*Admitted Pro Hac Vice

--- *and* ---

**Story Law Firm, PLLC**

<u>*/s/ Travis W. Story*</u>
Travis W. Story, AR Bar No. 2008278
Gregory F. Payne, AR Bar No. 2017008
3608 Steele Blvd., #105
Fayetteville, AR 72703
Telephone: (479) 448-3700
Facsimile: (479) 443-3701
travis@storylawfirm.com
greg@storylawfirm.com

## Certificate of Service

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

    /s/ Justin K. Gelfand
JUSTIN K. GELFAND, MO Bar No. 62265*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*
*Admitted Pro Hac Vice*