**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 5:21-CR-50014-001** |
| ) | |
| **JOSHUA JAMES DUGGAR,** ) | |
| ) | |
| **Defendant.** ) | |

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE ANY REFERENCE TO
DEFENDANT'S STATED DECISION DECLINING TO ANSWER CERTAIN
QUESTIONS POSED BY LAW ENFORCEMENT**

Defendant Joshua James Duggar ("Duggar"), by and through undersigned counsel, and pursuant to the Fifth Amendment to the United States Constitution, respectfully moves this Court to enter an order prohibiting the Government and any witnesses called by the Government from eliciting any evidence or argument, whether testimonial, documentary or demonstrative, of any kind whatsoever, with respect to Duggar's stated decision declining to answer certain questions posed to him by law enforcement during execution of the search warrant at a business on November 8, 2019.[1]

This motion does not seek to relitigate the suppression issues previously resolved by this Court. (*See* Doc. 61). Rather, this motion seeks to prevent the Government from making

---

[1] Duggar previously filed a motion to suppress all of his statements made to law enforcement on November 8, 2019 on the grounds that, *inter alia*, law enforcement seized his phone at a time that he intended to contact an attorney. In denying that motion, this Court concluded that "[b]ecause Duggar was never in custody, the protections under *Miranda* never attached and cannot serve as a basis to suppress Mr. Duggar's statements." (Doc. 61 at 10). In filing this motion *in limine*, Duggar respects this Court's prior ruling and this motion is in fact predicated on this Court's prior ruling denying suppression. Specifically, while Duggar does not concede that he was not custody when questioned by law enforcement and while Duggar preserves his prior arguments, this motion is premised on this Court's determination that he was not in custody.

evidentiary use of specific questions and statements where Duggar declined to answer those questions.

## I.      Background

Duggar is charged in a two-count indictment alleging one count of receipt of child pornography and one count of possession of child pornography. (Doc. 1). Duggar has pleaded not guilty to both counts.

On November 8, 2019, federal agents entered the business premises located at 14969 Wildcat Creek Road in Springdale, Arkansas. Based on discovery disclosed by the Government, DHS HSI agents allegedly approached Duggar, identified themselves as law enforcement officers and stated they were executing a federal search warrant. The agents seized Duggar's phone and, thereafter, "asked if he would be willing to discuss the details, the further details, surrounding the issuance of the federal search warrant." (Det. Hearing Tr. at 27). Special Agents then proceeded to question Duggar inside a government vehicle where he and two federal agents were present. (*Id*.). The agents then conducted a lengthy interrogation of Duggar. During this questioning, Duggar answered certain questions, but refused to answer others.

Specifically, during the questioning of Duggar, the following interactions, relevant to this motion in limine, transpired:

> AGENT AYCOCK: Okay. So now what I'm going to ask you is are you willing to speak with us now without an attorney present?
>
> JOSH DUGGAR: I mean, I may not answer everything, I guess, but yes.
>
> AGENT AYCOCK: Okay. All right.

(*See* Transcription of the Interview at 3-4).[2]

> JOSH DUGGAR: What is the scope of as far as, like, how -- I mean, answering some of these questions, I want to be truthful and up front –

---

[2] This Court utilized the transcription cited herein for purposes of deciding the suppression motion.

AGENT FAULKNER: Sure.

JOSH DUGGAR: -- or I just want to decline to answer, but I'm just curious as far as scope.

(*Id.* at 22).

AGENT FAULKNER: Anytime you don't feel the need to answer it –

JOSH DUGGAR: Yep.

AGENT FAULKNER: -- just let us know.

JOSH DUGGAR: Okay.

AGENT AYCOCK: Exactly.

(*Id.* at 25).

AGENT AYCOCK: Can you -- can you tell me a little bit about your knowledge of electronic devices like Torrent files, uTorrent, stuff like that?

JOSH DUGGAR: I'd rather not get into any specifics on knowledge.

AGENT AYCOCK: Okay. All right. Gerry, do you have anything else as far as that goes?

(*Id.* at 26-27).

AGENT FAULKNER: I think we're probably going to get to that point now where --

JOSH DUGGAR: Okay. Yeah.

AGENT FAULKNER: Where -- and I can't speak on your behalf --

JOSH DUGGAR: Yeah.

AGENT FAULKNER: -- that you're going to probably not going to answer too many more of our questions.

JOSH DUGGAR: No, I understand.

AGENT FAULKNER: Which, then, if that be the case, obviously we --

JOSH DUGGAR: Well, I just -- without legal counsel --

AGENT FAULKNER: I know. No, no.

JOSH DUGGAR: -- I don't want to --

AGENT FAULKNER: And here's the --

JOSH DUGGAR: -- say something. And like I say, everything that I've already said I'm going to say the best of my knowledge. I'm trying to be straightforward with you guys too.

