IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:21-CR-50014-001 |
| | ) | |
| JOSHUA JAMES DUGGAR, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE TO "EXCLUDE THIRD PARTY GUILT EVIDENCE"**

Defendant Joshua James Duggar ("Duggar"), by and through undersigned counsel, respectfully opposes the Government's motion in limine to "exclude third party guilt evidence." (Doc. 67). Based on the controlling law and the evidence, this Court should deny the Government's motion.

But on a more fundamental level, this Court should see the Government's motion for what it is: an attempt to prevent Duggar from highlighting the existence of reasonable doubt by establishing that other people had the access and opportunity to commit the acts at issue and by emphasizing that law enforcement failed to effectively investigate these crimes. The United States Constitution guarantees all criminal defendants a "meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). Moreover, "[f]undamental standards of relevancy, subject to the discretion of the court to exclude cumulative evidence and to insure orderly presentation of a case, require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged." *United States v. Armstrong*, 621 F.2d 951, 953 (9th Cir. 1980) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).

I. **Relevant Background**

Duggar is charged in a two-count indictment alleging one count of knowing receipt of child pornography and one count of knowing possession of child pornography. (Doc. 1). Duggar has pleaded not guilty to both counts.

The Government's case boils down to an allegation that cached thumbnails of child pornography were found on an HP desktop computer accessible to, and used by, many people at a business. The defense will establish at trial that Duggar's personal devices seized during the Government's investigation—including a MacBook Pro laptop computer and an Apple iPhone—did not have even a forensic trace of child pornography. Computer forensics will play a significant role in the trial of this case as set forth in a 100-plus page expert disclosure the defense provided to the Government.

Against this backdrop, discovery provided by the Government reveals that law enforcement chose not to forensically image electronic devices belonging to several people who had access to the business and the computer at issue. These witnesses include William Mize ("Mize") and Randall Berry ("Berry").

In a pretrial motion to dismiss, Duggar argued that law enforcement's failure to perform forensic examinations of these individuals' devices and to preserve potentially exculpatory evidence warranted dismissal of this case as it constituted bad faith on the part of the Government. (*See* Doc. 40). Concluding that while law enforcement's actions in this case did not "rise to the level of a constitutional deprivation of due process that would require the dismissal of the indictment," this Court expressly noted, "[v]alid reasons may exist to criticize law enforcement's thoroughness (or lack thereof) on cross examination[.]" (*See* Doc. 61 at 14).

The evidence will establish that Mize was regularly present at the car lot and, on at least one occasion, unlawfully entered the office where the HP desktop computer was without Duggar's knowledge or consent. The evidence will also establish that Berry firmly and confidently told law enforcement he did not even meet Duggar until June 11, 2019, but then walked back that statement after a financial record introduced at the evidentiary hearing before this Court clearly established he was paid for work at the car lot in May 2019.

Based on further investigation, the Government now asserts Berry did not start working at the business until late May 2019, after the alleged crimes occurred, and that Mize was in a Walmart in Ozark, Missouri on May 15, 2019. (*See* Doc. 67 at ¶ 6).[1] In the Government's view, the evidence suggests these people were not at the car lot at the times in question and Duggar should therefore be prohibited from offering any evidence suggesting a contrary conclusion. But the facts are very much in dispute.

Evidence in the Government's possession, custody, and control since November 8, 2019, clearly establishes that Berry had dealings at the car lot, *at the latest*, on May 16, 2019—which falls squarely within the timeframe alleged in the indictment. And, at a minimum, Berry's recollection of dates has proven to be remarkably unreliable. With respect to Mize—who has regularly frequented the car lot and has historically broken into the office without Duggar's knowledge or consent—a credit card transaction at a Walmart on a single day, May 15, 2019, is hardly determinative. In fact, the alleged criminal activity on May 15, 2019 occurred during two discreet times and, contrary to the Government's view of the evidence, did not actually require someone to be physically seated at the desktop computer to orchestrate the computer activity.

---

[1] The Government's only proof is that Mize's credit card was allegedly used there. The Government is continuing to investigate Mize's whereabouts through a Rule 17(c) subpoena ordered by this Court that is not even due until November 15, 2021.

