IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:21-CR-50014-001 |
| ) | |
| JOSHUA JAMES DUGGAR, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S SUPPLEMENTAL BRIEFING CONCERNING CLERGY PRIVILEGE**

Defendant Joshua James Duggar ("Duggar"), by and through undersigned counsel, respectfully submits this supplemental brief concerning the clergy privilege and its applicability to the testimony of Government witness Bobye Holt. The testimony adduced by the parties at the evidentiary hearing reveals that any statements made to Bobye Holt ("Bobye") and/or Jim Holt ("Jim") by Duggar or Jim Bob Duggar ("Jim Bob")[1] were made to them in their capacity as spiritual advisors with the expectation that the communications would be kept confidential. As such, any such statements are shielded from disclosure by the clergy privilege and, therefore, Duggar respectfully requests that this Court prohibit the Government from eliciting any further testimony from Bobye concerning these purported conversations.

**I.      The Clergy Privilege**

The clergy privilege—also referred to as the priest-penitent privilege or the religious privilege—is a firmly rooted privilege that shields certain communications from disclosure. Indeed, the Supreme Court itself has acknowledged the existence of this privilege. *See Trammel v. United States*, 445 U.S. 40, 51 (1980) ("The privileges between priest and penitent, attorney and

---

[1] The witnesses referenced herein are identified by their first names solely to avoid any confusion created by shared surnames. No disrespect is intended.

client, and physician and patient limit protection to private communications. These privileges are rooted in the imperative need for confidence and trust. The priest-penitent privilege recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return"). *See also United States v. Nixon*, 418 U.S. 683, 709 (1974) ("generally, an attorney or a priest may not be required to disclose what has been revealed in professional confidence").

Further, federal courts readily acknowledge the validity of this vital privilege. *See, e.g., United States v. Dube,* 820 F.2d 886 (7th Cir. 1987) (acknowledging existence of clergy-penitent privilege); *United States v. Gordon,* 655 F.2d 478 (2d Cir. 1981); *Eckmann v. Board of Education,* 106 F.R.D. 70 (E.D. Mo. 1985) (observing that "[t]he 'priest-penitent' privilege has clearly been recognized by federal courts").

In a seminal case concerning the contours of this privilege, the Third Circuit explained, "the privilege protecting communications to members of the clergy, like the attorney-client and physician-patient privileges, is grounded in a policy of preventing disclosures that would tend to inhibit the development of confidential relationships that are socially desirable." *In re Grand Jury Investigation*, 918 F.2d 374, 383 (3d Cir. 1990). Noting that Federal Rule of Evidence 501 permits the development of common law evidentiary privileges "in the light of reason and experience," the Third Circuit concluded the religious privilege applies "to protect communications made (1) to a clergyperson (2) in his or her spiritual and professional capacity (3) with a reasonable expectation of confidentiality. As is the case with the attorney-client privilege, the presence of third parties, if essential to and in furtherance of the communication, should not void the privilege." *Id.* at 384 (footnote omitted). *See also Scott v. Hammock*, 133 F.R.D. 610, 616 (D. Utah 1990) (same). The Third Circuit explained a clergyperson "is a minister, priest, rabbi, or other similar functionary of

2

a religious organization, or an individual reasonably believed so to be by the person consulting him." *Id.* at n.13 (quoting Proposed Rule of Evidence 506(a)(1)).

Furthermore, Arkansas Rule of Evidence 505 expressly provides, "[a] person has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a clergyman in his professional character as spiritual adviser." Ark. R. Evid. 505(b). Rule 505 also provides that "[a] 'clergyman' is a minister, priest, rabbi, accredited Christian Science Practitioner, or other similar functionary of a religious organization, or an individual reasonably believed so to be by the person consulting him" and that "[a] communication is 'confidential' if made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication." Ark. R. Evid. 505(a)(1) and (2).

## II.     The Evidence

It is undisputed that Jim and Jim Bob were church elders of the Bible Grace Fellowship Church, a non-denominational religious institution whose services were held inside its members' homes. It is also undisputed that Bobye participated in sessions with her husband and church members for the purpose of providing spiritual guidance on a regular basis—at a minimum, when the matters involved women and children. The witnesses testified the initial meeting to discuss the allegations involving Duggar was initiated by a phone call from Jim Bob to Jim—who, in addition to being a church elder, was also an ordained minister and a chaplain. Bobye testified that when Jim Bob called Jim to schedule the meeting, she overheard the conversation on speakerphone. Jim Bob testified that the purpose of his call to Jim was to seek spiritual guidance for Duggar.

