### IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | Case No. 5:21CR50014-001 |
| | ) | |
| **JOSHUA JAMES DUGGAR** | ) | |

### UNITED STATES' SUPPLEMENTAL BRIEF

Comes now the United States of America, by and through undersigned counsel, and submits this supplemental briefing on the defendant's recent assertion of clergy-penitent privilege.

The parties have filed motions *in limine* regarding the admissibility of evidence of the defendant's child molestation conduct. On November 15, the government advised that it may introduce this evidence through the testimony of two individuals to whom the defendant admitted his conduct: Bobye Holt and James Robert Duggar. The Court held a hearing on November 29 to determine whether their testimony would prove the conduct by a preponderance of the evidence. Forty-five minutes before the hearing, the defendant raised via email for the first time an issue "involving a potential issue of clergy privilege invoking Bobye Holt's potential testimony."

When the government sought to elicit testimony from Mrs. Holt regarding the defendant's admissions at the hearing, he objected based on the clergy-penitent privilege and cited multiple cases in support of this new claim. Without having been provided any authority beforehand, the Court preliminarily overruled the objection and permitted Mrs. Holt to testify. Mrs. Holt then explained that on March 30, 2003, the Holts joined the defendant and his parents in his parent's bedroom, where the defendant told Mrs. Holt that he had inappropriately touched the vagina of Jane Doe 4 that day and had been touching the breasts and vaginal areas of Jane Does 1 through 3, both over and under their clothes, for years. Mrs. Holt explained that he said he was telling her

this because he was courting her daughter and that their relationship would have to end as a result of his conduct. Mrs. Holt also described this discussion as a conversation between close family friends regarding the defendant's relationship with her daughter. And while she recalled saying prayers during the conversation—a normal occurrence, she explained—Mrs. Holt emphasized that the conversation was not related to anyone's role in the church that the Holts and Duggars attended.

Mrs. Holt further testified that in early 2005, the defendant stayed with her and her husband in Little Rock because, as she explained, they loved him and wanted to see if he could repair his relationship with their daughter. One evening after her husband fell asleep, Mrs. Holt testified, the defendant told her that he had digitally penetrated Jane Doe 4's vagina while she sat on his lap and he read her bible stories. This rape occurred on March 30, 2003, and is what prompted the Duggars to contact the Holts that day. The defendant raised the same objection to this testimony, and the Court instructed the parties to submit briefing on the clergy-penitent privilege.[1]

The defendant is asking the Court to adopt an interpretation of the clergy-penitent privilege that is so unprecedently overbroad as to render it unenforceable. The crux of his claim is that Mrs. Holt, who firmly disavowed having a position in the church or any privileged relationship with the defendant, was nevertheless clergy for purposes of the privilege because he confided in her and they prayed together, or because her husband was an "elder" in that church, or because of some combination of these factors and other unevidenced inferences. At base, however, Mrs. Holt is not

---

[1] The defendant's father also testified at the hearing. While he provided garbled answers about the leadership of his church and repeatedly claimed not to recall whether the defendant admitted to touching the vaginas of Jane Does 1 through 4 despite recalling other very specific details from this timeframe, he confirmed that the Holts were his best friends, that the defendant admitted to inappropriately touching Jane Does 1 through 4, and that he reached out to the Holts as his close friends in approximately 2002 or 2003 to discuss this issue. He did not testify about the defendant's 2005 admission. In other words, while he ultimately provided some corroborative information, his testimony was less credible and far less detailed than Mrs. Holt's.

clergy or a church leader. Nor, she said, could she or any women have served as leaders in the church. She is simply a long-time family friend of the defendant and the mother of the girl he was dating when he molested Jane Does 1 through 4. And while their lives are shaped by their religion, the defendant's conversations with Mrs. Holt about these assaults as they relate to his relationship with her daughter are no more privileged than a defendant's discussions about his case with his lawyer's well-informed, non-attorney wife—which is to say, they are not privileged at all.

Federal Rule of Evidence 501 "provides the federal courts with flexibility in crafting testimonial privileges." *In re Grand Jury Investigation*, 918 F.2d 374, 378 (3rd Cir. 1990). While the Eighth Circuit has not recognized a clergy-penitent privilege, the Supreme Court has described in *dicta* a privilege "between priest and penitent" that "recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return." *Trammel v. United States*, 445 U.S. 40, 51 (1980). Courts place the burden of proving this privilege's existence and applicability on the party asserting it. *In re Grand Jury Investigation*, 918 F.2d at 385, n.15. "Because claims of privilege derogate from the public's 'right to every [person's] evidence,'" *Cox v. Miller*, 296 F.3d 89, 107 (2d Cir. 2002), courts strictly limit the privilege to (1) "communications to a member of the clergy," (2) "in his or her spiritual or professional capacity," (3) "by persons who seek spiritual counseling and who reasonably expect that their words will be kept in confidence." *Id*. at 377. And even if a party proves its existence, the privilege is still defeated by the presence of unnecessary third parties. *Id.*

