IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                                     PLAINTIFF

V.                              CASE NO. 5:21-CR-50014

JOSHUA JAMES DUGGAR                                               DEFENDANT

**OPINION AND ORDER**

Defendant Joshua James Duggar was indicted on April 28, 2021, on one count of receipt of child pornography, one count of possession of child pornography, and a forfeiture allegation. (Doc. 1). On November 3, 2021, the Government filed a Notice Pursuant to Federal Rule of Evidence 414 and Motion in Limine to Admit Evidence of the Defendant's Prior Child Molestation Conduct (Doc. 68). In the Motion, the Government advises that

> it may seek to introduce evidence at trial that the defendant committed other acts of child molestation, as that term is defined by Rule 414. Specifically, the government notices its intent to introduce evidence that in approximately 2002 and 2003, before he committed the offenses charged in the indictment in this case and while living in Arkansas, the defendant attempted to and did commit a crime as defined by Arkansas state law involving contact between any part of the defendant's body and a child's genitals or anus—namely, sexual assault in the second degree, presently codified at Ark. Code Ann. § 5-14-125. If introduced, the government anticipates that the evidence will consist of testimony that the defendant was investigated for, admitted to, and received counseling for touching and sexually molesting multiple minor females, including at least one instance involving the digital penetration of a prepubescent minor.

*Id.* at p. 2. The Notice and Motion go on to explain the reasons why the Government believes this evidence should be presented to the jury at trial.

Also on November 3, Defendant filed a Response (Doc. 85) in opposition to the Government's Motion, arguing, first, that the Government's Notice did not comply with the

1

requirements of Federal Rule of Evidence 414(b) and, second, that even if the Notice were adequate, it is not clear what evidence the Government intends to introduce at trial pursuant to Rule 414. Notwithstanding Defendant's argument that he was uncertain of the nature of the Government's evidence, he filed his own Motion in Limine (Doc. 72) in which he demonstrated his general knowledge of this evidence and asked the Court to exclude it under Rule 403.

On November 18, 2021, the Court held a hearing on both motions in limine. When the Court pressed the Government to describe the witness testimony it intended to present to establish Defendant's prior acts of child molestation, the Government explained that it planned to call two witnesses—but only one of them was under subpoena; the other witness had not yet been located and served. Because it was not entirely clear what the two witnesses would say under oath, the Court set a follow-up hearing for November 29, 2021, to preview the Rule 414 evidence and make a finding as to its admissibility.

Now that the evidence has been received by the Court, it is prepared to rule on the pending motions. For the reasons explained herein, the Government's Motion in Limine (Doc. 68) is **GRANTED**, and Defendant's Motion in Limine (Doc. 72) is **DENIED**.

## I. DISCUSSION

### A. Sufficiency of the Government's Notice Under Rule 414(b)

Defendant contends that the Government's Notice of Intent to Admit Evidence of Prior Child Molestation does not comply with Rule 414(b), which states:

> If the prosecutor intends to offer this evidence, the prosecutor must disclose it to the defendant, including witnesses' statements or a summary of the expected testimony. The prosecutor must do so at least 15 days before trial or at a later time that the court allows for good cause.

Defendant maintains that the Government's Notice is deficient because it "has not disclosed, as the Rule requires, 'witnesses' statements or a summary of the expected testimony.'" (Doc. 85, p. 6). The Government's Notice (Doc. 68), filed on November 3, contained a brief summary of the expected Rule 414 evidence. On November 15—fifteen days before trial—the Government sent the defense team an email identifying the witnesses who were expected to testify and a summary of that testimony. The Court later received a copy of the November 15 email and attachments and marked them as Court's Exhibit 1 (under seal) to the November 18 hearing.

The Court finds that the Government's Notice was both sufficient and timely. To the extent the original Notice did not provide enough detail, the follow-up email of November 15 adequately advised Defendant of the evidence the Government intended to present under Rule 414.

