## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 5:21-CR-50014-001** |
| **v.** | ) | |
| | ) | |
| **JOSHUA JAMES DUGGAR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL

Defendant Joshua Duggar ("Duggar"), by and through undersigned counsel, respectfully moves this Court to enter a judgment of acquittal pursuant to Federal Rule of Criminal Procedure ("Rule") 29(c). In the alternative, Duggar moves this Court to grant him a new trial pursuant to Rule 33. Only in the event this Court denies those motions, Duggar requests that this Court dismiss Count 2 with prejudice as it is a lesser included offense of Count 1.

### I.      Relevant Background

On April 28, 2021, a federal grand jury in the Western District of Arkansas returned a two-count indictment, alleging: one count of receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1); and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). (Doc. 1). Duggar pleaded not guilty to both counts and proceeded to trial.

After the close of the Government's case-in-chief, Duggar timely moved this Court to enter a judgment of acquittal pursuant to Rule 29(a). This Court denied Duggar's motion. After the close of the defense's case-in-chief, Duggar timely moved this Court to enter a judgment of acquittal pursuant to Rule 29(a). This Court denied this motion.

Following trial, the jury returned a guilty verdict as to both counts. (Doc. 119).

## II.     This Court Should Enter a Judgment of Acquittal on Both Counts

Rule 29(c)(2) provides, "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Where, as here, "the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged," this Court must grant a Rule 29 motion for judgment of acquittal. *United States v. Baker*, 367 F.3d 790, 797 (8th Cir. 2004). This Court may not weigh the evidence or assess the credibility of witnesses when evaluating a Rule 29 motion. *Id*.

The first step in evaluating a Rule 29 motion is to determine what crime was charged in the indictment and what the elements of that crime are. The elements of Count One are:

> First, that between on or about May 14, 2019, and on or about May 16, 2019, Mr. Duggar knowingly received visual depictions of child pornography;
>
> Second, Mr. Duggar knew that the visual depictions were of a minor engaging in sexually explicit conduct; and
>
> Third, that the visual depictions had been mailed, shipped or transported by any means, including by computer, in interstate or foreign commerce.

(*See* Doc. 118 at 11; *see also* 8th Cir. Model Crim. Jury Instr. § 6.18.2252). The elements of Count Two are:

> First, that between on or about May 14, 2019, and on or about May 16, 2019, Mr. Duggar knowingly possessed computer files on a HP all-in-one desktop computer that contained multiple visual depictions of child pornography;
>
> Second, Mr. Duggar knew that the visual depictions were of a minor engaging in sexually explicit conduct; and
>
> Third, that Mr. Duggar knew that such items contained child pornography, which involved a prepubescent minor or a minor who had not attained the age of 12 years of age;

Fourth, that the HP computer, or the computer files containing the visual depictions, had been shipped or transported using any means or facility of interstate or foreign commerce, or affected interstate or foreign commerce by any means, including by computer.

(*See* Doc. 118 at 12; *see also* 8th Cir. Model Crim. Jury Instr. § 6.18.2252).

The evidence elicited at trial does not support a conviction on either count—even in the light most favorable to the Government. Specifically, even accepting *arguendo* and only for purposes of this motion the allegation that Duggar received and possessed visual depictions of child pornography, the Government failed to adduce any evidence that Duggar "knew that the visual depictions were of a minor engaging in sexually explicit conduct"—a necessary element for conviction of each count. (*See id.*). Indeed, the evidence at trial established that certain files allegedly found on the HP desktop computer were never viewed by any user of the computer and that all the files at issue had been deleted shortly after being downloaded. Thus, even in the light most favorable to the Government, the jury had no evidence that Duggar personally viewed any specific portion of any of the files allegedly found on the computer. As such, there was no evidence of *mens rea* from which the jury could base its guilty verdict as to each count.

As such, based on the foregoing and based on the arguments made orally at trial at the close of the Government's case-in-chief and at the close of the defense's case-in-chief, this Court should enter a judgment of acquittal on both counts.

### III.    In the Alternative, this Court Should Grant Duggar a New Trial

Rule 33(a) provides, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." When ruling on a motion for a new trial under Rule 33, this Court has much broader discretion than on a motion for judgment of acquittal under Rule 29. *See United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). This Court, therefore, *may* "weigh the evidence, disbelieve witnesses, and grant a new trial even where there

is substantial evidence to sustain the verdict." *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992). The jury's verdict may be overturned if "the evidence weighs heavily enough against the verdict such that a miscarriage of justice may have occurred." *United States v. Sturdivant,* 513 F.3d 795, 802 (8th Cir. 2008). "The Court's broad discretion empowers it to grant relief based not only on the sufficiency of the evidence at trial but on any other circumstance that might render the trial 'essentially unfair,' including trial errors." *United States v. D'Amelio,* 636 F.Supp.2d 234, 238 (S.D.N.Y. 2009).

This Court should grant Duggar a new trial because: (1) the Government violated *Brady* and *Giglio* by failing to timely disclose exculpatory evidence; (2) Duggar was effectively precluded from calling a necessary witness, Caleb Williams ("Williams"); (3) the Government violated the Jencks Act, Federal Rule of Criminal Procedure 16, and Federal Rule of Evidence 705 by failing to turn over exhibits created by the Government's expert witness, James Fottrell ("Fottrell"), in advance of trial; and (4) Fottrell was permitted to testify about geolocation despite the fact that this constitutes expert testimony that he was unqualified to render and that was not included in the Government's Federal Rule of Criminal Procedure 16(a)(1)(G) disclosure.

