IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CASE NO.  5:21-CR-50014-001 |
| | ) | |
| | ) | |
| JOSHUA JAMES DUGGAR | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

Comes now the United States of America, by and through Dustin Roberts and Carly Marshall, Assistant United States Attorneys for the Western District of Arkansas, and William G. Clayman, Trial Attorney for the United States Department of Justice, files its Response to the Defendant's Sentencing Memorandum, and states the following:

On May 11, 2022, the parties filed their Sentencing Memorandum. The Government recommended that the Court impose a Guidelines-compliant sentence of 240 months. (Doc. 150). The defendant (Duggar), for his part, objected to the application of four sentencing enhancements in the PSR and recommended that the Court sentence him to 60 months of incarceration, the lowest sentence permitted by statute. (Doc. 151).

## I.    DUGGAR'S OBJECTIONS TO THE GUIDELINES

Duggar's Sentencing Memorandum raises objections to the application of four enhancements under the Guidelines. (Doc. 151 at pp. 5-10). Many of his arguments simply reassert the barebones claims he raised previously, (Doc. 144), and will not be addressed here. To correct some of his misstatements of the evidence and the law, however, the United States submits the following response.

### A.    Duggar's Objection to the Sadistic-or-Masochistic Enhancement

Duggar objects to the application of the sadistic-or-masochistic enhancement because, in his view, he only extracted "a portion" of the images from the "marissa.zip" file he downloaded via uTorrent and, apparently, none of those images depict sadistic or masochistic conduct. (Doc. 151 at p. 6). Duggar's claim is premised on a multilayered misunderstanding of the law and the evidence. First, while he is correct that the Guidelines do "not define sadistic, masochistic or violent conduct," he misses that the Eighth Circuit in the very precedent on which he relies held that depictions of adult men sexually penetrating prepubescent minors, or attempting to do so, are sadistic. *United States v. Dodd*, 598 F.3d 449, 453 (8th Cir. 2010). And here, the evidence proves that Duggar downloaded multiple videos depicting just that: adults engaging in vaginal sex with prepubescent girls. (Doc. 150 at p. 11). Second, the evidence also proves that Duggar extracted hundreds of images from the "marissa.zip" file, many of which depict a prepubescent girl being subjected to unquestionably sadistic abuse, including sexual penetration. (Doc. 150 at p. 10). Third, his attempts to delete this material is irrelevant: the recovered evidence is sufficient to conclude, as the jury did beyond a reasonable doubt, that he knowingly received this child sexual abuse material (CSAM) in May 2019. (Doc. 150 at pp. 19-20). And finally, to the extent Duggar tries to argue that he did not knowingly seek out CSAM depicting sadistic or masochistic conduct, that argument is belied by the evidence, which shows that he exclusively downloaded this type of CSAM over several days, and is also irrelevant. *See* U.S.S.G. § 2G2.2 cmt. n. 1 ("[This enhancement] applies … regardless of whether the defendant specifically intended to … receive … such materials.").

Duggar makes no attempt to grapple with this evidence or controlling precedent, and his objection should be overruled on the record before the Court.

### B.     Duggar's Objection to the Enhancement for the Number of Images

Duggar also objects to the PSR's finding that his offense involved over 600 images, claiming that it relies on "problematic files" that he either did not fully view or actually download to reach that number. (Doc. 151 at pp. 8-10). Duggar's argument regarding what he claims he viewed is a red herring. As the Eighth Circuit has explained and as the plain language of U.S.S.G. § 2G2.2(b)(7) makes clear, there is no requirement for the Government to prove he viewed a specific image or video for the Court to count it under this provision. *See United States v. Koch*, 625 F.3d 470, 480 (8th Cir. 2010). Put differently, the CSAM he downloaded via uTorrent and Tor count under this provision regardless of whether the Government proves he viewed them in their entirety or at all. Indeed, under Duggar's flawed reading of the Guidelines, savvier offenders like himself who attempt to delete forensic evidence of their crimes would be rewarded for that very conduct. But Duggar's argument is also mistaken on the facts. As explained in the Government's Sentencing Memorandum, the forensic evidence from trial proves beyond a reasonable doubt that Duggar received and possessed—and even viewed—at least seven videos and hundreds of images before deleting them, bringing his total image count to over 600.[1]

Per Duggar, the so-called "problematic files" include the "pedomom,wmv" video, the "playtoysweetie.7z" zip file, and the multiple videos depicting the violent sexual abuse of an infant associated with the two "DD.torrent" files he saved to his computer. (Doc. 151 at pp. 8-10). With

