UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:21-CR-50014-001 |
| ) | |
| JOSHUA DUGGAR, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Joshua Duggar ("Duggar"), by and through undersigned counsel, respectfully submits this response to the Government's sentencing memorandum. (Doc. 150).

As it stands, the parties have filed extensive briefing regarding the advisory Sentencing Guidelines applicable to this case. As such, this response focuses largely, though not exclusively, on certain issues raised in the Government's sentencing memorandum not yet addressed by Duggar in previous filings.

**I.     Introduction**

What stands out most about the Government's position as to a sentence that is "sufficient, but not greater than necessary" to carry out the sentencing objectives of 18 U.S.C. § 3553(a) is the total lack of support for the Government's request that this Court should sentence Duggar to the *maximum* sentence permitted by law: 20 years. Indeed, despite more than 30 pages of briefing, the Government has not pointed to a single case in which a similarly-situated defendant has received a 20-year sentence for receipt of child pornography. And that is no oversight. It is because the sentence the Government seeks is excessive, entirely unwarranted, and unprecedented given the alleged crime for which Duggar stands before this Court for sentencing.

Instead of meaningfully addressing this important Section 3553(a) factor requiring a court to avoid unwarranted sentencing disparities among similarly situated defendants, the Government has again chosen to take every opportunity to describe in detail certain images allegedly found in unallocated space on the desktop computer at issue in this case. To be clear, nobody denies the extent to which real children are victims of child pornography crimes—but the Government's focus in its sentencing memorandum is clearly intended to provoke an emotional response in the hopes that this Court will hand down an unnecessarily harsh sentence in this case. This Court should reject the Government's attempt and instead focus, as the law requires, on what the evidence in this case *actually* revealed even in the light most favorable to the Government for purposes of sentencing. For instance, much of the imagery unnecessarily described in the Government's memorandum was either never on the computer in the first place or was never viewed by any user of the computer. Furthermore, every act the Government alleges gives rise to this crime occurred over the course of a few days after which every image at issue was deleted—and approximately six months transpired from the date of deletion to the date law enforcement executed the search warrant. During this six-month period, despite no one having any idea there was an ongoing investigation, no illegal activity is even alleged to have occurred. Stated simply, despite the Government's repeated protestations to the contrary, this is *not* a typical case involving a defendant who allegedly sought out child pornography, amassed a large amount of it, continued to seek it out, and held onto it indefinitely—all of which are attributes of child pornography offenders according to the law enforcement affidavits in this case.

    Rather than requesting that this Court do what the law requires—impose a sentence that is "sufficient, but not greater than necessary," *see* 18 U.S.C. § 3553(a)—the Government asks this Court to hand down the maximum sentence allowed by law. But when this Court considers the

Section 3553(a) factors and the evidence that came out at trial, this Court should conclude that a sentence of 60 months' imprisonment is "sufficient, but not greater than necessary."

II.     **The Need to Avoid Sentencing Disparities**

In requesting that this Court sentence Duggar to 240 months' imprisonment, the Government directs this Court's attention to three Western District of Arkansas cases. (*See* Doc. 150 at 28-29). However, what is particularly remarkable about the Government's authority is that *none* of these cases resulted in the sentence the Government now seeks.

First, the Government directs this Court's attention to *United States v. Carey*, 5:1-CR-50011-001 (W.D. Ark.). In its memorandum, the Government notes that the defendant there was sentenced to 180 months' imprisonment for Transportation of and Access with Intent to View Child Pornography. (*See* Doc. 150 at 28). The Government notes that the defendant received the so-called "pattern of activity" enhancement sought here by the Government because, according to the Government, "Carey was convicted in state court of a crime similar to production of child pornography involving an approximately 16-year-old-victim." (*Id.* at 29). The Government then argues that there are aggravating factors present in *Duggar* that were not present in *Carey*. (*Id.*). In other words, the Government's position boils down to this: *Carey* received a sentence of 15 years' imprisonment and Duggar should be sentenced to 5 additional years because his crime was more egregious than Carey's.

