11933355.1 84-190

AO 243 (Rev. 09/17)

US DISTRICT COURT
FILED
AUG 18 2025
Ronald E. Dowling
By_____
Deputy Clerk

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District | Arkansas Western | |
|---|---|---|---|
| Name *(under which you were convicted)*: Joshua James Duggar | | | Docket or Case No.: 5:21-cr-50014-TLB |
| Place of Confinement: FCI SEAGOVILLE | | Prisoner No.: 42501-509 | |
| UNITED STATES OF AMERICA   v. | | Movant *(include name under which convicted)* JOSHUA JAMES DUGGAR | |

## MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

   Western District of Arkansas
   Fayetteville Division

   (b) Criminal docket or case number (if you know): 5:21-cr-50014-TLB

2. (a) Date of the judgment of conviction (if you know): 5/25/2022

   (b) Date of sentencing: 5/25/2022

3. Length of sentence: 151 months imprisonment

4. Nature of crime (all counts):
   1. Receipt of child pornography

5. (a) What was your plea? (Check one)
   (1) Not guilty ✔         (2) Guilty [ ]         (3) Nolo contendere (no contest) [ ]

6. (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

   N/A

6. If you went to trial, what kind of trial did you have? (Check one)         Jury ✔         Judge only [ ]

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?         Yes [ ]         No ✔

AO 243 (Rev. 09/17)

8.  Did you appeal from the judgment of conviction?        Yes [✔]        No [ ]

9.  If you did appeal, answer the following:

    (a) Name of court:  United States Court of Appeals for the Eighth Circuit

    (b) Docket or case number (if you know):  No. 22-2178

    (c) Result:  Affirmed

    (d) Date of result (if you know):  8/7/2023

    (e) Citation to the case (if you know):

    (f) Grounds raised:

    1. Exclusion of alternative perpetrator evidence.
    2. Admission of custodial statements during dealership search.
    3. EXIF metadata and expert testimony on phone data.

    (g) Did you file a petition for certiorari in the United States Supreme Court?    Yes [✔]    No [ ]

        If "Yes," answer the following:

        (1) Docket or case number (if you know): No. 23-937

        (2) Result:  Certiorari denied

        (3) Date of result (if you know):  6/24/2024

        (4) Citation to the case (if you know):

        (5) Grounds raised:

        1. Whether barring evidence of an alternative perpetrator violated the constitutional right to present a complete defense.
        2. Whether admission of custodial statements made during dealership search violated Miranda and the Fifth Amendment.

10.  Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

    Yes [✔]    No [ ]

11.  If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court:   United States District Court for the Western District of Arkansas, Fayetteville Division

        (2) Docket or case number (if you know):  5:21-cr-50014-TLB

        (3) Date of filing (if you know):  5/12/2025

AO 243 (Rev. 09/17)

    (4)  Nature of the proceeding: Motion to Appoint Counsel for § 2255 proceeding

    (5)  Grounds raised:

    Request for court-appointed counsel for a potential habeas corpus proceeding pursuant to 28 U.S.C. § 2255.

    (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

        Yes ☐    No ☑

    (7)  Result: Denied

    (8)  Date of result (if you know): 6/6/2025

(b) If you filed any second motion, petition, or application, give the same information:

    (1)  Name of court:

    (2)  Docket of case number (if you know):

    (3)  Date of filing (if you know):

    (4)  Nature of the proceeding:

    (5)  Grounds raised:

    (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

        Yes ☐    No ☐

    (7)  Result:

    (8)  Date of result (if you know):

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

    (1)  First petition:    Yes ☐    No ☐

    (2)  Second petition:    Yes ☐    No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

AO 243 (Rev. 09/17)

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** Improper exclusion of third-party guilt evidence involving Randall Berry

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

At trial, the court excluded evidence that Randall Berry had access to the HP office computer during the relevant time period. Evidence showed Berry had physical access, worked unsupervised at the dealership, and knew the Defendant personally. The jury was never permitted to hear about Berry's access, connection to the computer, or defense investigator's findings. This prevented the defense from presenting a complete third-party guilt theory.

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Not fully raised on appeal due to space limits and focus on a different third-party guilt claim. This is a distinct constitutional issue warranting relief under § 2255.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☑

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☐

AO 243 (Rev. 09/17)

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐     No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐     No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO:** Government Expert Altered Key Evidence and Lied Under Oath, Violating Due Process

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

At trial, DOJ expert James Fottrell presented manipulated forensic data and falsely testified that the HP computer was not connected to the internet when he examined it. He intentionally modified the cloned forensic image of the computer during government analysis, overwriting system data. He then falsely claimed under oath that he made no changes. This perjured testimony misled the jury, obstructed the defense's ability to challenge the evidence, and violated Joshua Duggar's Fifth and Sixth Amendment rights.

(b) **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐     No ✔

AO 243 (Rev. 09/17)

(2)  If you did not raise this issue in your direct appeal, explain why:

While a related claim about Fottrell's EXIF testimony was appealed, this specific ground—his perjury and image modification—was not raised on direct appeal due to strategic limitations and volume of other issues.

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐          No ☑

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐          No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐          No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐          No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

AO 243 (Rev. 09/17)

**GROUND THREE:** False Testimony About Alleged Statement by Defendant Prejudiced the Jury

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Agent Gerald Faulkner testified that Joshua Duggar asked, "Has someone been downloading child pornography?" before the interview recording started. This statement was never made, and no evidence supports it. The false testimony misled the jury, suggesting an admission of guilt. The defense did appeal issues related to the custodial interview but not this specific false statement.

(b) **Direct Appeal of Ground Three:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☑

(2)  If you did not raise this issue in your direct appeal, explain why:

This specific false statement issue was not raised on direct appeal due to strategic prioritization of broader custodial interview challenges.

(c) **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☑

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☐

AO 243 (Rev. 09/17)

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:** Admission of Prejudicial, Uncorroborated Testimony from Bobye Holt

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Holt testified to an alleged 2005 confession by Movant that aligned with Arkansas rape statutes—despite never previously reporting it and being hostile toward Movant and his wife. The defense objected, but the court allowed it. Holt's husband, allegedly present, was asleep and could not corroborate. Her testimony was emotionally explosive, unsubstantiated, and came after years of animosity and media attacks. The prosecution failed to disclose serious credibility issues, including her family's court-acknowledged abuse history.

(b)  **Direct Appeal of Ground Four:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐     No ☑

(2)  If you did not raise this issue in your direct appeal, explain why: ˋ

This ground involves newly discovered credibility issues and prosecutorial misconduct not fully developed at trial or on direct appeal. It is properly raised in this § 2255 motion.

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐     No ☐

(2)  If you answer to Question (c)(1) is "Yes," state:

AO 243 (Rev. 09/17)

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____


(3)  Did you receive a hearing on your motion, petition, or application?

    Yes ☐    No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?

    Yes ☐    No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

    Yes ☐    No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____


(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____


13.  Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

Due to space limitations, only four grounds are listed in Question 12. Additional grounds are included in " Attachment A: AO 243 Form" and the attached memorandum of law, incorporated by reference herein:

Ground Five: Failure to Present Evidence Regarding Caleb Williams as an Alternative Perpetrator
Ground Six: Structural Conflict of Interest and Government Collusion Resulting in Unfair Trial
Ground Seven: False Attribution and Prejudicial Use of a Corporate-Authored Statement
Ground Eight: Ineffective Assistance of Counsel Based on Cumulative and Specific Failures
Cumulative Error: The totality of constitutional violations deprived Movant of a fundamentally fair trial.
Full factual background and legal arguments for each ground are set forth in the accompanying memorandum.

