IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA     )
    )
v.     )      Criminal No. 5:21-CR-50014-001
    )
JOSHUA JAMES DUGGAR     )

UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR
CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

Comes now the United States of America, by and through Dustin S Roberts, Assistant United States Attorney for the Western District of Arkansas, and for its Response to Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, states:

## *Background*

In November 2019, law-enforcement officers obtained and executed a search warrant in an ongoing child exploitation investigation of a used-car lot owned and operated by Joshua James Duggar ("Duggar"). During the execution of the warrant, law enforcement seized Duggar's desktop computer, cellular phone, and other devices. A subsequent forensic analysis of the seized devices revealed that Duggar was downloading, viewing, and then deleting child sexual abuse material on a partitioned, or hidden, section of his computer.

On April 28, 2021, Duggar was named in a two-count Indictment filed by a Grand Jury in the Western District of Arkansas. (Doc. 1). Count One charged Duggar with Receipt of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2) and Count Two charged him with Possession

1

of Child Pornography, including images of minors under the age of 12, in violation of 18 U.S.C. § 2252A(a)(5)(B). (*Id.*).

On December 9, 2021, after an eight-day trial, a jury convicted Duggar on all counts. (Doc. 120). On May 25, 2022, Duggar appeared before the Honorable Timothy L. Brooks for sentencing. (Doc. 158). At sentencing, the Court dismissed the Possession of Child Pornography charge, as it was a lesser-included offense of the greater convicted charge of Receipt of Child Pornography. (Doc. 159). Ultimately, the Court sentenced Duggar to, among other things, 151 months in prison, to be followed by 20 years of supervised release. (Doc. 162).

Duggar filed a timely notice of appeal. (Doc. 165).   On appeal, Duggar argued (1) this Court violated his constitutional right to present a complete defense by precluding him from calling and, if necessary, impeaching a critical witness at trial; (2) this Court erred by denying his motion to suppress statements after a federal agent physically stopped him from contacting his attorney and subsequently interrogated him outside the presence of his counsel; and (3) that this Court erred by permitting the government's expert to offer testimony on EXIF metadata and prohibiting his expert from testifying to the unreliability of the methodology used by the government's expert. Brief for Appellant, *United States v. Duggar*, No. 22-2178, 2022 WL 7113171 (8th Cir. Oct. 4, 2022). As to Duggars first argument, the Eighth Circuit found this Court had "unquestionably constitutional" discretion to exclude the conviction under Federal Rule of Evidence 403 and, as a result, this Court's application of this "well-established rule[ ]" could not have violated Duggar's Fifth and Sixth Amendment rights. *United States v. Duggar*, 76 F.4th 788, 792 (8th Cir.2023). As to Duggar's second argument, the Eighth Circuit found that admission of his incriminating statements did not violate *Miranda*. *Id.* at 794. As to Duggar's third argument, the Eighth Circuit

determined this Court did not abuse its discretion in admitting expert testimony by the government's forensic analyst about metadata from Duggar's cell phone and that this Court did not abuse its discretion by limiting testimony of Duggar's expert. *Id*. at 795 – 96.

After the Eighth Circuit affirmed the judgment of the District Court, Duggar petitioned the U.S. Supreme Court for a writ of certiorari on the question of, "[d]oes the exclusion of relevant evidence of an alternative perpetrator based on a trial court's conclusion it is too speculative violate a criminal defendant's constitutional right to present a complete defense?" Petition for a Writ of Certiorari, *Duggar v. United States*, No. 23-937, 2024 WL 865943, Doc. 173.   On June 24, 2024, the U.S. Supreme Court denied Duggar's petition. *Duggar v. United States*, 144 S.Ct. 2685 (2024), Doc. 174. On May 27, 2025, Duggar filed a *Pro Se* Motion Requesting Appointment of Counsel Pursuant to 18 U . S . C . § 3006A For Potential 28 U . S . C . § 2255 Proceeding. (Doc. 175). The Court denied Duggar's motion on June 6, 2025. (Doc. 178).

On July 29, 2025, the Western District of Arkansas Clerk of the Court filed Document 179, styled "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody." Based on this filing, the Court ordered the United States to respond to Duggar's § 2255 Motion on or before September 4, 2025.   (Doc. 181). On or about August 22, 2025, the Clerk of the Court received and subsequently filed as Document 182 "a duplicate copy" of the § 2255 motion.

On August 28, 2025, the United States filed a motion to Strike and Correct the Record (Doc. 183), arguing, as evidenced by the envelope which contained the filed motion, Document 179 was factually legal mail addressed to the U.S. Attorney's Office that was mistakenly opened and then filed by the Clerk's Office. This motion remains pending.

### *Argument*

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence ... claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The court may grant the motion if it finds "that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement on the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). In his § 2255 Motion, Duggar claims:

1) the trial court improperly excluded third party guilt evidence;

2) Government agent James Fottrell committed perjury by intentionally modifying the HP Office Computer image and lying under oath about the internet connection, fatally undermining the integrity of the trial;

3) Government agent Gerald Faulkner gave false testimony regarding his alleged statement on downloading activity;

4) the government presented inflammatory, uncorroborated testimony from Bobye Holt;

5) the trial court prohibited him from fully presenting evidence of an alternative perpetrator, Caleb Williams;

6) there was a structural conflict of interest arising from the overlapping civil litigation involving his sisters' confidential juvenile records, from the government targeting him for prosecution because he was a conservative political figure, and from the trial court failing to insulate his criminal trial from these prejudicial external influences;

7) the government unfairly prejudiced the jury's perception of his character by relying on a coerced, corporate-motivated statement from the Duggar's

4

family's Facebook page that stated he had secretly viewed pornography, led a double life, and had been unfaithful to his wife; and,

        8)     he received a fundamentally unfair trial due to the cumulative effect of ineffective assistance of counsel.

As a threshold matter, this Court should find that Duggar's entire motion is untimely, and therefore all of his claims are time bared. Substantively, Duggar's claims are without merit, as Grounds One, Two, Three, Four, Six, and Seven have been procedurally defaulted and are contradicted by the record, his claim under Ground Five has already been decided adversely against him by the Court of Appeals, and as to Ground Eight, Duggar's generic claims are unsupported in fact and amount to a claim of cumulative error, which this Circuit does not recognize.

## I.    Relief Is Not Available to Duggar Because His Motion Was Filed Outside the One-Year Limitation Period Imposed By 28 U.S.C. § 2255(f)

This Court should first determine whether Duggar's motion is timely filed. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), motions under this section must be filed within a one-year period that begins to run from the latest of the following dates:

        (1) the date on which the judgment of conviction becomes final;

        (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

        (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

As applicable here, per § 2255(f)(1), the limitation period runs from the date when the judgment of conviction became final. A judgment is deemed final "where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed [or a petition for certiorari finally denied...]." *United States v. Johnson*, 457 U.S. 537, 543, n. 8 (1982) (citation omitted); *see also Clay v. United States*, 537 U.S. 522, 527 (2003) (for the purpose of starting § 2255's one-year limitation period, "[f]inality attaches when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.").

The Supreme Court denied Duggars petition for a writ of certiorari on June 24, 2024 (Doc. 174); therefore, his conviction became final that day. The time to file for relief, under subsection (f)(1), began to run on June 24, 2024, and expired a year later on June 24, 2025. Duggar's properly filed motion before this Court was received and docketed approximately fifty-five (55) days late and, as a result, his motion was not timely filed under subsection (f)(1).

To avoid this default, Duggar included in his motion a "Verification/Declaration" stating that he placed his motion in the prison mailing system on June 24, 2025. (Doc. 182, pp. 46-47) Under the prison mailbox rule a *pro se* prisoner's petition for a writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court. *See Moore v. United States*, 173 F.3d 1131, 1135 (8th Cir.1999) (explaining that under the prison mailbox rule, a 28 U.S.C. § 2255 motion is deemed timely filed when an inmate deposits it in the prison mail system prior to the expiration of the filing deadline). The prisoner mailbox rule for habeas corpus petitions provides:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an

institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

Rules Governing Section 2255 Proceedings R. 3(d). "[U]nder the common law mailbox rule, ... an inmate bears the initial burden of alleging timely filing." *United States v. Caballero-Gonzalez*, No. NO. 5:18-CR-50023-003, 2021 WL 3177416, at *2 (W.D.Ark. July 27, 2021) (*citing United States v. Winkles*, 795 F.3d 1134, 1146 (9th Cir. 2015)); *See Porchia v. Norris*, 251 F.3d 1196, 1198 (8th Cir.2001) (inmate bears burden of proving his entitlement to benefit of prison mailbox rule).