AGENT FAULKNER: Absolutely.

JOSH DUGGAR: I'm trying to make that easier.

AGENT FAULKNER: Look, we appreciate that.

JOSH DUGGAR: I just don't want to get into entrapment of any sort.

AGENT FAULKNER: Right, absolutely.

JOSH DUGGAR: And I'm not saying that -- you know, I don't want to say something that I just think of right now and then not -- honestly.

(*Id.* at 27-28).

AGENT FAULKNER: Now, on you, but I've got to ask directly: Have you -- and I'm going to ask whoever else is here that was around during that time: Has there been any time on any electronic devices, intentionally or accidentally, where you've come across something of an inappropriate nature on the Internet and possibly got rid of it?

JOSH DUGGAR: Well, I -- I can't answer that question.

AGENT FAULKNER: I've got to ask it.

JOSH DUGGAR: Yeah.

AGENT FAULKNER: I've got to ask it.

JOSH DUGGAR: At any time you say. That's pretty broad.

(*Id.* at 53-54).

JOSH DUGGAR: I just don't want to get into any -- I don't want to get into blanket statements about anything.

AGENT FAULKNER: I get you.

4

(*Id.* at 55-56).

>AGENT FAULKNER: … So has there been anything in the past that you, or maybe you've seen that somebody else has been on their laptops, in passing by, that had inappropriate, by definition, child pornography images of kids ranging between 5 and 10 years of age.

>JOSH DUGGAR: I'd rather not answer that question.

>AGENT FAULKNER: Okay. That's perfectly fine.

>AGENT AYCOCK: That's your right.

(*Id.* at 57).

>AGENT FAULKNER: Here's the thing about that phone, and it's tricky. And, again, this is completely up to you.

>JOSH DUGGAR: Well, I can't -- I can't give you access to it without talking to my attorney.

>AGENT FAULKNER: Right.

(*Id.* at 60-61).

>AGENT FAULKNER: Now, if you give the PIN -- if you don't to, that's fine.

>JOSH DUGGAR: But I'll have to talk to my attorney first and then I can -- and then I can advise you.

>AGENT FAULKNER: What I –

>JOSH DUGGAR: If he says go ahead, then I'll say sure. I just don't want -- I mean, there's a lot of -- yeah.

(*Id.* at 62).

Stated succinctly, many times during his questioning, Duggar expressly conveyed to the agents that he was declining to answer certain questions as they told him he had the right to do.

Although this Court has concluded that the questioning of Duggar was noncustodial, the Fifth Amendment to the United States Constitution and United States Supreme Court precedent prohibits the Government from making evidentiary use of Duggar's refusal to answer certain

5

questions in its case-in-chief. As such, Duggar respectfully requests that this Court enter an order prohibiting the Government from making any use of Duggar's refusal to answer certain questions at trial.

**II.    Discussion**

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." Const. amend. V. The Fifth Amendment has been broadly construed to confer upon individuals a privilege against self-incrimination. *See, e.g., Hoffman v. United States*, 341 U.S. 479, 480 (1951). The privilege against self-incrimination "is an exception to the general principle that the Government has the right to everyone's testimony." *Garner v. United States,* 424 U.S. 648, 658, n. 11 (1976). And the rights conferred pursuant to the Fifth Amendment include the right to remain silent and the right to an attorney. *See, e.g, Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

These rights and privileges apply when an individual is in custody, but these same rights apply even where an individual is subjected to noncustodial, voluntary questioning by law enforcement so long as that individual invokes the privilege against self-incrimination in response to an officer's question. *See Salinas v. Texas,* 570 U.S. 178, 181 (2013).

In *Salinas*, a defendant who was not in custody voluntarily answered the questions of a police officer investigating a murder. *Id.* However, when the officer asked the defendant a question concerning his shotgun, the defendant "[l]ooked down at the floor, shuffled his feet, bit his bottom lip, cl[e]nched his hands in his lap, [and] began to tighten up." After a few moments of silence, the officer asked additional questions, which petitioner answered." *Id.* at 182 (internal citation to record omitted; brackets in original).

6

Eventually, the defendant was charged with a crime and proceeded to trial. *Id.* He did not testify but, over his objection, the prosecution used his silence and his reaction to the question concerning his shotgun as evidence of his guilt. *Id.* He was convicted and appealed. *Id.*

On appeal, the *Salinas* defendant argued that the prosecution's use of his silence as part of its case-in-chief violated the Fifth Amendment. *Id.* His conviction was affirmed, but the United States Supreme Court granted certiorari. *Id.* at 183.