Duggar does not seek to pre-litigate the facts of this case by opposing a prosecution motion in limine, nor should he be required to do so, but suffice it to say: the parties adamantly disagree about the facts. Duggar has a right to have the jury decide the facts based on admissible evidence—and that is precisely what the Government's motion seeks to prevent.

Even beyond Berry and Mize, the Government's motion takes it a troubling step further: the Government asks this Court to preclude Duggar from presenting evidence or argument that anyone else, other than Duggar, may have had the opportunity and the ability to have committed these crimes. (*See* Doc. 67 at ¶ 11). In that vein, the evidence will establish that law enforcement failed entirely to investigate other individuals.

## II.   Discussion

This Court should reject the Government's attempt to prevent Duggar from presenting a defense in this case. It is beyond well settled that the Government has the burden of proving, beyond a reasonable doubt, that Duggar committed the two crimes charged in this indictment. But through this motion, the Government seeks to shift the burden to Duggar, arguing that unless he can prove in advance of trial that someone else committed the crimes charged, this Court should prevent him from presenting evidence at trial that someone other than him could have committed the crimes charged.

Remarkably, even the title of the Government's motion appears to shift the burden to Duggar, arguing he should not be permitted to offer evidence of third-party "guilt." (*See* Doc. 67). But evidence and argument that other people had an opportunity and the access necessary to enable them to have committed the acts charged in this case is not tantamount to evidence of "guilt." A defendant need not prove in advance of trial that someone else committed the crimes charged or lose his ability to question the strength of the Government's case at trial.

The Government also insinuates that because Duggar informed the Government that he does not intend to advance an "alibi" defense, he is somehow precluded from arguing at trial that someone else may have committed the crimes charged. (*See* Doc. 67 at ¶ 7). This constitutes a fundamental misunderstanding of what an alibi defense is. Federal Rule of Criminal Procedure 12.1, "Notice of an Alibi Defense," provides, in relevant part that, upon Government request:

> the defendant must serve written notice on an attorney for the government of any intended alibi defense. The defendant's notice must state:
>
> > (A) each specific place where the defendant claims to have been at the time of the alleged offense; and
> >
> > (B) the name, address, and telephone number of each alibi witness on whom the defendant intends to rely.

*See* Fed. R. Crim. P. 12.1(a)(2). As a matter of law, this does not restrict a defendant's testimony should he choose to testify in his own defense. *See, e.g.*, Fed. R. Crim. P. 12.1(e) ("This rule does not limit the defendant's right to testify"). But in any event, the Government is conflating an alibi defense with reasonable doubt that someone else could have committed the crimes charged. As such, any reliance by the Government on Rule 12.1 is entirely misplaced.

>> A.  This Court Should Not Reconsider its Previous Ruling

The Government effectively asks this Court to reconsider its previous ruling that Duggar will be permitted to thoroughly cross-examine law enforcement witnesses concerning their failure to adequately investigate the possibility that someone else may have committed the crimes charged. (*See* Doc. 61 at 14) ("Valid reasons may exist to criticize law enforcement's thoroughness (or lack thereof) on cross-examination"). Indeed, at the motions hearing, this Court expressly concluded that the defense is "invited to make what they wish to make of" the Government's failure to adequately investigate this case and to "let the fact-finder decide whether that rises to the level of reasonable doubt." (*See* Sep. 27, 2021, Motions Hearing Tr. at 283). To be clear, Duggar

need not prove someone else committed the crimes charged to be permitted to argue that the investigation and evidence fails to prove, beyond a reasonable doubt, that Duggar committed these crimes.

"Fundamental standards of relevancy, subject to the discretion of the court to exclude cumulative evidence and to insure orderly presentation of a case, require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged." *Armstrong*, 621 F.2d at 953 (citing *Chambers*, 410 U.S. at 302). But what the Government seeks to exclude here is exactly that: evidence which demonstrates that someone other than Duggar "had the opportunity, ability and motive to commit the crime." *United States v. Crosby*, 75 F.3d 1343, 1347 (9th Cir. 1996).