Jim Bob testified, unequivocally, that he communicated to the Holts that the conversations were to be kept confidential. Bobye testified that confidentiality "may have been" discussed but

3

that she could not specifically recall.[2] Bobye testified that prayers were said at the meeting with Duggar and that the meeting was held at the Duggar's home. Bobye testified that she wanted to give Duggar the opportunity to "confess to temptations" and to help him move forward. Bobye testified that she wanted to give Duggar spiritual advice. Jim Bob testified that Jim counseled with Bobye regularly and that he viewed her as a member of his team.

Bobye testified that nearly two years after that initial meeting, her family invited Duggar to stay at their home in Little Rock. And Bobye testified that Jim regularly counseled Duggar during those two intervening years. She said she still wanted to help him. She testified that she and Jim met with Duggar in their bedroom to discuss matters further. Bobye testified that during the meeting Jim actively participated but, eventually, fell asleep—she continued to talk to Duggar as her husband slept.

The testimony makes clear that Jim Bob and, by extension, Duggar—who was a child when he allegedly "confessed" (Bobye's characterization)—reasonably believed both Jim and Bobye were spiritual leaders of the church. *See* Ark. R. Evid. 505(a)(1). Indeed, as Jim Bob testified, Bobye regularly voted on church matters. Further, to the extent these statements were made, the testimony revealed they were "made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication." Ark. R. Evid. 505(a)(2).

The testimony of Bobye and Jim Bob makes clear that any statements allegedly made to Bobye, or to Jim in her presence, were made "(1) to a clergyperson (2) in his or her spiritual and professional capacity (3) with a reasonable expectation of confidentiality." *In re Grand Jury Investigation*, 918 F.2d at 384. And, certainly, the testimony made clear that Bobye's presence—

---

[2] Quotations herein are based on undersigned counsels' notes taken during the hearing. Any errors are unintentional.

even if she herself were not a church elder—was "essential to and in furtherance of the communication" and, therefore, does "not void the privilege." *Id. See also In re Verplank*, 329 F. Supp. 433, 436 (C.D. Cal. 1971) (counseling services, even where rendered by members of staff who were not ministers, came within privilege where activities of counselors conformed generally with activities of minister). Furthermore, even if, *arguendo*, Bobye was not a church elder or, to the extent the Government argues that her presence was not essential, it is critical to note that the privilege still applies if Duggar "reasonably believed" that Bobye was a spiritual leader of the church. *See* Ark. R. Evid. 505(a)(1). *See also In re Grand Jury Investigation*, 918 F.2d at 384 n.13. Further, Duggar is the holder of the privilege. *See* Ark. R. Evid. 505(c). While, the privilege could theoretically be waived by Duggar, there has been no such knowing and voluntary waiver in this case. *See, e.g.,* Ark. R. Evid. 510. There is no evidence before this Court that Duggar—a child at the time—ever knowingly and voluntarily waived this legal privilege.

Finally, while clergy are mandated reporters of suspected child abuse in Arkansas, a statutory exception to the duty to report exists where, as here, the clergy member: "(A) Has acquired knowledge of suspected child maltreatment through communications required to be kept confidential pursuant to the religious discipline of the relevant denomination or faith; or (B) Received the knowledge of the suspected child maltreatment from the alleged offender in the context of a statement of admission[.]" Ark. Code Ann. § 12-18-402(b)(29)(A) – (B).

### III.    Conclusion

Based on the foregoing, Duggar respectfully requests that this Court conclude that any statements allegedly made to Bobye are shielded from disclosure by the clergy privilege.

Respectfully submitted,

**Margulis Gelfand, LLC**

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND, MO Bar No. 62265*
IAN T. MURPHY, MO Bar No. 68289*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*
**Admitted Pro Hac Vice*

--- and ---

**Story Law Firm, PLLC**

*/s/ Travis W. Story*
Travis W. Story, AR Bar No. 2008278
Gregory F. Payne, AR Bar No. 2017008
2603 Main Drive, Suite 6
Fayetteville, AR 72704
Telephone: (479) 448-3700
Facsimile: (479) 443-3701
travis@storylawfirm.com
greg@storylawfirm.com

**Certificate of Service**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND, MO Bar No. 62265*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Defendant*
**Admitted Pro Hac Vice*