Assuming *arguendo* that the Eighth Circuit has adopted the clergy-penitent privilege, the defendant has not met his burden of proving it exists here. The clergy member he identified—Mrs. Holt—is not clergy at all. She repeatedly said so under oath and explained why she could not have

3

been. She also explained that the defendant admitted his prior molestation in conversations with her as a family friend and not, as he now suggests based on the testimony of someone who was not present for one admission and who cannot recall the basic details of the other admission, in conversations with her as a spiritual leader. The defendant has also failed to adduce any credible evidence that he actually received "priestly consolation and guidance" from Mrs. Holt or that he expected her not to reveal what he said. In fact, given that his admissions were related to his relationship with her daughter, the defendant surely expected Mrs. Holt to tell her daughter what he said. The only evidence he has presented in response to Mrs. Holt's clear recollection of what he told her and why came from his father, who provided self-serving testimony about his selective recollection of what happened and inconsistent testimony about Mrs. Holt's role in his church that was often tailored to support this last-ditch effort to exclude this evidence. The Court should credit Mrs. Holt's reliable testimony here and overrule the defendant's objection. *See Magar v. State*, 308 Ark. 380, 382 (1992) (crediting reverend's description of conversation as not related to counseling in declining to apply Arkansas Rule of Evidence 505 on privileged clergy communications); *Bonds v. State*, 310 Ark. 541, 545 (1992) (same).

To the extent the defendant is asserting this privilege based on Mr. Holt's presence in 2003, he has likewise failed to satisfy his burden.[2] He has not presented sufficient evidence to show that Mr. Holt was clergy for purposes of the privilege. While his father testified that Mr. Holt was an elder, he also said that Mr. Holt was not the pastor, that he had a full-time job outside the church, and that a third elder was more akin to the church leader. And even assuming that Mr. Holt's status

---

[2] Mrs. Holt's unrebutted testimony is that Mr. Holt was asleep when the defendant told her in 2005 that he digitally penetrated Jane Doe 4 and that he said this in the context of a conversation between close family friends. The defendant has presented only speculative argument to undermine this claim and his assertion of the privilege with respect to this admission should therefore fail.

qualified him as clergy for purposes of the privilege, Mrs. Holt—the witness with the most complete recollection—testified that the 2003 conversation was not part of any church service. And finally, even assuming that Mr. Holt qualifies as clergy, and even assuming that the 2003 admission was somehow aimed only at Mr. Holt in his clerical capacity, the privilege is still defeated by Mrs. Holt's presence. She was not an elder, did not assist her husband in his duties as an elder, and was not necessary for the defendant to have a privileged conversation with her husband. The defendant has not offered any evidence as to what he believed about Mrs. Holt's involvement. And while his father attempted to foist the elder title on her, he had gaping holes in his recollection and ultimately admitted that there were only three elders, none of which were Mrs. Holt. The defendant could have attempted to meet his burden by calling Mr. Holt to clarify his and his wife's role in the church or by testifying himself as to what happened in 2003 and 2005, but he chose not to pursue either option. Based on the clear testimony of Mrs. Holt, much of which was corroborated by the defendant's father, the defendant's objection should be overruled.

Finally, even if the defendant was able to force the clergy-penitent privilege upon Mrs. Holt, he has since waived that privilege. Generally, the voluntary disclosure of privileged communications constitutes a waiver of the privilege. *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998). And here, the defendant and his father have publicly acknowledged the details of their conversation with the Holts in press releases, other court cases, and, in the case of the defendant's father, a televised interview in which he discussed seeking the help of his friends—the Holts—to address the defendant's inappropriate touching of minors. Any claim from the defendant now that he thought his admissions to Mrs. Holt were privileged has been vitiated by his and his family's face-saving press tour. For these reasons, the defendant's objection to Mrs. Holt's testimony based on clergy-penitent privilege should be denied.

Respectfully submitted,

By: */s/ Dustin Roberts*
Dustin Roberts
Assistant United States Attorney
Arkansas Bar No. 2005185
414 Parker Avenue
Fort Smith, AR 72901
Office: 479-249-9034

*/s/ Carly Marshall*
Carly Marshall
Assistant United States Attorney
Arkansas Bar No. 2012173
414 Parker Avenue
Fort Smith, AR 72901
Office: 479-249-9034

AND

*/s/ William G. Clayman*
William G. Clayman
D.C. Bar No. 1552464
Trial Attorney
Child Exploitation and Obscenity Section
U.S. Department of Justice
1301 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-514-5780
Email: william.clayman@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Dustin Roberts, Assistant United States Attorney, hereby certify that a true and correct copy of the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

Justin Gelfand, Travis Story, Gregory Payne, Ian Murphy, Attorneys for the Defendant

*/s/ Dustin Roberts*
Assistant United States Attorney