### B. Rule 414's Requirements

"Federal Rule of Evidence 414 is an exception 'to the general rule that evidence of past crimes may not be used to prove the character of a person in order to show action in conformity therewith.'" *United States v. Bentley*, 561 F.3d 803, 814 (8th Cir. 2009) (quoting *United States v. Withorn*, 204 F.3d 790, 794 (8th Cir. 2000)). Accordingly, Rule 414 "will supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b)." *United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir. 1997) (quoting 140 Cong. Rec. H8992 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari)). The Ninth Circuit has described Rule 414 as "establishing a presumption—but not a 'blank check'—favoring the admission of propensity evidence at both civil and criminal trials involving charges of sexual misconduct." *United States v. Sioux*, 362 F.3d 1241, 1244 (9th Cir.

2004).  The Eighth Circuit has similarly explained that Congress enacted Rule 414 "to loosen to a substantial degree the restrictions of prior law on the admissibility of such evidence."  *LeCompte*, 131 F.3d at 768.[1]

Rule 414(a) provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation."  The Rule defines "child molestation" as "a crime under federal law or under state law" and involving, as pertinent here, "any conduct prohibited by 18 U.S.C. chapter 110" or "contact between any part of the defendant's body—or an object—and a child's genitals or anus."  Fed. R. Evid. 414(d)(2)(B) & (D).

Defendant is charged with two child pornography offenses prohibited by 18 U.S.C. chapter 110, namely, 18 U.S.C. § 2252A(a)(2) and (b)(1) and 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).  Defendant is therefore "accused of child molestation" as defined by Rule 414.  The Government asserts that it can prove by a preponderance of the evidence that in 2002 or 2003, Defendant committed the crime of sexual assault in the second degree as defined by Arkansas Code § 5-14-125—though he was not charged with any crime.  His victims were all under the age of twelve, and he was approximately fourteen or fifteen years old at the time.  Under Arkansas law, an individual is guilty of sexual assault in the second degree if that person engages in "sexual contact"—defined as "[a]n act of sexual gratification involving the touching, directly or through the clothing, of the sex organs"— with another person who is less than fourteen years of age and not the person's spouse.  Ark. Code Ann. §§ 5-14-101(12)(A) and 125(5)(A).

---

[1] Because Rule 404 is more restrictive than Rule 414, if certain evidence is admissible under Rule 414, it is unnecessary to analyze the same evidence under Rule 404.

4

Even uncharged conduct is admissible under Rule 414. *See United States v. Beaulieu*, 194 F.3d 918, 922 (8th Cir. 1999) ("We observe that note five to the official commentary for Rule 414 states, 'Evidence of uncharged child molestation is admissible if the prosecution provides enough evidence to support a finding, by a preponderance of the evidence, that the defendant committed the act.'"). The Rule allows evidence of a past act of child molestation to be used for any purpose for which it is relevant, "including the defendant's propensity to commit such offenses." *United States v. Gabe*, 237 F.3d 954, 959 (8th Cir. 2001).

According to the Eighth Circuit, "when a criminal defendant is accused of child molestation—including child-pornography crimes under 18 U.S.C. chapter 110—the court may admit evidence that the defendant committed any other child molestation." *United States v. Splettstoeszer*, 956 F.3d 545, 547 (8th Cir. 2020) (internal quotation marks and citation omitted). The prior acts do not have to be identical to the current charges to be admissible. Indeed, the Eighth Circuit has held that hands-on child-molestation offenses are relevant to show a defendant's propensity to commit child pornography crimes. *See id.* at 548 (finding prior sexual abuse convictions relevant to show the defendant's "propensity to be sexually interested in minors"); *United States v. Furman*, 867 F.3d 981, 988 (8th Cir. 2017) (holding that defendant's past sexual assault of his children was probative of his interest, intent, and motive for distributing, receiving, and possessing child pornography); *United States v. Emmert*, 925 F.3d 906, 909 (8th Cir. 2016) (determining that evidence of a defendant's juvenile conviction for sexually abusing his sister was relevant under Rule 414 to show an "interest in underage girls" and "propensity for

5

exploiting young girls" because it "connect[ed] him to the pornographic images found on his hard drive").