## A.    The Government's *Brady* and *Giglio* Violations Require a New Trial

The Government's failure to timely disclose material exculpatory evidence related to Caleb Williams entitles Duggar to a new trial.

In this case, the Government was aware in advance of trial that Duggar intended to elicit evidence, *inter alia*, that Williams was an individual who had access to the car lot and the HP desktop computer during certain relevant time periods and that law enforcement had failed to meaningfully investigate the possibility that anyone other than Duggar may have committed the crimes charged. (*See, e.g.*, Doc. 84 at 11) (Nov. 10, 2021 Response to Government Motion in

Limine to Exclude Evidence of Third-Party Guilt) ("Caleb Williams regularly used the desktop computer in the months and weeks leading up to May 2019. He also sold a car on behalf of Wholesale Motorcars on March 27, 2019, and used the HP desktop computer to print shipping labels. Even though all of this evidence has been in the Government's possession, custody, and control for more than 2.5 years, it appears law enforcement has entirely disregarded it").

Indeed, following Duggar's pretrial filing, the Government interviewed Williams for the first time and provided the defense with a report of interview on November 16, 2021. However, this interview was not the last of the Government's communications with Williams.

Rather, Williams subsequently contacted the Government on multiple occasions in advance of trial. Specifically, on November 24, 2021, Williams spoke to AUSA Dustin Roberts and HSI SA Gerald Faulkner by telephone and made certain statements relevant to the case. Furthermore, that same day, Williams apparently sent an unsolicited email to Department of Justice Trial Attorney William Clayman in which he wrote:

> I was completely mistaken about not being at the Wholesale Motorcars lot during the time I was in Arkansas (AR) between May 8, 2019 – May 11, 2019. I do not know if I was on the lot computer or even if I ended up going there. It looks like during my time there, I did odd work for the guys and maybe even Josh Duggar. In the messages between Josh Duggar and I, while I was in AR, as attached in one of these screenshots I am providing, I tell Josh I was planning to come to the lot a couple of days. I apologize for the mistake; I had no intention to mislead you all.

(*See* Exhibit 1). In this email, Williams admitted that he misled Government investigators during his previous interview, that he may have been at the car lot on May 11, 2019 (the date Linux was downloaded but not installed), and that he did "odd work" for "the guys" possibly including Duggar. (*See id.*). Attached to the email were various pictures and screenshots that Williams hoped would help to establish that he was not at the car lot on certain dates in question.

Despite having received this email and spoken with Williams on November 24, 2021, the Government did not disclose this information until the evening of Saturday, November 27, 2021, just three days before trial. (*See* Exhibit 2).

Although Williams appeared eager to voluntarily speak to Government counsel and Government investigators, he was far less willing to speak to the defense. Accordingly, left with no other option, the defense subpoenaed Williams to testify at trial.

Trial commenced on November 30, 2021. The Government presented evidence, including the testimony of law enforcement witnesses whose failure to meaningfully investigate and follow leads was highlighted by the defense. Each Government witness was, in turn, released.

However, on Sunday, December 5, 2021 at 6:38 p.m.—the evening before the Government rested its case—the Government notified undersigned counsel that Williams had sent yet another email to AUSA Clayman on November 30, 2021, the first day of trial. (*See* Exhibit 3). Government counsel provided the defense with a copy of the email Williams had sent the first day of trial. The defense immediately inquired as to why the Government had waited 5 days to disclose the email (and waited until a Sunday evening), but received no response. In the November 30, 2021 email that was not disclosed to the defense until 5 days into trial, Williams wrote,

> I've also found a few more passwords if you all want them. At some point several of the Duggar guys asked me to run the back ends of some of their social media to help them sell cars. Jed, Josiah, and Joseph I do believe. I still have access to Jed's fake account and Josiah's account.

(*See* Exhibit 4).

This is critical. At trial, the issue of passwords allegedly utilized by the perpetrator of the offenses charged was discussed by nearly every witness and this was a cornerstone of the prosecution's case. Not surprisingly, one of the principal strategies of the defense was to attack the Government's incomplete investigation of this case and law enforcement's failure to

meaningfully investigate the possibility that anyone other than Duggar was responsible for the crimes charged.

However, the Government hid the ball from the defense during nearly its entire case-in-chief. Williams expressly told the prosecutors—in a time-stamped email—that he had "found *a few more passwords*." (Exhibit 4) (emphasis added). He admitted he had access to Duggar social media accounts "to help them sell cars." (*Id*.). But when cross-examining the law enforcement witnesses the Government called to the stand, Duggar did not have Williams' statement even though it was sitting in the prosecution's inbox. Indeed, when one witness testified about access to a particular password at issue, the prosecutor attempted to establish it was absurd an employee of Wholesale Motorcars may have had access to the password.

This deprived the defense of the ability to impeach these witnesses with evidence that yet another person had access to passwords. Had the defense possessed this information when it became available, it would have meaningfully affected trial strategy and provided additional fodder for cross examination of Government witnesses.