---

[1] The seven (7) videos are "mov_0214.mp4," "mov_0216.mp4," "14yo girl Suck and Fuck.flv," "test.avi," "Pussy Pounded.mpg," "Asi se mama linda.mp4," and "pedomom.wmv," and the images come from the "marissa.zip" and "Webcam-Collections-prevs.7z" files. (Doc. 150 at pp. 18-19). This CSAM—much of which is sadistic in nature—was admitted into evidence at trial. And while Duggar now contends that "pedomom.wmv" is one of the "problematic files" because the United States cannot prove he watched every second of the thirty-minute file, he also concedes that it was downloaded via uTorrent and opened in VLC player, (Doc. 151 at p. 9), which is sufficient for it to count under this enhancement along with the other CSAM he downloaded.

respect to "pedomom.wmv," Duggar argues that this video should not count under § 2G2.2(b)(7) because the United States cannot prove he watched every second of it, but this argument fails based on the caselaw and reasoning in the preceding paragraph. As to "playtoysweetie.7z," Duggar argues that the Government cannot prove he extracted the contents of this zip file after downloading it via uTorrent. He makes a similar argument with respect to the two "DD.torrent" files, claiming that the Government cannot prove he downloaded the multiple videos associated with these torrent files via uTorrent. But these arguments are red herrings, too. As explained above, this enhancement applies without considering "playtoysweete.7z" or the "DD.torrent" files and the Government therefore need not rely on them to prove by a preponderance that Duggar's offense involved over 600 images. Thus, whether Duggar extracted the content of the "playtoysweetie.7z" zip file or downloaded the CSAM associated with the "DD.torrent" file is irrelevant, and this enhancement applies as a legal matter based on the trial evidence and testimony.

However, to be sure, Duggar's claims regarding these so-called "problematic files" serve only to confuse and downplay the severity of his crimes. For example, the only reason Duggar would have downloaded multiple "DD.torrent" files to his computer would be to obtain the CSAM associated with those files. That is, after all, the only purpose of a torrent file. (Trial Tr. at p. 531). Instead of disregarding Duggar's repeated steps towards downloading this alarming CSAM, as Duggar proposes, the Court should instead conclude that he either intended to download the videos associated with the "DD.torrent" files—that is, that he attempted to receive that CSAM depicting the violent sexual abuse of an infant—or already had and deleted that evidence. And Duggar's claim that the Government "went out of its way to emphasize" that he only viewed part of the "pedomom.wmv" file is incorrect—both legally, as discussed above, and factually. Duggar's expert, Michele Bush, opined that he only viewed a portion of that video in response to questioning

from the defense, not the Government. (Trial Tr. at pp. 1106-1107). Ms. Bush also at one point incorrectly swore that law enforcement did not download CSAM from Duggar based on her own misunderstanding of the forensics, (*see* Doc. 37-3 at p. 7, Doc. 45-6 at pp. 6-8), and later tried to opine in Duggar's favor on a topic that she conceded was outside the scope of her knowledge, (Trial Tr. pp. 1318-1319 and 1322). As such, her opinions on the forensic evidence in this case have been proven demonstrably unreliable and should not be relied upon for any matter of consequence.

Accordingly, Duggar's objection is legally irrelevant and factually incorrect, and it should therefore be overruled on the record before the Court.

### C.   Duggar's Objection to the Pattern-of-Activity Enhancement

Duggar also objects to the application of the pattern-of-activity enhancement, claiming that it is based on unreliable reporting from "a tabloid magazine" and that his counsel's "[r]esearch has revealed no case law supporting application of this substantial enhancement to conduct that occurred when a defendant was … a juvenile." (Doc. 151 at p. 8). Duggar is wrong on both counts. The application of this enhancement is based on the unrebutted testimony of Bobye Holt, which was corroborated by the self-serving testimony of his own father.[2] (Doc. 106 at pp. 9-11). And even the most cursory review of legal precedent confirms that this enhancement can and should be

---

[2] Duggar and his father previously claimed that he confessed his crimes to Mrs. Holt in her role as his spiritual advisor and a member of the clergy of his church. (Doc. 99, Doc. 106 at pp. 6-9).Without explanation, Duggar no longer appears to believe that Mrs. Holt was his spiritual advisor or a church elder, describing her testimony now as false and referring to her as simply "Holt." (Doc. 151 at p. 7).

applied based on conduct that occurred when a defendant was a juvenile.[3] (Doc. 150 at p. 16). Duggar's objection to the application of this enhancement should therefore be denied.[4]

## II.    DUGGAR'S ARGUMENTS UNDER 18 U.S.C. § 3553

Setting aside the applicable sentencing enhancements, Duggar also argues that the Court should vary downward from the Guidelines and impose the minimum statutory sentence based on the factors set forth in 18 U.S.C. § 3553(a). (Doc. 151 at p. 10). To support his argument, Duggar relies on claims from his wife, his mother, and others that he is "deeply devoted" to his faith and family, as well as generic arguments about the Guidelines and sentences in distinguishable cases. (*Id.* at pp. 10-30). The Government has already explained in detail why Duggar's crimes are an aberration from other child-pornography offenses and thus warrant the 240-month term of imprisonment recommended by the Guidelines, (Doc. 150 at pp. 20-30), and those arguments will not be repeated here. To address the additional claims in his Sentencing Memorandum, however, the Government submits the following response to his § 3553(a) analysis.