But a review of the Government's own sentencing memorandum in *Carey*—as opposed to the Government's synopsis of *Carey* in this case—reveals just how different the two cases are. Specifically, the Government omits that Carey had a criminal history category of IV in stark contrast to Duggar's complete lack of any criminal history. And even more, Carey's conduct is beyond comparison to anything the Government alleges Duggar did.

3

In addition to possessing a large number of images, Carey also had a remarkable history which, according to the Government, included:

- being charged with multiple counts involving the sexual exploitation of a minor, namely three (3) counts of Sexual Abuse of Children, two (2) Counts Photography/film/depict on Computer Sex Act-Child, and three (3) counts of Corruption of Minors. The charges all stem from a police report lodged in February of 2004 detailing a Department of Human Services investigation in which a 16 year old female was video recorded by the defendant nude. Separately, it was determined that the defendant also recorded a sexual act between a 19 year old female and a 16 year old minor. During the resulting police investigation, the defendant admitted to recording the two incidents (5:19-CR-50011-TLB, Doc. 87 at 5-6);

- molesting an 8 year old daughter of his then girlfriend. Per the report, the grandmother of the minor, on more than one occasion, entered the home to find the minor nude while under the defendants' care. The defendant and the mother of the minor were both interviewed, and disclosed that they live a nudist life style. When interviewed, the minor confirmed that the defendant homeschooled and babysat the minor and her sisters, but relayed "no bad touches." However, the minor later disclosed while in therapy that the defendant fondled her (5:19-CR-50011-TLB, Doc. 87 at 6);

- the defendant, 19 years old at the time, admitted to recording two pornographic videos that would be located on his roommate's computer depicting a 16 year old victim stripping and being digitally penetrated by the defendant and depicting a 16 year old victim having sexual intercourse with a male. Ultimately, a forensic examination of the computer in question revealed images depicting the 16 year old victim nude. The defendant was subsequently charged by a felony information filed in Tioga County, Pennsylvania, with eight (8) charges, namely three (3) counts of Corruption of a Minor, two (2) counts of Photograph/Film/Depicting on a Computer Sex Act-Child, and three (3) counts of Sexual Abuse (5:19-CR-50011-TLB, Doc. 87 at 7);

- a witness who, when interviewed, stated that around New Year's day 2018/2019, Carey showed her images of young nude girls exposing their vagina on his cellular phone. Law enforcement also located others who were in the residence with the witness and Carey during this time, who corroborated the events. Of note, the residence owner stated that when the witness brought Carey to her residence, that she and the witness subsequently went to a bar for drinks while Carey remained home to watch the residence's owner's 13 year old daughter and other children, that the witness later told her that Carey showed her inappropriate images of young females, and finally, when Carey found out that the witness told the residence's owner about the inappropriate images, Carey held a knife to the witness's throat and threatened to kill her. The witness confirmed the events involving Carey holding a knife to her throat and threatening to kill her. Specifically, per the witness, Carey stated "I could go to prison for this you stupid bitch, I told you not to say anything" (5:19-CR-50011-TLB, Doc. 87 at 10);

- an individual filed a report stating that Carey threatened to kill him and his dog, because of allegations that the individual told others Carey was a child molester (5:19-CR-50011-TLB, Doc. 87 at 11);

- Fayetteville Police offers received a report that Carey had assaulted an individual, but no charges were sought (5:19-CR-50011-TLB, Doc. 87 at 10); and

- the Government noted that Carey also had a criminal trespass charge, a DWI, a possession of marijuana charge, an operating a vehicle while intoxicated charge, and a 2017 battery charge (5:19-CR-50011-TLB, Doc. 87 at 10).