AO 243 (Rev. 09/17)

18.  TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain
     why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255,
paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run
from the latest of –

  (1)  the date on which the judgment of conviction became final;

  (2)  the date on which the impediment to making a motion created by governmental action in violation of
the Constitution or laws of the United States is removed, if the movant was prevented from making such a
motion by such governmental action;

  (3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has
been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral
review; or

  (4)  the date on which the facts supporting the claim or claims presented could have been discovered
through the exercise of due diligence.

11933355.1.95-190

AO 243 (Rev. 09/17)

Therefore. movant asks that the Court grant the following relief:
vacate conviction

or any other relief to which movant may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion
under 28 U.S.C. § 2255 was placed in the prison mailing system on _____ 6/24/2025 _____ .

(month, date, year)

Executed (signed) on _____ 6/24/2025 _____ (date)

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

## ATTACHMENT A: AO 243 FORM

### MEMORANDUM OF ADDITIONAL GROUNDS FOR RELIEF

GROUND FIVE: Failure to Present Evidence Regarding Caleb
Williams as an Alternative Perpetrator and Violation of
Defendant's Constitutional Rights

Overview of Facts:

Caleb Williams, a remote access computer technician and
registered sex offender, had access credentials to the HP office
computer and was shown to have physically accessed it during the
relevant timeframe. Despite evidence indicating Williams'
opportunity and motive, the defense was severely restricted from
presenting this alternative perpetrator theory at trial. The
Court limited defense questioning of Williams and excluded
testimony about his background and behavior, violating the
defendant's Fifth and Sixth Amendment rights.

Appeal Status:

This issue was raised on direct appeal to the Eighth Circuit.
The appeal focused on the trial court's refusal to admit
evidence related to Caleb Williams as an alternative suspect.

---

GROUND SIX: Structural Conflict of Interest and Government
Collusion Resulted in a Fundamentally Unfair Trial, Including
Public Exposure of Confidential Juvenile Records Involving the
Defendant's Sisters

Overview of Facts:

Confidential juvenile court records concerning the Duggar family were ordered expunged years before the federal case but were illegally disclosed via a politically motivated FOIA request. The exposure caused significant harm to the Duggar sisters and created overlapping civil litigation in the same court and before the same judge as the criminal case. This structural conflict, combined with alleged political targeting and the denial of access to investigative evidence, compromised the fairness of the trial.


Appeal Status:

This ground was not raised on direct appeal. The issue involves complex systemic and procedural concerns that were preserved for collateral review.


---


GROUND SEVEN: False Attribution and Prejudicial Use of a Corporate-Driven Statement Impugning the Defendant's Character


Overview of Facts:

A statement attributed to the defendant was released under duress and pressure from corporate entities associated with TLC and Discovery Communications, threatening cancellation and contractual penalties. The defendant did not write or consent to the statement's creation. Despite this, the prosecution repeatedly used the statement as if it were a voluntary confession. Counsel's ability to challenge this effectively was limited by the overwhelming volume of other trial issues.


Appeal Status:

This ground was not raised on direct appeal. Defense counsel was burdened by the number of constitutional violations and evidentiary challenges, which contributed to ineffective assistance of counsel on this point.

GROUND EIGHT: Cumulative Ineffective Assistance of Counsel
Resulting in a Fundamentally Unfair Trial

Overview of Facts:

The cumulative impact of multiple constitutional violations—
including false testimony, prejudicial witnesses, suppressed
evidence, structural conflicts, and coercive corporate
statements—overwhelmed defense counsel's ability to provide
effective representation. Counsel was unable to fully
investigate or counteract the numerous complex issues, resulting
in prejudice and a fundamentally unfair trial.

Appeal Status:

This cumulative error ground is properly raised on collateral
review and was not addressed on direct appeal.

**[END OF MEMO]**

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF ARKANSAS

FAYETTEVILLE DIVISION

---------------------------------------------------------

Joshua James Duggar,                                    )

    Movant,                                             )

                            )    Case No. 5:21-CR-50014

v.                                                      )

                                    )

United States of America,                               )

    Respondent.                                         )

---------------------------------------------------------

## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

### I.    INTRODUCTION

This motion is submitted pursuant to 28 U.S.C. § 2255 by Joshua James Duggar, the Movant, who is currently serving a 151-month sentence at FCI Seagoville in Seagoville, Texas, following his conviction by a jury on December 9, 2021, for receipt of child pornography under 18 U.S.C. § 2252A(a)(2), in the United States District Court for the Western District of Arkansas, Fayetteville Division, Case No. 5:21-CR-50014.

Although the jury also returned a guilty verdict on a separate possession count, that count was dismissed at sentencing under the Double Jeopardy Clause. On May 25, 2022, the Court imposed a

sentence of 151 months' imprisonment followed by 20 years of supervised release, plus fines and assessments totaling approximately $50,100.

Movant filed a direct appeal to the United States Court of Appeals for the Eighth Circuit, challenging, among other issues, the denial of his motion to suppress, improper expert testimony and the exclusion of third-party guilt evidence. The Eighth Circuit affirmed the conviction on August 7, 2023, and denied rehearing en banc on September 28, 2023. Movant then filed a petition for writ of certiorari, which was denied by the United States Supreme Court on June 24, 2024.

This motion asserts that Movant's conviction and sentence were imposed in violation of the Constitution and laws of the United States. Multiple independent grounds are presented, each of which justifies relief individually, and cumulatively they establish that Movant was denied a fair trial. Movant respectfully requests that this Court hold an evidentiary hearing, appoint counsel, and grant the relief sought herein.

## II. JURISDICTIONAL STATEMENT

This Motion to Vacate, Set Aside, or Correct Sentence is filed pursuant to 28 U.S.C. § 2255. The Court has jurisdiction to consider this motion because it was filed in the United States District Court for the Western District of Arkansas, the same court that imposed the sentence. Venue is proper pursuant to 28 U.S.C. § 2255(a) because Movant is in custody under a sentence imposed by this Court.

## II.  PROCEDURAL HISTORY

On April 29, 2021, a federal grand jury in the Western District of Arkansas returned a two-count indictment against Movant,

charging him with receipt and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and § 2252A(a)(5)(B), respectively. On December 9, 2021, following a jury trial, Movant was found guilty on both counts.

On May 25, 2022, the Court sentenced Movant to 151 months' imprisonment, followed by 20 years of supervised release. Prior to sentencing, the Court granted Movant's motion to dismiss the possession charge on the grounds that punishment for both possession and receipt violated the Double Jeopardy Clause. Accordingly, Movant was sentenced only on the receipt count under 18 U.S.C. § 2252A(a)(2).

Movant timely filed a direct appeal to the United States Court of Appeals for the Eighth Circuit. The appeal raised three issues: (1) the denial of his motion to suppress statements made during a law enforcement interview; (2) the exclusion of third-party guilt evidence; and (3) the admission of expert witness testimony concerning metadata and EXIF data. The Eighth Circuit affirmed the conviction on August 7, 2023, and denied rehearing en banc on September 28, 2023.

Movant filed a petition for writ of certiorari to the United States Supreme Court, which was denied on June 24, 2024. Movant now timely brings this motion under 28 U.S.C. § 2255.