As this Court is aware, two (2) versions of Duggar's same § 2255 Motion were filed nearly one month apart. On July 29, 2025, the Clerk's office received and mistakenly filed legal mail directed from Duggar to the U.S. Attorney's Office that contained a copy of Duggar's § 2255 motion. (Doc. 179). The envelope that the motion was received in, as standard practice, was scanned and included as the last page of Document 179. While the scanned copy of the letter is very dark, it is obvious that such is addressed to the United States Attorney's Office and has no visible post-mark, cancelled stamps, nor other indicators of being shipped via the U.S. Mail.[1] Approximately 3 weeks later, on August 18, 2025, the Court of the Clerk received a second copy of Duggar's 2255 motion. (Doc. 182). In stark contrast, the envelope containing this version, which was initially styled as "Duplicate Copy", was addressed to the Clerk of the Court, contained a clear U.S. Postal post-mark, a postal tracker sticker, and cancelled stamps.

---

[1] The United States received from the U.S. Clerk's Office a clearer copy of the envelope that contained Document 179, which clearly has no indications that it traveled via the U.S. Mail system. (Attached as Exhibit B to Government's Motion to Strike/Correct)

Duggar claims in his "Certificate of Service" located on page 48 of both documents that he placed a true and correct copy of his 2255 motion with first-class postage prepaid in the prison legal mail system addressed to both the Clerk and the US Attorney's Office, yet the fact that the motions were received nearly 3 weeks apart, without any explanation, runs contrary to his claims that both were submitted on June 24, 2025. It simply strains credulity that Duggar placed Document 182 in the prison mail system on June 24, and it arrived at the Clerk's Office on August 18, yet Document 179, allegedly sent the same day, arrived one month faster and did so without a postmark or other indicia of travel via the US Postal system.

As a comparator, when Duggar submitted his Pro Se Motion to Appoint Counsel, he signed and dated the Motion May 12, 2025. (Doc. 175, pp. 4-5). Per the scanned envelope that accompanied the filing, the packet was postmarked by the U.S. Mail Service on May 19, 2025, and received by the Clerk's Office on May 27, 2025. (Id. p. 5). That's a 15-day turnaround from the time the document was dated by Duggar, submitted to the prison mail system (6 days prison system total), traveled through the U.S. Mail system, and arrived at the Clerk's office in Fayetteville. Yet, at present, the Court is left with an unexplained gap of 55 days, which undercuts the veracity of Duggar's prison mailbox claim.[2]

Obviously, the mailing that was somehow received by the Clerk's office and filed as Document 179 was the referenced Government's "copy" from Duggar's certificate of service.

---

[2] The "Certificate of Service" included with Duggar's Motion for the Appointment of Counsel lists the correct address of the U.S. Attorney's Office. (Document 175, p. 4). Documents 179 and 182 both list the same incorrect addresses. This document likewise appears to be typed on a typewriter, which, per BOP, is the only resource, short of handwritten documents, that inmates have access to in order to prepare pleadings.

(Doc. 179, 182, p. 48). But again, the envelope that contained Document 179 has no visible post-mark, no indication that prepaid postage was included, and no evidence that the envelope ever passed through the U.S. Postal System. As such, a third party must have physically dropped Document 179 off at the Clerk's Office.[3] This is problematic for Duggar, because the prisoner does not get the benefit of the mailbox rule if he mails his pleading to third parties, as intermediaries, who then mail them to the court for filing. (see *Cook v. Stegall*, 295 F.3d 517, 520 (6th Cir. 2002)(mailbox rule did not apply to pro se prisoner who sent his habeas petition to his daughter for mailing) (see also *Knickerbocker v. Artuz*, 271 F.3d 35, 37 (2d Cir. 2001) (per curiam) (mailbox rule not applicable where pro se prisoner delivers notice of appeal to someone outside the prison system for forwarding to the court clerk); *U.S. v. Cicero*, 214 F.3d 199, 204 (D.C. Cir. 2000) (limitations period not tolled where prisoner forwarded petition to jailhouse lawyer who later was placed in administrative segregation, delaying the filing); *Paige v. U.S.*, 171 F.3d 559, 561 (8th Cir. 1999) (mailbox rule inapplicable where prisoner mailed petition to brother for preparation and filing); *Gaines v. Newland*, 1998 WL 704418 (N.D. Cal. 1998) (mailbox rule does not apply where prisoner mailed petition to his grandmother for filing); *Pearson v. Vaugh*, 984 F. Supp. 315, 317 (E.D. Pa. 1997) (mailbox rule does not apply where prisoner mailed petition to his attorney for filing).

And of course, the Clerk's office did not, during the same timeframe, receive "their" copy of this motion as indicated by the certificate of service. Instead, the referenced "Clerk of the Court" copy arrived approximately 4 weeks later. (Document 182-filed August 22, 2025). Document 182,

---

3 Per conversations with the Clerk's Office, it is less likely for an employee to notice a mislabeled address on an envelope when an individual physically files the document at the Clerk's Office.

as evidenced by the envelope the Motion was contained in, has clear indicators that it was placed in the U.S Postal system. There is a postmark, a sticker indicating US Postage was paid on August 6, and a U.S.P.S. tracking bar code and number (the USPS parcel tracking website indicates the package entered the U.S. mail system on August 6 in Dallas, Texas, and was delivered to the Fayetteville Federal Court house on Friday, August 15, 2025) (See Government's Motion to Strike/Correct Exhibit C)). Yet, the envelope itself again shows signs that a third party was involved in mailing this envelope, as the postage paid sticker reflects "Retail." Per BOP officials, inmates have 2 modes of mailing documents through their system, 1-US Stamps, and 2- BOP postal meter.[4]

Another issue with Duggar's motions, both Documents 179 and 182 have numbers in the left margins of his documents that run vertically down the page. When one compares documents 179 and 182, these numbers are for the most part sequential- reflecting that Duggar did not create one "2255 motion" and make an exact copy of such. Instead, the Documents were likely printed sequentially (one after another). Important to note, that BOP inmates are not provided computers but rather typewriters. The undersigned is aware of services utilized by inmates, such as "letterstream," which is a service that will print and can even mail documents for inmates.

Duggar's prison mail declaration is further suspect given per the Institution Supplement obtained from Seagoville FCI, "[i]nmates housed in the FCI will hand deliver all special mail in a

---

4 The United States acknowledges that there are lined out stamps and writing on the envelope itself indicating insufficient postage (postage due). However, it remains unclear how the stamps came to be cancelled out and how the "retail" sticker was substituted. While one could speculate that the US Postal Service did this, such speculation does not fully explain why the item was placed in the mail in August. It is Duggar's burden to satisfy the glaring inconsistencies.

sealed envelope during open house hours 11:30 a.m. to 12:30 p.m. at the FCI mailroom" and then "[t]he legal/special mail will be rubber banded separately and placed in the mail bags for pick up by Mailroom staff the following morning, excluding weekends and holidays." Duggar's Inmate Inquiry that contains his account balance in support of his application to proceed in forma pauperis is dated on June 24, 2025, and timestamped at 2:20 p.m. (See Doc. 182, p. 49). If inmate mail is to be delivered between the hours of 11:30 a.m. and 12:30 p.m. and his Inmate Inquiry was generated at 2:20 p.m., then, obviously Duggar did not place his § 2255 Motion in the prison mail system on the date indicated.

As noted above, its Duggar's burden to show he satisfied the prison mailbox rule requirements. Here, as a threshold matter, Duggar has failed to satisfy his burden regarding the prison mailbox rule given the contradictory, inexplicable evidence, and therefore his motion is untimely.

## II.     Duggar's Claims have been Procedurally Defaulted and are without Merit

### A.     Duggar's Claims Under Grounds One, Two, Three, Four, Six, and Seven are Procedurally Defaulted

Even if Duggar's did overcome the timeliness issues surrounding his submission of his § 2255 Motion, the Court should nonetheless deny his motion on the basis that his claims under Grounds One, Two, Three, Four, Six, and Seven have been procedurally defaulted. The principle that claims not raised on direct appeal are defaulted in habeas proceedings prevents circumvention of the direct appeal process. A motion pursuant to § 2255 "may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal.").   Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been

raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir.1996). Habeas review is "an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 118 S. Ct. 1604, 1610 (1998) (internal quotation marks and citation omitted); *see also*, *e.g.*, *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir.2003) ("Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process."). The distinction between direct appeal and collateral attack stems from the importance of the finality of judgments. *See Bousley*, 523 U.S. at 621 (internal quotation marks and citation omitted) ("[T]he concern with finality served with the limitation on collateral attack has special force with respect to convictions based on guilty pleas."); *see also Frady*, 456 U.S. at 164-65.