Ultimately, the Supreme Court affirmed the conviction, but only because it concluded that the defendant had not expressly invoked his right to remain silent—instead, he had simply remained silent in the face of questioning. *Id.* at 181 ("Because petitioner was required to assert the privilege in order to benefit from it, the judgment of the Texas Court of Criminal Appeals rejecting petitioner's Fifth Amendment claim is affirmed"). That the defendant was subjected only to noncustodial, voluntary questioning had no bearing on a legal question separate from suppression: whether the Government could make evidentiary use of an express invocation of the right to remain silent in response to a particular question.

In reaching this conclusion, the Supreme Court unambiguously conveyed that where a defendant does, in fact, invoke a constitutional right—even in the context of noncustodial, entirely voluntary questioning by law enforcement—the Government may not make any use of that evidence at trial. Specifically, the Court explained:

> We have before us no allegation that petitioner's failure to assert the privilege was involuntary, and it would have been a simple matter for him to say that he was not answering the officer's question on Fifth Amendment grounds. Because he failed to do so, the prosecution's use of his noncustodial silence did not violate the Fifth Amendment.

*Id.* at 186. The Court then noted, "[o]ur cases establish that a defendant normally does not invoke the privilege by remaining silent" and that a "witness does not expressly invoke the privilege by standing mute." *Id.* at 186-87.

Thus, *Salinas'* holding is that, in the context of noncustodial questioning by law enforcement, the Government may use a defendant's silence or refusal to answer questions against him, but *only* where he does not assert his right to remain silent. *See id.* Where, as here, a defendant, during noncustodial questioning *does* invoke his constitutional right to refuse to answer particular questions, *Salinas* prohibits the Government from using his refusal to answer those questions as evidence against him in its case-in-chief.

Indeed, Justice Breyer's dissent—joined by Justices Ginsburg, Sotomayor, and Kagan—would have taken it one step further, holding that any refusal to answer questions during noncustodial questioning should not be able to be used by the prosecution, even where a defendant simply remains silent. *See id.* at 201 (Breyer, J., dissenting) ("I would hold that Salinas need not have expressly invoked the Fifth Amendment").

At the end of the day, *Salinas* is a case about the timing of the invocation of rights. It stands for the notion that a defendant who does expressly decline to answer a particular question during a voluntary, noncustodial interview will not have the invocation of the right to remain silent used against him during the Government's case-in-chief at trial. *See id.* at 183-86.

In this case, Duggar expressly invoked his right to remain silent at multiple points during questioning by federal agents. Indeed, the agents themselves acknowledged in response to Duggar's invocations that he was within his rights to remain silent. (*See, e.g.,* Transcription of the Interview at 57) ("JOSH DUGGAR: I'd rather not answer that question. AGENT FAULKNER: Okay. *That's perfectly fine.* AGENT AYCOCK: *That's your right*") (emphasis added). Thus, there

8

can be no mistake that the agents themselves understood that Duggar was expressly asserting his constitutional right not to answer certain questions. As such, Duggar now seeks an evidentiary ruling *in limine* prohibiting the Government from introducing into evidence his invocation of that right.

Similarly, the following statements made by Duggar to the agents questioning him constituted express invocations of the right to remain silent with respect to particular questions:

- I may not answer everything (*Id.* at 4);
- I just want to decline to answer (*Id.* at 22);
- I'd rather not get into any specifics (*Id.* at 27);
- without legal counsel…I don't want to…say something (*Id.* at 27-28);
- I can't answer that question (*Id.* at 54);
- I don't want to get into blanket statements about anything (*Id.* at 55-56);
- I'd rather not answer that question (*Id.* at 57);
- I can't give you access to it without talking to my attorney (*Id.* at 61); and
- I'll have to talk to my attorney first (*Id.* at 62).

In other words, unlike Salinas, who simply stopped talking during the course of a voluntary, noncustodial interview, Duggar affirmatively asserted his rights, multiple times, in response to specific questions. *See Salinas*, 570 U.S. at 183 ("a witness who 'desires the protection of the privilege ... must claim it' at the time he relies on it") (quoting *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984)). And it is of no moment that Duggar did not expressly use the words "Fifth Amendment" or "privilege against self-incrimination" because it is settled law that such precision is not required, especially where, as here, the agents expressly acknowledged that it was his "right" to not answer their questions. *See, e.g., United States v. Okatan*, 728 F.3d 111, 119 (2d Cir. 2013) ("Okatan did not use the words 'Fifth Amendment' or 'privilege against self-incrimination,' but such precision is not required"). *See also Quinn v. United States,* 349 U.S. 155, 164 (1955) ("no ritualistic formula is necessary in order to invoke the privilege"). A defendant must only put an

9

interrogating official "on notice [that he] intends to rely on the privilege." *Salinas,* 570 U.S. at 183. Duggar did so in this case.