In *Crosby*, the defendant, in addition to arguing that the Government's evidence did not prove he had committed the crime, argued:

> the police investigation was sloppy and that a more thorough investigation would have exonerated him. The defense pointed out that the first investigators at the crime scene failed to secure the area. Nor did they take much by way of physical evidence: no photographs, fingerprints, hair or skin samples, fingernail scrapings, fabric samples, footprints or tire tracks. While they obtained a baseball bat, scrapings from the wheelbarrow and pieces of the victim's and defendant's clothing, the police did not have most of this evidence tested. The only testing done was to compare the blood type found on the evidence with that of the victim. There was no comparison with Crosby's blood type and no DNA matching.

*Crosby*, 75 F.3d at 1347.

However, because the district court had excluded evidence concerning another individual's opportunity to have committed the crime, the court noted:

> Crosby couldn't fully argue his sloppy investigation theory. While he could point out what the police hadn't done, he could suggest no exculpatory evidence the police might have found had they conducted a more thorough investigation. The excluded evidence would have lent support to the defendant's theory that someone else beat [the victim] and undermined the prosecutor's claim that a more thorough investigation would have turned up nothing of value. Rather than being limited to

>   poking holes in the prosecution's case, Crosby's counsel could have plausibly argued that a more thorough investigation would have produced evidence incriminating [another individual].

*Crosby*, 75 F.3d at 1347-48.

Concluding that the district court abused its discretion in excluding evidence concerning the possibility that the crime had been committed by someone other than the defendant, the *Crosby* court explained:

>   The excluded evidence could thus have caused the jury to develop a reasonable doubt by suggesting that someone other than the defendant was in a position to have beaten [the victim], that a competent investigation might have identified that person, and that [the victim] was lying when she pointed the finger at Crosby. In such circumstances, we are guided by the words of Wigmore:
>
>   [I]f the evidence [that someone else committed the crime] is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt.

*Id.* at 1349 (quoting 1A John Henry Wigmore, Evidence in Trials at Common Law § 139 (Tillers rev. 1983)).

In this case, the Government expressly argues that Duggar may attempt to create reasonable doubt by introducing "evidence suggesting that other individuals had access to the HP desktop computer at issue and therefore committed the offenses charged in the indictment" but, in the Government's view, this "evidence is nothing more than wishful speculation based on bare suspicion." (*See* Doc. 67 at ¶ 2). As a threshold matter, that is not true—as the evidence clearly establishes that others had access to the office, and therefore the computer, without Duggar's knowledge or consent, that others had access to the car lot (a business which caters to the public), and that much of the computer activity did not actually necessitate an individual to be physically present in the first place. But this Court need not, and should not, predetermine this factual dispute. As in *Crosby*, this Court should conclude that it "should not attempt to decide for the jury that this

7

doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt." *Crosby*, 75 F.3d at 1349 (quoting Wigmore). *See also United States v. Espinoza*, 880 F.3d 506, 517 (9th Cir. 2018) ("That the defense's theory may be speculative is not a valid reason to exclude evidence of third-party culpability") (citing *United States v. Stever*, 603 F.3d 747, 754 (9th Cir. 2010)); *United States v. Vallejo*, 237 F.3d 1008, 1023 (9th Cir. 2001) ("it is the role of the jury to consider the evidence and determine whether it presents all kinds of fantasy possibilities, as the district court concluded, or whether it presents legitimate alternative theories for how the crime occurred") (internal quotation marks omitted).

This Court has already correctly concluded that Duggar should have the ability to cross-examine law enforcement witnesses concerning weaknesses in the investigation of this case. (*See* Doc. 61) (*see also* Sep. 27, 2021, Motions Hearing Tr. at 281-83). The Government's motion appears to be a request that this Court reconsider its prior ruling without identifying it as such. To criticize the Government for failing to thoroughly investigate key witnesses and for failing to perform forensic analysis of those witnesses' devices *is* evidence suggesting that someone other than Duggar committed this crime—*i.e.*, precisely what the Government asks this Court to exclude. Stated simply, the Government asks this Court to change its mind and to, instead, do what the district court in *Crosby* did before being reversed: preclude Duggar from arguing "that a more thorough investigation would have produced evidence incriminating [another individual]." *Crosby*, 75 F.3d at 1348.

      B.     <u>The Authority Cited by the Government Supports Duggar's Position</u>

The Government largely stakes its claim that Duggar should be precluded from introducing any evidence that someone else may have committed the crimes alleged on *Holmes v. South*

*Carolina*, 547 U.S. 319 (2006). (*See* Doc. 67 at ¶ 9). But *Holmes* supports Duggar's position—not the Government's.