### C. Evidence of Defendant's Past Acts of Child Molestation

#### 1. Bobye Holt's Testimony

##### a. Clergy Privilege

During the November 29 hearing, the first witness called by the Government was Bobye Holt. Mrs. Holt and her husband, Jim Holt, were longstanding family friends of the Duggars. Mr. Holt was Jim Bob Duggar's closest childhood friend, and the families anticipated that Defendant—the Duggars' eldest child—would marry the Holts' eldest child one day. Both the Duggars and the Holts attended the same non-denominational Christian church, and the two families socialized with one another on a daily basis for many years.

Before Mrs. Holt testified, Defendant objected that her testimony should be shielded from disclosure by the common-law clergy privilege. After some discussion with counsel, the Court permitted Mrs. Holt to testify, subject to Defendant's objection and the Court's ultimate ruling on the privilege issue. The parties were also asked to brief the matter, and both briefs were submitted yesterday. *See* Docs. 99 & 100. For the reasons explained in greater detail here, the Court overrules Defendant's objection and finds the clergy privilege inapplicable to Mrs. Holt.

"All evidentiary privileges asserted in federal court are governed, in the first instance, by Federal Rule of Evidence 501." *United States v. Ghane*, 673 F.3d 771, 780 (8th Cir. 2012). That Rule states that "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege . . . ." Fed. R.

Evid. 501.  The Supreme Court has acknowledged, at least in dicta, the existence of a "priest-penitent privilege," which "recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return." *Trammel v. United States*, 445 U.S. 40, 51 (1980).  Though the Eighth Circuit has not explicitly adopted this particular privilege, other circuit courts have done so.  The Court believes it is within its discretion to consider the applicability of such a privilege on a case-by-case basis, bearing in mind that evidentiary privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Ghane*, 673 F.3d at 780 (citing *United States v. Nixon*, 418 U.S. 683, 710 (1974)); *see also In re Grand Jury Investigation*, 918 F.2d 374, 386 (3d Cir. 1990) (finding that "evidentiary privileges should be narrowly construed").

In considering the contours of a particular privilege, "federal courts follow the federal common law . . . in federal criminal proceedings." *United States v. Espino*, 317 F.3d 788, 795 (8th Cir. 2003).  With that said, however, the Supreme Court acknowledged in *Trammel* that state trends concerning privilege should be afforded "special relevance."  445 U.S. at 49–50.  It follows that in the absence of robust federal authority defining a privilege, relevant state law may offer helpful further guidance.

According to the Third Circuit, the clergy privilege under federal common law protects "communications made (1) to a clergyperson (2) in his or her spiritual capacity (3) with a reasonable expectation of confidentiality." *In re Grand Jury Investigation*, 918 F.2d at 384.  The Third Circuit went on to define "clergyperson" as "a minister, priest, rabbi, or other similar functionary of a religious organization, or an individual reasonable

7

believed so to be by the person consulting him." *Id.* at 384 n.13. This definition mirrors Arkansas law, which has long recognized a clergy privilege. Arkansas Rule of Evidence 505(a)(1) defines a "clergyperson" as "a minister, priest, rabbi, accredited Christian Science Practitioner, or other similar functionary of a religious organization, or an individual reasonably believed so to be by the person consulting him."

The threshold issue in the instant case is whether Mrs. Holt qualifies as a "clergyperson." It is clear from her testimony—which the Court found very credible—that she was not a clergyperson at the time Defendant made certain disclosures to her about molesting children. The following colloquy between the Government's counsel and Mrs. Holt is compelling:

> Q: Whenever you attended church with the Duggars, did you ever hold a position of authority within the church?
> A. No, ma'am.
> Q. Were you ever a pastor of the church?
> A. No, ma'am.
> Q. Were you ever an elder of the church?
> A. No, ma'am.
> Q. Were you ever on any sort of church council?
> A. No.
> Q. Did you hold any sort of role besides parishioner within the church?
> A. No.