The defense addressed the Government's late disclosure of this exculpatory evidence with this Court, on the record and in chambers, the morning after it was disclosed. (*See* Transcript, Vol. 5, at 898). Defense counsel noted:

> Number one, if Mr. Williams provided passwords that he had access to to the government, that's a very big deal in light of the government's theory as to the password being a big part of their case-in-chief, essentially mocking the defense for suggesting that anyone would have access to these passwords over the course of this trial. And second of all, the government had in their possession evidence that a third party clearly had access to Duggar family social media passwords, et cetera, which clearly, at least circumstantially, gives rise to the argument that others had access to the Intel 1988 password, perhaps among others.

(*Id.* at 901).

This Court then understandably asked Government counsel why it had waited 5 days to turn over the email from Williams. (*See id.* at 905). In response, Government counsel stated:

> Your Honor, one, these were unsolicited e-mails. We didn't ask Mr. Williams to send these e-mails. We got it in the middle of a trial. We've been in trial all week. We honestly did not review it until Sunday. That's when we met to discuss, okay, this is what we're going to do for the rest of our case. What are they going to do? And, okay, they are going to try to call Caleb Williams. Let's look at that e-mail.

(*Id.* at 905-06). This Court then asked who, specifically, Williams had sent the November 30, 2021 email to. (*Id.* at 906). Government counsel responded, "I think Mr. Clayman." (*Id.*).

Cutting to the chase, this Court asked, "[b]ack on the *Brady* issue, Mr. Clayman, this e-mail that you disclosed last night that came in several days ago, my understanding is that you just realized that you had this e-mail and viewed its contents last night?" (*Id.* at 908). In response, Mr. Clayman explained, "[w]e reviewed its contents together last night, yes." (*Id.*). The answer appears to be non-responsive to the question posed by this Court: the entire prosecution team may not have reviewed the email until Sunday night, but the question remains when Mr. Clayman reviewed it and why he sat on it for 5 full days and the vast majority of the prosecution's case-in-chief. Furthermore, the Government's response to this Court—"And, okay, they are going to try to call Caleb Williams. Let's look at that e-mail" (*Id*. at 905-06)—seems to suggest that the prosecutors chose not to pay attention at "*that* e-mail" until Sunday evening, not that they had not reviewed it.

The United States Supreme Court and the Eighth Circuit have spoken forcefully about the Government's discovery obligations regarding the production of exculpatory and/or impeachment evidence. "Under *Brady* and its progeny, prosecutors have a duty to disclose to the defense all material evidence favorable to the accused, including impeachment and exculpatory evidence." *United States v. Robinson*, 809 F.3d 991, 996 (8th Cir. 2016) (citing *Kyles v. Whitley*, 514 U.S. 419, 432-34 (1995) and *United States v. Bagley*, 473 U.S. 667, 676 (1985)). "This duty extends

not only to evidence of which a prosecutor is aware, but also to material 'favorable evidence known to the others acting on the government's behalf in the case, including the police.'" *Id*. (quoting *Kyles*, 514 U.S. at 437). "Such evidence is 'material' only if there is a reasonable probability that, had it been disclosed, the result of the proceeding would have been different." *Id*. (internal citations omitted). However, the "question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*.

"Because '[a] prosecutor has a duty to disclose evidence known by police officers, even if not known by the prosecutor,' a prosecutor has an attendant duty to learn of such evidence." *Id*. (quoting *United States v. Tyndall*, 521 F.3d 877, 882 (8th Cir. 2008)). "This attendant duty to learn of material and favorable exculpatory or impeachment evidence necessarily anticipates that a prosecutor will have an opportunity to discover such evidence through the exercise of reasonable diligence." *Id*. "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable." *Kyles*, 514 U.S. at 437–38 (citing *Brady*, 373 U.S. at 87).

In *Giglio* itself, the United States Supreme Court explained that *Brady* "held that suppression of material evidence justifies a new trial irrespective of the good faith or bad faith of the prosecution." *Giglio v. United States*, 405 U.S. 150, 153 (1972). Courts have universally granted new trials where the Government violated *Brady* and/or *Giglio*. *See, e.g., United States v. Andrews*, 532 F.3d 900, 905 (D.C. Cir. 2008) ("If the undisclosed evidence is material, a new trial

is required") (internal citations omitted); *Government of Virgin Islands v. Fahie*, 419 F.3d 249, 252 (3d Cir. 2005) ("[T]he Court has assumed that *Brady* violations that have affected the judgment of a jury normally will be remedied by a new trial . . . ."); *United States v. Cuffie*, 80 F.3d 514, 517 (D.C. Cir. 1996) ("Evidence is material if the undisclosed information could have substantially affected the efforts of defense counsel to impeach the witness, thereby calling into question the fairness of the ultimate verdict") (internal citations omitted).