As noted above, Duggar's arguments as to the § 3553(a) factors draw heavily from the letters of support submitted with his Sentencing Memorandum. He claims that the writers are "extremely supportive while fully aware of his conviction[s]," and that this "will enable him to

---

[3] Given the abundance of precedent supporting the application of this enhancement to juvenile conduct, including the Eighth Circuit's decision in *United States v. Woodard*, 694 F.3d 950 (8th Cir. 2012), it is unclear why Duggar maintains that its application is legally unsupported here. Duggar may be misreading the Eighth Circuit's later decision in *United States v. Gauld*, 865 F.3d 1030 (8th Cir. 2017), which disagreed with *Woodard*. *Gauld*, however, has nothing to do with the Guidelines and disagreed only with the portion of *Woodard* holding that juvenile adjudications are prior convictions under § 2252(b)(1). 865 F.3d at 1032. The *Woodard* decision's holding that the pattern-of-activity enhancement applies to juvenile sex acts therefore remains the law in the Eighth Circuit and is consistent with holdings from multiple other circuits. (Doc. 150 at p. 16 n.10).

[4] For the reasons stated in its Sentencing Memorandum, the Government maintains that the PSR also correctly applied the distribution enhancement under § 2G2.2(b)(3)(F). (Doc. 150 at pp. 4-8).

make the most of the rest of his life and to work hard to ensure that his children's lives are impacted as little as is possible" by his trafficking in CSAM. (Doc. 151 at p. 16). Duggar also notes that he grew up "in front of television cameras," and appears to suggest that his crimes are related to "the challenges associated with being a child whose everyday life is viewed by the public and, in certain instances, being criticized by the media and complete strangers." (*Id.* at pp. 10-11). These claims only underscore the appropriateness of the Government's sentencing recommendation. Indeed, his supportive family and public-facing and privileged lifestyle make his pattern of criminal conduct all the more baffling. Despite achieving some level of fame through reality television as an adult,[5] he is better known at this point for his behavior outside his family's show, including his sexual improprieties and criminal sexual conduct. More importantly, none of these letters meaningfully grapple with his crimes or his sexual proclivities toward prepubescent girls. At least one suggests that "enemies" threatened by his "quiet display of conservative values" are targeting him while simultaneously advancing his impossible theory that "an unscrupulous young man" framed him. (Doc. 151-1 at pp. 18-21). Many more describe his conviction generally as an unfortunate happenstance—something that has simply befallen him despite his best efforts to avoid it.

That is precisely the problem. While Duggar is apparently continuing to tell those around him that he is the victim of "an unscrupulous young man" or an even broader conspiracy, that theory is irreconcilable with the straightforward, common-sense evidence produced at trial, which overwhelmingly reflects his culpability in repeatedly downloading and viewing CSAM on his work computer. It is also irreconcilable with the goals of sentencing, which include protecting the public and affording adequate deterrence. Absent some recognition from Duggar of his crimes and

---

[5] The Duggar family's television show premiered in 2008, when Duggar was twenty years old. *Big Family Meets Big Apple*, IMDb, https://www.imdb.com/title/tt1319202/?ref_=ttep_ep1 (identifying air date as September 29, 2008).

his need to address his demonstrated and long-standing sexual interest in children, it is unlikely that that he will ever view his conviction as anything other than proof that he needs to be more circumspect and secretive the next time he engages in conduct involving child sexual abuse. It is equally unlikely that he will ever receive the treatment and accountability needed to prevent him from reoffending should he maintain this posture. In fact, given the apparent success of his blame tactics with some of the individuals he intends to surround himself with after his release from incarceration, it is not just unlikely—it is inconceivable.

Equally mystifying is Duggar's claim that his situation is akin to the circumstances in which courts have found a reduced sentence appropriate based on acts of charity or extraordinary family circumstances. (Doc. 151 at pp. 13-16). The cases he cites for that proposition are inapposite. In *United States v. Warner*, for example, the sentencing court considered a defendant's multi-million dollars in charitable donations before imposing a two-year term of probation for pleading guilty to one count of tax evasion. 792 F.3d 847, 853 (7th Cir. 2015). And in *United States v. Spero*, the sentencing court imposed five years of probation after the defendant pleaded guilty to one count of bank fraud based in part on his indispensable role in caring for a child with multiple significant disabilities, as assessed by the child's doctor. 382 F.3d 803, 805 (8th Cir. 2004). Nothing remotely close to those circumstances exists here. And while Duggar's incarceration will undoubtedly reverberate through his immediate and extended family, that is unfortunately true in many criminal cases and particularly in cases like this one, where Duggar appears to have hidden his reprehensible conduct from those closest to him up until his conviction.