Despite all of this, the Government asserts in its sentencing memorandum in this case that "there are several aggravating factors present in the instant case that were not in the *Carey* case." (Doc. 150 at 29). Specifically, the Government notes that Carey did not receive a distribution enhancement (Duggar, of course, maintains that he should not receive this enhancement either), that Carey only possessed 100 still images and no videos, and, finally, that Duggar allegedly sexually abused 4 minors over an extended period of time, while Carey's conduct "was limited to a single minor victim." (Doc. 150 at 29).

That the Government now claims Carey's conduct "was limited to a single minor victim" is surprising given that the Government expressly argued, in *Carey*, that Carey had abused multiple minors, recorded the abuse, and threatened violence against those who might expose his conduct. Nonetheless, the Government now recommends that this Court sentence Duggar to 240 months' imprisonment—5 years *longer* than the defendant in *Carey*.

And the pattern continues. The Government next highlights *United States v. Kelley*, 5:15-CR-50085-001 (W.D. Ark.). (Doc. 150 at 29). There, the defendant was sentenced to 124 months' imprisonment after being convicted of 4 counts of receipt of child pornography and 1 count of possession of child pornography for, according to the Government, using a file sharing program to download 19 videos depicting child pornography. (*See* Doc. 150 at 29). This, of course, equates to 1,425 images according to the Sentencing Guidelines—far exceeding the number of images,

5

even in the Government's view, at issue in the present case. Nonetheless, the Government asks this Court to impose a sentence roughly twice as long as the sentence imposed in *Kelley*.

Finally, the Government directs this Court's attention to *United States v. Davis*, 5:17-CR-50032-001 (W.D. Ark.). (Doc. 150 at 29). There, the defendant was sentenced to 100 months' imprisonment following a plea to one count of receipt of child pornography after admitting that he actively exchanged child pornography via a social media internet community which depicted minors as young as 5 years of age and admitted to maintaining an organized collection of child pornography. (Doc. 150 at 29). Despite the fact that, even in the Government's view, the child pornography allegedly at issue in Duggar's case was all deleted shortly after being acquired and which was not actively shared (at most, in the Government's view, it was passively distributed via a default setting in a file sharing program), the Government asks this Court to sentence Duggar to a sentence more than twice as long as the defendant in *Davis*.

Interestingly, in *Carey*, the Government highlighted another case omitted from the Government's sentencing memorandum in this case: *United States v. McGrew*, 5:17-CR-50035-001 (W.D. Ark.). (*See* 5:19-CR-50011-TLB, Doc. 87 at 12).There, according to the Government, the defendant who, like Duggar, had no criminal history and was convicted of receipt of child pornography, was sentenced to 75 months' imprisonment for receiving 282 videos and 1,614 still images (a total of 22,764 images for Guidelines purposes) and received enhancements for distribution and for possessing images involving toddlers. (5:19-CR-50011-TLB, Doc. 87 at 12). In this courthouse, this defendant who received and distributed more than 22,000 images of child pornography (more than 31 times the number of images attributed, over Duggar's objection, to Duggar by the Probation Office in the PSR) was sentenced to 75 months' imprisonment despite the fact that, like Duggar, he could have been sentenced to as many as 240 months' imprisonment.

6

The bottom line is that the Government has not pointed to a single similarly-situated defendant who received the sentence it seeks in this case—and the abundance of legal authority weighs heavily against the Government's position. Indeed, just yesterday, in *United States v. Jefferson*, 4:21-CR-235-SRC (E.D. Mo.), a defendant was sentenced to 120 months for receipt of child pornography despite being convicted of possessing more than 2,000 videos and images.

As set out in Duggar's sentencing memorandum, sentences at or around 60 months for receipt of child pornography—even in instances with far more upsetting allegations than those at issue in the present case—are far from the norm. And, in attempting to avoid unwarranted sentencing disparities as set out in 18 U.S.C. § 3553(a)(6), this Court is not limited to looking—as the Government seems to suggest—at cases solely within the Western District of Arkansas. Instead, a survey of sentences of similarly situated defendants throughout the United States is warranted and, as is detailed in Duggar's sentencing memorandum, reflects that a sentence of 60 months—*not* 240 months—is warranted given the circumstances at issue in this case.