III. **STATEMENT OF GROUNDS FOR RELIEF**

Movant respectfully asserts the following seven independent grounds for relief under 28 U.S.C. § 2255. Each ground constitutes a violation of Movant's constitutional rights and, individually and cumulatively, deprived him of a fair trial.

GROUND ONE: The trial court improperly excluded evidence showing that Randall Berry knew the defendant, had access to the computer, and was misrepresented to the jury.

GROUND TWO: Government agent James Fottrell committed perjury by intentionally modifying the HP Office Computer image and lying under oath about internet connection, fatally undermining the integrity of the trial.

GROUND THREE: False testimony by government agent regarding alleged statement on downloading activity.

GROUND FOUR: Violations of due process and constitutional rights through admission of uncorroborated and prejudicial testimony from Bobye Holt.

GROUND FIVE: Failure to present evidence regarding Caleb Williams as an alternative perpetrator and violation of defendant's constitutional rights.

GROUND SIX: Structural conflict of interest and government collusion resulted in a fundamentally unfair trial, including public exposure of confidential juvenile records involving the defendant's sisters.

GROUND SEVEN: False attribution and prejudicial use of a corporate-driven statement impugning the defendant's character.

GROUND EIGHT: Cumulative ineffective assistance of counsel resulting in a fundamentally unfair trial

## V. **CUMULATIVE ERROR**

Even if none of the individual errors asserted in this motion
would, standing alone, justify relief, their cumulative effect
deprived Movant of a fundamentally fair trial. The combination
of improperly admitted testimony, suppressed exculpatory
evidence, and misleading government representations created a
prejudicial environment that undermined the integrity of the
proceeding and violated due process. When considered
collectively, these constitutional violations demand that
Movant's conviction be vacated.

## GROUND ONE: THE TRIAL COURT IMPROPERLY EXCLUDED EVIDENCE SHOWING THAT RANDALL BERRY KNEW THE DEFENDANT, HAD ACCESS TO THE COMPUTER, AND WAS MISREPRESENTED TO THE JURY

### 1. Procedural History

Joshua Duggar was convicted following a jury trial in the United
States District Court for the Western District of Arkansas.
During trial proceedings, the defense sought to introduce
evidence that dealership employee Randall Berry had both a
relationship with the defendant and physical access to the HP
desktop computer at the heart of the government's forensic case.
The trial court excluded this evidence as speculative and
inadmissible under its interpretation of third-party culpability
standards. The prosecution, during closing arguments, asserted
that Berry had no involvement at the dealership during the
relevant time period. This post-conviction motion under 28
U.S.C. § 2255 challenges those evidentiary rulings as violations
of the defendant's constitutional rights.

### 2. Claims

The trial court's exclusion of relevant third-party access
evidence and allowance of prosecutorial misrepresentations:

– Violated the defendant's Fifth Amendment right to due process;

– Violated the Sixth Amendment right to present a defense and confront the government's case;

– Resulted in a fundamentally unfair trial;

– Requires relief under 28 U.S.C. § 2255.


## 3. Factual Background


During the trial, the government repeatedly told the jury that Randall Berry did not work at Wholesale Motorcars during the relevant timeframe in 2019, particularly during alleged criminal activity involving the HP computer. Prosecutor Carly Marshall stated in closing: "Randall Berry did not start working at Wholesale Motorcars until after the dates in question."


This was false.


The defense was prepared to introduce evidence — including photographs and witness testimony — showing that Berry had worked at the dealership before and during the relevant period, frequently co-delivering vehicles with Joshua Duggar. This evidence would have demonstrated that Berry not only knew the defendant but also had physical access to the office and computer in question.


Despite the relevance, the trial court excluded this evidence, labeling it speculative and an improper attempt to shift blame onto a third party without conclusive proof.


## 4. Legal Issue

Whether the trial court's exclusion of evidence showing a third party's access to the crime scene and the government's misleading statements about that individual's involvement violated the defendant's constitutional rights to due process and to present a full defense under the Fifth and Sixth Amendments.

## 5. Discussion

The Supreme Court and the Eighth Circuit have consistently held that criminal defendants have the right to present relevant evidence supporting their theory of defense. The defense is not required to prove that a third party actually committed the crime. It need only establish that the third party had opportunity, and that such evidence is not speculative or unfairly prejudicial.

Here, the defense offered evidence that Berry had both motive and access. His presence at the dealership during the relevant timeframe was supported by photographs and anticipated testimony. The government's false assertion that Berry was not employed during that period misled the jury — and the trial court's refusal to allow rebuttal deprived the defense of the chance to correct that falsehood.

By cutting off this evidence, the court blocked the defense from presenting a viable theory of reasonable doubt. In a case built on circumstantial forensic evidence, this exclusion had a significant impact on the fairness of the trial. The prosecution compounded the harm by making materially false statements, which went unchallenged before the jury.

These combined actions violated the defendant's rights under the Fifth and Sixth Amendments and cannot be dismissed as harmless error.

## 6. Conclusion

The trial court's exclusion of evidence regarding Randall
Berry's connection to the dealership and access to the computer
— coupled with the government's false and misleading arguments —
denied the defendant a fair trial. These constitutional
violations warrant post-conviction relief under 28 U.S.C. §
2255. A new trial is necessary to remedy the harm and restore
the integrity of the proceedings.

## GROUND TWO: GOVERNMENT AGENT JAMES FOTTRELL COMMITTED PERJURY BY INTENTIONALLY MODIFYING THE HP OFFICE COMPUTER IMAGE AND LYING UNDER OATH ABOUT INTERNET CONNECTION, FATALLY UNDERMINING THE INTEGRITY OF THE TRIAL

### 1. PROCEDURAL HISTORY

At trial, the government relied heavily on the testimony of
James Fottrell, presented as its lead forensic expert. Fottrell
was permitted to testify as an expert witness before the jury
and provided the foundation for much of the government's digital
forensic evidence. During the course of his testimony, defense
counsel cross-examined Fottrell, revealing contradictions in his
sworn statements. Despite these revelations, the trial court
allowed Fottrell to continue testifying as an expert. The court
later ruled that the false testimony would not have affected the
jury's verdict.

### 2. CLAIM

The defendant was denied his constitutional right to due process
under the Fifth Amendment and his Sixth Amendment right to
confront adverse witnesses when the government's expert witness,

James Fottrell, perjured himself on the stand and was still allowed to testify before the jury as an expert witness. The conviction was thus secured through materially false testimony, warranting relief under 28 U.S.C. § 2255.

### 3. FACTUAL BACKGROUND

James Fottrell is the Director of the High Technology Investigative Unit within the Child Exploitation and Obscenity Section (CEOS) of the U.S. Department of Justice, Criminal Division. As one of the DOJ's top computer forensic analysts, Fottrell was presented to the jury as a highly qualified and credible expert in digital forensics.

At trial, Fottrell testified that the forensic image of the HP office computer seized from the defendant's workplace was a perfect, unaltered replica of the original hard drive. He further testified under oath that this image was never connected to the Internet.

However, during cross-examination, Fottrell admitted that he had, in fact, intentionally modified the forensic image and that he had connected the image to the Internet—contradicting his prior sworn statements. These were not incidental discrepancies but material falsehoods that directly impacted the core of his forensic analysis and the government's case.

Despite this perjury, the court allowed Fottrell to continue presenting expert testimony. His modified screenshots, derived from the altered image, formed a critical component of the prosecution's digital forensic evidence and were used to support its theory of the case.