The failure to raise an issue on direct appeal ordinarily constitutes a procedural default and precludes a defendant's ability to raise that issue for the first time in a § 2255 motion. *Dejan v. United States*, 208 F.3d 682, 685 (8th Cir.2000); *Swedzinski v. United States*, 160 F.3d 498, 500 (8th Cir.1998); *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir.1997). This rule applies whether the conviction was obtained through trial or through the entry of a guilty plea. *E.g.*, *United States v. Cain*, 134 F.3d 1345, 1352 (8th Cir.1998). A defendant may surmount this procedural default only if he "can show both (1) cause that excuses the default, and (2) actual prejudice from the errors asserted." *Matthews*, 114 F.3d at 113 (citation omitted); *see also Apfel*, 97 F.3d at 1076. "'[C]ause' in the formula 'cause and prejudice' means some impediment to making an argument" at the time of the direct appeal. *Turner v. United States*, 693 F.3d 756, 758 (2012); *Cf. McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (in successive writ cause and prejudice analysis "[f]or cause to exist, the external impediment, whether it be government interference or

the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim").  Moreover, even constitutional or jurisdictional claims not raised on direct appeal are procedurally defaulted unless the petitioner can demonstrate either cause for the default and actual prejudice, or actual innocence.  *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted).

At present, Duggar presents the following claims for relief which were ripe to argue on appeal, yet they were not raised:

> **Ground 1**: the trial court improperly excluded third party guilt evidence;

> **Ground 2**: Government agent James Fottrell committed perjury by intentionally modifying the HP Office Computer image and lying under oath about the internet connection, fatally undermining the integrity of the trial;

> **Ground 3**:  Government agent Gerald Faulkner gave false testimony regarding his alleged statement on downloading activity;

> **Ground 4**: the government presented inflammatory, uncorroborated testimony from Bobye Holt;

> **Ground 6**: there was a structural conflict of interest arising from the overlapping civil litigation involving his sisters' confidential juvenile records, from the government targeting him for prosecution because he was a conservative political figure, and from the trial court failing to insulate his criminal trial from these prejudicial external influences; and,

> **Ground 7**: the government unfairly prejudiced the jury's perception of his character by relying on a coerced, corporate-motivated statement from the Duggar's family's Facebook page that stated he had secretly viewed pornography, led a double life, and had been unfaithful to his wife.

Notably, Duggar has not suggested any external impediment that prevented him from presenting all legally reviewable claims on direct appeal. Because a federal court need not consider the prejudice exception if the cause component has not been met, Duggar cannot rely upon this exception to overcome the procedural default. *Ashker v. Class*, 152 F.3d 863, 871 (8th Cir.1998)

(when petitioner "has not shown adequate cause to overcome the procedural bar ... we need not consider the issue of actual prejudice"). Furthermore, Duggar neither claims nor demonstrates miscarriage of justice through actual innocence. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). Duggar simply failed to raise these six current claims on direct appeal, and he cannot satisfy the "cause and prejudice" standard or demonstrate actual innocence, thus his claims have been procedurally defaulted.

Even though Duggar's First, Second, Third, Fourth, Sixth, and Seventh grounds for relief were procedurally defaulted, substantively each claim is without merit.

### B. Duggar's Claim That the Court Improperly Excluded Third Party Guilt Evidence is Contrary to the Record

For his first ground for relief, Duggar claims the Court improperly excluded third party guilt evidence regarding potential witness Randall Berry. However, a review of the record shows this claim to be wholly unsupported.

Prior to trial the Government filed a motion in limine wherein it sought to prohibit Duggar's defense from advancing evidence of third-party guilt regarding three individuals, one of which was Mr. Berry. (Doc. 67). The Court denied the Government's motion stating:

> It is the Government's burden to prove that Defendant committed the crimes set forth in the indictment beyond a reasonable doubt, and Defendant is entitled to create reasonable doubt in the jury's minds by pointing the finger at others who may have possibly committed the crimes (n.1 This does not mean the Court will permit the defense to present speculative testimony or make purely speculative arguments to the jury.). The Court will not pre-judge that evidence and in the process violate Defendant's right to a jury trial.

14

(Doc. 93, p.7).   Indeed, at trial Duggar's counsel, in his opening remarks before the jury, advanced

his theory of defense that Mr. Berry could have committed the charged crime.

> *Randall Berry*, you are going to hear that he talked to the feds twice. First, November 8th of 2019, the day they executed the search warrant. He confidently, on a recording, by the way, told them, "I didn't even start working at this car lot until June of 2019." The agents investigating said, "Great, couldn't have been you, weren't there." The pay records clearly revealed that he was there in May of 2019 at the earliest. Agents go back to him. And he says, "All right, May 20th, that's the date," on a recording, by the way. Members of the Jury, you are going to see in evidence a picture time-stamped of Randall Berry at the car lot on May 16th of 2019, squarely within the window of time that matters.
>
> * * *
>
> And you are going to hear from a witness who is going to testify from that witness stand that he personally observed Mr. Berry sitting in a van regularly outside a McDonald's accessing the McDonald's Wi-Fi. It was so remarkable to this witness that they literally gave him a nickname, "McLoiterer." You can't make this up.

(Trial Tr. Pp. 57 – 58).

And during the trail, Special Agent Faulkner was questioned by the Government about

Randall Berry's involvement in this case:

> Q:     Who were the other two individuals on the lot other than Mr. Duggar?
>
> A.     Employee, Randall Berry, and customer, Richard Harrell, who we later
>
>     determined not to be involved in this investigation

(Tr. p.144).

Likewise during cross examination, Agent Faulkner the defense questioned the agent about

Berry's involvement, as evidence by the following:

> A.   There are two other individuals, yes, sir.
> Q.   Randall Berry was present, correct?
> A.   Yes, Sir.

The defense also inquired of the forensics examination of Berry's phone (Tr. 299-300), got

out that law enforcement physically reviewed but did not seize the device (Id.), and inquired about

15

Berry's history of employment at the lot- which prompted the Government to object and the Court to overrule Government's objection stating, "[w]ell, I understand the purpose of the question to be, what was Agent Faulkner's understanding of the times that he would have potentially been at the car lot and how what he understood played into his subsequent investigation. And I think that's fair grounds for cross, so your objection is overruled." (Tr. p. 302). And finally, during closing, Duggar's counsel put forth his third-party guilt theory.

> So let's talk about what this case really is, this investigation. Let's call it what it is. Members of the Jury, they were so starstruck at the possibility of investigating and prosecuting Josh Duggar that they refused to let the actual evidence get in the way. How do you know that? They get a search warrant to search a house. Realize, at this point, all they have is Torrential Downpour. They have an IP address, literally, and a location. They believed at the time it was this house. They show up. Josh Duggar doesn't live there. They don't want to search. By the way, it's very close in
> proximity, as you heard, to the car lot.
>
> They send an undercover agent in. He no longer works for law enforcement. You got some really interesting testimony yesterday, which is why we called him. What were you asked to do? At this point, they have no reason to believe that this is Josh Duggar or anyone else in connection with this IP address at this car lot. He doesn't want to meet with Randy. He's told -- he knows nothing about this case, other than he's the undercover guy. You heard him testify. He's told, laser focus on Josh Duggar. So blinded by that focus that they refuse to look for anything else that when they have Randall Berry's phone in their possession, they choose not to look at it. By the way, look at those checks that the government put into evidence. The Randall Berry checks are all commission checks. They don't establish start dates and end dates. They establish when this gentleman was paid for commission. You think a car lot has one person working there at any given time? What if someone shows up off the street? No one is there? I mean, come on. You think there's no customers that are out there? People that hang out? People that detail cars? Come on.

(Trial Tr. 1571 – 72).

Accordingly, the defense had the ability to inquire and did factually inquire about Randall Berry's involvement in this case. Accordingly, Duggar's claim is baseless as the record conclusively shows the Court did not exclude his third-party guilt evidence.

### C. Duggar Fails to Meet His Burden That the Government Allowed Perjured or False Testimony

Under Grounds Two and Three, Duggar cites to *Napue v. Illinois*, 360 U.S. 264, 265 (1959), to support his claims that the Government allowed perjured and false testimony from two of its witnesses, Agent Fottrell and Agent Faulkner. Duggar, however, fails to meet his burden to allege a *Napue* violation.