Since *Salinas*, courts have consistently concluded that where a defendant asserts a privilege against self-incrimination during a noncustodial law enforcement interview, the Government may not use that assertion as evidence during its case-in-chief—an altogether separate analysis from whether the statements were subject to a motion to suppress in the first place. Specifically, in *Okatan*, the Second Circuit explained:

> A prosecutor may not comment on a defendant's failure to testify at trial. As the Supreme Court has explained, such comment would be "a penalty imposed by courts for exercising a constitutional privilege," which "cuts down on the privilege by making its assertion costly." The same logic governs our decision today. Use of a defendant's invocation of the privilege imposes the same cost no matter the context in which that invocation is made.

*Okatan*, 728 F.3d at 119 (quoting *Griffin v. California*, 380 U.S. 609, 614 (1965)). The Second Circuit continued, "[a]s the First Circuit has observed, allowing a jury to infer guilt from a prearrest invocation of the privilege 'ignores the teaching that the protection of the fifth amendment is not limited to those in custody or charged with a crime.'" *Id.* (quoting *Coppola v. Powell*, 878 F.2d 1562, 1566 (1st Cir. 1989)).

The Second Circuit then concluded, "where, as here, an individual is interrogated by an officer, even prior to arrest, his invocation of the privilege against self-incrimination and his subsequent silence cannot be used by the government in its case in chief as substantive evidence of guilt." *Id.* at 120. The court continued, "no Circuit court has reached the opposite conclusion. As discussed above, prior to *Salinas* the Circuits were divided over whether the government could use a defendant's simple prearrest silence in its case in chief, but the government has not identified, and we have not found, a Circuit case in which use of a defendant's prearrest invocation of the Fifth Amendment and subsequent silence was found constitutional." *Id.* at n.3.  Indeed, even before

10

*Salinas*, "at least three other Circuits have specifically held that a defendant's invocation of rights cannot be used in the government's case in chief." *Id.* (citing *Combs v. Coyle*, 205 F.3d 269, 286 (6th Cir. 2000) (where defendant "clearly invoked the privilege against self-incrimination ... the prosecutor's comment on [his] prearrest silence in its case in chief ... violated [the] Fifth Amendment"); *United States v. Burson*, 952 F.2d 1196, 1201 (10th Cir. 1991) ("once a defendant invokes his right to remain silent, it is impermissible for the prosecution to refer to any Fifth Amendment rights which defendant exercised."); *Coppola,* 878 F.2d at 1567, 1568 (where defendant's "statement invoked his privilege against self-incrimination," his "constitutional rights were violated by the use of his statement in the prosecutor's case in chief").

Because Duggar expressly declined to answer particular questions during an interview with federal agents that this Court has determined was non-custodial (*see* Doc. 62), this Court should exclude the agents' questions that Duggar refused to answer along with Duggar's statements concerning his refusal to answer those questions. Specifically, Duggar respectfully moves this Court to prohibit the Government and its witnesses from eliciting any evidence or argument, whether testimonial, documentary or demonstrative, of any kind whatsoever, concerning any of the above-quoted portions of the interview of Duggar which was recorded and transcribed.

Furthermore, this Court should also exclude these portions of the interview pursuant to Federal Rule of Evidence 403 as they would be unfairly prejudicial and have no probative value.

Federal Rule of Evidence 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. If the jury were to learn that Duggar expressly declined to answer certain questions, an unacceptable risk exists that the jury would

improperly conclude that the answers to these questions would have been incriminating. This would result in unfair prejudice, cause confusion of the issues actually before the jury, would mislead the jury, and would needlessly waste time. Without question, the unfair prejudice that stems from Duggar's express decision not to answer certain questions substantially outweighs any probative value of such evidence. As such, this Court should enter an order excluding it from trial.

### III.     Conclusion

Based on the foregoing, Duggar respectfully requests that this Court grant this motion, entering an order preventing the Government from presenting any evidence with respect to Duggar's stated decision declining to answer certain questions posed to him by law enforcement during execution of the search warrant at a business on November 8, 2019.


Respectfully submitted,

**Margulis Gelfand, LLC**

 _/s/ Justin K. Gelfand_____
JUSTIN K. GELFAND, MO Bar No. 62265*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*
*Admitted Pro Hac Vice*

*--- and ---*

**Story Law Firm, PLLC**

*/s/ Travis W. Story*
Travis W. Story, AR Bar No. 2008278
Gregory F. Payne, AR Bar No. 2017008
2603 Main Drive, Suite 6
Fayetteville, AR 72704
Telephone: (479) 448-3700
Facsimile: (877) 245-0107
travis@storylawfirm.com
greg@storylawfirm.com

**<u>Certificate of Service</u>**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

        _/s/ Justin K. Gelfand_
        JUSTIN K. GELFAND, MO Bar No. 62265*
        7700 Bonhomme Ave., Ste. 750
        St. Louis, MO 63105
        Telephone: 314.390.0234
        Facsimile: 314.485.2264
        justin@margulisgelfand.com
        *Counsel for Defendant*
        *Admitted Pro Hac Vice*