There, the Supreme Court reversed the petitioner's conviction, concluding the trial court erred in precluding him from introducing evidence that another individual may have committed the crime on the unconstitutional grounds that "where there is strong evidence of an appellant's guilt, especially where there is strong forensic evidence, the proffered evidence about a third party's alleged guilt does not raise a reasonable inference as to the appellant's own innocence." *Holmes*, 547 U.S. at 324 (quoting trial court decision).

The Court then noted, "[w]hile the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.* at 326 (2006) (citing Fed. R. Evid. 403).

In other words, *Holmes* simply held that a defendant's constitutional rights are not violated where a trial court applies Federal Rule of Evidence 403 to exclude evidence when the probative value of that evidence is substantially outweighed by a danger of unfair prejudice or confusion. *See id.* The *Holmes* Court explained that the trial court had violated this rule by focusing not "on the probative value or the potential adverse effects of admitting the defense evidence of third-party guilt" but, instead, focusing on "the strength of the prosecution's case[.]" *Id.* at 329. The Court noted that the rule applied by the trial court boiled down to the premise that, "[i]f the prosecution's case is strong enough, the evidence of third-party guilt is excluded even if that evidence, if viewed

9

independently, would have great probative value and even if it would not pose an undue risk of harassment, prejudice, or confusion of the issues." *Id.*

But the problem emphasized in *Holmes* is the problem the Government seeks to create in this case. Namely, the Government argues that its evidence that no one else had access to the computer at issue in this case during the relevant time period is so strong that Duggar should not be permitted to present alternative evidence which is probative and not unfairly prejudicial.

Specifically, the Government argues employment records allegedly establish that no employees worked at the business during the relevant time period. (*See* Doc. 67 at ¶ 5). Further, the Government notes that, after the hearing before this Court, it determined William Mize was in a Walmart 120 miles away from the business on May 15, 2019. (*Id*. at ¶ 6).

As a threshold matter, the Government's argument is predicated on its own flawed theory of the case: that whoever committed these alleged crimes was necessarily sitting at the keyboard for long periods of time on numerous days. But, moreover, the Government is predicating its entire theory concerning the whereabouts of Mize on credit card records relating only to May 15, 2019, that establish, at most, that Mize's credit card was used in a Walmart sometime that day—not that Mize himself was actually at the Walmart.

Even more, conspicuously missing from the Government's motion is any mention of the fact that Berry initially told federal agents, confidently and in a recorded interview, that he did not start working at the business until June 11, 2019—and that he was absolutely positive about that date. However, after financial records revealed that he had, in fact, started working at the business at some point in May 2019, the Government reinterviewed Berry after the hearing in an attempt to set the record straight. Based on that second interview, the Government represents that Berry "confirmed" that he did not begin working at the business until the end of May 2019. (*Id*. at ¶ 6).

Berry has consistently maintained that he was offered the job and began working at the car lot the day he met Duggar. But it appears the Government has not carefully examined evidence that has been in its possession, custody, and control since November 8, 2019—evidence disclosed to the defense in discovery. That evidence clearly establishes May 16, 2019 as a date connecting Berry to the car lot—and not necessarily the first day. May 16, 2019 falls squarely within the indictment period. (*See* Doc. 1).

In the Government's view, because the Government has "confirmed" that neither Berry nor Mize could have committed the offenses charged, Duggar should not be able call them as witnesses (or cross-examine them if the Government calls them) to cast doubt on the Government's theory of the case. But the facts are in dispute and this would violate Duggar's firmly established constitutional "right to have 'a meaningful opportunity to present a complete defense.'" *Holmes*, 547 U.S. at 331 (quoting *Crane,* 476 U.S. at 690; *Trombetta,* 467 U.S. at 485).