The Government's counsel then asked Mrs. Holt why she never held a leadership position in her church, given her longstanding membership, and she explained, "Women weren't asked to be elders or pastors in our church."

In response, Defendant suggests that Mrs. Holt should be considered a clergyperson because her husband was an "elder"—or spiritual leader—of the church at the time, and she accompanied him on "joint counseling sessions." The Court rejects this contention, finding no credible evidence that Mrs. Holt held a position in the church

8

analogous to that of a minister, priest, or rabbi.[2]  Defendant also argues that Mrs. Holt's conversations with Defendant should be deemed privileged because one or both of them prayed or opened the Bible as they conversed.  To state the obvious:  Conversations between two church *members* are not shielded from discovery by the clergy privilege—even if those conversations involve serious subjects and are punctuated by prayer.

### b. Acts of Child Molestation

Mrs. Holt testified about two different conversations she had with Defendant during which he allegedly told her that he molested children.  The first conversation took place on March 30, 2003.  Mrs. Holt stated that on that date, Defendant's father, Jim Bob, called her and her husband to the Duggar residence.  When they arrived, they were greeted by Jim Bob, his wife Michelle, and Defendant.  Mrs. Holt testified that the reason she and her husband were called to the Duggar house that day was to discuss something related to the courtship between Defendant and the Holts' eldest daughter.[3]  When they arrived at the Duggar home, they were escorted to Mr. and Mrs. Duggar's bedroom, and there

---

[2] Jim Bob Duggar testified clearly that there were only three leaders of their church in 2002 and 2003:  himself, Mr. Holt, and another man named Clark Wilson.  Later in his testimony, Mr. Duggar claimed that his wife and Mrs. Holt could be thought of as "joint elders" of the church, simply because they were married to elders and would "help with special things."  The Court rejects this testimony as self-serving, contradictory, and lacking in credibility.

[3] Defendant claims—through his father's testimony—that the Holts were not called to the Duggar home that day to discuss the courtship; instead, they were called so that Mr. Holt, a church leader, could offer spiritual guidance to Defendant and his parents.  Under that theory, the communication would potentially fall under clergy privilege—except for the fact that Mrs. Holt was also present, and she does not qualify as "clergy."  To surmount that obstacle, Defendant maintains—again, based solely on his father's testimony—that Mrs. Holt was a necessary third party to the conversation.  But given that Mr. Duggar's testimony as to Mrs. Holt's role in the church was not credible, this entire argument is unavailing.

9

Defendant revealed to the Holts that he inappropriately touched a child that day, identified during the hearing as Jane Doe #4.  Defendant acknowledged that he touched this child while she was sitting on his lap during "Bible time," and he used his fingers to contact her vaginal area through her clothes.  He also confessed that he had touched the breasts and vaginas of three other child victims on multiple occasions—Jane Does #1, #2, and #3—also over their clothes, sometimes when they were asleep and sometimes when they were awake.  According to Mrs. Holt, Mr. Duggar indicated that Defendant's revelations that day would likely mean the end of the courtship between Defendant and the Holts' daughter.  Indeed, Mrs. Holt testified that her daughter and Defendant ended their relationship that very day.

Mrs. Holt also testified to a second conversation, which took place at the Holts' home in Little Rock sometime between January and March of 2005.  Even though Defendant and the Holts' daughter had formally terminated their dating relationship, Mrs. Holt testified that the two families still loved one another and held out hope that the relationship between the teenagers might yet be salvaged.  To that end, the Holts invited Defendant to live with them for a brief time in Little Rock so they would have time to talk with him and get to know him better.  Mrs. Holt testified that one evening, Defendant entered her bedroom to talk with her and Mr. Holt.  Sometime during the conversation, Mr. Holt fell asleep, but Defendant continued to talk.  He confessed to Mrs. Holt that he had not told her the complete truth about past incidents of child molestation.  Specifically, he told Mrs. Holt that on March 30, 2003, he touched Jane Doe #4 both over her clothes and under her panties, and he admitted that he used his fingers to penetrate the child's vagina.