In this case, Duggar was deprived of materially exculpatory evidence until the evening before the Government rested its case. Evidence that Williams, among other things, possessed "more passwords" (implying that he had previously provided passwords to the Government which, to this day, have not been disclosed) is, itself, exculpatory given the Government's theory of prosecution and, critically, substantially affected the efforts of defense counsel to impeach Government witnesses, including law enforcement investigators, thereby calling into question the fairness of the ultimate verdict. *See, e.g.*, *Cuffie*, 80 F.3d at 517. Not only did the Government stick its head in the sand when Williams attempted to disclose passwords of which he was aware, the Government failed to disclose Williams' statements to the Government in a timely manner such that this information could reasonably be used by Duggar at trial. It is settled law that a prosecutor has a duty to learn of favorable evidence—and cannot choose to ignore it. *See Kyles*, 514 U.S. at 437-38. At its core, there is no good reason the prosecution would flat-out ignore a witness' offer to disclose known passwords after the witness effectively admitted he provided incomplete or false information to the prosecutors. Burying their heads in the sand because the Government did not intend to call that witness is no excuse—and is even more unjustified considering the prosecution objected to that witness' testimony in the first place.

This Court should grant Duggar a new trial for the Government's failure to timely disclose *Brady* and *Giglio* evidence to the defense.

      B.    <u>Duggar Was Unconstitutionally Precluded from Calling a Necessary Witness</u>

This Court effectively precluded Duggar from presenting a necessary defense witness. Specifically, when Duggar sought to call Caleb Williams to testify at trial, the prosecution objected. The defense then proffered at sidebar what Williams' testimony would likely consist of—subject to the caveat that Williams had refused to engage in any meaningful discussions with the defense in advance of trial. A defense investigator also under subpoena repeatedly attempted to interview Williams, but he refused. Specifically, the defense proffered to this Court that Williams:

- previously worked at Wholesale Motorcars in various capacities;

- would authenticate a March 27, 2019 car sales contract listing him as the salesperson at Wholesale Motorcars;

- would demonstrate familiarity with the HP computer and certain software contained on the computer;

- had involvement with eBay sales and utilized the HP computer to print shipping labels;

- sent a text message to Duggar on May 7, 2019, reading, "[s]hould be able to help you a couple days this week, happy face, watch the lot";

- spent the night at Champion Motorcars, a mile away from Wholesale Motorcars, on May 9, 2019;

- took a photo of Duggar using a MacBook laptop in the Wholesale Motorcars office; and

- while denying that he was on the car lot to the Government, this was subject to impeachment as it was based solely on his testimony and on documents he provided to the Government which concealed the metadata.

(*See* Transcript, Vol. 6, at 1355-58). Government counsel also added, "the only obvious reason why the defense is wanting to call him is because he's a sex offender."[1] (*Id.* at 1359).

Following the defense proffer, this Court asked whether the "overriding purpose for which you're calling or would seek to call Mr. Williams to be able to make an argument that he was an alternative perpetrator of the offense conduct on May 14 through May 16, either in person or remotely?" (*Id.* at 1360). The defense responded, "[y]es, but not exclusively, because he also has circumstantial evidence that shows, for example, even just the fact that he sold a car as a salesperson at the car lot shows that there were other sales people other than is reflected in the employment records." (*Id.*).

This Court then ruled, "[s]o to the extent that the overarching relevance and purpose of calling this witness is to establish so-called alternative perpetrator evidence, based on this proffer, the Court will not allow Caleb Williams to be associated with so-called alternative perpetrator evidence or argument." (*Id.* at 1361-62). After identifying certain cases which this Court viewed as supporting its ruling, this Court ruled:

> Against that background, you may ask, you may call Mr. Williams and you may establish background of who he is and what his connection is. You may discuss the dates of his employment. You must ask him whether or not he has knowledge of recollection of being present on the car lot on or about May 13 through May 16. Defense conduct is May 14 through 16, but there's evidence that the Linux partition was installed on the 13th. And you may inquire if he ever remoted in to the office machine, and if so, the time periods in which he would have remoted in. If he establishes that he was present or that he had remoted in, then we can take this one step further and you can ask these other questions and the Court wouldn't have enough information to make an analysis against these cases that I discussed a moment ago until I hear that. However, assuming, as the government seems to be indicating, that he wasn't present on the lot—and I don't know whether they know whether he's ever remoted in or not—but assuming he testifies that he's never remoted in, that's as far as you are going to get and the Court would find in that instance under 403 that the 609 conviction that you have discussed should not be allowed, because at that point, the primary purpose or objective of calling the witness will have failed, and the Court is not going to allow speculative testimony

---

[1] Williams is a convicted sex offender.

that we was the alternative perpetrator. And so under 403, it would not be allowed
because of confusing the issues and the balance and test considerations.

(*Id.* at 1363-64).

This ruling by the Court on Duggar's right to call Williams to testify, thus, was that Duggar
was not permitted to meaningfully inquire if Williams simply testified that he was not on the car
lot at any point on May 13 through May 16, 2019 and if he testified that he had never remoted into
the HP computer (regardless of whether he was telling the truth). (*See id.*). But requiring Duggar
and, by extension, the jury to simply take at face value Williams' assertions that he was not the
one who committed these crimes constitutes an unambiguous violation of Duggar's Fifth and Sixth
Amendment rights.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in
the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution
guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes
v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690
(1986); *California v. Trombetta*, 467 U.S. 479, 485 (1984)). The Compulsory Process Clause of
the Sixth Amendment "embodies a substantive right to present criminal defense evidence before a
jury." *Taylor v. Illinois*, 484 U.S. 400, 422 (1988) (Brennan, J., dissenting). "[A]lthough by its
terms the Compulsory Process Clause confers only the right to compel witnesses to appear through
use of subpoena power, the Clause has consistently been given a broader interpretation. This
broader interpretation necessarily encompasses the right to present witness testimony, for the right
to compel a witness's presence in the courtroom could not protect the integrity of the
adversary process if it did not embrace the right to have the witness's testimony heard by the trier
of fact." *Anderson v. Groose*, 106 F.3d 242, 246 (8th Cir. 1997) (citing *Taylor*, 484 U.S. at 407-
09).