Duggar also raises a wholesale challenge to the Guidelines, suggesting that this Court should disregard them and treat him as if he had been convicted under a long-extinct legal scheme. (Doc. 151 at pp. 18-25). But Duggar's claims regarding the Guidelines make little sense and have

been rejected in courts throughout the country. He claims, for example, that several enhancements under § 2G2.2—like the use-of-a-computer enhancement—are "meaningless" because they apply frequently. (Doc. 151 at pp. 22-23). That enhancement, however, recognizes that the use of computers to traffic in CSAM renders that conduct more worthy of punishment. *See United States v. Lewis*, 605 F.3d 395, 402-403 (6th Cir. 2010) ("Because of its wide dissemination and instantaneous transmission, computer-assisted trafficking [of CSAM] is also more difficult for law enforcement officials to investigate and prosecute."). It makes no sense that an aggravated form of an offense ceases to be aggravated—and instead becomes deserving of less punishment—simply because that aggravated form becomes a more common method of the crime's commission. More broadly, courts have repeatedly declined invitations like Duggar's to cast aside § 2G2.2 based on its "purported lack of empirical grounding," and to interpret a Sentencing Commission report as somehow rendering "the non-production child pornography guidelines in § 2G2.2 invalid or illegitimate." *United States v. Lynde*, 926 F.3d 275, 279-82 (6th Cir. 2019); *see also United States v. Anderson*, 29 F.4th 388, 390-91 (8th Cir. 2022); *United States v. Hubbard*, 414 F. App'x 893, 894 (8th Cir. 2011). As another circuit explained, courts should "give respectful attention to Congress's view that child pornography crimes are serious offenses deserving serious sanctions," as reflected by the Guidelines and statutory scheme. *United States v. Strieper*, 666 F.3d 288, 296 (4th Cir. 2012). And, in any event, the Sentencing Commission's latest report recommends that this Court focus on "the content of [Duggar's] child pornography collection" and his "engagement in sexually abuse or exploitative conduct in addition to the child pornography offense" in crafting its sentence, both of which counsel in favor of a significant sanction.[6] (Doc. 150 at pp. 20-30).

---

[6] *See* United States Sentencing Commission, Federal Sentencing of Child Pornography Non-Production Offenses (June 2021), at 2, available at

Last, Duggar argues that the Court should impose the lowest possible sentence permitted by statute because he will be subject supervised release and suffer the "humiliation" of his conviction. (Doc. 151 at pp. 25-26). These arguments miss the mark entirely. "Supervised release … is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). Instead, it "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). That is particularly true in child-pornography cases given the heightened concern for recidivism among sex offenders and the need for supervision over time. *See* H.R. Rep. No. 107–527 at 2 (2002) ("[S]tudies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes [and that] … the recidivism rates do not appreciably decline as offenders age"). Thus, while Duggar certainly should be subject to a lengthy term of supervision to ensure that he receives adequate support and sex-offender treatment upon his release from incarceration, that term of supervision should not factor into the Court's analysis of the appropriate sentence here.

---

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf

## <u>CONCLUSION</u>

For the reasons stated above, the United States respectfully requests that the Court overrule Duggar's objections to the PSR and recommends that a Guidelines sentence of 240 months appropriately reflects the severity of Duggar's conduct.

Respectfully submitted,

DAVID CLAY FOLWKES
UNITED STATES ATTORNEY

By:     */s/ Dustin Roberts*
Dustin Roberts
Assistant United States Attorney
Arkansas Bar No. 2005185
414 Parker Avenue
Fort Smith, AR 72901
Office: 479-783-5125

*/s/ Carly Marshall*
Carly Marshall
Assistant United States Attorney
Arkansas Bar No. 2012173
414 Parker Avenue
Fort Smith, AR 72901
Office: 479-783-5125

and,

*/s/ William G. Clayman*
William G. Clayman
D.C. Bar No. 1552464
Trial Attorney
Child Exploitation and Obscenity Section
U.S. Department of Justice
1301 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-514-5780

<u>**CERTIFICATE OF SERVICE**</u>

I, Dustin Roberts, Assistant United States Attorney for the Western District of Arkansas, hereby certify that a true and correct copy of the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

Justin Gelfand, Travis Story, Ian Murphy, and Gregory Payne Attorneys for the Defendant

/s/ Dustin Roberts

Dustin Roberts
Assistant United States Attorney