**III.   The Government's Arguments in Favor of Enhancements are Flawed**

Throughout this litigation, the Government has gone out of its way to describe in detail the images and videos allegedly at issue in this case. But in focusing on this, the Government blurs an important line that should not be blurred: many of the images and videos the Government describes were either never on the desktop computer at issue in this case or were deleted before they were ever viewed by any user of the computer.

The ramifications are troubling. First, it renders it unnecessarily difficult to discern which images and/or videos should be considered when calculating the number of images at issue and, second, it makes it difficult to determine which images should be considered for purposes of determining whether the enhancement for possession of images displaying sadistic or masochistic

7

conduct enhancement should apply.

A careful review of the Government's memorandum reveals that it includes descriptions of imagery that was either only partially downloaded, never downloaded, or deleted before being opened. Specifically, the Government describes images allegedly associated with the "marissa.zip" file allegedly found on the computer at issue. (*See* Doc. 150 at 9-10). After generally describing certain images allegedly associated with the file, the Government notes that images from the file contained on Government's Exhibit 31 were allegedly opened by a user of the computer. (*See id.* at 10). However, the Government then describes Government's Exhibits 35 and 36 which also include images allegedly associated with the file which were simply located in "unallocated space" on the hard drive (*i.e.*, deleted and not necessarily ever opened). (*See id.*). And, of course, the Government ignores entirely an issue which arose both before and during trial concerning whether the "marissa.zip" file was ever entirely downloaded onto the computer, given Detective Amber Kalmer's inability to successfully download the file using law enforcement software, "Torrential Downpour." (*See, e.g.,* Doc. 37 at 9) ("law enforcement kept trying—169 times over a period of 17 hours—to maintain a connection and download this zip file but the Torrential Downpour Logs reveal there was no zip file available to download").

Similarly, the Government unnecessarily describes the "DD.torrent" file and notes that this file "was described by Director Fottrell as one of the most offensive series of CSAM that he has seen in his career," (*see* Doc. 150 at 11), despite inconspicuously and reluctantly acknowledging that this torrent file was never actually used to acquire the underlying imagery—noting that the torrent file "is associated with video files" but never actually alleging that the video files were ever downloaded. (*See id.*). In other words, Director Fottrell was describing a series of images that no user of this computer has ever seen—and the Government is asking this Court to use that fact in

8

enhancing Duggar's sentence.[1]

With respect to the Government's position that this Court should include a two-level enhancement for distribution, the Government argues Duggar "was a very savvy computer user who was familiar with peer-to-peer file sharing programs[.]" (Doc. 150 at 4). Further, the Government notes that it elicited the testimony of Clint Branham who testified that Duggar was a "power user" of a computer. (*See id.* at 6). Similarly, in its memorandum, the Government notes that Jim Holt testified Duggar had "advanced computer skills." (*Id.*). However, while the Government claims in its memorandum that these witnesses testified Duggar might possess the skills to install programs, modify hardware, write computer code, and produce literature and graphics, the Government does not claim in its sentencing memorandum that either witness testified about the level of familiarity Duggar had with peer-to-peer software. (*See id.*).