### 4. LEGAL ISSUE

Whether the trial court violated the defendant's constitutional
rights by allowing a government expert who committed perjury on
the stand to continue testifying as an expert witness, and
whether this denial of due process and confrontation rights
justifies post-conviction relief under 28 U.S.C. § 2255.

## 5. DISCUSSION

Under Napue v. Illinois, 360 U.S. 264 (1959), the government
violates due process when it knowingly uses false testimony to
obtain a conviction. This principle extends not only to direct
perjury but to circumstances where the government fails to
correct falsehoods once known. In Giglio v. United States, 405
U.S. 150 (1972), the Supreme Court held that due process is
violated where false testimony may have affected the judgment of
the jury.

Here, Fottrell's admission under oath that he modified the
forensic image and connected it to the Internet directly
contradicted his earlier testimony and constituted material
perjury. His false testimony went to the heart of the forensic
evidence used to secure the conviction. The trial court's
decision to permit him to continue as an expert witness, without
appropriately addressing or limiting the scope of his testimony,
created the false appearance of credibility and authority before
the jury.

This was not harmless error. Fottrell's position within the DOJ
as director of its High Technology Investigative Unit lent
exceptional weight to his testimony. The government's case
relied substantially on his forensic analysis, including
screenshots extracted from the tampered image. Allowing him to
proceed as if nothing had occurred fundamentally undermined the
fairness of the trial and prejudiced the defendant's rights.

Moreover, this conduct occurred during a period of the Biden
Department of Justice, under the leadership of Attorney General
Merrick Garland, was already under public scrutiny for
politicized prosecutions and selective enforcement. Fottrell's
false testimony, and the government's reliance on it, reflect a
broader pattern of investigatory abuse.

### 6. CONCLUSION

The government's lead forensic expert perjured himself on the
stand and was permitted to continue testifying before the jury
without remedy. His lies were material and went to the core of
the evidence used to convict the defendant. This violated the
defendant's rights under the Fifth and Sixth Amendments. Relief
is therefore warranted under 28 U.S.C. § 2255, and the
conviction must be set aside.

### GROUND THREE: FALSE TESTIMONY BY GOVERNMENT AGENT REGARDING ALLEGED STATEMENT ON DOWNLOADING ACTIVITY

#### 1. Procedural History

During Movant's jury trial in the United States District Court
for the Western District of Arkansas, government witness Agent
Gerald Faulkner testified that prior to the recorded custodial
interview, Movant made the statement, "What is this about? Has
someone been downloading child pornography?" Agent Faulkner
claimed this remark prompted him to begin the recording.

This alleged statement was not documented in any report, and no
recording or notes corroborated its existence. The defense
objected to this testimony and attempted to challenge its
reliability through cross-examination. The full 51-minute
interview recording contains no such statement, nor any mention
or reference to it by Movant or Agent Faulkner. Despite the lack

of evidentiary support, the government allowed the testimony to
stand and made no effort to correct or withdraw the claim during
trial or in post-trial proceedings.

## 2. Claim

Movant's rights under the Fifth and Sixth Amendments to the
United States Constitution were violated when the government
introduced knowingly false testimony from Agent Gerald Faulkner
regarding an alleged incriminating statement that was never
made. The government's failure to correct this testimony
constituted a denial of due process and a violation of Movant's
right to confront witnesses.

## 3. Factual Background

At trial, Agent Faulkner testified that Movant allegedly stated,
"What is this about? Has someone been downloading child
pornography?" just before the recorded custodial interview
began. Faulkner claimed this spontaneous remark triggered the
recording process.

However, this statement was never documented, corroborated, or
verified by any means. It is entirely absent from the audio
recording. Faulkner admitted during cross-examination that the
statement was based on his recollection and that he took no
steps to follow up during the recorded interview.

The prosecution relied on this alleged statement to create the
impression that Movant had made an early admission of guilt. In
reality, no such statement occurred, and no physical or
testimonial evidence outside of Faulkner's unverified memory
supports its existence. The jury, however, was left with the
impression that Movant had made a significant incriminating
remark at the onset of the investigation.

## 4. Legal Issue

Whether the government's use of uncorrected false testimony by a law enforcement agent violated Movant's due process rights under Napue v. Illinois, 360 U.S. 264 (1959), and his Sixth Amendment right to confront and challenge witnesses.

## 5. Discussion

It is a violation of due process for the government to knowingly use false or misleading testimony to obtain a conviction. In Napue v. Illinois, 360 U.S. 264 (1959), the Supreme Court held that a conviction must be set aside if it was obtained through the use of false evidence that the government knew or should have known was false.

Here, the alleged statement was never made, and the government had every opportunity to verify its accuracy before trial. Agent Faulkner offered no documentation, report, or recording to support his memory, and his testimony was directly contradicted by the recording of the interview itself. Yet the prosecution made no effort to correct or clarify the false impression created by Faulkner's claim.

By leaving this unsubstantiated testimony uncorrected, the government misled the jury into believing that Movant had effectively confessed. The defense was placed in the impossible position of disproving a phantom statement. This tactic undermined the integrity of the trial and prejudiced the jury against Movant.

## 6. Conclusion

The government's introduction and failure to correct false testimony from Agent Faulkner constituted a violation of Movant's constitutional rights to due process and confrontation. Relief under 28 U.S.C. § 2255 is warranted. Movant respectfully requests that this Court vacate the conviction and sentence, or, in the alternative, conduct an evidentiary hearing to fully evaluate this claim.

**GROUND FOUR: VIOLATIONS OF DUE PROCESS AND CONSTITUTIONAL RIGHTS THROUGH ADMISSION OF UNCORROBORATED AND PREJUDICIAL TESTIMONY FROM BOBYE HOLT**

**1. Procedural History**

At trial, the government introduced previously undisclosed and highly prejudicial testimony from Bobye Holt, a family acquaintance. Despite multiple objections from defense counsel, the trial court allowed Holt to testify about an alleged confession of uncharged criminal conduct by the defendant dating back to 2003. This testimony was admitted with no corroboration, no contemporaneous reporting, and no prior disclosure in over fifteen years. The defense was denied a meaningful opportunity to challenge her credibility or motives. Holt refused to speak to defense counsel prior to trial, and the prosecution failed to disclose key facts undermining her credibility. This issue was not remedied on direct appeal.

**2. Claim**

Movant's rights under the Fifth and Sixth Amendments to the United States Constitution were violated when the government presented inflammatory, uncorroborated testimony from Bobye Holt, whose credibility was seriously compromised, and whose testimony introduced a highly prejudicial narrative of uncharged criminal conduct. The government's failure to disclose exculpatory and impeachment evidence related to Holt's

background constituted prosecutorial misconduct and a violation of due process.

## 3. Factual Background

During trial, Bobye Holt testified that some time in 2005, Joshua Duggar allegedly confessed to her that he had fingered Jane Doe Number 4 during an incident in 2003. She claimed the statement came during a private conversation in her bedroom. At that time, Duggar had previously courted Holt's daughter, but she States that the relationship had ended prior to the alleged conversation. This was the first time Holt had ever made such a claim—despite years of public visibility, media interviews, and ample opportunities to come forward. The defense objected on grounds of relevance, prejudice, hearsay, and lack of corroboration, but the trial court allowed the testimony.

The statement Holt attributed to Duggar was as follows:

"Did you touch her vagina or did you put your fingers inside of her vagina?" And [Josh] said he did both.