Under *Napue*, the "failure of the prosecutor to correct the testimony of [a] witness which he knew to be false," or "should have known" to be, constitutes a denial of a defendant's constitutional right to due process. *United States v. Ruzicka*, 988 F.3d 997, 1004 (8th Cir.2021) (internal citations omitted).   To prove a *Napue* violation, a defendant bears the burden of demonstrating "(1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict." *United States v. West*, 612 F.3d 993, 996 (8th Cir.2010) (*quoting United States v. Bass*, 478 F.3d 948, 951 (8th Cir.2007)). "[I]t is not improper to put on a witness whose testimony may be impeached." *United States v. Perkins*, 94 F.3d 429, 433 (8th Cir.1996).

### 1. No Evidence Supporting Ground Two Claim that Director Fottrell Committed Perjury

During the trial, the United States called the Director of the Department of Justice's High Technology Investigative Unit, James Fottrell, as an expert computer forensic examiner. Director

Fottrell testified that the computer's hard drive was divided into a partition running the default Windows operating system that would boot up automatically and a partition running the Linux operating system that a user had to take affirmative steps to access. Tr. at 472-73. Director Fottrell explained that the Linux partition was created on May 13, 2019, by someone physically present at the defendant's computer. Tr. at 493. Director Fottrell also testified that the default Windows partition contained work material and an internet-monitoring software known as Covenant Eyes, while the Linux partition contained the Tor browser bundle and the uTorrent peer-to-peer software but not Covenant Eyes. Tr. at 463-64, 475-78, 584.

Director Fottrell then explained that Duggar repeatedly downloaded child sexual abuse material to the Linux partition using Tor and uTorrent on May 14, 15, and 16, 2019, including files with titles like "14yo girl suck and fuck," "pedomom," and "2_pthc ultra hard pedo pedofilia (new) 065." Tr. 545-55. The "14yo girl suck and fuck" and "pedomom" files were downloaded using uTorrent, which is a multi-step process. Typically, the user would first have to find torrent files associated with the videos—which, in this case, revealed the titles "14yo girl suck and fuck" and "pedomom"—and would then use the torrent files to download the videos via uTorrent. Tr. at 530-31; Gov. 39. Director Fottrell also testified, that these two videos and five others—all of which depicted minors engaged in sexually explicit conduct—were played on the Linux partition after being downloaded at different times, and that the user of the partition navigated to folders and viewed child sexual abuse images in thumbnail format. Tr. at 542-52, 1193-1203.

Director Fottrell last testified about images and messages from a back-up of the defendant's iPhone on his laptop. Tr. at 616-18. Images taken by an iPhone are saved in Apple's proprietary format and have EXIF information, or metadata, including GPS coordinates of where the iPhone

18

was when the images were taken. Tr. at 617-18. Director Fottrell testified that he commonly used metadata to establish identity and location and that, in this case, he plotted the GPS coordinates to verify the accuracy of the exhibits. Tr. at 621-23. Based on his review of the images and messages, Director Fottrell testified that the defendant was by or at the computer every time child sexual abuse material was downloaded and accessed on May 14, 15, and 16, 2019, as well as when the document with his name on the Linux partition was created. Tr. at 635, 668-73.

At issue here, during the cross examination of Director Fottrell, defense counsel pointed out:

> Q.    Let me get this straight for a second.   Can you explain, as a general matter, how it would be possible for a software version and build number of u Torrent to appear on a virtualized screenshot if it wasn't yet released?
>
> A.    That does not make sense to me.   That would not make sense to me.
>
> Q.    In other words, to even appear on this virtualized machine, a software update would have to come from the internet, correct?
>
> Q.    And you have sworn to this Jury that this was not plugged into the internet?
>
> A.    Correct.
>
> Q.    Or it would have to otherwise be manually loaded with additional software, correct?
>
> A.    Correct.
>
> Q.    And with the exception of the Oracle explanation that you gave earlier this morning, you have testified that you did not add any software or modify u Torrent?
>
> A.    I did not add any software.
>
> Q.    Would it surprise you to learn that this version and build number wasn' t released until after this device was seized?
>
> A.    That would be -- interest me, yes.

19

Q.  It would be very significant, would it not?

A.  I'm not sure it would be very significant.   It would be significant.

Tr. 757-758.

As evident by the transcript alone, Director Fottrell did not intentionally testify falsely, but rather acknowledged on cross-examination that the virtual-machine copy of Duggar's computer on which he was conducting his forensic analysis had inadvertently undergone a software update during his examination.[5]  And, of course, after defense counsel pointed out that a software program on the virtual-machine copy of Duggar's computer was updated during Director Fottrell's examination, the Government's attorneys and the witness himself on redirect did not deny the mistake, but rather fully explained how the software update at issue happened:

Q.    On cross, Mr. Gelfand asked you about the uTorrent program on the print screens of the virtual machine of the Linux partition on the HP computer. Do you remember that?

A.    Yes, I do.

Q.    He pointed out that there was a copyright from 2020 or 2021. Do you recall?

A.    Yes, I do.

Q.    How would something like that happen?

A.    So I've been thinking about that a little bit. What I recall is, normally, I would not connect the computer to the internet when I'm running my virtual machine exhibits. But in this case, the first step that I would need to do is install the Oracle VirtualBox guest additions. And in this case, I had problems doing that, getting that to install correctly because I was missing some predefined programs. So in that case, I needed to connect it to the internet in order to load the software

_____

[5] As multiple government witnesses explained at trial, computer forensic examiners create forensic copies of whatever digital devices they are asked to examine and then use those copies to conduct their examinations so as not to alter the original evidence items.  *See, e.g.*, Trial Tr. p. 321, 447-48, 454-55.

that would allow me to load the Oracle VirtualBox guest additions. So that's the explanation that I could think of that makes the most sense as to why I would have connected it to the internet, just to get those extensions installed correctly.

(Trial Tr. p. 826). Director Fottrell then went on to explain that this update would not have somehow placed child pornography on the virtual-machine copy of Duggar's device or otherwise meaningfully altered the copy, and that it therefore had no material impact on the results of his examination. (Trial Tr. p. 827-28).

With respect to the first element of a *Napue* claim, the mere conflict between testimony and an exhibit, or conflict between a witness's own prior statements and trial testimony are not sufficient to demonstrate perjured testimony. *West*, 612 F.3d at 996-997 (rejecting *Napue* claim based on alleged inconsistency in testimony where jury was presented with all conflicting evidence to assess for themselves; "[t]he jury is responsible for assessing the credibility of witnesses and resolving conflicts in testimony[.]"); *id.* ("Merely inconsistent statements do not establish use of false testimony."); *Perkins*, 94 F.3d at 433 (where "[t]he jury was fully informed about the discrepancies, contradictions, and inconsistencies in the officer's testimony and was free to determine whether…[it] was in fact true" there was no *Napue* violation.). Further, a witness's mere faulty recollection of an event cannot alone support a finding of perjured testimony for *Napue* purposes. *Henry v. Ryan*, 720 F.3d 1073, 1084 (9th Cir.2013) ("Although [the defendant] has provided evidence rebutting [the witness's] version of the facts, he has provided no evidence that [the witness] knew his testimony was inaccurate at the time he presented it, rather than [the witness's] recollection merely being mistaken, inaccurate or rebuttable."). Additionally, the fact that the defense can rebut testimony or evidence by identifying conflicting material is not proof in itself that the testimony was perjured – i.e. knowingly false. *Id.* ("[the defendant's] conclusory

21

assertion that…any testimony inconsistent with the truth must be not only inaccurate but also perjured does not constitute evidence sufficient to make out a *Napue* claim.").

At present, Duggar's *Napue* argument fails owing to the testimony itself. While Duggar attempts to paint a picture that Director "Fottrell admitted that he had, in fact intentionally modified the forensic image and that connected the image to the internet," the transcript reflects Director Fottrell was confronted with a relatively insignificant error that occurred during the forensic process, and that, once pointed out by defense counsel, he acknowledged, clarified, and explained it while on the stand. In no way was the jury exposed to perjured testimony and, as much, in no way was Duggar's due process rights infringed. In fact, given all the incriminating evidence revealed by Director Fottrell's extensive testimony, Duggar's only marginal reprieve came by pointing out an error in the process.

Clearly, this overlooked software update that occurred during the forensic process-that was conceded and fully explained while the witness was still on the stand- does equate to perjury.

### 2. Duggar's Post-Conviction Denial Underpinning Ground Three does not Render Special Agent Faulkner's Testimony False

As for the testimony of Homeland Security Special Agent Gerald Francis Faulkner, Duggar claims that SA Faulkner provided false testimony when he told the jury that Duggar, just prior to the start of his recorded statement, said "What is this about? Has someone been downloading child pornography?" (Doc. 182, pp. 26-27). In support of his claim, Duggar now denies he made this statement, and asserts "in reality, no such statement occurred, and no physical or testimonial evidence outside Faulkner's unverified memory supports its existence". (Id. at p.27).