Furthermore, the evidence will establish that law enforcement failed entirely to investigate other individuals who unambiguously used the HP desktop computer at issue. Just by way of example, Caleb Williams regularly used the desktop computer in the months and weeks leading up to May 2019. He also sold a car on behalf of Wholesale Motorcars on March 27, 2019, and used the HP desktop computer to print shipping labels. Even though all of this evidence has been in the Government's possession, custody, and control for more than 2.5 years, it appears law enforcement has entirely disregarded it. To be clear, the point is not whether one of these particular people, or someone else, committed these crimes—it is that Duggar has the constitutional right to foster reasonable doubt at trial "that a person other than the defendant committed the crime that is charged." *Armstrong*, 621 F.2d at 953 (citing *Chambers*, 410 U.S. at 302). And he has the constitutional right to do so by introducing evidence that someone other than him "had the

opportunity, ability and motive to commit the crime" and "that a more thorough investigation would have produced evidence incriminating [another individual]." *Crosby*, 75 F.3d at 1347-48.

The Government has the burden of proving Duggar guilty beyond a reasonable doubt—and if it is so confident in its evidence that nobody other than Duggar could have possibly committed this crime, it can simply introduce its evidence in an attempt to convince a jury to unanimously reach that conclusion. But Duggar should not be prevented from defending against the allegations by casting doubt on the Government's case and demonstrating the inadequacy of the investigation.

Furthermore, the Government not only argues that Duggar should be prevented from arguing or introducing evidence at trial concerning Mize and Berry as potential perpetrators of the offenses, but also that Duggar should not be permitted to argue that any other "unidentified perpetrator committed the charged offenses[.]" (Doc. 67 at ¶ 12). This notion finds absolutely no support in the law—because it is unconstitutional. A criminal defendant does not have to *identify* the perpetrator who committed the charged offenses in advance of trial to argue that he did not.

Indeed, the Government's standard would have chilling consequences. Sometimes in criminal cases, it is clear that a crime was committed, but it is simply unclear who committed the crime. For instance, it may be crystal clear that a bank was robbed in that somebody wearing a mask held up a teller and walked out with money. It is hardly controversial that a person charged with that crime can advance the classic defense: "It wasn't me." At its core, that defense is tantamount to saying, less articulately, "someone else clearly robbed the bank, but it was not me who did it." That defendant does not bear the burden of proving who actually committed the crimes to argue at trial that it must have been someone else.

But in this case, the Government is actually arguing Duggar should be prohibited from "claiming that some yet-to-be-identified perpetrator used his [sic][2] computer to download and view child pornography without setting forth an actual, non-speculative nexus between the alleged perpetrator and the charged offenses." (*See* Doc. 67 at ¶ 11). The Government cites no authority for this position—because there is none. This argument turns the Constitution on its head and should be summarily rejected by this Court.

Ultimately, the Government's case against Duggar is circumstantial. The Government will ask the jury to infer that Duggar committed the charged offenses based on certain evidence concerning opportunity and access to the computer at issue. Duggar's constitutional rights guarantee him the ability to counter the Government's circumstantial evidence with his own circumstantial evidence. *See United States v. Stever*, 603 F.3d 747, 754 (9th Cir. 2010) (Conviction reversed because "the case against Stever was circumstantial…Stever sought to counter the circumstantial inferences that the Government asked the jury to draw with evidence of other, logically relevant circumstances from which obverse inferences to those sought by the Government could be drawn" but was not permitted to do so).

\*   \*   \*   \*   \*

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes*, 547 U.S. at 319 (quoting *Crane*, 476 U.S. at 690). That is what Duggar intends to present and he should not be prevented from doing so.

---

[2] The computer allegedly containing child pornography belonged to the business. None of Duggar's personal devices contained evidence of any illegality whatsoever.

### III. Conclusion

Based on the foregoing, Duggar respectfully requests that this Court deny the Government's motion in limine to "exclude third party guilt evidence."

Respectfully submitted,

**Margulis Gelfand, LLC**

 /s/ Justin K. Gelfand
JUSTIN K. GELFAND, MO Bar No. 62265*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*
*Admitted Pro Hac Vice*

--- and ---

**Story Law Firm, PLLC**

/s/ Travis W. Story
Travis W. Story, AR Bar No. 2008278
Gregory F. Payne, AR Bar No. 2017008
3608 Steele Blvd., #105
Fayetteville, AR 72703
Telephone: (479) 448-3700
Facsimile: (479) 443-3701
travis@storylawfirm.com
greg@storylawfirm.com

**Certificate of Service**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

                                             */s/ Justin K. Gelfand*
JUSTIN K. GELFAND, MO Bar No. 62265*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*
**Admitted Pro Hac Vice*