Based on Mrs. Holt's credible testimony, the Court finds by a preponderance of the evidence that Defendant committed a previous act or acts of child molestation, as defined by Rule 414. [4]

### 2. Jim Bob Duggar

Defendant's father, Jim Bob, testified at the hearing and largely corroborated the testimony of Mrs. Holt.  For example, he agreed that Defendant inappropriately touched at least four children, but he was hazy on the details.  He recalled that Defendant inappropriately touched the children on their breasts while they were sleeping on more than one occasion, but beyond that, his memory failed him.  In other words, he admitted the touching was "inappropriate," but he was unwilling to provide further details, pleading a lack of memory.  The Court found Mr. Duggar's selective lapse in memory to be not credible; he was obviously reluctant to testify against his son.  In any event, his testimony is not necessary for the Government to introduce Rule 414 evidence at trial; Mrs. Holt's testimony is sufficient.

### D.  Rule 403's Balancing Test

Though the evidence the Government seeks to introduce qualifies for admission under Rule 414, that is not the end of the analysis.  "Evidence offered under Rule 414 is still subject to the requirements of Rule 403." *United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir. 1997).  Relevant evidence of a defendant's prior child molestation should not be admitted if "its probative value is substantially outweighed by a danger of one or

---

[4] The Court also finds that the affirmative defense in Arkansas Code § 5-15-125(a)(5)(B) does not apply based on the testimony of Mrs. Holt regarding the relative ages of the Defendant and the child victims.  *See also* Court's Exhibit 2 (under seal), received during the November 29 hearing.

more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Tenth Circuit has adopted a four-factor test that is helpful when performing a Rule 403 balancing in the context of Rule 414. The factors are:

1) how clearly the prior act has been proved;
2) how probative the evidence is of the material fact it is admitted to prove;
3) how seriously disputed the material fact is; and
4) whether the government can avail itself of any less prejudicial evidence.

*United States v. McHorse*, 179 F.3d 889, 898 (10th Cir. 1999).

As to the first factor, the Court finds, based on the Government's proffer of evidence at the hearing, that the prior acts of child molestation allegedly committed by Defendant in 2002 and 2003 against four child victims are clear and compelling. The Court makes a preliminary finding that a factfinder could reasonably determine, by a preponderance of the evidence, that Defendant committed a prior act of child molestation as defined by Rule 414.

As to the second factor, the Court finds the Government's evidence is probative of Defendant's propensity to commit the child pornography offenses with which he is charged. The child pornography victims in this case are approximately the same ages as the victims of Defendant's hands-on child-molestation offenses. Accordingly, the prior-act evidence is probative of Defendant's sexual interest in underage children and his propensity for exploiting young girls. *See United States v. Bartunek*, 969 F.3d 860, 864 (8th Cir. 2020) (affirming district court decision to admit child victim testimony in a child pornography possession case because the evidence was probative of the defendant's sexual interest in underage children); *United States v. Libbey-Tipton*, 948 F.3d 694, 702 (6th Cir. 2020) ("It is logical to infer that Libbey-Tipton's preference for pornography

depicting prepubescent girls would translate from his actions in the molestation of [a four-year-old] and serve as relevant evidence of whether it was Libbey-Tipton that downloaded the images."); *United States v. Emmert*, 825 F.3d 906, 909 (8th Cir. 2016) (affirming district court's decision to admit evidence of hands-on sexual abuse of minors in defendant's child pornography possession case because the "sexual abuse and child pornography victims were similar in age").