The Compulsory Process Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." More than 50 years ago, the Supreme Court explained,

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. 14, 19 (1967). "[T]he Framers of the Constitution felt it necessary specifically to provide that defendants in criminal cases should be provided the means of obtaining witnesses so that their own evidence, as well as the prosecution's, might be evaluated by the jury." *Id.* at 20. "The Compulsory Process clause protects the presentation of the defendant's case from unwarranted interference by the government, be it in the form of an unnecessary evidentiary rule, a prosecutor's misconduct, or an arbitrary ruling by the trial judge." *Gov't of Virgin Islands v. Mills*, 956 F.2d 443, 445 (3d Cir. 1992).

The ruling by this Court that Duggar would not be permitted to inquire further or to impeach Williams' credibility if Williams simply denied being present on the lot and denied ever remotely accessing the HP computer constituted an arbitrary ruling and violated Duggar's rights.

This Court's ruling was ostensibly premised, at least in part, on an apparent misreading of *Holmes v. South Carolina*, 547 U.S. 319 (2006). Specifically, this Court stated, "[t]he critical inquiry concerns the strength of the prosecution's case. If the prosecution's case is strong enough, the evidence of third-party guilt is excluded, even if that evidence, if viewed independently, would have great probative value and even if it would not pose an undue risk of harassment, prejudice, or confusion of the issues." (Transcript, Vol. 6, at 1362) (quoting *Holmes*, 547 U.S. at 329). But

this quote from *Holmes* was an explanation of what the Supreme Court ultimately concluded was an *unconstitutional* rule in place in South Carolina—it was not a statement concerning what the constitution requires.

In *Holmes*, the Supreme Court reversed the petitioner's conviction, concluding the trial court erred in precluding him from introducing evidence that another individual may have committed the crime on the unconstitutional grounds that "where there is strong evidence of an appellant's guilt, especially where there is strong forensic evidence, the proffered evidence about a third party's alleged guilt does not raise a reasonable inference as to the appellant's own innocence." *Holmes*, 547 U.S. at 324 (quoting trial court decision).

The *Holmes* Court explained that the trial court had violated the petitioner's rights by focusing not "on the probative value or the potential adverse effects of admitting the defense evidence of third-party guilt" but, instead, focusing on "the strength of the prosecution's case[.]" *Id.* at 329. The Court noted that the rule applied by the trial court boiled down to the premise that, "[i]f the prosecution's case is strong enough, the evidence of third-party guilt is excluded even if that evidence, if viewed independently, would have great probative value and even if it would not pose an undue risk of harassment, prejudice, or confusion of the issues." *Id.*

The *Holmes* Court continued, "[b]y evaluating the strength of only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt." *Id.* at 331. The Court then held, "the rule applied in this case by the State Supreme Court violates a criminal defendant's right to have "'a meaningful opportunity to present a complete defense.'" *Id.* (quoting *Crane,* 476 U.S. at 690; *Trombetta,* 467 U.S. at 485).

Furthermore, this Court's ruling—that Duggar was essentially stuck with whatever

Williams said about his opportunity to commit the crimes charged—also violated Duggar's right to a jury trial.

In *United States v. Crosby*, 75 F.3d 1343 (9th Cir. 1996), the defendant sought, like Duggar, an opportunity to cast doubt on the Government's case by, in part, demonstrating that the investigation was careless. There, the defendant, in addition to arguing that the Government's evidence did not prove he had committed the crime, argued:

> the police investigation was sloppy and that a more thorough investigation would have exonerated him. The defense pointed out that the first investigators at the crime scene failed to secure the area. Nor did they take much by way of physical evidence: no photographs, fingerprints, hair or skin samples, fingernail scrapings, fabric samples, footprints or tire tracks. While they obtained a baseball bat, scrapings from the wheelbarrow and pieces of the victim's and defendant's clothing, the police did not have most of this evidence tested. The only testing done was to compare the blood type found on the evidence with that of the victim. There was no comparison with Crosby's blood type and no DNA matching.

*Crosby*, 75 F.3d at 1347.

However, because the district court had excluded evidence concerning another individual's opportunity to have committed the crime, the court noted:

> Crosby couldn't fully argue his sloppy investigation theory. While he could point out what the police hadn't done, he could suggest no exculpatory evidence the police might have found had they conducted a more thorough investigation. The excluded evidence would have lent support to the defendant's theory that someone else beat [the victim] and undermined the prosecutor's claim that a more thorough investigation would have turned up nothing of value. Rather than being limited to poking holes in the prosecution's case, Crosby's counsel could have plausibly argued that a more thorough investigation would have produced evidence incriminating [another individual].

*Crosby*, 75 F.3d at 1347-48.

Concluding that the district court abused its discretion in excluding evidence concerning the possibility that the crime had been committed by someone other than the defendant, the *Crosby* court explained:

16

The excluded evidence could thus have caused the jury to develop a reasonable doubt by suggesting that someone other than the defendant was in a position to have beaten [the victim], that a competent investigation might have identified that person, and that [the victim] was lying when she pointed the finger at Crosby. In such circumstances, we are guided by the words of Wigmore:

[I]f the evidence [that someone else committed the crime] is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt.

*Id.* at 1349 (quoting 1A John Henry Wigmore, Evidence in Trials at Common Law § 139 (Tillers rev. 1983)).

In preventing Duggar from impeaching Williams including with his prior sex offense conviction if Williams simply denied having been in a position to commit the crimes charged, this Court did what *Crosby* and Wigmore cautioned against: it predetermined a critical factual dispute and prevented Duggar from arguing the existence of reasonable doubt to the jury. *See also* Federal Rules of Evidence 607 ("Any party, including the party that called the witness, may attack the witness's credibility") and 609 (impeachment by prior criminal conviction).

As in *Crosby*, this Court should have instead concluded that it "should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt." *Crosby*, 75 F.3d at 1349 (quoting Wigmore). *See also United States v. Espinoza*, 880 F.3d 506, 517 (9th Cir. 2018) ("That the defense's theory may be speculative is not a valid reason to exclude evidence of third-party culpability") (citing *United States v. Stever*, 603 F.3d 747, 754 (9th Cir. 2010)); *United States v. Vallejo*, 237 F.3d 1008, 1023 (9th Cir. 2001) ("it is the role of the jury to consider the evidence and determine whether it presents all kinds of fantasy possibilities, as the district court concluded, or whether it presents legitimate alternative theories for how the crime occurred") (internal quotation marks omitted).

This Court's ruling concerning Williams' testimony deprived Duggar of the opportunity to present relevant, material favorable evidence in his favor and this ruling was disproportionate to any legitimate or evidentiary purpose. As such, it violated Duggar's Fifth and Sixth Amendment rights and this Court should grant him a new trial. *See, e.g., Rock v. Arkansas,* 483 U.S. 44, 56 (1987).

        C.     <u>Jencks Act and Rule 16 Violations by the Government</u>

At trial, the Government recalled its expert witness, James Fottrell, during its rebuttal case, after the defense had rested. On direct examination, the Government sought to introduce certain print screens from Fottrell's virtual machine created in an attempt to mimic the HP computer. (*See* Transcript, Vol. 6, at 1371).

When the Government sought to introduce these exhibits, defense counsel requested a bench conference. (*Id.* at 1372). At the bench conference, defense counsel explained that the exhibits the Government was attempting to introduce had not been provided in advance of Fottrell's testimony in the Government's case-in-chief. (*Id.* at 1373). Government counsel expressly represented that the exhibits had been created "[o]ver the past couple of days," after Fottrell had testified in the Government's case-in-chief. (*Id.*). The Government then proceeded with Fottrell's examination, introducing two print screen exhibits which the Court accepted into evidence. (Trial Exhibits 86 and 87). Fottrell testified that Exhibit 86 supposedly showed, among other things, that it was possible to create the username, "dell_one" on the Linux partition of the HP computer. (*See id.* at 1379). And Fottrell testified that Exhibit 87 supposedly showed, among other things, that the "uTorrent" program was available for download on the Linux Snap Store. (*See id.* at 1385).

However, during cross examination, Fottrell admitted that he had not created these print screens after his testimony in the Government's case-in-chief as the Government had expressly represented to this Court, but, instead, that he had created the print screens before trial began. (*See id.* at 1397-98).

Following a recess, this Court held an in-chambers conference to address this issue. (*See id.* at 1407). Defense counsel argued that because Fottrell had created the exhibits in advance of trial, the Government had violated Rule 16 and the Jencks Act in failing to disclose them to the defense.[2] (*Id.*).

In response, the Government represented that it was "unaware that the screenshots occurred prior to his testimony last week. We all saw him putting the exhibit together and that's what we represented to the Court." (*Id.*). The defense explained,

> This was the subject of expert testimony. It was the subject, generally speaking, some of these positions about dell_one and things like that was the subject of his original expert testimony. We should have had discovery that was available before cross-examining him, before putting our own expert on the stand and releasing her from trial, and before they were admitted into evidence and suggested at side bar, notwithstanding the distinction, that these were essentially created, essentially, this is new. He came up with these over the weekend. He didn't. He had them in his hands since before trial.

(*Id.* at 1408).

In response, this Court ruled that the exhibits would be received, not as evidence, but as demonstrative exhibits, and this Court stated, "I don't understand why slides used for demonstrative purposes that are not evidence in the case itself would violate *Jencks*, especially in the context of rebuttal evidence." (*Id.* at 1412).

---

[2] The Government also violated Federal Rule of Evidence 705 (requiring the Government to "disclose those facts or data" on which an expert relies in forming an opinion no later than cross examination).

The defense then formally moved to strike the exhibits and to strike Fottrell's testimony in connection with the exhibits and for an instruction to the jury regarding this. (*See id.*). This Court denied the defense's motion. (*Id.*).

Federal Rule of Criminal Procedure 16 provides, in relevant part, "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and…the item is material to preparing the defense[.]" Fed. R. Crim. P. 16(a)(1)(E)(i).

At trial, during the Government's case-in-chief, Fottrell testified at length about many subjects and was cross examined concerning whether it was possible to create the username "dell_one" on the Linux partition of the HP computer and whether the program "uTorrent" was available for download on the Snap Store. Additionally, the defense expert, Michele Bush, testified extensively, and the defense introduced exhibits, concerning these same issues. As such, there can be no meaningful dispute that Government's exhibits 86 and 87[3] constituted documents and photographs "material to preparing the defense." *See* Fed. R. Crim. P. 16(a)(1)(E)(i). And, based on Fottrell's testimony, these screen prints were taken in advance of trial, making them also subject to disclosure under Federal Rule of Evidence 705. As such, it is clear that the Government violated Rule 16, the Jencks Act, and Federal Rule of Evidence 705 in failing to disclose the documents.

A new trial is the appropriate remedy for a Rule 16 violation if the remedy offered by the district court was inadequate to provide the defendant with a fair trial. *See, e.g., United States v. Miller*, 199 F.3d 416, 420 (7th Cir. 1999). Here, the remedy offered by the Court—receiving the exhibits as demonstratives and thereby permitting the jury to consider them but not to receive them

---

[3] These exhibits were re-marked as Court's Exhibits 4 and 5, respectively, following this Court's decision to admit the exhibits only as demonstratives.

as substantive evidence—was inadequate to provide Duggar with a fair trial. In other words, the remedy for a discovery violation by the prosecution is not that the undisclosed discovery should be admitted as demonstrative exhibits and considered by the jury—that is the prejudice, not the remedy.

The topics concerning the ability to create the username "dell_one" and the installation of "uTorrent" on the Linux partition were of enormous importance to the Government's and Duggar's cases-in-chief. The defense expressly argued that it was unlikely that whoever committed the crimes charged was able to create this username and to install "uTorrent" without utilizing command lines. The prejudice to Duggar caused by the Government's failure to comply with its discovery obligations is substantial.

Furthermore, the Government violated the Jencks Act in failing to disclose the print screens contained within the exhibits. The Jencks Act provides,

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500(b). Again, as already discussed with respect to Rule 16, it cannot reasonably be disputed that the print screens allegedly evidencing the ability to create the relevant username and to download the relevant BitTorrent software "relate[] to the subject matter as to which the witness has testified." *Id.*

And the remedy for violations of the Jencks Act is as follows:

> If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony

of the witness, and the trial shall proceed unless the court in its discretion shall
determine that the interests of justice require that a mistrial be declared.

18 U.S.C. § 3500(d). Under the Jencks Act, the remedy for the Government's failure to disclose is

to strike the witness' testimony (a request timely made by the defense and denied by this Court)

or a mistrial. *See id.* The remedy is not to accept the undisclosed materials as demonstrative

exhibits for the jury's consideration.

For this reason, Duggar respectfully requests that this Court grant him a new trial.

### D.  Impermissible Expert Testimony on Geolocation

At trial, the Government's expert, Fottrell, testified about geolocation, EXIF data, and GPS

coordinates, and the Government offered numerous exhibits which included this information into

evidence over Duggar's objection, purporting to place Duggar at the car lot at certain dates and

times. (*See* Transcript, Vol. 4, at 617-635; Government Exhibits 73-81). However, the

Government's Rule 16(a)(1)(G) disclosure in advance of trial did not identify these topics as an

area of Fottrell's expertise nor did it identify these subjects as topics about which he would offer

testimony at trial.

When the defense objected to this testimony and to the introduction of the exhibits, the

defense noted that these topics constitute expert testimony and provided certain relevant case law

to the Court. (*See* Transcript, Vol. 4, at 619). In response, the Government's position was that this

was not expert testimony. (*See id.* at 620).

In *United States v. Crawford*, 1:19-CR-170, 2021 WL 2367592 (W.D.N.Y 2021), the

district court encountered a similar situation. The court explained:

this Court is of the opinion that geolocation data such as this must be supported by
expert testimony concerning the operation of the Wi-Fi, satellite, or other tracking
method, and the interpretation of such data. *See United States v. Natal*, 849 F.3d
530 (2d. Cir. 2017) (holding that testimony on how cell phone towers operate must
be offered by an expert witness). The Second Circuit has cautioned that the line

between how cell phone towers operate and any other testimony on cell phone towers is frequently difficult to draw. *Id.* at 536. In this case, the Government represents that cell tower analysis was not used but it fails to provide caselaw stating that expert testimony is unnecessary for the use of Wi-Fi geolocation, in particular. The Court thus concludes that the evidence at issue here similarly requires expert analysis. As was directed by the Court at oral argument, the Government will need to provide an expert witness to explain and support the methods used by Google to obtain the geolocation data if it intends to use it as evidence at trial. It will be insufficient to call a Google representative to authenticate the records based only on accuracy under Fed. R. Evid. 901.

*Id.* at *3.

Moreover, while the Government argued at trial that the EXIF data at issue in this case was reliable, the Government has taken opportunistically inconsistent positions in this regard in different litigation. *See, e.g., United States v. Boyajian*, No. CR 09-933 A-CAS, 2012 WL 4094977, at *16 (C.D. Cal. 2012) ("the government asserts that the EXIF data is unreliable because it is set by the user").

This Court nonetheless concluded that Fottrell's testimony and, by extension, the exhibits, were admissible pursuant to Federal Rule of Evidence 701. (*See* Transcript, Vol. 4, at 628-29). And the Court also ruled that even under Rule 702, it was admissible because Fottrell "has already been qualified as an [expert] in computer forensics analysis and that this opinion is adequately supported by all of the criteria under 702." (*Id.* at 629).

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Here, however, Fottrell has no knowledge about how geolocation, EXIF data, or GPS coordinates work—at least so far as one can tell from having heard his testimony and reviewing the Government's disclosures. As such, it simply cannot be found that he "reliably applied the principles and methods to the facts of the case" as Rule 702 requires.

In *United States v. Wells*, the Ninth Circuit explained, "[w]hen the district court has erroneously admitted or excluded prejudicial evidence, we remand for a new trial. We do so even if the district court errs by failing to answer a threshold question of admissibility. We have no precedent for treating the erroneous admission of expert testimony any differently." *United States v. Wells*, 879 F.3d 900, 924 (9th Cir. 2018) (quoting *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 466 (9th Cir. 2014)).

In this case, the Government's main theory of prosecution was that because Duggar was allegedly present at the car lot on certain specific dates and times, he is the individual who perpetrated the crimes charged in the indictment. Fottrell's testimony, and the associated exhibits, cut directly to the core of that issue, allegedly placing Duggar at the lot at those times. But the law is clear: this is expert testimony and the Government wholly failed to establish that Fottrell was qualified to render an opinion on these topics.

As such, Duggar is entitled to a new trial on this ground as well.

## IV.    Duggar's Grounds for a Rule 29 Judgment of Acquittal Also Apply with Full Force to Duggar's Request for a New Trial

Duggar respectfully incorporates herein each argument in support of his motion for a Rule 29 judgment of acquittal as an argument also in support of his motion for a new trial. In the event

this Court denies Duggar's motion for judgment of acquittal, Duggar respectfully requests that this Court consider those grounds as sufficient grounds to grant Duggar, at a minimum, a new trial.

### V.      In the Alternative, Count 2 Must Be Dismissed with Prejudice

Duggar requests that this Court grant a motion for judgment of acquittal or, in the alternative, a new trial. However, only in the event this Court denies both motions, Duggar respectfully requests that this Court dismiss Count 2 of the indictment (Possession of Child Pornography) with prejudice.

The parties addressed the issue raised here with this Court in an on the record, in chambers hearing on December 8, 2021. During that hearing, this Court correctly determined that, as charged, Count 2 (Possession of Child Pornography) is a lesser included offense of Count 1 (Receipt of Child Pornography) and that a conviction of both counts would therefore violate the Double Jeopardy Clause of the constitution. (*See* Transcript, Vol. 7, at 1503-1508) (citing cases). Furthermore, the Government expressly agreed on the record and represented in writing that it would move to dismiss Count 2 of the indictment at sentencing if a guilty verdict on both counts was returned by the jury. (*See id*.; *see also* Court's Exhibit 7-E).

Against this backdrop, this Court expressly concluded that if Duggar was convicted of both counts of the indictment, the Court would immediately stay the conviction on Count 2 pending the Government's motion to dismiss Count 2 and, additionally, that the Court would grant the Government's motion to dismiss Count 2. (*See id.* at 1507-08).

Thus, if this Court denies Duggar's motion for judgment of acquittal and his motion for a new trial, Duggar moves this Court to dismiss Count 2 in accordance with binding case law. *See, e.g., United States v. Muhlenbruch*, 634 F.3d 987 (8th Cir. 2011); *Ball v. United States*, 470 U.S.

856 (1985); *United States v. Carpenter*, 422 F.3d 738, 747 (8th Cir. 2005); and *United States v. Robertson*, 560 F. App'x 626, 629 (8th Cir. 2013).

## VI.    Conclusion

Based on the foregoing, Duggar respectfully requests that this Court grant him a judgment of acquittal pursuant to Rule 29(c). In the alternative, Duggar respectfully requests that this Court enter an order granting Duggar a new trial. Only in the event this Court denies those motions, Duggar requests that this Court dismiss Count 2 with prejudice as it is a lesser included offense of Count 1.

Respectfully Submitted,

**Margulis Gelfand, LLC**

 */s/ Justin K. Gelfand*
JUSTIN K. GELFAND, MO Bar No. 62265*
IAN T. MURPHY, MO Bar No. 68289*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
ian@margulisgelfand.com
*Counsel for Defendant*
*Admitted Pro Hac Vice*

*--- and ---*

**Story Law Firm, PLLC**

*/s/ Travis W. Story*
Travis W. Story, AR Bar No. 2008278
2603 Main Drive, Suite 106
Fayetteville, AR 72704
Telephone: (479) 448-3700
Facsimile: (479) 443-3701
travis@storylawfirm.com

**<u>Certificate of Service</u>**

I hereby certify that this pleading was filed using this Court's CM/ECF system and that a

copy was provided to all counsel of record including the United States Attorney's Office for the

Western District of Arkansas.

<u> /s/ Justin K. Gelfand</u>
JUSTIN K. GELFAND, MO Bar No. 62265*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
ian@margulisgelfand.com
*Counsel for Defendant*
*Admitted Pro Hac Vice*

27