As such, in an apparent attempt to bridge this gap, the Government notes that Director Fottrell testified that Duggar had used peer-to-peer software to download a few commercial movies on his personal laptop in 2017. (*See id.* at 7). However, the gap between *knowing* distribution—which is what the Government must prove to this Court in order for the distribution enhancement to apply—remains. Director Fottrell did not offer testimony or present evidence that Duggar ever distributed any files from his personal laptop utilizing peer-to-peer software. While it is the Government's position that a so-called "power user" who downloaded two commercial movies using file sharing software years before the allegations at issue in this case must, necessarily, have intended to distribute child pornography from a different work computer, this falls short. Simply

---

[1] Similarly, the Government asserts that the user of the computer "downloaded the 'playtoysweetie.7z.torrent' file on May 15, 2019, obtained the 'playtoysweetie.7z.' zip file through uTorrent, and *attempted to access the file* through the VLC player on the Linux partition." (Doc. 150 at 19) (emphasis added). But again, it is entirely unclear whether anyone ever successfully accessed any imagery associated with this file. Nonetheless, the Government includes this argument in support of its position that this Court should conclude that this offense involved more than 600 images.

arguing that someone is good with computers and had used a file sharing program in the past is not sufficient to establish knowing distribution sufficient for imposition of the distribution enhancement. Instead, the Eighth Circuit has "explicitly rejected any suggestion we automatically apply a distribution enhancement based merely on a defendant's use of a file-sharing program." *United States v. Durham*, 618 F.3d 921, 931 (8th Cir. 2010) (citing *United States v. Ultsch*, 578 F.3d 827, 830 (8th Cir. 2009)).

Finally, in arguing that this Court should apply a five-level enhancement for the "pattern of activity" enhancement, the Government cites several cases. (*See* Doc. 150 at 16). However, the cases are distinguishable and lend no strength to the Government's position. The Government directs this Court's attention to one Eighth Circuit case—*United States v. Woodward*, 694 F.3d 950 (8th Cir. 2012)—in support of its position that this enhancement applies regardless of whether a defendant was convicted and regardless of whether the alleged abuse occurred long ago when the defendant was a minor. However, while the Court did note that the Guidelines allow a prior instance of abuse to be utilized for purposes of determining whether to apply this enhancement even if it did not result in a conviction, this was largely irrelevant to its analysis. Instead, the question confronted by the Court was whether a juvenile adjudication was sufficient for imposition of the enhancement. *See id.* at 953. The Court ultimately concluded "a juvenile adjudication may be considered for enhancement purposes under § 2G2.2(b)(5), regardless of whether the juvenile adjudication is considered a prior conviction." *Id.*

But this is so markedly distinct from the allegations at issue here. There was no juvenile adjudication, much less a conviction. Instead, the Government's entire basis for imposition of this enhancement is based on hearsay testimony of Bobye Holt, Jim Bob Duggar, and a Fox News interview of Duggar's parents conducted by Megyn Kelly. (*See* Doc. 150 at 16-17). This

"evidence" is simply not sufficient for this Court to conclude that this enhancement should apply.

**IV.     Conclusion**

For all the reasons set forth in the PSR, in Duggar's sentencing memorandum, in the numerous letters submitted for this Court's consideration, and in this response to the Government's memorandum, Duggar respectfully requests that this Court impose a sentence of 60 months to be followed by a term of supervised release. Under the circumstances of this case, such a sentence will be sufficient to satisfy all the purposes of sentencing and is appropriate under Section 3553(a).

Respectfully Submitted,

**Margulis Gelfand, LLC**

 /s/ Justin K. Gelfand
JUSTIN K. GELFAND, MO Bar No. 62265*
IAN T. MURPHY, MO Bar No. 68289*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
ian@margulisgelfand.com
**Admitted Pro Hac Vice*

--- and ---

**Story Law Firm, PLLC**

/s/ Travis W. Story
Travis W. Story, AR Bar No. 2008278
2603 Main Drive, Suite 106
Fayetteville, AR 72704
Telephone: (479) 448-3700
Facsimile: (479) 443-3701
travis@storylawfirm.com

11

**Certificate of Service**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court, and that all parties will receive notice of this filing through this Court's electronic filing system.

    /s/ *Justin K. Gelfand*
JUSTIN K. GELFAND, MO Bar No. 62265*
IAN T. MURPHY, MO Bar No. 68289*
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
ian@margulisgelfand.com
**Admitted Pro Hac Vice*