This language tracks exactly with Arkansas's statutory definition of rape under Ark. Code Ann. § 5-14-103, which criminalizes sexual penetration, including digital penetration, of a minor. Yet this alleged statement was never investigated, never charged, never corroborated, and was only disclosed for the first time in 2021—over fifteen years after the alleged conversation.

Holt's motivations were far from neutral. She refused to cooperate with defense counsel despite repeated efforts and accommodations, yet willingly and fully cooperated with the prosecution. She has made numerous anti-Duggar public statements, including a disturbing Facebook comment aimed at Joshua Duggar's wife, Anna Duggar, in which she wrote: "She will

never be free until his death." This chilling statement was not only vile, but clearly directed at Anna—exposing Holt's personal animus and deep-rooted desire to destroy the Duggar family. In many ways, she resembled a bitter ex who hated Joshua since she couldn't have him for her own daughter. She also participated in paid, anti-Duggar media productions, including an Amazon docuseries, appearing alongside her husband, which directly defamed and disparaged the Duggar family. This pattern of hostility and bias was not disclosed to the jury.

Furthermore, Holt's testimony went uncorroborated by any physical evidence, documents, or witness accounts. She claimed her husband was in the room during the alleged 2005 confession, yet even he could not confirm it — because, by her own admission, he was asleep at the time and had no knowledge the conversation ever occurred.

The prosecution portrayed Holt as a credible witness while concealing damning facts. In 2023, an Arkansas family court issued an order removing Holt's minor children from her custody, citing:

"[T]his Court finds that due to a history and continuing pattern of abuse in the household of the Respondents, James and Bobbye Holt [sic], that there is an imminent threat to the health and safety of [redacted] and [redacted] and as a result, a guardianship is desirable to protect the interests of the minor children."

This history directly contradicts the prosecution's portrayal of Holt as a moral compass for the jury. Her background, bias, and credibility should have been disclosed to the defense under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).

## 4. Legal Issue

Whether the trial court's admission of uncharged,
uncorroborated, and prejudicial testimony from Bobye Holt—
coupled with the prosecution's failure to disclose critical
impeachment evidence—violated Movant's rights to due process, a
fair trial, and confrontation under the Fifth and Sixth
Amendments.

## 5. Discussion

Due process prohibits the use of fundamentally unfair evidence
that misleads the jury or undermines the integrity of the trial.
See Napue v. Illinois, 360 U.S. 264 (1959). Prosecutors are
constitutionally obligated to disclose any evidence that may be
favorable to the defense. See Brady, 373 U.S. 83; Giglio, 405
U.S. 150.

The introduction of Holt's statement effectively branded the
defendant a rapist in front of the jury, without charges,
investigation, or any opportunity for rebuttal. Despite its
supposed relevance to "motive," the testimony served primarily
to inflame the jury. The Court's limiting instruction was
insufficient to cure the massive prejudicial impact. And the
government's failure to disclose Holt's own history of abuse,
bias, and animus further rendered the trial fundamentally
unfair.

The prosecution's choice to rely on Holt while concealing
critical impeachment information denied the defense a meaningful
opportunity to challenge her credibility. The result was a trial
built, in part, on unreliable testimony presented as fact,
supported by prosecutorial overreach, and unchecked by due
process safeguards.

## 6. Conclusion

The admission of Bobye Holt's uncorroborated, prejudicial
testimony—combined with the prosecution's failure to disclose
crucial impeachment evidence—violated Movant's constitutional
rights and denied him a fair trial. Relief under 28 U.S.C. §
2255 is warranted. Movant respectfully requests that the Court
vacate the conviction and sentence, or in the alternative,
conduct an evidentiary hearing to fully examine this ground.

**GROUND FIVE: FAILURE TO PRESENT EVIDENCE REGARDING CALEB
WILLIAMS AS AN ALTERNATIVE PERPETRATOR AND VIOLATION OF
DEFENDANT'S CONSTITUTIONAL RIGHTS**

### 1. Procedural History

During Movant's jury trial in the United States District Court
for the Western District of Arkansas, defense counsel sought to
present evidence that Caleb Williams, a part-time employee with
advanced computer skills and a history of sexual misconduct, had
access to the dealership office HP desktop computer at issue in
this case and may have been responsible for the alleged conduct.
The Court significantly limited the defense's ability to
question Williams, excluding crucial evidence related to his
access, behavior, and criminal background. This  underlying
issue was raised on direct appeal to the Eighth Circuit and
later in a petition for writ of certiorari to the United States
Supreme Court.

### 2. Claim

Movant's rights under the Fifth and Sixth Amendments to the
United States Constitution were violated when the Court
prohibited the defense from fully presenting evidence of an
alternative perpetrator, Caleb Williams. This restriction

deprived Movant of his right to present a complete defense and
his right to a fair trial.

### 3. Factual Background

Caleb Williams was a remote-access computer technician employed
by the State of Illinois and also worked part-time at the
defendant's car dealership during the relevant time period in
2019. He had login credentials and passwords stored on the HP
desktop computer located in the dealership office. Evidence
showed he used that computer regularly, including for business
and personal use, including to print eBay shipping labels for
stuff he was selling online. He possessed the technical
knowledge required to access, control, and manipulate the
computer both locally and remotely.

Williams is a convicted sex offender. He was prosecuted and
convicted for repeatedly engaging in sexual intercourse with a
then 14-year-old girl in Illinois while he was in his twenties.
The victim became pregnant as a result of this rape and abuse.
This was not a statutory age-gap situation — it was predatory
behavior involving repeated sexual contact with a minor and a
resulting child. Williams' criminal record and sexual history
were directly relevant given the nature of the charges in this
case, but the jury was never allowed to hear this information.

At sidebar, the Court ruled that defense counsel could only ask
Williams a limited set of biographical questions, such as
whether he had ever been to the dealership. If he denied being
there, the Court barred any extended follow-up. The judge made
it clear that only Joshua Duggar was on trial, thereby blocking
the defense from fully developing an alternative perpetrator
theory.

A retired FBI agent hired by the defense as an investigator,
interviewed Williams and later stated that Williams was among

the most visibly nervous individuals he had ever questioned.
This crucial observation was excluded from the trial.
Additionally, Williams provided edited photos with no metadata
and vague bank statements as alleged proof of his location
during the critical timeframe. He later admitted he had confused
dates and did not supply the original files for forensic
analysis. Nevertheless, the government accepted these unverified
claims at face value, while disregarding the defendant's own
recorded denials in the custodial interview and the forensic
limitations of the case.

Preventing the jury from hearing this evidence — involving a
convicted sex offender with full access to the machine at issue,
his vast technical expertise, a history of sexual exploitation
of minors, and suspicious behavior during the investigation —
violated the defendant's right to present a complete defense.

### 4. Legal Issue

Whether the trial court's exclusion of critical alternative
perpetrator evidence concerning Caleb Williams violated Movant's
constitutional rights to present a complete defense and to a
fair trial under the Fifth and Sixth Amendments.

### 5. Discussion

The Constitution guarantees a criminal defendant the right to
present a complete defense, including the introduction of
evidence pointing to another suspect. See Crane v. Kentucky, 476
U.S. 683 (1986); Holmes v. South Carolina, 547 U.S. 319 (2006).
The trial court's refusal to allow evidence of Caleb Williams'
access to the device, his criminal history, his inconsistent
alibi, and his suspicious behavior deprived Movant of this
essential right.

Williams' technical knowledge, work history, and criminal record
made him a plausible alternative suspect. The jury never heard
this evidence, nor were they given a chance to assess Williams'
credibility. The Court's restrictions ensured the government's
narrative went unchallenged while denying the defense the
ability to present a coherent theory of innocence.

The government's acceptance of Williams' self-serving and
unverified evidence, while ignoring the defendant's own denials
and forensic limitations of the case, created an unbalanced and
constitutionally deficient trial.

### 6. Conclusion

The Court's exclusion of critical alternative perpetrator
evidence related to Caleb Williams violated Movant's
constitutional rights to due process and to present a complete
defense. This error significantly prejudiced the outcome of the
trial and warrants relief under 28 U.S.C. § 2255. Movant
respectfully requests that the Court vacate the conviction and
sentence, or in the alternative, conduct an evidentiary hearing
to evaluate this claim.

## GROUND SIX: STRUCTURAL CONFLICT OF INTEREST AND GOVERNMENT COLLUSION RESULTED IN A FUNDAMENTALLY UNFAIR TRIAL, INCLUDING PUBLIC EXPOSURE OF CONFIDENTIAL JUVENILE RECORDS INVOLVING THE DEFENDANT'S SISTERS

### 1. Procedural History

During the time of Joshua Duggar's criminal trial, his four
sisters were pursuing a federal civil lawsuit against the City
of Springdale, Washington County, and others, related to the
illegal disclosure of sealed juvenile records. This case
overlapped directly with the criminal proceedings and was

presided over by the same judge, Timothy Brooks. The Court also handled a separate civil case filed by Joshua Duggar involving the same disclosures. Despite the apparent conflicts, the criminal trial went forward with no protective measures, creating a structural conflict of interest that was not raised or remedied on direct appeal.

## 2. Claim

Movant's Sixth and Fourteenth Amendment rights to a fair and impartial trial were violated by a structural conflict of interest arising from the overlapping civil litigation involving his sisters' confidential juvenile records, the government's political motivations, and the court's failure to insulate the criminal trial from these prejudicial external influences. Additionally, due process was violated by the government's collusion to exploit sealed juvenile records for political and media purposes.

## 3. Factual Background

In 2006, confidential juvenile court proceedings involving the Duggar family addressed allegations of inappropriate touching. These matters were resolved through the juvenile court system and never resulted in criminal charges. Years later, Arkansas juvenile court Judge Stacey Zimmerman ordered the records permanently expunged.

Despite that order, the records were illegally and publicly disclosed through a politically motivated Freedom of Information Act (FOIA) request. The disclosure was orchestrated by former Springdale Police Chief Kathy O'Kelley, in coordination with the Springdale Police Department and City Attorney Ernest Cate. Washington County officials also played a role, along with other bad actors named in legal complaints filed by Joshua Duggar and his sisters in separate federal lawsuits.

The sealed juvenile records were funneled to an international
tabloid magazine through a third-party law firm acting as a
legal smokescreen. This calculated and unlawful leak, made under
the pretense of transparency, was in reality a product of failed
leadership with bad policy, and political hostility—weaponizing
the justice system under the banner of "law and order."

Prior to the disclosure, the Duggar sisters, along with many of
the Duggar siblings, sought help at a child safety center. They
shared deeply personal and private family details in confidence
with professionals who claimed to be there to protect and
support victims and juveniles. Tragically, those very same
people later played a role in the malicious release of these
sensitive records through the FOIA request at the hands of bad
government policy and bad actors. The breach of trust inflicted
great harm on the young people who deserved protection, dignity,
and respect.


The records' public release caused great harm to the Duggar
sisters and fueled their civil lawsuit, which proceeded
simultaneously in the same federal court where Judge Brooks
presided. This judge also oversaw Joshua Duggar's separate civil
and later the criminal case, creating a convergence of
interests.


Joshua Duggar's father, Jim Bob Duggar, and Joshua himself have
longstanding ties to the Republican Party and conservative
politics, including vocal and enthusiastic public support for
President Donald J. Trump. The timing of federal charges—filed
nearly 18 months after the DOJ raid and shortly after President
Joe Biden took office—coincided with a DOJ pattern of targeting
conservative figures. The criminal charges came one day after
the DOJ raided Rudy Giuliani's residence and office, and exactly
100 days into Biden's presidency.


The City and County defendants faced serious liability in the
sisters' and Joshua's civil cases related to the illegal release

of records. A conviction of Joshua Duggar served to undermine those civil claims by painting him and his family in a negative light and supporting the defense's narrative.

This situation created an undeniable conflict of interest: the same judge presiding over the two civil privacy cases and Joshua's criminal prosecution, the same courtroom balancing government interests with family rights, and the same timeline merging sensitive matters.

Joshua Duggar's efforts to uncover evidence of government misconduct—including communications and whistleblower information—were stymied after his devices were seized following the 2019 federal raid. Not only was he prohibited from accessing his devices after 2019, but in 2021, at a critical time for him to work on his civil case, he was denied access to a computer or any of his electronic devices. This severely restricted his ability to work on these cases, and to expose government collusion and corruption, while depriving him of constitutional rights to mount vital arguments in these cases.

The Court's failure to address or mitigate these conflicts, combined with the government's politically motivated prosecution and use of sealed juvenile records for media spectacle, denied Joshua Duggar his constitutional rights to a fair, impartial, and unbiased trial.

## 4. Legal Issue

Whether the structural conflict of interest stemming from overlapping civil litigation involving the Duggar family's confidential juvenile records, combined with government collusion and political targeting, violated Movant's constitutional rights to due process, a fair trial, and impartial adjudication.

## 5. Discussion

The Sixth Amendment guarantees a defendant the right to an
impartial judge and a fair trial free from conflicts of
interest. See Tumey v. Ohio, 273 U.S. 510 (1927). Structural
conflicts arise when a judge's interests or multiple roles
create bias or the appearance thereof, requiring reversal
regardless of prejudice. See Williams v. Pennsylvania, 579 U.S.
1 (2016).

Due process requires courts to shield defendants from political
interference and prosecutorial misconduct. The government's
exploitation of sealed juvenile records for political gain,
coupled with the timing of charges during a political
administration shift, raises serious constitutional concerns.

The court's failure to recuse or implement safeguards allowed
overlapping cases to influence each other, undermining the
integrity of the trial. Moreover, denying Movant access to
critical evidence detailing government misconduct compounded the
prejudice.

These combined factors demonstrate a fundamental breakdown of
fairness that no limiting instruction or post-trial remedy can
fix. Relief under 28 U.S.C. § 2255 is warranted.

## 6. Conclusion

The structural conflict of interest, government collusion, and
politically motivated prosecution deprived Movant of due process
and a fair trial. The Court must grant relief by vacating the
conviction and sentence or ordering an evidentiary hearing to
investigate these constitutional violations.

**GROUND SEVEN: FALSE ATTRIBUTION AND PREJUDICIAL USE OF A**
**CORPORATE-DRIVEN STATEMENT IMPUGNING THE DEFENDANT'S CHARACTER**

## 1. Procedural History

At trial, the government introduced a corporate-driven statement
posted to the Duggar family's Facebook page in 2015, attributing
it to Joshua Duggar as a personal confession. The prosecution
referenced this statement repeatedly to imply guilt and to
create a narrative of hidden sexual addiction and deceit.
Although defense counsel raised numerous challenges throughout
the trial, this issue was not fully developed or rebutted due to
the sheer volume of constitutional and evidentiary concerns that
counsel were required to address.

## 2. Claim

Movant's constitutional rights under the Fifth and Sixth
Amendments were violated when the government relied on a
coerced, corporate-motivated statement falsely attributed to
him. The introduction and use of this statement, coupled with
the inability of overburdened trial counsel to address it in
depth, resulted in a denial of due process and ineffective
assistance of counsel.

## 3. Factual Background

In August 2015, a statement was published on the Duggar family's
Facebook page under Movant's name, claiming that he had secretly
viewed pornography, led a double life, and been unfaithful to
his wife. Movant did not write or approve the creation of this
statement, nor was he directly involved in the process leading
up to its release.

The statement was drafted and issued under immense pressure from
representatives of TLC, Discovery Communications, and their
legal and public relations teams. The Duggar family agents faced
threats of television show cancellation and possible contractual
penalties or punishment if a public confession-style statement
was not released. Movant, though the subject of the statement,
was not consulted in its creation or given the opportunity to
prevent its publication.

Despite this, the prosecution used the statement at trial to
paint a damaging picture of Movant's character. It was
repeatedly cited to suggest a long-standing pattern of secret
pornography use and moral failure. This characterization was not
supported by clinical or testimonial evidence.

Movant has never been diagnosed with any pornography addiction
and was prepared to introduce supporting professional
evaluations. However, due to the extraordinary complexity of the
case—including multiple evidentiary rulings, constitutional
issues, and expert disputes—defense counsel were unable to fully
litigate this issue or present rebuttal evidence regarding the
origins and context of the statement.

## 4. Legal Issue

Whether the use of a coerced and falsely attributed public
statement to unfairly prejudice the jury's perception of the
defendant's character, coupled with defense counsel's inability
to meaningfully challenge it due to the complexity of the trial,
violated the Movant's constitutional rights under the Fifth and
Sixth Amendments.

## 5. Discussion

The use of involuntary or externally coerced statements—
especially those not authored, approved, or adopted by the
accused—raises serious due process concerns under Crane v.
Kentucky, 476 U.S. 683 (1986). While the statement was not a
direct confession to any crime charged, its suggestive power was
used to influence the jury's perception of Movant's character
and credibility.

Defense counsel were diligent and active in litigating numerous
constitutional and evidentiary challenges throughout the trial.
However, the volume and complexity of the trial burdened
counsel's ability to respond effectively to every prejudicial
aspect of the government's case. This led to a scenario where
the prosecution's repeated use of a misleading statement went
largely unrebutted.

Under Strickland v. Washington, 466 U.S. 668 (1984), ineffective
assistance of counsel may arise not from incompetence, but from
circumstances that prevent counsel from fully addressing
prejudicial errors. Here, the inability to challenge the
prejudicial use of a coerced statement was a direct consequence
of the heavy procedural and legal load borne by the defense.

**6. Conclusion**

The government's use of a false, externally pressured, and
unapproved public statement severely prejudiced the jury's
perception of Joshua Duggar. The defense's inability to fully
challenge the statement, due to the overwhelming demands of the
case, contributed to a violation of the Movant's constitutional
rights. Relief is warranted under 28 U.S.C. § 2255 in the form
of vacatur, a new trial, or an evidentiary hearing.

**GROUND EIGHT: CUMULATIVE INEFFECTIVE ASSISTANCE OF COUNSEL
RESULTING IN A FUNDAMENTALLY UNFAIR TRIAL**

## 1. Claim

Movant was denied his Sixth Amendment right to the effective
assistance of counsel. While each of the preceding grounds
establishes an independent constitutional violation, the
cumulative burden placed on defense counsel, combined with
limited time, resources, and procedural disadvantages, resulted
in a defense that could not adequately confront or neutralize
the volume of prejudicial information introduced at trial.

## 2. Factual Background

The defense team faced an overwhelming array of evidentiary
challenges, including:

- False testimony from government agents that was uncorroborated
and inflammatory;

- Prejudicial prior-acts testimony from a biased, unreliable
witness (Bobye Holt);

- Improper exclusion of third-party guilt evidence related to
Caleb Williams;

- Government manipulation and presentation of a corporate-
drafted public statement as a personal confession;

- Structural conflicts of interest involving overlapping civil
litigation, political bias, and exposure of expunged juvenile
records.

Each of these required intense legal response and independent
evidentiary development. Due to these simultaneous demands,
counsel was functionally prevented from fully developing or
rebutting every issue.

Notably, while counsel objected where possible and made
substantial efforts on critical fronts, certain issues—such as
rebutting the Facebook statement, expanding evidence related to
Randall Berry or Caleb Williams, or fully challenging Holt's
credibility—were not addressed with the depth and force that
might have been possible had fewer constitutional violations
been in play.

### 3. Legal Issue

Whether the cumulative effect of defense counsel's inability to
adequately investigate, challenge, and rebut numerous
constitutional violations deprived Movant of his right to
effective assistance of counsel under Strickland v. Washington,
466 U.S. 668 (1984).

### 4. Discussion

Under Strickland, a defendant must demonstrate that counsel's
performance was deficient and that the deficiency prejudiced the
defense. Here, it is not a matter of singular missteps, but the
cumulative impact of multiple constitutional errors and
evidentiary failures that overwhelmed the defense's ability to
present a full and fair response. The deficiencies—though
understandable given the volume of contested issues—nonetheless
resulted in prejudice by allowing damaging and unreliable
testimony and evidence to reach the jury unchecked.

### 5. Conclusion

Movant's trial was rendered fundamentally unfair by the
cumulative effect of these errors. Defense counsel was not
afforded a realistic opportunity to address each issue with the
depth and attention it deserved. As a result, Movant's

constitutional right to effective assistance of counsel was
violated, and relief is warranted under 28 U.S.C. § 2255.

## VIII. REQUEST FOR RELIEF

For the foregoing reasons, Movant respectfully requests that
this Court:

1. Vacate the judgment of conviction and sentence entered in
Case No. 5:21-CR-50014;

2. Order a new trial;

3. In the alternative, hold an evidentiary hearing to fully
develop the factual record on the constitutional claims
presented;

4. Appoint counsel to assist Movant in further proceedings;

5. Grant any other relief the Court deems just and proper.

Movant submits that the cumulative effect of the constitutional
violations described above demonstrates a breakdown in the
fundamental fairness of the criminal proceedings and warrants
relief under 28 U.S.C. § 2255.

## IX. VERIFICATION / DECLARATION

I, Joshua James Duggar, declare under penalty of perjury that I
am the Movant in this action and that I have read the foregoing
motion and know the contents thereof. The facts stated in the
motion are true and correct to the best of my knowledge,
information, and belief. This declaration is made pursuant to 28
U.S.C. § 1746.

Due to conditions at FCI Seagoville, Movant has faced
significant limitations in preparing this motion. The facility's
law library is extremely abbreviated and does not offer adequate
resources for individuals working on their own cases. In
addition, the law library is frequently inaccessible for
extended periods. Movant does not have access to a complete copy
of the trial transcript or all pretrial motions and has relied
on family and friends to mail partial records.

The prison mail system is also severely delayed and unreliable.
These delays have caused repeated disruptions and harm to
Movant's ability to receive legal documents and effectively
prepare this motion. Movant's request for court-appointed
counsel was denied, and he respectfully submits this motion pro
se and in forma pauperis, with the best effort possible under
these circumstances.

Executed on June 24, 2025.

Respectfully submitted,

Joshua James Duggar
Reg. No. 42501-509
FCI Seagoville
P.O. Box 9000
Seagoville, TX 75159

## X. CERTIFICATE OF SERVICE

I, Joshua James Duggar, hereby certify that on June 24, 2025, I
placed a true and correct copy of the foregoing Motion to
Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §
2255 in the prison legal mail system, with first-class postage
prepaid, addressed to the following:

**Clerk of Court**

**United States District Court**

**Western District of Arkansas**

**Fayetteville Division**

**35 E. Mountain Street, Room 510**

**Fayetteville, AR 72701**


and


**United States Attorney's Office**

**Western District of Arkansas**

**35 E. Mountain Street, Suite 300**

**Fayetteville, AR 72701**


Joshua James Duggar

## Inmate Inquiry

🖨 PRINT

| | | | |
|---|---|---|---|
| Inmate Reg #: | 42501509 | Current Institution: | Seagoville FCI |
| Inmate Name: | DUGGAR, JOSHUA | Housing Unit: | SEA-C-A |
| Report Date: | 06/24/2025 | Living Quarters: | C02-541U |
| Report Time: | 2:20:29 PM | | |

General Information | Account Balances | Commissary History | Commissary Restrictions | Comments

## General Information

| | |
|---|---|
| Administrative Hold Indicator: | No |
| No Power of Attorney: | ▮▮▮▮ |
| Never Waive NSF Fee: | No |
| Max Allowed Deduction %: | ▮▮▮▮ |
| PIN: | ▮▮▮▮ |
| PAC #: | ▮▮▮▮ |
| Revalidation Date: | 4th |
| FRP Participation Status: | Participating |
| Arrived From: | |
| Transferred To: | |
| Account Creation Date: | 6/6/2022 |
| Local Account Activation Date: | 6/7/2022 3:13:09 AM |
| Sort Codes: | |
| Last Account Update: | 6/19/2025 3:16:55 AM |
| Account Status: | Active |
| Phone Balance: | $0.64 |

### Pre-Release Plan Information

| | |
|---|---|
| Target Pre-Release Account Balance: | $0.00 |
| Pre-Release Deduction %: | 0% |
| Income Categories to Deduct From: | ☐ Payroll    ☐ Outside Source Funds |

### FRP Plan Information

| FRP Plan Type | Expected Amount | Expected Rate |
|---|---|---|
| Quarterly | $25.00 | 0% |

## Account Balances

| | |
|---|---|
| Account Balance: | $0.22 |
| Pre-Release Balance: | $0.00 |
| Debt Encumbrance: | $0.02 |
| SPO Encumbrance: | $0.00 |
| Other Encumbrances: | $0.00 |
| Outstanding Negotiable Instruments: | $0.00 |
| Administrative Hold Balance: | $0.00 |
| Available Balance: | $0.20 |

4/24/25

| | |
|---|---|
| National 6 Months Deposits: | $0.00 |
| National 6 Months Withdrawals: | ($0.20) |
| Available Funds to be considered for IFRP Payments: | ($450.00) |
| National 6 Months Avg Daily Balance: | $0.21 |
| Local Max. Balance - Prev. 30 Days: | $0.22 |
| Average Balance - Prev. 30 Days: | $0.22 |
| Inmate Qualifies for OTC Medication | |
| This Inmate is Indigent | |

## Commissary History

### Purchases

| | |
|---|---|
| Validation Period Purchases: | $0.00 |
| YTD Purchases: | $0.00 |
| Last Sales Date: | 5/1/2024 12:22:10 PM |

### SPO Information

| | |
|---|---|
| SPO's this Month: | 0 |
| SPO $ this Quarter: | $0.00 |

### Spending Limit Info

| | |
|---|---|
| Spending Limit Override: | No |
| Weekly Revalidation: | No |
| Bi-Weekly Revalidation: | No |
| Spending Limit: | $360.00 |
| Expended Spending Limit: | $0.00 |
| Remaining Spending Limit: | $360.00 |

## Commissary Restrictions

### Spending Limit Restrictions

| | |
|---|---|
| Restricted Spending Limit: | $0.00 |
| Restricted Expended Amount: | $0.00 |
| Restricted Remaining Spending Limit: | $0.00 |
| Restriction Start Date: | N/A |
| Restriction End Date: | N/A |

### Item Restrictions

| List Name | List Type | Start Date | End Date | Active |
|---|---|---|---|---|

## Comments

**Comments:**

**ATTACHMENT B**

**APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT**

**PREPAYING FEES OR COSTS** (LONG FORM – AO 240)

UNITED STATES DISTRICT COURT

Western District of Arkansas

Fayetteville Division

I, Joshua James Duggar, declare that I am the movant in this
case and that I am unable to pay the costs of these proceedings.
I believe I am entitled to relief, and I respectfully request to
proceed in forma pauperis under 28 U.S.C. § 1915.

1. Are you incarcerated?    ☒ Yes      ☐ No

   (If "Yes," you must attach a certified copy of your prison
trust account for the past 6 months.)

2. Are you currently employed?      ☐ Yes     ☒ No

   a. If "Yes," state your employer, monthly pay, and take-home
pay:

   b. If "No," state the last date you were employed: N/A

      Monthly income: $0.00

3. Do you have any income from any other source?  ☐ Yes    ☒ No

4. Do you have any cash or checking/savings accounts?  ☐ Yes    ☒
No

   Amount: $0.00

5. Do you own any property or assets of value (home, vehicle, stocks, etc.)?

☐ Yes    ☒ No


6. Do you have any dependents you support?    ☒ Yes    ☐ No

If yes, list names and ages:

- Spouse: Anna Duggar  (37)

- Children: Mackynzie (15), Michael (14), Marcus (12), Meredith (9), Mason (7), Maryella (5), Madyson (3)


7. Monthly expenses (if any):

Commissary or hygiene needs: Varies — limited due to $0 balance


8. Do you owe anyone money (debts, legal obligations, restitution)?

☒ Yes    ☐ No

If yes, explain:

- Legal restitution and fines ordered in prior proceedings (details previously submitted)

9. I declare under penalty of perjury that the above information
is true and correct.


Executed on: June 24, 2025

Signature: _____

Joshua James Duggar

Reg. No. 42501-509

FCI Seagoville

P.O. Box 9000

Seagoville, TX 75159


ADDITIONAL INFORMATION REGARDING EMPLOYMENT AND FINANCES


Movant currently performs a prison work assignment but does not
receive any pay or compensation. Therefore, Movant has no
employment income to report. Movant currently has no personal or
real property possessions in his ownership. Movant occasionally
receives money from family and friends, but has not during the
reporting time for this request.



U.S. POSTAGE PAID
USPS Ground Advtg
DALLAS, TX 75253
AUG 08, 2025

$0.00

72701

1 Lb 2.90 Oz    S2324M508138-19

Retail

RDC 01

J. DUGGAR
#742501-509
FCI SEAGOVILLE
P.O. BOX 9000
SEAGOVILLE, TX 75159

UNITED STATES DISTRICT COURT
FAYETTEVILLE DIVISION
WESTERN DISTRICT OF ARKANSAS
35, E. MOUNTAIN ST., ROOM 510
FAYETTEVILLE, AR 72701

USPS TRACKING #

9534 6102 4178 5218 2421 21