At trial, SA Faulkner testified as the lead Homeland Security/Internet Crimes Against Children case agent. When discussing the execution of the search warrant, SA Faulkner stated that

he and Special Agent Howard Aycock initial approached Duggar at the car lot and informed him they were searching for "items of digital contraband" but did not disclose the specific purpose related to child pornography and, even told Duggar he was free to leave the premises. (Tr. pp. 154-156). SA Faulkner later testified that approximately 10-15 minutes after the initial interaction, Duggar remained on the scene and so they re-approached him regarding a consensual interview, which Duggar agreed to. (Id. at 154-155). The interview was conducted in a law enforcement vehicle on site. Relevant here, S.A. Faulkner testified to the following:

> Q.   Tell us what happened upon Mr. Duggar entering the vehicle.
>
> A.   Upon entering the vehicle, Agent Aycock asked and received verbal consent to record our interview.   Upon receiving verbal consent, Mr. Duggar turned in his chair facing both myself and Agent Aycock and then asked, "What is this about? Has somebody been downloading child pornography?"

Tr. p. 156. SA Faulkner added:

> Q.   So when he told you or asked you the question regarding child pornography, how did you respond?
>
> A.   Agent Aycock had asked him to stop before asking any more questions to let him get the recording device started, and then he then read him his Miranda rights.

Id. at 157.

Clearly, based on the transcript, this is not an instance of false testimony. The agent and the government standby the presented testimony, and Duggar, for his part, denies such (at least in his 2255 motion; he did not testify at trial). SA Faulkner's recounting of Duggar's statement, which went unrebutted at trial and is only be contested years later, amounts to typical trial testimony subject to cross examination, not a *Napue* violation. A denial of an admission- especially a significant one - by a defendant is not unusual and does not render the agents testimony recounting such false.

23

*Napue* violations typically arise when a witness testifies falsely to a fact that the government has withheld from the jury and the defense. The challenged testimony here was squarely before the jury. The testimony about Duggar's statement prior to the recorded interview was adduced by the government on direct (Trial Tr., p. 156) and by Duggar during cross examination (Trial Tr., p. 255 – 56). Under these circumstances, there is no "corruption of the truth-seeking function of the trial process" because the defense was able to explore the alleged statement on cross-examination. *United States v. Bagley*, 473 U.S. 667, 680 (1985); *see Perkins*, 94 F.3d at 433. As reflected by the Agent Faulkner's testimony was merely a fact issue for the jury, and not sufficient to demonstrate he offered false testimony.

### 3. Duggar Has Not Demonstrated that the Prosecution Knowingly Offered False Testimony

"[N]o constitutional violation occurs when the government has no reason to believe that the testimony was false." *United States v. Nelson*, 970 F.2d 439, 443 (8th Cir.1992); *see also United States v. White*, 724 F.2d 714, 717 (8th Cir. 1984) (a "challenge to evidence through another witness or prior inconsistent statements [is] insufficient to establish prosecutorial use of false testimony") (*citing United States v. Sutherland*, 656 F.2d 1181, 1203 (5th Cir.1981) cert. denied, 455 U.S. 949 (1982)). Further, "[i]t is not improper [for the prosecution] to put on a witness whose testimony may be impeached." *Perkins*, 94 F.3d at 433.

Even where the defendant demonstrates that a witness has perjured himself, and the United States is aware of the witness making inconsistent statements about a subject before his testimony, the defendant must produce additional evidence of the prosecution's knowing use of false testimony to support a *Napue* claim. *Bass*, 478 F.3d 948, 950-51 (8th Cir.2007) ("…[T]here was no evidence tending to show any such knowledge on the part of the government. What the

government knew, so far as the record shows, was that [the witness] had told different stories, not that his second story was untrue.") *Id*. at 951. The *Bass* Court concluded that there was no proof of the second Napue element where "defense counsel knew at least as much as the government did, if not more, about [the witness's] prior inconsistent statements and was able to subject his testimony to cross-examination on each material point. *Id*. at 951.

Here, Duggar has not identified any evidence that the United States knew of any allegedly false testimony before it was offered.

### 4.    Duggar Has Failed to Demonstrate that Any Allegedly False Testimony Would Impact the Jury's Verdict

Not every misstatement, variance, or perceived error in a witness's testimony is perjury. *See*, *e.g.*, *West*, 612 F.3d at 996 ("Merely inconsistent statements do not establish use of false testimony."). Even fewer constitute prosecutorial misconduct or materially affect the jury's verdict. *See United States v. Moore*, 639 F.3d 443, 446 (8th Cir.2011); *United States v. Martin*, 59 F.3d 767, 771 (8th Cir. 1995). None did here.

### D.    Court Correctly Allowed Bobye Holts' Testimony Regarding Duggar's Prior Child Molestation Conduct

Under Ground Four, Duggar claims the Court violated his Fifth and Sixth Amendment rights by allowing a Government witness to testify that Duggar admitted to her prior acts of child molestation. According to Duggar, the witness, Bobye Holt, "provided uncorroborated and prejudicial testimony." Contrary to Duggar's personal views, such testimony was allowed in pursuant to applicable law and over the objection of the Defendant.

Rule 414(a) provides: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child

molestation." Fed.R.Evid. 414(a). Here, the charged crime of receipt of child pornography falls under Rule 414's definition of "child molestation." Fed.R.Evid. 414(d)(2)(B); 18 U.S.C. § 2252A(a)(2). If evidence falls under Rule 414(a), it can be used for any relevant purpose, including propensity to commit the offense and a sexual interest in minors. *United States v. Splettstoeszer*, 956 F.3d 545, 547 (8th Cir.2020); *United States v. Bartunek*, 969 F.3d 860, 864 (8th Cir.2020). In fact, that was Congress's explicit intent in enacting the rule. *See* 140 Cong. Rec. H8968, H8991 (Aug. 21, 1994) (statement of Rep. Molinari), available at 1994 WL 461399 (Congressional sponsor explaining that, in child molestation cases, "a history of similar acts tends to be exceptionally probative because it shows ... a sexual or sado-sexual interest in children"). Rule 414 is so permissive because the "distinctive characteristics" of child molestation cases give rise to "a compelling public interest in admitting all significant evidence that will illumine the credibility of the charge and any denial by the defense." 140 Cong. Rec. at H8991-92. Legislative sponsors further explained that such evidence includes a "Defendant's propensity to commit sexual assault or child molestation offenses, and assessment of the probability or improbability that Defendant has been falsely or mistakenly accused of such an offense." *Id*. By design, then, Rule 414 carries a congressionally imposed presumption in favor of admission. *United States v. Weber*, 987 F.3d 789, 793 (8th Cir.2021) (citation omitted) ("This court has noted a strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible.").

Like all evidence in a criminal case, evidence offered under Rule 414 is subject to the Rule 403 balancing test, which calls for the exclusion of evidence whose probative value is substantially outweighed by its potential for unfair prejudice. *United States v. Withorn*, 204 F.3d 790, 794 (8th Cir.2000). "In doing so, however, courts must balance probative value against potential for unfair

prejudice 'in such a way as to allow the new rules their intended effect,' " including accounting for the "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible" and that "Rule 414 evidence is 'exceptionally probative' of a defendant's sexual interest in children." *Id.* (*citing United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir.1997)).

The highly probative nature of the Rule 414 evidence in this case is precisely what made it inculpatory and militated in favor of its inclusion under Rule 403. "Rule 403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case." *United States v. Betcher*, 534 F.3d 820, 825 (8th Cir.2008) (citations omitted). Rather, it excludes unfair prejudice. Here, Duggar has not shown that the risk of unfair prejudice presented by the evidence substantially outweighed its probative value.

Duggar contends that the witness's testimony at trial regarding his previous child molestation conduct was uncorroborated and inflammatory.   His contention that the evidence was "uncorroborated" does not present unfair prejudice in the context of Rule 414. In *United States v. Hruby*, for example, the defendant confessed to molesting his friend's daughter. 19 F.4th 963, 966 (6th Cir.2021). The district court admitted that evidence under Rule 414 in a subsequent child molestation case. *Id*. On appeal, Hruby argued the district court erred by concluding a jury could reasonably find he committed the prior molestation—based solely on his admission—by a preponderance of the evidence. *Id*. at 966–67. The Sixth Circuit rejected this argument, observing that "the testimony of the witnesses need not be explicitly corroborated" and "grafting a corroboration requirement onto Rule 414(a) would run counter to the flexible nature of Rule 104(b)." *Id.* at 967–68. "Relevance—not corroboration—is the only criterion for admissibility." *Id*. at 968. And in *Norris*, the Ninth Circuit rejected a confession-corroboration argument holding

that "[u]nder Rule 414(a), the key to admissibility is relevance, and no independent evidence of the commission of the prior bad act is required." 428 F.3d at 913. Here, Duggar's prior child molestation conduct was relevant to his sexual interest in children.

Also, Duggar's contention that the evidence was "inflammatory" does not present unfair prejudice in the context of Rule 414. Evidence that a defendant has a propensity to sexually abuse a minor child is, by its nature, inflammatory. But there is nothing unduly prejudicial about using the exact type of evidence Rule 414 was designed to admit. "Because propensity evidence is admissible under Rule 414," the fact that evidence of prior acts suggests a propensity to molest children, "is not *unfair* prejudice." *United States v. Gabe*, 237 F.3d 954, 959-60 (8th Cir. 2001). Duggar must show some prejudice outside of the type of prejudice that comes from propensity evidence that is by its nature inflammatory, and this prejudice must substantially outweigh the high probative value of evidence of prior child molestations. Here, because the Rule 414 evidence was probative of the material issue of Duggar's sexual interest in minors, it was not unnecessarily inflammatory. Accordingly, the Court correctly allowed the Government witness to testify as to Duggar's uncharged child molestation conduct.

### E.    Duggar Fails to Demonstrate various Claims of Conflict of Interest, Prosecutorial Misconduct, Politically Motivated Prosecution

Under Ground Six, Duggar complains about a multitude of factors that combined to deny him a fair and impartial trial. Duggar's claim includes that the criminal trial Judge also presided over a civil litigation case filed by his sisters, the trial judge also presided over a civil matter filed by Duggar that involved the disclosure of sealed juvenile records related to an investigation that Duggar had engaged in inappropriate sexual contact with his sisters and, finally various

prosecutorial misconduct claims including his prosecution was politically motivated and his juvenile records were inappropriately exploited.

### 1.    Duggar Fails to Demonstrate the Judge in His Criminal Prosecution Suffered from a Conflict of Interest

As to Duggar's conflict of interest claim, under 28 U.S.C. § 455(a), a judge is required to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The inquiry is objective, that is, from the point of view of a reasonable person with access to all of the facts as they existed, not as they were surmised or reported. *See Cheney v. United States Dist. Ct. for Dist. of Columbia*, 541 U.S. 913, 914 (2004) (*citing Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000)). "Because a judge is presumed to be impartial, a party seeking recusal bears the substantial burden of proving otherwise. *United States v. Martinez*, 446 F.3d 878, 883 (8th Cir.2006).

A judge's partiality must be based on either information obtained from an extrajudicial source or a predisposition developed from an extrajudicial source. *See United States v. Grinned Corp.*, 384 U.S. 563, 583 (1966) ( "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."); *Hale v. Firestone Tire and Rubber Co.*, 756 F.2d 1322, 1329 (8th Cir.1985) ("Facts learned by a judge in his judicial capacity cannot be the basis for disqualification.").

Here, Duggar has not alleged facts demonstrated the judge presiding over his criminal case had a conflict of interest.  The fact that the judge presided over Duggar's and his sisters' civil lawsuits is not sufficient to demonstrate the judge had a conflict of interest in presiding over Duggar's criminal trial. Duggar provides no other allegations demonstrating why the judge was

conflicted from presiding over his criminal trial. Duggar has not identified any actions evincing bias, nor has he identified any information learned extrajudicially by the judge suggesting bias. The mere fact that the judge presided over his criminal trial is insufficient to demonstrate the judge had a conflict of interest. Consequently, Duggar has failed to demonstrate the judge suffered from a conflict of interest.

### 2.    Duggar Fails to Demonstrate His Prosecution was Politically Motivated

Next, Duggar claims his prosecution was politically motivated due to the Department of Justice's pattern of targeting conservative figures after President Joe Biden took office.   Duggar's unsupported self-serving claim fails to demonstrate he was vindictively or selectively prosecuted.

Duggar's claim must be dismissed because it is untimely. A motion to dismiss based on a defect in instituting the prosecution of a case, such as selective or vindictive prosecution, must be raised in a pretrial motion. *See* Fed.R.Crim.P. 12(b)(3)(A)(iv). Here, Duggar failed to file such pretrial motion and, as a result, his claim is untimely.   In any event, his claim lacks merit.

### i.    Duggar Fails To Establish Prosecutorial Vindictiveness

"Vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right." *United States v. Williams*, 793 F.3d 957, 963 (8th Cir.2015) (*citing United States v. Leathers*, 354 F.3d 955, 961 (8th Cir.2004)). Such prosecution violates a defendant's due process rights. *Id*. In making a claim of vindictive prosecution, the defendant bears the burden of demonstrating that the "'prosecution was brought in order to punish [him] for the exercise of a legal right,' and ... the defendant's burden ... is 'a heavy one.'" *Id.* (*quoting Leathers*, 354 F.3d at 961). "This is because 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and

30

what charge to file ... generally rests entirely in [the prosecutor's] discretion.'" *United States v. Kelley*, 152 F.3d 881, 886 (8th Cir.1998) (*quoting Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)); *see United States v. Goodwin*, 457 U.S. 368, 382 (1982) ("A prosecutor should remain free before trial to exercise the broad discretion entrusted to [her] to determine the extent of the societal interest in prosecution.").

A defendant can establish prosecutorial vindictiveness in one of two ways. *Williams*, 793 F.3d at 963. First, a defendant may present "objective evidence" showing the prosecutor had a "vindictive or improper motive in increasing the number or severity of charges." *Id*. (*quoting United States v. Chappell*, 779 F.3d 872, 879 (8th Cir.2015)). Second, a defendant, in rare instances, may "rely upon a presumption of vindictiveness, if [the defendant] provides sufficient evidence to show a reasonable likelihood of vindictiveness exists." *Id*.  In determining whether the defendant is entitled to presumption of vindictiveness, the court "examine[s] the prosecutor's actions in the context of the entire proceedings." *Id*.

"Provocative speculation and conclusory proclamations" do nothing to advance the rigorous burden of proof that must be shouldered by a defendant who advances a vindictive prosecution claim. *United States v. Wecht*, No. e 2:06-cr-00026, 2006 WL 1835818, at *17 (W.D. Pa. June 29, 2006). Conclusory speculation that the prosecutor harbors an animus against the defendant "may make interesting reading and attract much publicity" but it does not satisfy the legal threshold that must be made to support a claim of vindictive prosecution. *Id.*

Here, Duggar fails to show prosecutorial vindictiveness under either approach. First, Duggar has not provided any direct evidence that the prosecution added additional counts against

him in retaliation for him exercising his constitutional or statutory rights. Indeed, after the grand jury returned the indictment in this case, no other charges were filed against Duggar.

Second, Duggar provides no evidence, aside from his self-serving statement of the Department of Justice targeting conservative figures, to show the context of the proceedings present a reasonable likelihood of vindictiveness. The decision to initiate a federal prosecution is committed to the prosecutorial discretion of the Executive Branch. Prosecutors have ethical obligations not to initiate unfounded prosecutions and "courts presume that they … properly discharge[] their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (*quoting United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* (quotation omitted). There are additional safeguards in place to prevent baseless indictments, including the right to be charged by a grand jury upon a finding of probable cause. U.S. CONST. amend. V; *Kaley v. United States*, 571 U.S. 320, 328 (2014). And "grand juries are prohibited from engaging in 'arbitrary fishing expeditions' and initiating investigations 'out of malice or an intent to harass.'" *Trump v. Vance*, 591 U.S. 786, 805 (2020) (*quoting United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991)). Despite his assertions to the contrary, the context of the Government's case against Duggar was devoid of any reasonable likelihood that it was brought to penalize him for being a "conservative figure," but rather because there was probable cause that he had been downloading child pornography. The decision regarding whether to prosecute and what charges to present to a grand jury is entrusted to the discretion of the Department of Justice. Here, the Government chose to move forward with an indictment on

the child pornography offense once its investigation was substantially complete. A defendant cannot challenge the discretion inherent in evaluating a case and weighing the reasons for prosecuting. *United States v. LaBonte*, 520 U.S. 751, 762 (1997). The Government had objective, legitimate reasons to charge Duggar in the indictment on account of him downloading child pornography. Seeking accountability for criminal conduct is not a vindictive motive.

### ii.    Duggar Fails to Establish He Was Selectively Prosecuted

Again, "[t]he Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *Armstrong*, 517 U.S. at 464. Federal prosecutors "have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility" to ensure that laws are faithfully executed. *Id.* (cleaned up). The decision to prosecute, moreover, "is particularly ill-suited to judicial review" because "[s]uch factors as the strength of the case, the prosecution's general deterrence value, the government's enforcement priorities, and the case's relationship to the government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* at 465. Judicial deference also "stems from a concern not to unnecessarily impair the performance of a core executive constitutional function." *Id.* "So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [or her] discretion." *Id.* at 464.

Courts reviewing allegations of selective prosecution begin with a "presumption of regularity" supporting prosecutorial decisions. *Id.* "In the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *Id.*; *see*

*United States v. Lazzaro*, Crim. No. 21-cr-0173, 2022 WL 16948157, at *1 (D.Minn. Nov. 15, 2022) (discussing presumption of regularity that attaches to analysis of selective prosecution claims).

The standard for proving a claim of selective prosecution is undeniably "a demanding one." *Armstrong*, 517 U.S. at 463; *see also United States v. Peterson*, 652 F.3d 979, 981 (8th Cir.2011) ("The 'evidentiary burden is a heavy one.'"). The defendant bears the burden of establishing that the government engaged in selective prosecution. *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir.2004). To meet his burden of establishing a prima facie case of selective prosecution, Duggar must show "(1) that [he was] singled out for prosecution while others similarly situated were not prosecuted for similar conduct; and (2) that the decision to prosecute was based on an impermissible motive such as race, religion, or an attempt by the defendant to secure other constitutional rights." *United States v. Huff*, 959 F.2d 731, 735 (8th Cir.1992). Absent this showing, the prosecution is presumed to have been undertaken in good faith. *United States v. Parham*, 16 F.3d 844, 846 (8th Cir.1994).

Duggar has not presented evidence to meet his burden of satisfying either of the prima facie elements. First, Duggar has failed to show that persons similarly situated to him were not prosecuted for similar conduct. *White*, 928 F.3d at 743. Duggar must present comparators, that is, individuals who: (1) "committed 'roughly the same crime under roughly the same circumstances'"; (2) "are 'outside the protected class"; and (3) "were known to the prosecutor." Lazzaro, 2022 WL 16948157, at *2 (citations omitted).  Here, defendants have failed to show anyone who engaged in the same conduct with comparable evidence that were not prosecuted in this case.

Nor has Duggar demonstrated that prosecutors acted with discriminatory purpose. *See Huff*, 959 F.2d at 735. To establish this element, Duggar must show "intentional and purposeful discrimination." *United States v. Kelley*, 152 F.3d 881, 885 (8th Cir.1998) (internal citation omitted). Despite the seriousness of Duggar's allegations that the Government targeted him for prosecution because he is a "conservate figure," he has not presented any evidence of intentional and purposeful discrimination by the by the Government. There is no evidence whatsoever that the Government chose to prosecute him, instead of other "non conservative figures," for an improper reason. Duggar simply fails to meet his burden to prove any improper motive in the complained-of exercise of prosecutorial discretion. Contrary to Duggar's assertions, many factors went into the Government's charging decisions, including the strength of the evidence and the nature of the conduct. The Government did not present an indictment and the grand jury did not indict Duggar because of his political identity, but because he downloaded child pornography.

Duggar cannot meet the rigorous standard of rebutting the presumption of regularity. *See Armstrong*, 517 U.S. at 464. The Government's decision to prosecute him was a proper exercise of prosecutorial discretion with no discriminatory animus. Because there is no cognizable claim of selective prosecution in this case, Duggar's claim should be dismissed.

### 3.    Government's Alleged Collusion to Exploit Sealed Juvenile Records for Political and Media Purposes

Further, Duggar claims due process was violated by the Government colluding to exploit his sealed juvenile records for political gain and media purposes.  Because of the conclusory nature of Duggar's averment contained within this ground for relief, it is impossible for the United States to respond to the merits of his claim.

Here, Duggar, in conclusory fashion, claims the Government colluded to exploit his sealed
juvenile records for political gain and media purposes but has submitted no facts in support of his
claim.   Rule 2(b) of the Rules Governing § 2255 Proceedings requires the motion to "specify all
the grounds for relief available" and "state the facts supporting each ground."   Rule 2(b), Rules
Governing § 2255 Proceedings.   A § 2255 motion must "state facts that point to a real possibility
of ... error."   Advisory Committee Note, 1976 Adoption, Rule 4 of the Rules Governing Section
2254 Cases in the United States District Courts (internal quotation marks omitted); *see* Advisory
Committee Note, 1976 Adoption, Rule 4 of the Rules Governing Section 2255 Proceedings in the
United States District Courts (referencing the § 2254 note).   Generally, courts have held that
conclusory allegations alone, without supporting factual averments, are insufficient to state a valid
claim under § 2255.   *See Smith v. United States*, 677 F.2d 39, 41 (8th Cir.1982) (conclusory
allegations, unsupported by any specifics, are subject to summary dismissal); *United States v.
Shabbaz*, 657 F.2d 189, 191 (8th Cir.1981) (holding conclusory allegations of racial prejudice and
bias without factual basis was insufficient to warrant further consideration); *United States v.
Thomas*, 221 F.3d 430, 437 (3d Cir.2000) (". . . we have previously held that vague and conclusory
allegations contained in a § 2255 petition may be disposed of without further investigation by the
District Court."); *Lynn v. United States*, 365 F.3d 1225, 1238 (11th Cir.2004) (holding that a §
2255 motion failed on the merits when the motion was supported by affidavits containing "nothing
more than conclusory allegations").   Because Duggar fails to set forth any facts supporting his
claim contained with Ground Six, the Court should summarily dismiss this claim. *See United
States v. Apfel*, 97 F.3d 1074, 1077 (8th Cir.1996) (Statements which are self-serving and
unsupported by evidence do not establish a basis for relief under § 2255.).

**F.    Duggar's Claim that the Government Used an Involuntary or Externally Coerced Statement is Contradicted by the Record**

Under Ground Seven, Duggar claims the Government introduced and relied on a statement posted to the Duggar Family's Facebook page in 2015. However, a review of the record shows this claim to be wholly unsupported.

Prior to trial, the Government filed a motion in limine in which it sought to introduce statements6 that Duggar had publicly admitted in 2015 via a post to his family's social media account. (Doc. 66, pp. 1-2).   The Government contended such statement was admissible under Rule 404(b)(2).   Naturally, Duggar filed his own motion in limine seeking to exclude the statement attributed to him as being irrelevant to the charges pending in his case and being extremely and unfairly prejudicial. (Doc. 71).   The Court agreed with Duggar and denied the Government's motion to admit the prior statements made by Duggar. (Doc. 93, pp. 2 – 6). As such, Duggar's claim is directly contradicted by the record and should be dismissed.

Additionally, under Ground Seven, Duggar claims counsel failed to challenge the Government's use of the false, externally pressured, and unapproved public statement.   To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the deficient performance prong of the Strickland test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*. at 688. Review of

---

6 "I have been the biggest hypocrite ever. While espousing faith and family values, I have secretly over the last several years been viewing pornography on the internet and this has become an addiction."

counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (*quoting Strickland*, 466 U.S. at 690). Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission. *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir.1991). If one fails to establish deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance of counsel claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir.2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The United States Supreme Court has clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (*quoting Strickland*, 466 U.S. at 687).

Here, as discussed above, Duggar's allegation is directly contradicted by the record. By offering only a self-serving claim unsupported by the record, Duggar fails to show his counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 688. As such, Duggar's claim can be summarily dismissed. *See Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001) (conclusory allegations are insufficient to establish ineffective assistance). Thus, Duggar's claim regarding trial counsel's alleged failure to

challenge the Government's use of the false, externally pressured, and unapproved public statement is nonsensical and should be denied.

## III.    The Eighth Circuit Has Already Addressed Duggar's Alternative Perpetrator Claim

In his § 2255 Motion, Duggar raises the claim that the trial court prohibited him from fully presenting evidence of an alternative perpetrator, Caleb Williams. This issue has previously been raised in a direct criminal appeal before the Eighth Circuit and specifically addressed by the Eighth Circuit.  *See United States v. Duggar*, 76 F.4th 788, 791 – 92 (8th Cir. 2023).   Issues decided on direct appeal cannot be raised again in a § 2255 motion.   *United States v. Kraemer*, 810 F.2d 173, 177 (8th Cir.1987) (defendant cannot raise the same issues in motion to vacate a sentence that have been decided on direct appeal or in new trial motion); *see United States v. Davis*, 406 F.3d 505, 511 (8th Cir.2005), *cert. denied*, 126 S.Ct. 1083 (2006) (same claim in different clothes will not be reconsidered on collateral review).   The writ of habeas corpus is not meant to allow prisoners to relitigate their previously unsuccessful claims. Accordingly, "[c]laims which were raised and decided on direct appeal cannot be re-litigated on a motion to vacate pursuant to 28 U.S.C. § 2255." *Dall v. United States*, 957 F.2d 571, 572 (8th Cir.1992) (per curiam), (*quoting United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir.1981) (per curiam).

Duggar's current § 2255 motion contains a contention that was decided adversely against him on appeal. After his conviction, Duggar appealed to the Eighth Circuit and argued this Court violated his constitutional right to present a complete defense by precluding him from calling and, if necessary, impeaching a critical witness at trial.  Brief filed by Appellant at 19 - 31, *United States v. Duggar*, No. 22-2178 (8th Cir. Oct. 4, 2022).  This claim was decided adversely to Duggar.

There, the Eighth Circuit found that this Court had tried to strike a balance by allowing Duggar an opportunity to create reasonable doubt by calling the former employee to testify and asking whether he was present on the car lot when the downloads occurred but precluding him from impeaching the witness with a prior sex crime or introducing speculative testimony. *Duggar*, 76 F.4th at 791.   The Eighth Circuit recognized this Court's reasoning was to prevent confusion: "the jury might think he did it *because* he was a sex offender, even though the conviction was only potentially admissible as impeachment evidence." *Id*. (emphasis in original). The Eighth Circuit ultimately concluded that this Court had no obligation under the Fifth and Sixth Amendments to do anything more as the Supreme Court has stated nothing in the Constitution calls into   question "well-established rules" that "permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id at 791 – 9* (*citing Holmes v. South Carolina*, 547 U.S. 319, 326 (2006)).

Because the Eighth Circuit considered Duggar's claim on direct review, his claim may not be relitigated in a petition for relief under 28 U.S.C. § 2255.   *Thompson v. United States*, 7 F.3d 1377, 1379 (8th Cir.1993), *cert. denied.* 511 U.S. 1010 (1994) (Appellant's petition to vacate is procedurally barred when it constitutes an attempt to relitigate issues considered and rejected on direct appeal); *United States v. Gaus*, 751 F.2d 1506, 1507 (8th Cir.1985) (prisoner seeking post-conviction relief could not relitigate claim that was decided adversely to him on direct appeal).   In the absence of an intervening change in the law, or newly discovered evidence, the district court should not reconsider any claim that was resolved on direct appeal in a section 2255 habeas proceeding. *See Davis v. United States*, 417 U.S. 333, 342 (1974) (Defendant was entitled to

relitigate on motion to vacate judgment an issue which was decided on direct appeal where there had been an intervening change in the law.). Therefore, because Duggar's claim has been decided adversely against him on direct appeal and there has been no change in the law or newly discovered evidence relevant to his case, this claim should be dismissed.

## IV.    The Eighth Circuit Does Not Recognize Cumulative Error Review of Ineffective Assistance Of Counsel Claims

Finally, under Ground Eight, Duggar claims to be entitled to relief based on the cumulative effect of his counsel's inability to adequately investigate, challenge, and rebut numerous constitutional violations.

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the deficient performance prong of the Strickland test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*. at 688. Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (*quoting Strickland*, 466 U.S. at 690). Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission. *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir.1991). If one fails to establish deficient performance by counsel, the court need proceed no further in its

41

analysis of an ineffective assistance of counsel claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir.2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The United States Supreme Court has clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (*quoting Strickland*, 466 U.S. at 687).

According to Duggar, this deprived him of his right to effective assistance of counsel. Such claim is without merit because the Eighth Circuit does not recognize a claim of "cumulative error." *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir.2008) ("[W]e have repeatedly rejected the cumulative error theory of post-conviction relief.").   The Eighth Circuit has repeatedly recognized "a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test."  *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir.2006) (*quoting Hall v. Luebbers*, 296 F.3d 685, 692 (8th Cir.2002)); *see United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) (The Eighth Circuit has "repeatedly rejected the cumulative error theory of post-conviction relief.").   Instead, each claim must be examined independently rather than collectively, *Hall v. Luebbers*, 296 F.3d 685, 692-93 (8th Cir.2002) (*citing Wainwright v. Lockheart*, 80 F.3d 1226, 1233 (8th Cir.1996)),   as each claim must rise or fall on its own merits, *Scott v. Jones*, 915 F.2d 1188, 1191 (8th Cir.1990).   Cumulative error will not justify habeas

relief.  *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir.2006). As such, Duggar's cumulative error claim must also be denied.

## V.     No Evidentiary Hearing Is Required and No Certificate of Appealability Should Issue

Title 28, U.S.C. § 2255 provides in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

28 U.S.C. § 2255(b).

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. . .

The Eighth Circuit Court of Appeals has explained,

> "Evidentiary hearings on 28 U.S.C. § 2255 motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition if a factual dispute exists." [*Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir.2013)]. "The district court is not permitted to make a credibility determination on the affidavits alone." *Id*. at 1206.

*United States v. Sellner*, 773 F.3d 927, 929 (8th Cir.2014). Indeed, "'[w]here petitioner's allegations, if true, amount to ineffective assistance of counsel, a hearing must be held unless the record 'affirmatively refutes the factual assertions upon which [the claim] is based.' '" *Franco v. United States*, 762 F.3d 761, 763 (8th Cir.2014) (*citing Watson v. United States*, 493 F.3d 960, 964

43

(8th Cir.2007), *in turn quoting Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir.1994)). On the other hand,

> [The district court] may ... deny an evidentiary hearing if "(1) the [petitioner's] allegations, accepted as true, would not entitle the [petitioner] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." [*Thomas*, 737 F.3d] at 1206–07 (alterations in original) (*quoting Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir.2006)).

*Sellner*, 773 F.3d at 929-930; *accord Anderson v. United States*, 762 F.3d 787, 792 (8th Cir.2014) (*citing* 28 U.S.C. § 2255(b)); *Franco*, 762 F.3d at 763; *Winters v. United States*, 716 F.3d 1098, 1103 (8th Cir.2013). The district court's denial of an evidentiary hearing is reviewed for abuse of discretion. *Sellner*, 773 F.3d at 929; *see also United States v. Frausto*, 754 F.3d 640, 642 (8th Cir. 2014) (explaining that, to determine whether the district court abused its discretion in denying an evidentiary hearing, the court must review *de novo* the validity of a petitioner's § 2255 claims).

Here, an evidentiary hearing is both unwarranted and unnecessary as all the issues raised by Duggar in his § 2255 Motion are resolvable by reviewing the record.   As discussed above, after reviewing Duggar's claims against the record and applicable law, his claims are untimely, have already been litigated or otherwise procedurally defaulted. Thus, an evidentiary hearing is unnecessary.

When the district court has denied a motion under 28 U.S.C. § 2255, the movant may not appeal without a certificate of appealability.   Such a certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2). A "substantial showing" under this section is a showing that "reasonable jurists would find the

44

district court's assessment of the constitutional claims debatable or wrong."     *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).    In other words, a "substantial showing" is made if "a court could resolve the issues differently, or the issues deserve further proceedings."     *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir.1997).    In this case, as demonstrated above, Duggar has not made a substantial showing of the denial of a constitutional right.    Accordingly, this Court should deny any request for a certificate of appealability.

## *Conclusion*

Based on the foregoing arguments and authority, the United States respectfully requests that Duggar's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody be *DENIED* and requests the Court deny any motion by Duggar for a certificate of appealability for his failure to make a substantial showing that he was denied a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

Respectfully submitted,

David Clay Fowlkes
United States Attorney

By:  */s/ Dustin S Roberts*
Dustin Roberts
Assistant United States Attorney
Arkansas Bar No. 2005185
414 Parker Avenue
Fort Smith, AR 72901
Office: (479) 783-5125

45

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/EMF System which will send notification of such filing and I hereby certify that I have mailed the document by the United States Postal Service to the following non CM/EMF participants:

> Joshua James Duggar
> Register No. 42501-509
> FCI Seagoville
> Federal Correctional Institution
> P.O. Box 9000
> Seagoville, TX   75159

> _/s/ Dustin S Roberts_
> Dustin Roberts
> Assistant United States Attorney

46