Defendant contends that the hands-on offenses took place approximately eighteen years ago, and this fact diminishes the probative value of the evidence. Given controlling precedent, the Court disagrees. In *United States v. Bartunek*, the Eighth Circuit opined that twenty-year-old acts of child molestation were admissible in the defendant's child pornography trial, and the age of the prior offenses "did not establish unfair prejudice." 969 F.3d at 864. The court also observed in *Bartunek* that "Congress placed no time limit on admissibility of evidence under Rule 414 . . . ." *Id.*; *see also United States v. Drewry*, 365 F.3d 957, 960 (10th Cir. 2004) (finding "[s]ufficient factual similarity" between twenty-five-year-old uncharged child molestation and the charged offense); *United States v. Gabe,* 237 F.3d 954, 959–60 (8th Cir. 2001) (upholding district court's admission of evidence of sexual molestation from twenty years before); *United States v. Meacham*, 115 F.3d 1488, 1495 (10th Cir. 1997) (stating that "[s]imilarity of prior acts to the charged offense may outweigh concerns of remoteness in time"); *United States v. Larson,* 112 F.3d 600, 605 (2d Cir. 1997) (noting that "Congress meant [Rule 414's] temporal scope to be broad" in upholding admission of evidence of abuse sixteen years before the charged offense).

Defendant also argues—without any citation to authority, legal or otherwise—that "an allegation concerning alleged conduct by Duggar as a juvenile sheds no light on whether Duggar knowingly received or possessed alleged child pornography on three days in 2019 as the indictment alleges." (Doc. 72, p. 4). He also claims, "The probative value of acts allegedly committed by a child is, at best, minimal with respect to crimes allegedly committed more than 18 years later as an adult." (Doc. 85, p. 7). However, in *United States v. Emmert*, the Eighth Circuit affirmed the trial court's admission of Rule 414 evidence of hands-on sexual abuse that the defendant allegedly committed twenty years earlier, when he was seventeen years old and still a minor. 825 F.3d at 908. As relevant to the instant case, the child-molestation evidence in *Emmert*—though aged—was deemed admissible in the defendant's child pornography trial.

Next, turning to the third factor, there is no serious dispute about the facts surrounding Defendant's prior acts of child molestation. Defendant's father and Mrs. Holt testified to essentially the same facts, and Defendant and four of his sisters filed civil lawsuits in 2017 discussing these same facts and treating the allegations of child molestation as true. Moreover, during the hearing, Defendant's father testified that he and his wife appeared on a nationally televised talk show in 2015 and openly discussed the acts of child molestation that Defendant committed against the four child victims.

Finally, with respect to the fourth factor, it does not appear the Government can present less prejudicial evidence to show Defendant's propensity, motive, and identity to commit the crimes alleged. There is little doubt that the Government's Rule 414 evidence, if introduced, will be prejudicial to Defendant. But Rule 403 only counsels against the admission of *unfairly* prejudicial evidence. *United States v. Gabe*, 237 F.3d. 954, 960

(8th Cir. 2001).  Here, the evidence is prejudicial "for the same reason it is probative." *Id.* The Court will provide the limiting instruction contemplated by Eighth Circuit Model Criminal Jury Instruction § 2.08A.  *See United States v. Hollow Horn*, 523 F.3d 882, 898 (8th Cir. 2008) (approving of the district court's decision to admit proper Rule 414 evidence along with a limiting instruction to the jury).

## II.  CONCLUSION

For the reasons stated, the Court finds the evidence the Government seeks to introduce under Rule 414 is both relevant and admissible.  Further, the Court finds that the admission of this evidence at trial will not violate Rule 403.

**IT IS THEREFORE ORDERED** that the Government's Motion in Limine to Admit Evidence of the Defendant's Prior Child Molestation Conduct (Doc. 68) is **GRANTED**, and Defendant's Motion in Limine to Exclude Evidence of Juvenile Allegations (Doc. 72) is **DENIED**.

**IT IS SO ORDERED** on this 1st day of December, 2021.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE